# EXHIBIT B-4

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

No: 19-8010

---

John C. Kitchin; North West Auto Body; Mary Menke, on behalf of themselves and all others
similarly situated

Respondents

v.

Bridgeton Landfill, LLC; Republic Services, Inc.; Allied Services

Petitioners

Rock Road Industries, Inc.

---

Appeal from U.S. District Court for the Eastern District of Missouri - St. Louis
(4:18-cv-000672-CDP)

---

### JUDGMENT

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

Petition for permission to appeal pursuant to 28 U.S.C. Section 1453(c) has been

considered by the court and is denied.

Mandate shall issue forthwith.

June 06, 2019

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit.

Exhibit 1

---

/s/ Michael E. Gans

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

 

## PohlmanUSA®
## Court Reporting and
## Litigation Services

---

Shawn Silva
May 15, 2018

---

Michael Dailey, et al.

vs.

Bridgeton Landfill, LLC, et al.

EXHIBIT 2

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Page 159

```
1          A.   I don't remember.
2          Q.   Do you recall seeing whether there was any
3    further dust remaining after you collected the
4    sample?
5          A.   I don't remember.
6          Q.   Do you know how long the refrigerator had
7    been there when you took the samples?
8          A.   I have no idea.
9          Q.   Were you aware that after you took that
10   sample the Daileys had replaced their
11   refrigerator?
12         A.   No.
13         Q.   If they had cleaned out the space, you
14   know, after they removed the old refrigerator and
15   before putting in the new one, would you expect any
16   sampling results to come back differently from the
17   ones you had taken?
18              MS. BRUSTOWICZ:  I want to object to
19   the form but go ahead and answer it.
20         A.   Would I expect anything different?  That,
21   I don't know.
22         Q.   I'm asking because you had testified
23   earlier about the -- your preference for older dust.
24   Do you recall talking about that?
25         A.   Yes.
```

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY, et al.,                    )
                                            )
            Plaintiffs,                     )
                                            )
    v.                                      )     Case No. 4:17 CV 24 CDP
                                            )
BRIDGETON LANDFILL, LLC, et al.,           )
                                            )
            Defendants.                     )

## ORDER

Upon thorough consideration of the parties' respective positions and arguments on plaintiffs' Motion for Leave to File a Second Amended Complaint, I will grant the motion and set a briefing schedule on plaintiffs' anticipated motion to remand.

Given the complexity of the case overall, the complex issues involved in plaintiffs' motion(s) to amend, and the stay I imposed in order to thoroughly consider the issues, I am not persuaded by defendants' argument that any delay in seeking leave to amend should preclude plaintiffs from amending their complaint. Further, defendants' arguments as to futility are more properly addressed in the context of plaintiffs' anticipated motion to remand.[1]  Upon balancing the potential

---

[1] Because on this motion for leave to amend I am not addressing the substance of defendants' argument regarding the applicability of the Price Anderson Act to the Second Amended Complaint, I will not certify an interlocutory appeal on my ruling here.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

prejudice to the parties, I conclude that under Fed. R. Civ. P. 15(a)(2) justice requires that leave to amend be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Leave to File a Second Amended Complaint [157] is **GRANTED**, and the Clerk of Court is instructed to file and docket plaintiffs' Second Amended Complaint (ECF 157-2) as of today's date.

**IT IS FURTHER ORDERED** that plaintiffs shall have twenty-one (21) days from the date of this Order within which to file a motion to remand, and defendants shall have fourteen (14) days thereafter within which to respond. Any reply brief may be filed within seven (7) days of the response.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of October, 2019.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY, et al.,                     )
                                            )
         Plaintiffs,                        )
                                            )
v.                                          )          Case No. 4:17 CV 24 CDP
                                            )
BRIDGETON LANDFILL, LLC, et al.,            )
                                            )
         Defendants.                        )

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs Michael Dailey and Robbin Dailey, by and through their counsel, and for their Second Amended Petition against Defendants Bridgeton Landfill, LLC, Rock Road Industries, Inc, Republic Services, Inc., Allied Services, L.L.C., and Cotter Corporation, state and allege as follows:

1.      Since World War II, big companies have made significant profits processing, handling, and storing radioactive materials in the St. Louis area. This activity began seven decades ago, when a government contractor began processing uranium ores in downtown St. Louis City. The hazardous, toxic, carcinogenic, radioactive mill tailings wastes resulting from the processing of these ores are ounce for ounce some of the most dangerous materials on the planet. Despite knowing that these materials were some of the most harmful substances on Earth, Defendants treated these hazardous, toxic, carcinogenic, radioactive mill tailings wastes with about the same level of care that a reasonable person might give to common household garbage, dumping it without authority from the State of Missouri and in violation of law, like everyday trash into the West Lake Landfill—a landfill which experts indicate is not even suitable for garbage, as it contains no liner.

1

2.      Since then, that radioactive material, negligently dumped in an area surrounded by peaceful neighborhoods and playgrounds, has tormented the lives of everyday people—moms and dads who thought they were raising their kids in a clean home in a safe, quiet neighborhood; kids who want nothing more than to play in the backyard; and small business owners who had invested everything to build the American dream for their families. These everyday St. Louisans now find their lives disrupted, their homes contaminated, their businesses upended, and their properties devalued. They find their once-quaint neighborhoods filled with technicians testing and prodding their backyards and the dust of their vacuum cleaners to identify the quantity and the toxicity of the radioactive material Defendants have dumped into their lives.

3.      Tests conducted by representatives of the United States of America and others now confirm that the areas around the West Lake and Bridgeton Landfills (referred to herein as the "Landfill" which consists of several inactive landfills including West Lake and Bridgeton) are contaminated with the same radioactive mill tailings wastes generated in the processing of uranium ores in the St. Louis area. The off-site radioactive mill tailings wastes found today in the real property, which contains businesses and homes, surrounding the Landfill has the fingerprint (or profile) of the ore processed in St. Louis which generated the hazardous, toxic, carcinogenic, radioactive mill tailings wastes that were dumped into and around the Landfill.

4.      These radioactive mill tailings wastes are known human carcinogens that can cause chronic damage to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system in addition to numerous cancers. Illnesses such as cancers or birth defects may take a number of years after exposure to the radioactive material to appear.

5.      Defendants have failed to take responsibility for their negligent behavior, failed to clean up the area, failed to move the residents and businesses out, and failed to make amends for the

2

widespread damage they have caused. Instead, Defendants have hidden behind misstatements and omissions, misleading the public about the widespread contamination Defendants have caused and minimizing the immense risks to public health and safety that resulted from Defendants' actions.

6.      It is time that Defendants finally be held accountable for their reckless and tortious conduct. This particular lawsuit seeks to correct the harm Defendants inflicted on just a few of the victims.

7.      Plaintiffs Michael Dailey and Robbin Dailey (hereinafter "Plaintiffs") own property in Bridgeton, Missouri that Defendants contaminated. The Dailey Property, including the land and Plaintiffs' home (hereinafter "Dailey Home"), is contaminated with radioactive material from the Landfill. The radioactive material consists of high levels of Uranium (U-238) decay products, including Thorium (Th-230), Lead (Pb-210), and Radon (Ra-226). Dusts inside the Dailey Home were shows to contain radioactive Th-230 at levels at least two hundred times higher than Background levels, as depicted in the graphic immediately below.

3

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM



8.      Plaintiffs Michael Dailey and Robbin Dailey have sustained significant damages as a result of Defendants' conduct. Defendants should remediate the Dailey Home and compensate Plaintiffs for their damages, and provide further relief as set forth below in the Petition.

9.      Authorities have recently ordered a cleanup that will take many years to complete. This cleanup will result is the uncovering and handling of radioactive mill tailings wastes that will result in additional releases from the site. (This statement is provided for informational purposes only, as Plaintiffs are making no claims under the laws of the United States).

4

# I. JURISDICTION, AUTHORITY, AND VENUE

10.     The Twenty-First Judicial Circuit of the State of Missouri is St. Louis County has

jurisdiction and authority over the subject matter and the parties in this case because the causes

of action stated in this Petition arose out of business activities conducted solely in Missouri, and

out of torts committed solely in Missouri by resident and non-resident defendants.

11.     Complete diversity does not exist in this matter as Defendant Rock Road Industries was a

Missouri corporation at the time this action was commenced, and Plaintiffs are Missouri citizens.[1]

12.     Venue is proper in the Twenty-First Judicial Circuit of the State of Missouri in St. Louis

County pursuant to Mo. Rev. Stat. §508.010, because Defendants' conduct giving rise to this action

took place in St. Louis County, Missouri.

13.     Plaintiffs do not allege any causes of actions arising under any laws of the United States.

14.     Plaintiffs' claims do not fall within the scope of the Price Anderson Act.

  A.  The Landfill is not and has never been a licensed nuclear facility.

  B.  Defendants have never received a license to possess, transport, or dispose of any
      radioactive wastes on or in the Landfill.

  C.  Defendants have never entered into an indemnification agreement with the United States
      government under 42 U.S.C. § 2210 with respect to the complained activities.

15.     Defendants Rock Road Industries and Bridgeton Landfill, LLC previously, and correctly,

declared that the Price-Anderson Act does not apply to them because the West Lake Landfill is

not a licensed nuclear facility: "Count One, arising under the Price-Anderson Act, is wholly

---

[1] When this action was initially filed on November 15, 2016, Rock Road Industries was a Missouri Corporation.
Thereafter, on April 10, 2018, Rock Road Industries was merged into Bridgeton Landfill, LLC.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

inapplicable to Rock Road and Bridgeton Landfill, as the West Lake Landfill is not a nuclear facility subject to licensing by the nuclear Regulatory Commission."[2]

16.     Plaintiffs expressly contend that no occurrences that form the basis for this suit rise to the level of a nuclear incident. Plaintiffs' claims are freestanding state law claims concerning traditional state regulation and do not implicate the Price-Anderson Act and its textually manifest concerns related to liability limitation and indemnification. This principle was clearly enunciated by the Hon. Neil Gorsuch in the case of *Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088 (10th. Cir. 2015) also known as the Rocky Flats litigation.

17.     Other decisions in the United States District Court, Eastern District of Missouri have determined that the Price Anderson Act does not apply to the same wastes at issue here because the Defendants lack the appropriate federal license or indemnity agreement to trigger the Price Anderson Act.[3]

18.     At the time of the outrageous, reckless, negligent acts that form the basis for this lawsuit occurred, the Price-Anderson Act did not apply because the wastes at issue were not subject to said Act.

19.     Plaintiffs claims do not fall within the Jurisdiction of the Price Anderson Act because the mill tailings that Cotter disposed of and the Landfill Defendants accepted were not at the time subject to the Atomic Energy Act and the Price Anderson Act.[4]

---

[2] Defendants Rock Road Industries and Bridgeton Landfill, LLC's Memorandum in Support of Motion to Dismiss (Doc 15), Adams v. MI Holdings, Inc. Case No. 4:12-cv-00641-JCH
[3] See *Strong v. Republic Servs., Inc.*, 2017 WL 4758958 (E.D. Mo. 2017); see also *Banks* v. *Cotter Corporation*, 2019 WL 1426259.
[4] See Exhibit 1 – Declaration of Richard B. Stewart (April 24, 2018)

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

20.     Plaintiffs claims do not fall within the Jurisdiction of the Price Anderson Act because Cotter's disposal and the Landfill Defendants' acceptance of mill tailings was not undertaken pursuant to an appropriate federal license or indemnity agreement.[5]

21.     The Price-Anderson Act does not apply to the mill tailings wastes at issue in this Second Amended Petition.

## II. THE PARTIES

### Plaintiffs

22.     Plaintiffs Michael Dailey and Robbin Dailey are Missouri citizens who own real property located at 3550 El Ferrol Court, Bridgeton, Missouri (the "Dailey Property"). Plaintiffs purchased their home in 1999. The property is approximately 0.25 acres in St. Louis County adjacent to what is now the Landfill in Bridgeton, Missouri, more fully described as follows: Lot 18 in Subdivision Spanish Village Plat Two. Plaintiffs Michael Dailey and Robbin Dailey first learned that their property was contaminated with radioactive materials in 2016.

23.     As a result of Defendants' acts and omissions, Plaintiffs have sustained significant damages including damages to their property and the loss of use and enjoyment thereof.

### Defendants

24.     In this Petition, the defendants in this lawsuit are categorized into three groups, namely Landfill Owner Defendants, Landfill Operator Defendants (collectively "Landfill Defendants"), and Radioactive Waste Disposer Defendant: [6]

        A.  Landfill Owner Defendants

---

[5] Id.
[6] When this action was initially commenced it also included Radioactive Waste Generator Defendants MI Holdings, Inc. and Mallinckrodt Inc. In Plaintiffs first Amended Complaint, this action was brought against the Radioactive Waste Generator Defendant Mallinckrodt, LLC. Thereafter, Plaintiffs settled with Mallinckrodt, LLC and the claims against them were dismissed on March 20, 2018.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

     i.    Bridgeton Landfill, LLC, which owns the Bridgeton and West Lake Landfills; and

    ii.    Rock Road Industries, Inc., which owned or owns the West Lake Landfill.[7]

B.  Landfill Operator Defendants[8]

    i.    Republic Services, Inc., which owns, oversees, and directs the environmental decisions and conduct of Bridgeton Landfill, LLC, Allied Services, L.L.C., and Rock Road Industries, Inc., and operates the Bridgeton and West Lake Landfills; and

    ii.    Allied Services, L.L.C, which operates Bridgeton and West Lake Landfills.

C.  Radioactive Waste Disposer Defendant

    iii.    Cotter Corporation, which owned and disposed of the hazardous, toxic, carcinogenic, radioactive residue wastes.

25.    Bridgeton Landfill, LLC formerly "Laidlaw Waste Systems" ("Landfill Owner") is a Delaware limited liability company with its principle place of business in the State of Missouri. It continuously and systematically conducts business activities in the State of Missouri.

A.  Upon information and belief, Bridgeton Landfill, LLC owns the Bridgeton Landfill and the West Lake Landfill.

B.  Bridgeton Landfill has continuously and systematically availed itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried there.

C.  This lawsuit arises out of damages that resulted from Bridgeton Landfill's acts and omissions within the State of Missouri. Specifically, since 2008, Bridgeton Landfill has

---

[7] As noted in footnote 1, Rock Road Industries, Inc. was a Missouri corporation at the time this action was commenced.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

owned, operated and maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton Landfill and the West Lake Landfill, which gave rise to the violations of law and damage to property alleged in this Petition.

26.     Rock Road Industries, Inc. ("Road Road") was a Missouri corporation with its principle place of business in St. Louis Missouri at the time this action was commenced. Rock Road was a wholly-owned subsidiary of Republic Services, Inc. that continuously and systematically conducted business in the State of Missouri. After commencement of this action, Rock Road was merged into Bridgeton Landfill, LLC on April 10, 2018.

    A. This lawsuit arises out of damages that resulted from Rock Road Industries, Inc.'s acts and omissions within the State of Missouri. Upon information and belief Rock Road Industries, Inc. owned the West Lake Landfill along with Bridgeton Landfill, LLC. Rock Road Industries maintained daily operational and managerial control over the management and environmental decisions of the West Lake Landfill, decisions which gave rise to the violations of law and damage to property alleged in this Petition

27.     Republic Services, Inc. ("Republic") is a Delaware corporation with its principal place of business in the State of Arizona that carries on continuous and systematic business activities within the State of Missouri.

    A. Republic describes itself as a "leader in the domestic non-hazardous solid waste industry, as measured by revenue as well as a Fortune 500 company, publicly traded on the New York Stock Exchange (NYSE: RSF)."[9] Despite Republic's record of violations and the widespread injuries resulting from Republic's conduct, Republic promises the public that it lives by

---

[9] https://www.republicservices.com/about-us

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

"high environmental and sustainability standards."[10] Republic has engaged in extensive professional public relations efforts to downplay the significance of the problem, and their misleading statements can only be characterized as mere "puffery."

B. Republic's presence in Missouri is immense, servicing more than 300 cities and towns throughout the state, including many in St. Louis County.[11] Republic continuously and systematically avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried there. Republic is responsible for promulgating and enforcing environmental and health and safety policies and procedures to its subsidiaries, which in this case they failed to adequately do.

C. This lawsuit arises out of damages that resulted from Republic's acts and omissions within the State of Missouri. Since 2008, Republic and its subsidiaries have maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton and West Lake Landfills, decisions which gave rise to the violations of law and damage to property alleged in this Petition. Republic did so directly and through its subsidiaries Allied Services, LLC, Bridgeton Landfill LLC, and Rock Road Industries, Inc.

28.    Allied Services, LLC ("Allied"), a Delaware limited liability company with its principal place of business in the state of Arizona, is a wholly-owned subsidiary of Republic Services, Inc., that continuously and systematically conducts business in the State of Missouri under its own name and under the fictitious name "Republic Services of Bridgeton."

A. Allied conducts daily operations of the Bridgeton Landfill and the West Lake Landfill.

---

[10] http://www.republicservices.com/customer-support/facilities
[11] https://www.republicservices.com/locations/missouri

10

Case: 4:17-cv-00024-CDP   Doc. #: 166   Filed: 10/22/19   Page: 17 of 449   PageID #: 2601

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

B.  Allied regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried there.

C.  This lawsuit arises out of damages that resulted from Allied's acts and omissions within the State of Missouri. Since 2008, Allied has maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton and West Lake Landfills, decisions which gave rise to the violations of law and damage to property alleged in this Petition.

D.  Allied has also promulgated environmental and health and safety policies and procedures to its subsidiaries, which in this case they failed to adequately do.

29.   Cotter Corporation ("Cotter") is a Colorado corporation with its principle place of business in Englewood, Colorado, which operates as a subsidiary of General Atomics, Inc., a California corporation.

A.  Cotter continuously and systematically carries on business activities in the State of Missouri in its own name, as well as through its parent company General Atomics, Inc.

B.  This lawsuit arises out of damages that resulted from the Cotter's conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Cotter, which gave rise to the violations of law and damage to property alleged in the Petition.

### III. FACTS

### Radioactive Wastes

30.   Ounce for ounce, radioactive isotopes are the most toxic materials known to man.[12]

---

[12] *Allen v. United States*, 588 F. Supp. 247, 292 (D. Utah 1984), rev'd, 816 F.2d 1417 (10th Cir. 1987). Citing J.C. Giddings, *Chemistry, Man & Environmental Change* 412 (1973).

31.     Radiation is a type of energy transmitted over a distance. Some materials spontaneously emit radiation through a process known as radioactive decay. As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials.

32.     Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other material. When radiation energy interacts with other material, it causes a process called ionization[13] which can damage chemical structures. When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other harms.

33.     People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body. Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin. The material taken in will internally expose the organs and tissues for as long as it remains inside the body.

34.     One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low, the

---

[13] Ionizing radiation is described as follows in the literature: "Ionizing Radiation is a form of radiation that includes alpha particles, beta particles, gamma rays, x-rays, neutrons, high-speed electrons, high-speed protons, and other particles capable of producing ions. Ionizing radiation has enough energy to cause changes in atoms through a process called ionization. Ionization can affect the atoms in living things and depending on the dose and exposure, can pose a serious health risk to humans.  Ionizing radiation has sufficient energy to cause chemical changes in cells, causing damage to tissue and DNA in genes."  https://www.epa.gov/radiation/radiation-health-effects

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

biological effects can still be gravely serious. The second characteristic is that there are latent biological effects of radiation.

35.     The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries. Somatic injuries are damages to the individual exposed. This can be damages to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system, as well as cancers. Illnesses such as cancers may take a number of years to appear.

36.     Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells. As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase. These genetic mutations can be passed down to a person's offspring even generations later. These injuries include birth abnormalities and cancer.

37.     One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment.  As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material. The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate. For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

38.     Radium-226 has a half-life of 1,600 years.  Radium-226 eventually decays to lead- 210 and polonium-210. This means that as the radium-226 decays, it increases the lead-210 and polonium-210 at the Landfill and in the surrounding environment. Furthermore, half of the hazardous, carcinogenic radium-226 currently contaminating the West Lake Landfill will still remain as a

grave problem even after 1,000 years from now if it is not physically removed. This is described in the scientific literature as follows:

> Importantly, because the concentrations of short-lived radionuclides will progressively increase, the radioactivity at the site will likewise increase for the foreseeable future.  For example, according to NRC, if the present day activity of $^{230}$Th is estimated to be 100 times that of $^{226}$Ra, then the alpha activity due to $^{226}$Ra decay will increase fivefold over present levels in 100 years, nine-fold in 200 years, and 35-fold in 1000 years.[14]

## Radioactive Waste in the St. Louis Area

39.     From 1942 to 1957, uranium ore was processed in downtown St. Louis City in association with the Manhattan Project.[15]  Milling is the first step in processing natural Uranium ore and the milling process generates a sandy process waste known as "mill tailings" which contain radioactive decay products. In the late 1940's, the Manhattan Project acquired land near Lambert airport to store the Uranium ore mill tailings wastes from the processing operations in downtown St. Louis. The storage site near the airport is now referred to as the St. Louis Airport Site or SLAPS ("SLAPS"). Radioactive mill tailings wastes accumulated at SLAPS.

40.     In the 1960's, leftover mill tailings (ore residues, and uranium, and radium-bearing process wastes) that had been stored at SLAPS were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"). Mill tailings at the Latty Avenue Site included Uranium.

---

[14] Robert E. Criss, *Risk and Character of Radioactive Waste at the West Lake Landfill 1, Bridgeton, Missouri, Department of Earth and Planetary Sciences, Washington University, St. Louis, MO,* Mar. 14, 2013 (footnotes omitted [hereinafter "Criss (2013)"].

[15] Robert Alvarez, *The West Lake Landfill: A Radioactive Legacy of the Nuclear Arms Race* 8, Nov. 21, 2013 (footnotes and citations omitted) [hereinafter "Alvarez (2013)"]; *see also* Denise DeGarmo, *The Disposal of Radioactive Wastes in the Metropolitan St. Louis Area, The Environmental Health Legacy of the Mallinckrodt Chemical Works* 57, 62, 143 (Edwin Mellen Press 2006) (footnotes omitted) [hereinafter "DeGarmo (2006)"].

14

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

41.     In the late 1960's, Cotter purchased the Uranium mill tailings stored at both SLAPS and at the Latty Avenue Site.

42.     Upon information and belief, as part of the contract between Cotter and the federal government for sale of the radioactive residues, Cotter assumed all liability, including ultimate disposition of the materials.

43.     Cotter did not receive indemnity from the government in connection with this transaction.

44.     Between 1969 and 1973, Cotter stored, processed, and transported the mill tailings at the SLAPS and Latty Avenue sites.

45.     On or about 1973, Cotter mixed uranium mill tailings wastes with soil and upon information and belief they marketed the mill tailings as daily cover for landfill operations. Daily cover is the layer of soil that is laid on top of the day's deposition of waste at an operational landfill.

46.     On or about 1973, Cotter caused to be dumped, and the Landfill Defendants accepted, over 46,000 tons of radioactive mill tailings wastes without any permit whatsoever.

47.     Upon information and belief, despite knowing that Cotter was trying to dispose of dangerous radioactive materials for which the Landfill was not permitted to accept, the radioactive mill tailings waste was used by the Landfill Defendants as daily cover for the Landfill. The Landfill Defendants permitted the dumping of radioactive mill tailings wastes into the Landfill and intentionally spread these wastes over a large area.

48.     The scientific literature summarizes the dumping as follows:

> In 1973, 8700 tons of radionuclide-bearing "leached barium sulfate" was allegedly dumped in an unlined Landfill in Bridgeton, MO that was not licensed to receive radwaste. This report finds that 1) the chemical and physical character of the radioactive materials has not been adequately characterized, and barium sulfate is probably not a major constituent; 2) the alpha and beta emissions of this material will increase 10x to 100x over present levels, reaching maximum

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

> activity in about 9000 years; 3) the Landfill has no protective barriers and a proximal subsurface fire; 4) the site has several hydrologic and geologic risk factors that magnify its unsatisfactory location in a populated area; 5) nuclear material has been in contact with percolating waters and with a fluctuating water table; 6) groundwaters contaminated with radionuclides have migrated far from the original location of disposal; 7) background levels of radiation have been overstated, while other risks have been underestimated ….[16]

## **The Landfill**

49.     The West Lake Landfill is situated on about 200 acres at 13570 St. Charles Rock Road, in the City of Bridgeton. The Missouri River lies about one and one-half miles to the north and west of the Landfill. A shallow aquifer lies beneath the West Lake Landfill and surrounding neighborhoods.

50.     Originally used for agriculture, the land became a limestone quarrying and crushing operation in 1939.

51.     Beginning in the early 1950s, portions of the quarried areas and adjacent areas were used to dispose of municipal refuse, chemical wastes, industrial solid wastes, and construction/demolition debris.

52.     The Landfill was never designed to be an adequate storage or disposal site for radioactive materials, nor was it ever licensed as such. Despite the Landfill not being properly designed to receive radioactive materials, the Landfill Defendants accepted hazardous, toxic, carcinogenic, radioactive mill tailings wastes and spread them around the Landfill.

53.     The inadequacies of the Landfill itself are described in the scientific literature as follows:

> Although the West Lake Landfill contains significant amounts of long-lived radiotoxic wastes such as those contained in federally licensed commercial radioactive waste Landfills, it meets virtually

---

[16] Criss (2013) at 1.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

none of legal requirements governing shallow radioactive waste disposal to prevent off-site migration.[17]

54.   The data collected on and around the Landfill documents radioactive contamination of soil, water, and air.

> Onsite 226Ra concentrations in soils as high as 21,000 pCi/g were measured, compared to estimated background levels of 2 pCi/g. Elevated radium contents above the EPA's MCL of 5 pCi/l are also widespread in both the alluvial and bedrock aquifer within about 1500 feet of Areas 1 and Area 2. Airborne surveys established that external radiation levels exceeding 100µR/hr, while distal samples were <10 µR/hr. Levels recorded one meter above Area 2 were as high as 3-4 mR/hr, or as much as 400x higher than background. NRC reports that the subsequent addition of soil cover and construction debris to Areas 1 and 2 diminished these levels several fold.[18]

55.   Other toxic and hazardous materials are expected to have been released via the air pathway, in addition to the radioactive materials. This phenomenon contributes to the damages complained of herein.

56.   The Landfill stopped accepting waste on December 31, 2004 and is now used as a transfer station for municipal wastes.

57.   The Landfill waste mass encompasses approximately 52 acres with approximately 240 feet below the ground's surface and a total waste thickness of 320 feet.

### Radioactive Mill Tailing Wastes at the West Lake Landfill

58.   Defendants caused or contributed to the improper handling, storage, and disposal of an estimated 500,000 cubic yards of radioactive mill tailings wastes in the Landfill. As a result, about

---

[17] Marco Kaltofen et al, Tracking legacy radionuclides in St. Louis, Missouri, via unsupported[210]Pb at 104, *Journal of Environmental Radioactivity,* Vol. 153 (2016) [hereinafter "Kaltofen (2016)"].

[18] Criss (2013) at 2 (citations omitted)

15 acres of the West Lake Landfill are filled with radioactive mill tailings waste at depths up to 20 feet.

59.     Cotter failed to obtain a license from any governmental authority to transport radioactive mill tailings wastes to the West Lake Landfill. The West Lake Landfill failed to obtain any governmental authority to receive or possess radioactive mill tailings wastes from Cotter. The West Lake Landfill was not sited, designed, nor operated as a land disposal facility suitable for radioactive waste in accordance with any governmental authority. The Landfill is not and has never been licensed by the NRC as a land disposal site or to receive or possess radioactive material. (These statements are provided for informational purposes only, as Plaintiffs are making no claims under the laws of the United States).

60.     Upon information and belief, Defendants who operated the Landfill used the radioactive mill tailings waste mixed with radioactive soil as daily cover in its Landfill operations thereby spreading the waste throughout the Landfill.

61.     Defendants did not take necessary safety precautions when disposing of and handling the radioactive mill tailings wastes and radioactive soil to prevent off-site contamination.

62.     The staff of the Landfill was neither qualified, nor trained to handle or dispose of radioactive wastes in a safe manner.

63.     The Landfill was not intended, nor designed to contain mill tailing radioactive wastes. In reality, the Landfill is a chaotic pile of debris covered by unmanaged "natural vegetation, surrounded by a fence with radioactive [warning] signs." Given the significant design and operations deficiencies, experts contend that the Landfill is even unsuitable for ordinary domestic waste.[19]

---

[19] Criss (2013) at 4

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## The Fire

64.     The Landfill has experienced problems with subsurface fires throughout its operational history. Despite having past experiences with subsurface fires, sufficient precautionary measures were not implemented to prevent future fires or to protect the radiologically contaminated areas from being affected.

65.     Upon information and belief, Defendants discovered high temperatures in several monitoring wells. Upon information and belief, Defendants continued with aggressive gas extraction methods exacerbating the underground fire and enabling it to spread uncontrolled. Defendants finally reported to authorities that the Landfill was experiencing high temperatures on extraction wells evidencing a subsurface smoldering event.

66.     Since then, the smoldering has intensified into a spreading subsurface fire evidenced by surface soil settlement, increased odors, elevated hydrogen levels, and high temperatures. High temperatures and smoke caused by the fire could mobilize radionuclides into the air and ultimately into soil, surface water, ground water.

67.     Due to the fact that the radioactive material was used as daily cover around the landfill, it is more likely than not that some fire has already consumed radioactive material.  If there is sufficient contact with radioactive material, hot gases from the fire will likely cause fissures in the overburden material. These fissures will allow additional quantities of radioactive radon gas to escape the Landfill and become deposited as lead- 210 onto Plaintiffs' property as it decays.

68.     A subsurface fire in the radioactively contaminated areas would be expected to create increased pressure conditions within the Landfill and force out entrained radioactive gases, including radon which is extremely toxic to breathe. A subsurface fire may be present in the radioactively contaminated areas for a long period of time before it is detected, because the only

19

apparent means to detect a subsurface smoldering event after closure is through annual visual inspections.

69.    Another effect of a subsurface fire or smoldering event would be increased leachate production which has been observed in the Bridgeton Landfill from condensation of large amounts of steam.[20]

70.    The literature describes the risk of the Landfill underground fire as follows:

> An underground fire is currently ongoing in the municipal Landfill (OU-2) that is immediately south of Area 1 of OU-1. Such fires can burn for years, creating high underground temperatures, and releasing carbon monoxide, dioxins, VOCs and other noxious chemicals, and particulates into air. Numerous people who reside near the Landfill complained about odor and health problems at the January 17, 2013 public meeting in Bridgeton. Risks for adjacent, radionuclide-bearing OU-1 include but are not restricted to the following 1) fire can spread from OU-2 into OU-1, particularly because demolition and construction Landfills are known to have much higher risk than municipal Landfills; 2: subterranean fires can result in Landfills collapse, landslides and slumping, endangering personnel and exposing dangerous materials to the surface; 3) Landfill fires have high explosion risk because of methane, gas cylinders, and drums; 4) high temperatures and smoke could mobilize radionuclides into surface water, ground water and air.[21]

71.    There are at least two human exposure risk pathways that would exist from a subsurface smoldering event or subsurface fire reaching the radioactive materials. The first is the risk of people being subjected to increased air exposures to contaminants such as breathing in radon gas, radon-226. As airborne concentrations of radon gas increase, so would the risk to the neighboring population of breathing in radon gas and developing injuries such as lung cancers. Additionally, as radon gas decays it will become deposited onto people's property and in their homes as

---

[20] Leachate means liquid that has percolated through solid waste or has come in contact with solid waste and has extracted, dissolved or suspended materials from it. <u>Mo. Code Regs. Ann. tit. 10, § 80-2.010</u>.
[21] Criss (2013) at 4-5 (citations omitted).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

radioactive lead-210 and polonium-210 which would subject people to increased risk of internal exposure to radioactive materials. The second pathway is increased leachate production that could further move contaminants and radioactive materials into the groundwater.

72.     Despite these risks, the Landfill Defendants have allowed the subsurface fire to spread uncontrolled.

73.     From the start of the subsurface smoldering event and throughout the subsequent fire, Plaintiffs have regularly encountered noxious, putrid, and offensive odors on their property coming from the Landfill, which diminishes quality of life, results in lost property value and is an absolute nuisance.

### The Spread of Defendants Radioactive Wastes to Off-Site Businesses and Homes

74.     As stated herein, Defendants have violated numerous Missouri standards for protection against radiation. Defendants' negligent handling, storage, and disposal of radioactive wastes and radioactive soil as daily cover caused dangerous contaminants to be deposited in several areas throughout the Landfill site and to be highly susceptible to off-site migration of radioactive materials including radon gas, radioactive particles, and radioactively-contaminated groundwater

75.     An example of water impacts of the Landfill will put this in perspective. Every day, the Landfill generates about 150,000 gallons of contaminated hazardous liquid leachate waste. In a doomed attempt to capture that waste, the Landfill Defendants installed a leachate collection system.  But the leachate collection system itself was inadequate and has resulted in spills, releases, and leaks that have contributed to the groundwater and surface water contamination in the area.

76.     Radiological and organic contamination was also detected in trees adjacent to and off-site from the Landfill. The presence of radioactive contamination in the trees resulted from the uptake of off-site contamination from the Landfill.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

77.    Recent studies of the Landfill area document radioactive radon gas emissions from the Landfill are falling out and contaminating soil. Kaltofen reported the following:

> Levels of $^{210}$Pb in key samples were well above background activities, and were significantly out of secular equilibrium with other members of the uranium decay chain. This is strong evidence that the $^{210}$Pb originated by decay of short-lived, fugitive radon gas that escaped the Landfill.[22]

78.    Importantly, wherever lead-210 occurs, it will decay to polonium-210, creating an additional dose, as a matter of the laws of physics.

79.    In addition, recent studies of surface water runoff from the Landfill, particularly after heavy rains, document radioactive contaminated surface water runoff to off-site properties.[23]

80.    Critical to the legacy of radioactive particles contaminating the homes and communities surrounding the Landfill is that the radioactive contamination has gone off-site.

81.    Landfill Defendants have a long and consistent history of consciously disregarding the regulations for the control of radiation in Missouri by:

A.  failing to make such surveys as are reasonably necessary to comply with the regulations;

B.  failing to post adequate warning signs as required by the regulations;

C.  failing to obtain a specific license for the handling of radioactive materials and wastes;

D.  failing to adequately monitor or control its offsite effluent by air and water;

E.  failing to provide dosimetry to workers and more than occasional visits by members of the general public to the site;

---

[22] Kaltofen (2016) at 110.
[23] EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com/2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

F.  failing to have an adequate or proper radiation protection program for its workers, despite knowledge of the significant potential for those workers to be exposed to material emitting gamma, beta, alpha radiation;

G.  allowing off-site migration of the radioactive materials, resulting in a release to an unrestricted area;

H.  allowing excessive radon emanation from the landfill;

I.  allowing unmonitored offsite migration of contaminated surface waters without a specific license;

J.  failing to maintain adequate waste exposure records and reports;

K.  failing retain and employ qualified radiation protection experts;

L.  failing to supply former workers with a summary of their radiation dose;

M.  failing to see that all work with radioactive materials is carried under conditions which will minimize the possibility of spread of radioactive materials;

N.  failing to monitor the workplace and prevent worker or visitors' clothing from becoming contaminated with radioactive materials;

O.  failing to require third parties who were disposing of radioactive material at the site to obtain a specific license;

P.  allowing the disposal of radioactive waste materials by dumping or burial at a site not approved by the Department of Health;

Q.  failing to have an accurate accounting for all radioactive materials at the site; and

R.  failing to have records which show the amount of radioactive material received, transferred, decayed in storage, disposed of, and other information as may be necessary

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

to account for the difference between the amount of radioactive material received or produced and the amount on hand.

82.    Defendants essentially violated every Missouri regulation related to radiation exposure.

83.    Due to risk of gamma radiation exposure, governmental authorities have directed Republic to cover portions of the landfill with six inches of fill to protect workers and innocent members of the general public who will be exposed to gamma radiation if they are in that area.

84.    This zone of excessive gamma radiation was identified in 1978 during a surveillance flight by the NRC.  Despite being informed of this zone of excessive gamma radiation, the Landfill Defendants did nothing.

85.    The only time Defendants takes any action to remediate or protect workers or the public from radioactive wastes is when ordered to do so by a governmental body.

86.    A recent study of the wastes that have come from the Landfill and migrated off-site to contaminate local businesses and homes stated the following:

> Analysis of 287 soil, sediment and house dust samples collected in a 200km2 zone in northern St. Louis County, Missouri, establish that off-site migration of radiological contaminants from Manhattan Project-era uranium processing wastes has occurred in this populated area.

### Concealment of Facts Related to Risk

87.    Republic and other Defendants through their silence have reassured government officials, the public and Plaintiffs that the Landfill has not contaminated nearby properties. In particular, Republic and its representatives, as well as its professional public relations firm(s), with their puff talk that they really care have made misrepresentations that were meant to assure Plaintiffs that:

A. Any suspicion of off-site contamination from the Landfill are merely rumors "being spread by alarmists."[24]

B. Its activities "should reassure the community that they are safe from and not being exposed to any risk from groundwater beneath West Lake Landfill."[25]

C. The Landfill's neighbors, including the Plaintiffs "can rest assured that they are safe."[26]

D. The fire and Landfill are both at a "managed state."[27]

E. The waste at the Landfill presents no danger to public health.[28]

88.    Republic and other Defendants engaged in extensive professional public relations efforts to downplay the significance of the problem and the dangers associated with radioactive wastes sitting in a landfill which experts indicate is not even suitable for household garbage, as it contains no liner. Defendants misrepresentations can only be characterized as mere "puffery".

**Defendants' Radioactive Particles Contaminated the Plaintiffs Property**

89.    The Dailey Property is contaminated by radioactive material.

90.    Samples taken on and around the Dailey Property confirm an elevated presence of radioactive particles.

91.    Dust samples from inside the Dailey Home contain decay products of radioactive isotopes U-238, including Th-230, Ra-226 and Pb-210, which match the *fingerprint* (or profile) of the hazardous, toxic, carcinogenic radioactive wastes generated from the processing of uranium ore in downtown St. Louis which was subsequently stored at SLAPS and Latty Avenue before being

---

[24] Jacob Barker, Radium above federal guidelines in groundwater near West Lake at 2, *St. Louis Today*, Dec. 17, 2014.
[25] *Id*.
[26] Jacob Barker, Frustration with EPA handling of West Lake growing at 5, *St. Louis Today*, Jan. 3, 2015.
[27] *Frustration with EPA handling of West Lake growing*, Jacob Barker, St. Louis Today, January 3, 2015 at p. 5.
[28] *Id*.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

disposed of in the Landfill. These dusts show levels of radioactive Th-230 at least two hundred times above background.

92.     The Dailey Property neighbors the Landfill. This proximity puts the Plaintiffs' Property in the direct path of radioactive and other hazardous air emissions, radioactive particles distributed by the wind blowing such contamination off the site in dirt and dust, radon gas, and frequent offensive odors; all of which emanate from the Landfill.

93.     The Kaltofen (2016) published scientific paper identified "strong evidence of short lived fugitive radon gas that escaped from the landfill."[29] These air emissions fall out to soil and dust as $^{210}Pb$, a highly radioactive isotope.

94.     It is also clear that radioactive material will be distributed from the Landfill "by surface water and winds."[21] The surface water runoff threat is heightened during periods of high rainfall and flooding and has been documented.[30]

95.     Frequent offensive odors from the Landfill are experienced by Plaintiffs.

96.     The radioactive wastes, which are hazardous, toxic, carcinogenic, that have polluted the Dailey Property and continue to threaten, especially during the proposed cleanup, to further pollute the Dailey Property match the waste fingerprint (or profile) of the hazardous, toxic, carcinogenic radioactive mill tailings wastes dumped in the Landfill.

97.     This radioactive contamination on the Dailey Property migrated from the Landfill. The contamination was caused by the Defendants' improper handling, storage, and disposal of radioactive materials.

---

[29] Kaltofen (2016) at 111.
[30] EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com/2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

98.     Radioactive contamination of the Dailey Property and frequent offensive odors render the Dailey Property unfit for normal use and enjoyment, and destroys its fair market value.

99.     As a direct and proximate result of Defendants' conduct, Plaintiffs are currently being subjected to radioactive waste contamination and will suffer irreparable harm if an injunction is not granted requiring Defendants conduct a total and complete cleanup of the contamination on the Dailey Property.

## COUNT I - TRESPASS

100.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

101.    Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 19 above.

102.    Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

103.    Landfill Defendants store and/or transport radioactive materials and other toxic and hazardous wastes on their property.

104.    Cotter purchased massive quantities of highly toxic radioactive wastes and failed to properly dispose of these wastes. Cotter intentionally, maliciously, and wantonly disposed of radioactive wastes at a facility unfit to handle such wastes.

105.    Landfill Defendants have used these radioactive materials in a manner that is unreasonable, unlawful, malicious, and wanton, resulting in an invasion of Plaintiffs' property.

106.    Landfill Defendants have caused these radioactive materials to migrate from their property and contaminate Plaintiffs' property.

27

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

107. Landfill Defendants willfully, wantonly, and maliciously caused the emission of radon gas, and radioactive particles onto and around Plaintiffs' property through their Landfill operations.

108. It was reasonably foreseeable that Defendants' actions would and will continue to contaminate Plaintiffs' property with radioactive particles and other hazardous wastes.

109. The migration of radon gas and radioactive particles from Landfill Defendants' property onto Plaintiffs' property has resulted and continues to result in direct physical interference with Plaintiffs' property. Such contamination is incompatible with the normal use and enjoyment of Plaintiffs' Property.

110. Plaintiffs did not give Defendants permission or consent to interfere with their property in this manner. Through Defendants' actions and inactions, they are illegally and improperly using Plaintiffs' property to store hazardous, toxic, carcinogenic, radioactive wastes.

111. The contamination of Plaintiffs' property with radon gas and radioactive particles, and other hazardous wastes, has resulted in significant damage to the property.

112. As a direct and proximate cause of this continuing and recurring physical interference, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT II – PERMANENT NUISANCE

113. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

114. Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 19 above.

115. Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

28

116.    Defendants unreasonably and unlawfully stored and used radioactive materials at the Landfill, which adjoins Plaintiffs' property.

117.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

118.    The Landfill and the radioactive waste that the Landfill contains are a permanent construction that is necessarily injurious to Plaintiffs as installed. It is not practical or possible to abate the presence of the Landfill or the radioactive waste stored there.

119.    Operating an unlicensed radioactive hazardous waste dump in a populated area is a nuisance *per se.*

120.    Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property. Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

121.    Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

122.    Landfill Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of noxious, offensive odors and various hazardous substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.

123.    Landfill Defendants' continuous and unrelenting noxious odors invading Plaintiffs' property causes inconvenience to Plaintiffs and prevents them from using the property.

124.   As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered permanent injury, including decreased property value.

## COUNT III – TEMPORARY NUISANCE

125.   Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

126.   Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 19 above.

127.   Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

128.   Defendants unreasonably and unlawfully store and use radioactive materials at the Landfill, which adjoins Plaintiffs' property.

129.   The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

130.   The Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property. Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

131.   Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

132.   Landfill Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of noxious, offensive odors and various hazardous

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.

133.    Landfill Defendants' use of the Landfill causes frequent and unrelenting noxious odors to invade Plaintiffs' property and prevents Plaintiffs from using their property.

134.    As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT IV – NEGLIGENCE

135.    Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

136.    Radioactive isotopes are known human carcinogens and are among the most toxic materials known to man. When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years. Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind. Exposures to radioactive wastes should be as low as is reasonably achievable.

137.    Knowing of the grave dangers posed by these wastes, Cotter owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant injury to property and persons.

138.    Cotter was negligent in failing to ensure that the radioactive wastes were safely disposed of at an appropriate facility. Cotter negligently disposed of these radioactive wastes at a landfill located in a residential area that was not capable of safely and properly disposing of radioactive materials. The Landfill was not properly licensed, nor configured, nor staffed to handle the disposal of radioactive wastes. Upon information and belief, Cotter negligently encouraged the Landfill

31

operators to use the radioactive mill tailings wastes which were mixed with contaminated soil as daily cover.

139.    As a direct and proximate result of Cotter's failure to ensure that the radioactive wastes were properly disposed of at an appropriate facility, Plaintiffs suffered and continue to suffer injury to due to the radioactive contamination of their property, including diminished property value.

140.    The Landfill Defendants owed a duty to the Plaintiffs to operate the Landfill in a safe, legal, and reasonable manner so as not to contaminate and interfere with surrounding properties. The Landfill Defendants owed a duty not to accept radioactive wastes for which they were not licensed or qualified to handle. After accepting radioactive wastes, the Landfill Defendants had a duty to safely handle, store and/or dispose of the radioactive wastes in order to prevent significant injury to property and persons.

141.    Landfill Defendants were negligent in the construction, design, operating and maintenance of the Landfill.

142.    Landfill Defendants negligently accepted hazardous, toxic, carcinogenic radioactive mill tailings when the Landfill was not designed, nor staffed to handle the disposal of radioactive wastes. The negligent design and maintenance of the Landfill by Landfill Defendants failed to prevent the release of radon gas and radioactive particles and hazardous and toxic wastes onto surrounding properties in excess of guidelines.

143.    Landfill Defendants were negligent in accepting hazardous, toxic, carcinogenic radioactive mill tailings at a landfill located in a residential area that was not capable of safely and properly disposing of radioactive materials. The Landfill was not properly licensed, nor configured, nor staffed to handle the disposal of radioactive wastes.  Upon information and belief Defendants used the radioactive materials which were mixed with contaminated soil as daily cover.

144.    Upon information and belief, Landfill Defendants' negligent training of personnel handling radioactive, toxic, and hazardous materials on site was a direct and proximate cause of damage to Plaintiffs' property.

145.    Landfill Defendants' negligent use of radioactive wastes mixed with radioactive soil as daily cover spread contamination into a broader area and prevented Defendants and regulators from knowing the location of these dangerous wastes. The negligent use of radioactive materials as daily cover in an unlined Landfill resulted in contamination of the groundwater underlying the Landfill and surrounding properties.

146.    Landfill Defendants were negligent in failing to prevent the subsurface fire. Defendants should have implemented adequate practices with respect to gas extraction to avoid subsurface fires after they initially dealt with problems with smoldering events and increased subsurface temperatures in the 1990's. The subsurface fire along with the resulting noxious odors and increased risk of significant radon gas emissions are a direct and proximate result of the Landfill Defendants' negligence in the operation of the Landfill. Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

147.    Defendants' collective negligence throughout the history of the mishandling and improper dumping of radioactive wastes in the Landfill has resulted in repeated releases of radon gas and radioactive particles and other hazardous materials as well as offensive odors onto Plaintiffs' property, in disregard of applicable regulations and property rights.

148.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors. Defendant's negligence diminished Plaintiffs' property value.

149.    The injuries sustained by Plaintiffs are of the kind that do not occur without negligence.

33

150.    Plaintiffs' injuries were the result of wastes disposed of and controlled by Defendants.

151.    Defendants' negligent acts and omissions were a direct and proximate cause of Plaintiffs' injuries. Plaintiffs are entitled to recover damages for damage to property and/or loss of use of property.

152.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

## COUNT V – NEGLIGENCE PER SE

153.    Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

154.    Cotter violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, and the Missouri Hazardous Waste Management regulations, 10 C.S.R. 25-5.262, both of which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

155.    Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation and Hazardous Waste Management were meant to protect.

156.    The contamination of Plaintiffs' property is the kind of injury that the regulations for protection against ionizing radiation were designed to prevent.

157.    Cotter's violations of the regulations for Protection against Ionizing Radiation and Hazardous Waste Management were the proximate cause of Plaintiffs' injuries.

158.    The Landfill Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, Missouri Solid Waste Management Law and Regulations, 10 C.S.R. 80-2.020(1)(F), 80-3.010(3)(A)(2), 80-3.010(3)(B)(1), 80-3.010(8)(A), 80-3.010(9)(C)(2), 80-3.010(13)(C), 80-3.010(14)(C), 80-3.010(19)(A), 10 CSR 80-3.010(19)(C)(7); Mo. Rev. Stat. §§ 260.210.1(4), 260.380(1); Missouri Clean Water Act, Mo. Rev. State. §

34

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

644.051.1, and Missouri Air Conservation regulations, 10 C.S.R. 10-6.165, all of which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

159.    Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were intended to protect.

160.    The contamination of Plaintiffs' property is the kind of injury that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, Missouri Hazardous Waste Management Law, and Missouri Air Conservation regulations were designed to prevent.

161.    The Landfill Defendants' violations of Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were the proximate cause of Plaintiffs' injuries.

162.    Defendants' collective negligence throughout the history of the mishandling and improper dumping hazardous, toxic, carcinogenic, radioactive wastes in the Landfill area has resulted in repeated releases of radon gas and radioactive particles and other hazardous materials as well as offensive odors onto Plaintiffs' property in violation of applicable regulations and disregard for property rights.

163.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors. Defendant's negligence diminished Plaintiffs' property value.

164.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

## COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY

165.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

166.    Defendants engaged in the abnormally dangerous activity of handling, storing, and/or disposing of radioactive waste.

167.    By handling, storing, and/or disposing of radioactive waste, Defendants have created and continue to create a high degree of risk of harm to Plaintiffs' property.

168.    Defendants have intentionally failed to eliminate the risk of harm caused by their handling, storing, and/or disposing of radioactive waste.

169.    As a direct result of Defendants' abnormally dangerous activities, Plaintiffs' property was contaminated with radioactive materials and they suffered and continue to suffer injury, including diminished property value. Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

170.    Plaintiffs' injuries are of the kinds that result from the dangerous nature of handling, storing, and/or disposing of radioactive waste.

171.    The injuries that Defendants' handling, storing, and/or disposing of radioactive waste have caused Plaintiffs to suffer, drastically outweigh the value of the Landfill.

172.    Accordingly, Defendants are jointly and severally liable for any and all damages Plaintiffs have sustained as a result of their strict liability for handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental or consequential damages.

## COUNT VII – INJUNCTIVE RELIEF

173.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

174.    Defendants have tortiously contaminated Plaintiffs' property with hazardous, toxic, carcinogenic, radioactive wastes.

175.    The Defendants' tortious acts threaten the safety and normal use and enjoyment of the Plaintiffs' property.

176.    The radioactive contamination of Plaintiffs' property has caused a significant increased risk to Plaintiffs, and therefore Plaintiffs are in need of a thorough scientific evaluation of the radioactive contaminant levels throughout their Property.

177.    The need for such an evaluation is a direct consequence of the Defendants' tortious conduct, and does not arise from the innocent conduct of the homeowners.

178.    Therefore, Plaintiffs seek injunctive and equitable relief to require the Defendants to conduct the necessary scientific evaluation of the Dailey Property, consistent with contemporary scientific principles. Plaintiffs seek injunctive and equitable relief to require the Defendants to respond to the consequences of this tortious contamination by providing the necessary medical monitoring in the form of environmental testing, clean-up, and medical tests as indicated by the results of the scientific evaluation.

179.    Plaintiffs seek this injunctive and equitable relief either in the form of an injunction requiring the Defendants to conduct the necessary monitoring themselves, or in the form of a court-ordered and court-supervised fund (with a court-appointed trustee if the court deems that appropriate) to provide for the necessary monitoring.

180.    Such injunctive and equitable relief will decrease the radioactive contamination risks of Plaintiffs' Property, decrease the interference with the use and enjoyment of said property, and further mitigate Plaintiffs' damages.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## COUNT XIII – PUNITIVE DAMAGES

181.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

182.    Defendants committed one or more of the willful, wanton, malicious, reckless, and outrageous acts more fully set forth above which individually or cumulatively justify the award of punitive damages in this matter.

183.    Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as detailed above, created a high degree of probability of injury to Plaintiffs.

184.    The willful, wanton, malicious, reckless, and outrageous acts of Defendants, as detailed above, evidence Defendants' complete indifference to and/or conscious disregard for the safety of Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, as to each Count, and all Counts, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants Bridgeton Landfill, LLC, Rock Road Industries, Inc, Republic Services, Inc., Allied Services, L.L.C., and Cotter Corporation, as well as awarding the following to Plaintiffs and against Defendants:

A. an award of actual, general, special, incidental, statutory, compensatory and consequential damages in an amount to be proven at trial, including compensatory damages for the loss and use of enjoyment of Plaintiffs' property; annoyance and discomfort; damage to Plaintiffs' personal property; the diminution in the market value of Plaintiffs' property; as well as the costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation;

38

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

B. an award of double damages for malicious trespass as provided for under <u>Mo. Rev. Stat. § 537.330</u>;

C. an award of punitive and exemplary damages as fair and reasonable in an amount sufficient to punish Defendants and to deter similar conduct in the future;

D. costs and attorney fees;

E. interest on the above amounts as allowed by law, including but not limited to pre- and post-judgement interest;

F. for appropriate injunctive and equitable relief, including medical monitoring; and

G. for any further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Stuart H. Smith*
Stuart H. Smith (LSBA 17805), *Pro Hac Vice*
Barry J. Cooper, Jr. (LSBA 27202), *Pro Hac Vice*
Celeste Brustowicz (LSBA 16835), *Pro Hac Vice*
Victor T. Cobb (LSBA 36830), *Pro Hac Vice*
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, Louisiana 70130
Phone: 504-399-0009
Facsimile: 504-291-1352
E-mail: ssmith@sch-llc.com
        bcooper@sch-llc.com
        cbrustowicz@sch-llc.com
        vcobb@sch-llc.com
*ATTORNEYS FOR PLAINTIFFS,*
*MICHAEL AND ROBBIN DAILEY*

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ *Stuart H. Smith*
Stuart H. Smith (LSBA 17805)

4840-7843-1124, v. 4

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

MICHAEL DAILEY, et al.                    )
                                          )
                                          )
        Plaintiffs,                       )
                                          )    Case No.  4:17-cv-00024-CDP
vs.                                       )
                                          )
BRIDGETON LANDFILL, LLC, et al.           )
                                          )
                                          )
        Defendants.                       )

## ANSWER OF SEPARATE DEFENDANT ALLIED SERVICES, LLC TO PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Allied Services, LLC ("Allied"), for its Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint ("Complaint"), states as follows:

1.      Allied denies the allegations contained in paragraph 1 of Plaintiffs' Second Amended Complaint.

2.      Allied denies the allegations contained in paragraph 2 of Plaintiffs' Second Amended Complaint.

3.      Allied denies the allegations contained in paragraph 3 of Plaintiffs' Second Amended Complaint.

4.      Allied denies the allegations contained in paragraph 4 of Plaintiffs' Second Amended Complaint.

5.      Allied denies the allegations contained in paragraph 5 of Plaintiffs' Second Amended Complaint.

6.      Allied states that paragraph 6 of Plaintiffs' Second Amended Complaint pleads no facts and instead makes assertions based on unsupported theories and legal conclusions and,

therefore, does not require a response.  To the extent the Court deems a response to paragraph 6 necessary, Allied denies the allegations contained therein.

7.      Allied denies the allegations contained in paragraph 7 of Plaintiffs' Second Amended Complaint.

8.      Allied denies the allegations contained in paragraph 8 of Plaintiffs' Second Amended Complaint.

9.      Allied moves to strike Paragraph 9 of Plaintiffs' Second Amended Complaint because according to Plaintiffs it is "informational only" and therefore not part of its Second Amended Complaint.  Further answering Paragraph 9 Allied denies the allegations contained in paragraph 9 of Plaintiffs' Second Amended Complaint.

## JURISDICTION, AUTHORITY, AND VENUE

10.      In response to paragraph 10 of Plaintiffs' Second Amended Complaint, Allied denies that the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County has jurisdiction and authority over the claims made by Plaintiffs.  pursuant to the Price-Anderson Act.  Allied denies any jurisdiction over "state tort law claims" because any such purported claim is preempted by the Price-Anderson Act.   Allied denies that Plaintiffs have properly pleaded venue for this Court.

11.      Answering Paragraph 11 Allied admits that as of the dates this case was originally filed that diversity jurisdiction did not exist however Allied denies that this Court is without subject matter jurisdiction.  Allied denies each fact not specifically admitted.

12.      Answering paragraph 12 Allied denies that venue is proper in the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County.  Allied denies that Plaintiffs have adequately pleaded jurisdiction in this Court.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

13.     Allied denies the statement in Paragraph 13.  Whether or not Plaintiffs voluntarily classify their causes of action as federal ones, their causes of action fit squarely in the framework of the Price-Anderson Act ("PAA" or "the Act"), 42 U.S.C. § 2011 *et seq.*  Artful pleading cannot remedy the fact that Plaintiffs may sue "under the PAA or not at all."  *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).

14.     Answering Paragraph 14 Allied denies the assertion of Paragraph 14 that Plaintiffs' claims do not fall within the scope of the Price Anderson Act.

A.     Whether or not the Landfill is a licensed nuclear facility is irrelevant to whether the Price Anderson Act applies.  Upon its review of cases from around the country, the court in *Estate of Ware ex rel. Boyer v. Hospital of University of Pennsylvania*, expressly rejected the view that a public liability claim under the PAA is "limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities."  73 F. Supp. 3d 530 (E.D. Pa. 2014); *see, also, Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503-04 (10th Cir. 1997) ("Congress intended to expand federal control over safety and liability issues involving the nuclear industry," and the PAA created "a federal forum for any tort claim even remotely involving atomic energy production"); *Cotromano*, 7 F. Supp. 3d at 1257–58 (application of PAA is not limited to licensed activities).

B.     Whether or not Defendants received a license to possess, transport, or dispose of any radioactive wastes on or in the Landfill is irrelevant to whether the Price Anderson Act applies.  As noted above, a license is not required for the Price Anderson Act to apply.  Further, the entity that deposited the RIM at the West Lake Landfill—Cotter Corporation—did, in fact, hold a source material license

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

issued by the AEC, which authorized it to possess an unlimited amount of

uranium from December 3, 1969 to December 31, 1974.[1]

C.     Whether or not Defendants entered into an indemnification agreement with the

United States government under 42 U.S.C. § 2210 is irrelevant to whether the

Price Anderson Act applies.  The Act provides that a "person indemnified" by the

licensee and the federal government is "the person with whom an indemnity

agreement is executed or who is required to maintain a financial protection, **and**

**any other person who may be liable for public liability**."  42 U.S.C. § 2014(t)

(emphasis added).  Federal courts have held the Act's plain meaning indicates the

PAA is not limited to parties to indemnification agreements.  *See, e.g., Acuna v.*

*Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[O]ne purpose behind

the 1988 amendments was to expand the scope of federal jurisdiction beyond

actions arising from 'extraordinary nuclear occurrences' only."); *Estate of Ware v.*

*Hosp. of the Univ. of Pa.*, 73 F. Supp. 3d 519, 530–31 (E.D. Pa. 2014) (adopting

analysis of courts "which have concluded that possession of…an indemnification

agreement is unrelated to establishing jurisdiction under PAA"); *Cotromano v.*

*United Techs. Corp.*, 7 F. Supp. 3d 1253, 1259 (S.D. Fla. 2014) ("Whether or not

Defendants have indemnification agreements with the federal government is not

dispositive of the applicability of Price-Anderson");  *Carey v. Kerr-McGee Chem.*

*Corp.*, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999) ("there can be an [extraordinary

nuclear occurrence] to which no indemnity agreement applies.").

15.    Allied denies the allegations of paragraph 15 of Plaintiffs' Second Amended

Complaint.  The statement quoted from Defendants Rock Road and Bridgeton's Memorandum in

---

[1] Source Material License No. SUB-1022 is attached as Exhibit 1.

Support of Motion to Dismiss (the "Memorandum") in *Adams v. MI Holdings, Inc.* (Eastern

District of Missouri Case No. 4:12-cv-00641) (Doc. No. 15), are taken out of context and are

distinguishable. The *Adams* Complaint incorrectly alleged Rock Road Industries, Inc. and

Bridgeton Landfill, LLC "or their predecessors and/or agents have at all relevant times held such

federal [Nuclear Regulatory Commission] licenses." Eastern District of Missouri Case No. 4:12-

cv-00641, Doc. No. 1 ¶ 65. A PAA claim was alleged based upon the possession of these

licenses and activities in which Defendants Rock Road and Bridgeton were never involved. In

their Memorandum in Support of Motion to Dismiss (E.D. Mo. Doc. No. 15), then-existing Rock

Road and Bridgeton refuted the specific allegations appearing in the *Adams* Complaint and the

purported effect of those allegations. The Defendants did not make a general statement of PAA

applicability.

16.    Allied denies the allegations of paragraph 16 of Plaintiffs' Second Amended

Complaint. Despite Plaintiffs' attempt to frame their claims in strictly state law terms, Plaintiffs'

Second Amended Complaint asserts a nuclear incident because they cite an alleged occurrence

that caused bodily injury, disease, damage to property, or loss of use of property, within the

United States, arising or resulting from the radioactive properties of material deposited at the

West Lake Landfill. Because the factual allegations underlying Plaintiffs' purported injuries all

relate to the Defendants' conduct in connection with nuclear and radioactive materials, Plaintiffs'

claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action

is the only remedy available for Plaintiffs' alleged injuries. *McClurg*, 933 F. Supp. 2d at 1186.

17.    Allied denies the allegations of paragraph 17 of Plaintiffs' Second Amended

Complaint. A small number of courts in the Eastern District of Missouri have determined that

the Price Anderson Act does not apply to the wastes at issue here. *See, e.g., Strong v. Republic*

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

*Servs., Inc.*, 2017 WL 4758958 (E.D. Mo. 2017)*; Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). Defendants respectfully challenge these decisions and assert that other federal courts have correctly interpreted the plain language of the Act, as well as the Congressional intent behind the 1988 amendments, to hold that neither a license nor an indemnity agreement is required for federal subject matter jurisdiction under the PAA.[2] Even the decisions on which Plaintiffs rely have noted there is case law on both sides of the argument and chosen to apply a presumption in favor of remand.

18.    Allied denies the allegations of paragraph 18 of Plaintiffs' Second Amended Complaint. The waste at issue is leached barium sulfate residue, a product of uranium processing by Mallinckrodt Chemical Company as part of its work for the United States Army related to the Manhattan Project. The leached barium sulfate residue, which is estimated to have contained approximately seven tons of uranium, was mixed with topsoil and then brought to the West Lake Landfill. Because the waste at issue contained uranium it meets the PAA definition of "source material."[3]

19.    Allied denies the allegations of paragraph 19 of Plaintiffs' Second Amended Complaint. The "mill tailings" that Plaintiffs reference throughout the Second Amended Complaint are leached barium sulfate residues, which meet the definition of "source material" under the Price Anderson Act.

20.    Allied denies the allegations of paragraph 20 of Plaintiffs' Second Amended Complaint. Cotter's disposal of the leached barium sulfate residues was undertaken pursuant to

---

[2] In particular, Defendants note that the decisions on which Plaintiffs rely are based largely on a Magistrate Judge's twenty-one-year-old ruling that has been overturned in its own Circuit, *Gilberg v. Stepan Co.*, 24 F. Supp. 325 (D.N.J. 1998). *Gilberg* mistakenly limited the PAA definitions by ignoring the sweeping 1988 amendments to the Act after Three Mile Island and held an indemnification agreement was a jurisdictional requirement. This case has been widely criticized in other circuits in more recent decisions.

[3] The PAA defines "source material" as "(1) uranium, thorium, . . .; or (2) ores containing one or more of the foregoing materials[.]" 42 U.S.C.A. § 2014(z).

6

Case: 4:17-cv-00024-CDP Doc. #: 150 Filed: 12/03/19 Page: 53 of 369 PageID #: 2637

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

an appropriate federal license. Cotter's source material license, issued by the Atomic Energy Commission, authorized it to possess an unlimited amount of uranium from December 3, 1969 to December 31, 1974. Further, when seeking to terminate its license, Cotter certified that the licensed material was lawfully disposed. In reliance on that representation, the AEC terminated Cotter's license. Thus, Defendants are alleged to have received the waste material directly from Cotter, a licensed entity, pursuant to the terms of its licensure.

21.     Allied denies the allegations of paragraph 21 of Plaintiffs' Second Amended Complaint including the allegation that "mill tailings" are at issue. As noted above, the leached barium sulfate residues Cotter disposed at West Lake Landfill are subject to the Price Anderson Act.

## II.  THE PARTIES

### Plaintiffs

22.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

23.     Allied denies the allegations contained in paragraph 23 of Plaintiffs' Second Amended Complaint.

### Defendants

24.     Allied admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill. Allied denies that that Rock Road Industries, Inc. still exists. Allied denies each and every other allegation of Paragraph 24 not specifically admitted.

25.     Allied denies Bridgeton Landfill, LLC was formerly "Laidlaw Waste Systems." Allied admits Bridgeton Landfill, LLC is a Delaware Limited Liability Company with its

principle place of business in Arizona.  Allied denies the remaining allegations contained in paragraph 25 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

26.     Allied admits that Rock Road Industries, Inc. was a Missouri corporation and owns or owned the West Lake Landfill.  Allied denies the remaining allegations contained in paragraph 26 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

27.     Allied admits that Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona.  Allied acknowledges that Republic Services, Inc. is one of the larger providers of services in the solid waste industry and that it focuses on being a progressive contributor in the industry on both environmental and sustainability issues.  Allied denies the remaining allegations contained in paragraph 27 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

28.     Allied admits that it is a Delaware limited liability company.  Allied denies the remaining allegations contained in paragraph 28 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

29.     Allied is without information or knowledge sufficient to form a belief as to the truth and falsity of the allegations contained in paragraph 29 of Plaintiffs' Second Amended Complaint and therefore, denies the same.

## III. FACTS

30.     Allied denies the allegations contained in paragraph 30 of Plaintiffs' Second Amended Complaint.

31.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

32.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

33.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

34.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

35.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

36.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

37.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

38.    Allied denies the allegations contained in paragraph 38 of Plaintiffs' Second Amended Complaint.

39.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

40.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

41.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

42.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

43.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

44.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

45.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

46.    Answering Paragraph 46 Allied admits that Cotter, without authority from or knowledge on the part of Allied, caused leached barium sulfate residue to be trucked to the Westlake Landfill in 1973.  Defendant Allied denies each and every allegation not specifically admitted.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

47.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47 of Plaintiffs' Second Amended Complaint.

48.     Allied denies the allegations contained in paragraph 48 of Plaintiffs' Second Amended Complaint.

49.     Allied denies the allegations contained in paragraph 49 of Plaintiffs' Second Amended Complaint.

50.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50 of Plaintiffs' Second Amended Complaint.

51.     Allied denies the allegations contained in paragraph 51 of Plaintiffs' Second Amended Complaint.

52.     Allied denies the allegations contained in paragraph 52 of Plaintiffs' Second Amended Complaint.

53.     Allied denies the allegations contained in paragraph 53 of Plaintiffs' Second Amended Complaint.

54.     Allied denies the allegations contained in paragraph 54 of Plaintiffs' Second Amended Complaint.

55.     Allied denies the allegations contained in paragraph 55 of Plaintiffs' Second Amended Complaint.

56.     Allied denies the allegations contained in paragraph 56 of Plaintiffs' Second Amended Complaint.

57.     Allied denies the allegations contained in paragraph 57 of Plaintiffs' Second Amended Complaint.

58.     Allied denies the allegations contained in paragraph 58 of Plaintiffs' Second Amended Complaint.

59.     Allied moves to strike the allegations of Paragraph 59 because they are not necessary, according to Plaintiffs for their claims.    Answering Paragraph 59 Allied admits upon information and belief that Cotter did not obtain a transportation license to transport radioactive mill tailings to the West Lake Landfill.  Allied denies that the Leached Barium Sulfate Residue ("LBSR") is mill tailings.  Allied denies that the LBSR is not source material.  Allied denies that the LBSR was not subject to Cotter's license.   Allied denies each and every other allegation of paragraph 59 not specifically admitted.

60.     Allied denies the allegations contained in paragraph 60 of Plaintiffs' Second Amended Complaint.

61.     Allied denies the allegations contained in paragraph 61 of Plaintiffs' Second Amended Complaint.

62.     Allied denies the allegations contained in paragraph 62 of Plaintiffs' Second Amended Complaint.

63.     Allied denies the allegations contained in paragraph 63 of Plaintiffs' Second Amended Complaint.

64.     Allied denies the allegations contained in paragraph 64 of Plaintiffs' Second Amended Complaint.

65.     Allied denies the allegations contained in paragraph 65 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

66.    Allied denies the allegations contained in paragraph 66 of Plaintiffs' Second Amended Complaint.

67.    Allied denies the allegations contained in paragraph 67 of Plaintiffs' Second Amended Complaint.

68.    Allied denies the allegations contained in paragraph 68 of Plaintiffs' Second Amended Complaint.

69.    Allied denies the allegations contained in paragraph 69 of Plaintiffs' Second Amended Complaint.

70.    Allied denies the allegations contained in paragraph 70 of Plaintiffs' Second Amended Complaint.

71.    Allied denies the allegations contained in paragraph 71 of Plaintiffs' Second Amended Complaint.

72.    Allied denies the allegations contained in paragraph 72 of Plaintiffs' Second Amended Complaint.

73.    Allied denies the allegations contained in paragraph 73 of Plaintiffs' Second Amended Complaint.

74.    Allied denies the allegations contained in paragraph 74 of Plaintiffs' Second Amended Complaint.

75.    Allied denies the allegations contained in paragraph 75 of Plaintiffs' Second Amended Complaint.

76.    Allied denies the allegations contained in paragraph 76 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

77.     Allied denies the allegations contained in paragraph 77 of Plaintiffs' Second Amended Complaint.

78.     Allied denies the allegations contained in paragraph 78 of Plaintiffs' Second Amended Complaint.

79.     Allied denies the allegations contained in paragraph 79 of Plaintiffs' Second Amended Complaint.

80.     Allied denies the allegations contained in paragraph 80 of Plaintiffs' Second Amended Complaint.

81.     Allied denies the allegations contained in paragraph 81 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

82.     Allied denies the allegations contained in paragraph 82 of Plaintiffs' Second Amended Complaint.

83.     Allied denies the allegations contained in paragraph 83 of Plaintiffs' Second Amended Complaint.

84.     Allied denies the allegations contained in paragraph 84 of Plaintiffs' Second Amended Complaint.

85.     Allied denies the allegations contained in paragraph 85 of Plaintiffs' Second Amended Complaint.

86.     Allied denies the allegations contained in paragraph 86 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

87.     Allied denies the allegations contained in paragraph 87 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

88.     Allied denies the allegations contained in paragraph 88 of Plaintiffs' Second Amended Complaint.

89.     Allied denies the allegations contained in paragraph 89 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

90.     Allied denies the allegations contained in paragraph 90 of Plaintiffs' Second Amended Complaint.

91.     Allied denies the allegations contained in paragraph 91 of Plaintiffs' Second Amended Complaint.

92.     Allied denies the allegations contained in paragraph 92 of Plaintiffs' Second Amended Complaint.

93.     Allied denies the allegations contained in paragraph 93 of Plaintiffs' Second Amended Complaint.

94.     Allied denies the allegations contained in paragraph 94 of Plaintiffs' Second Amended Complaint.

95.     Allied denies the allegations contained in paragraph 95 of Plaintiffs' Second Amended Complaint.

96.     Allied denies the allegations contained in paragraph 96 of Plaintiffs' Second Amended Complaint.

97.     Allied denies the allegations contained in paragraph 97 of Plaintiffs' Second Amended Complaint.

98.     Allied denies the allegations contained in paragraph 98 of Plaintiffs' Second Amended Complaint.

Case: 4:17-cv-00016-CDP   Doc. #: 1-5   Filed: 11/05/19   Page: 16 of 36 PageID #: 2566

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

99.     Allied denies the allegations contained in paragraph 99 of Plaintiffs' Second Amended Complaint.

## COUNT I – TRESPASS

100.    In response to paragraph 100 of Count I of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the Second Amended Complaint.

101.    Allied is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 101 and therefore denies the allegations contained in paragraph 101 of Count I of Plaintiffs' Second Amended Complaint.

102.    Allied admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill.  Allied denies that Rock Road Industries, Inc. currently exists.   Allied denies every allegation not specifically admitted contained in paragraph 102 of Count I of Plaintiffs' Second Amended Complaint.

103.    Allied denies the allegations contained in paragraph 103 of Count I of Plaintiffs' Second Amended Complaint.

104.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 104 of Count I of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

105.    Allied denies the allegations contained in paragraph 105 of Count I of Plaintiffs' Second Amended Complaint.

106.    Allied denies the allegations contained in paragraph 106 of Count I of Plaintiffs' Second Amended Complaint.

107.    Allied denies the allegations contained in paragraph 107 of Count I of Plaintiffs' Second Amended Complaint.

108.    Allied denies the allegations contained in paragraph 108 of Count I of Plaintiffs' Second Amended Complaint.

109.    Allied denies the allegations contained in paragraph 109 of Count I of Plaintiffs' Second Amended Complaint.

110.    Allied denies the allegations contained in paragraph 110 of Count I of Plaintiffs' Second Amended Complaint.

111.    Allied denies the allegations contained in paragraph 111 of Count I of Plaintiffs' Second Amended Complaint.

112.    Allied denies the allegations contained in paragraph 112 of Count I of Plaintiffs' Second Amended Complaint.

### COUNT II – PERMANENT NUISANCE

113.    In response to paragraph 113 of Count II of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, and 100 through 112 of Count I of Plaintiffs' Second Amended Complaint.

114.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 114 of Count II of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

115.    Allied admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill, and Rock Road Industries, Inc. owned and operated the West Lake Landfill.  Allied

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

denies the remaining allegations contained in paragraph 115 of Count II of Plaintiffs' Second Amended Complaint.

116.    Allied denies the allegations contained in paragraph 116 of Count II of Plaintiffs' Second Amended Complaint.

117.    Allied denies the allegations contained in paragraph 117 of Count II of Plaintiffs' Second Amended Complaint.

118.    Allied denies the allegations contained in paragraph 118 of Count II of Plaintiffs' Second Amended Complaint.

119.    Paragraph 119 of Count II of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Allied.  IF and to the extent a response is deemed to be required by the Court, Allied denies the allegations contained in paragraph 119 of Count II of Plaintiffs' Second Amended Complaint.

120.    Allied denies the allegations contained in paragraph 120 of Count II of Plaintiffs' Second Amended Complaint.

121.    Allied denies the allegations contained in paragraph 121 of Count II of Plaintiffs' Second Amended Complaint.

122.    Allied denies the allegations contained in paragraph 122 of Count II of Plaintiffs' Second Amended Complaint.

123.    Allied denies the allegations contained in paragraph 123 of Count II of Plaintiffs' Second Amended Complaint.

124.    Allied denies the allegations contained in paragraph 124 of Count II of Plaintiffs' Second Amended Complaint.

Case: 4:22-cv-00024-CDP   Doc. #: 1-70   Filed: 11/05/19   Page: 19 of 39 PageID #: 2649

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**COUNT III – TEMPORARY NUISANCE**

125.    In response to paragraph 125 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99of the "FACTS" section, 100 through 112 of Count I, and 113 through 124 of Count II of Plaintiffs' Second Amended Complaint.

126.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 126 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

127.    Allied admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill.  Allied denies that Rock Road Industries, Inc. exists.  Allied denies each and every allegation in paragraph 127 of Plaintiffs' Second Amended Complaint not specifically admitted.

128.    Allied denies the allegations contained in paragraph 128 of Plaintiffs' Second Amended Complaint.

129.    Allied denies the allegations contained in paragraph 129 of Plaintiffs' Second Amended Complaint.

130.    Allied denies the allegations contained in paragraph 130 of Plaintiffs' Second Amended Complaint.

131.    Allied denies the allegations contained in paragraph 131 of Plaintiffs' Second Amended Complaint.

132.    Allied denies the allegations contained in paragraph 132 of Plaintiffs' Second Amended Complaint.

133.    Allied denies the allegations contained in paragraph 133 of Plaintiffs' Second Amended Complaint.

134.    Allied denies the allegations contained in paragraph 134 of Plaintiffs' Second Amended Complaint.

## COUNT IV – NEGLIGENCE

135.    In response to paragraph 135 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III of Plaintiffs' Second Amended Complaint.

136.    Allied denies the allegations contained in paragraph 136 of Plaintiffs' Second Amended Complaint.

137.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 137 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

138.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 138 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

139.    Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 139 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

140.    Allied denies the allegations contained in paragraph 140 of Plaintiffs' Second Amended Complaint.

141.    Allied denies the allegations contained in paragraph 141 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

142.    Allied denies the allegations contained in paragraph 142 of Plaintiffs' Second Amended Complaint.

143.    Allied denies the allegations contained in paragraph 143 of Plaintiffs' Second Amended Complaint.

144.    Allied denies the allegations contained in paragraph 144 of Plaintiffs' Second Amended Complaint.

145.    Allied denies the allegations contained in paragraph 145 of Plaintiffs' Second Amended Complaint.

146.    Allied denies the allegations contained in paragraph 146 of Plaintiffs' Second Amended Complaint.

147.    Allied denies the allegations contained in paragraph 147 of Plaintiffs' Second Amended Complaint.

148.    Allied denies the allegations contained in paragraph 148 of Plaintiffs' Second Amended Complaint.

149.    Allied denies the allegations contained in paragraph 149 of Plaintiffs' Second Amended Complaint.

150.    Allied denies the allegations contained in paragraph 150 of Plaintiffs' Second Amended Complaint.

151.    Allied denies the allegations contained in paragraph 151 of Plaintiffs' Second Amended Complaint.

152.    Allied denies the allegations contained in paragraph 152 of Plaintiffs' Second Amended Complaint.

## COUNT V – NEGLIGENCE PER SE

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

153.     In response to paragraph 153 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III and 135 through 152 of Count IV of Plaintiffs' Second Amended Complaint.

154.     Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 of Count IV of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

155.   Allied denies the allegations contained in paragraph 155 of Count IV of Plaintiffs' Second Amended Complaint.

156.   Allied denies the allegations contained in paragraph 156 of Count IV of Plaintiffs' Second Amended Complaint.

157.   Allied is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 157 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

158.     Paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Allied.  If and to the extent a response is deemed to be required by the Court, Allied denies the allegations contained in paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint.

159.   Allied denies the allegations contained in paragraph 159 of Count IV of Plaintiffs' Second Amended Complaint.

160.   Allied denies the allegations contained in paragraph 160 of Count IV of Plaintiffs' Second Amended Complaint.

161.   Allied denies the allegations contained in paragraph 161 of Count IV of Plaintiffs' Second Amended Complaint.

162.   Allied denies the allegations contained in paragraph 162 of Count IV of Plaintiffs' Second Amended Complaint.

163.   Allied denies the allegations contained in paragraph 163 of Count IV of Plaintiffs' Second Amended Complaint.

164.   Allied denies the allegations contained in paragraph 164 of Count IV of Plaintiffs' Second Amended Complaint.

**COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY**

165.    In response to paragraph 165 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV and 153 through 164 of Count V of Plaintiffs' Second Amended Complaint.

166.   Allied denies the allegations contained in paragraph 166 of Count VI of Plaintiffs' Second Amended Complaint.

167.   Allied denies the allegations contained in paragraph 167 of Count VI of Plaintiffs' Second Amended Complaint.

168.   Allied denies the allegations contained in paragraph 168 of Count VI of Plaintiffs' Second Amended Complaint.

169.   Allied denies the allegations contained in paragraph 169 of Count VI of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

170.   Allied denies the allegations contained in paragraph 170 of Count VI of Plaintiffs' Second Amended Complaint.

171.   Allied denies the allegations contained in paragraph 171 of Count VI of Plaintiffs' Second Amended Complaint.

172.   Allied denies the allegations contained in paragraph 172 of Count VI of Plaintiffs' Second Amended Complaint.

## COUNT VII – INJUNCTIVE RELIEF

173.    In response to paragraph 173 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V and 165 through 172 of Count VI of Plaintiffs' Second Amended Complaint.

174.   Allied denies the allegations contained in paragraph 174 of Count VII of Plaintiffs' Second Amended Complaint.

175.   Allied denies the allegations contained in paragraph 175 of Count VII of Plaintiffs' Second Amended Complaint.

176.   Allied denies the allegations contained in paragraph 176 of Count VII of Plaintiffs' Second Amended Complaint.

177.   Allied denies the allegations contained in paragraph 177 of Count VII of Plaintiffs' Second Amended Complaint.

178.   Allied denies the allegations contained in paragraph 178 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 178 of Plaintiffs' Second Amended

Complaint Allied states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

179.    Allied denies the allegations contained in paragraph 179 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 179 of Plaintiffs' Second Amended Complaint Allied states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

180.    Allied denies the allegations contained in paragraph 180 of Count VII of Plaintiffs' Second Amended Complaint.  Further answering paragraph 178 of Plaintiffs' Second Amended Complaint Allied states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

## COUNT XIII – PUNITIVE DAMAGES

181.    In response to paragraph 181 of Plaintiffs' Second Amended Complaint, Allied incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V, 165 through 172 of Count VI and 173 through 188 of Count VII of Plaintiffs' Second Amended Complaint.

182.    Allied denies the allegations contained in paragraph 182 of Count XIII of Plaintiffs' Second Amended Complaint.

183.    Allied denies the allegations contained in paragraph 183 of Count XIII of Plaintiffs' Second Amended Complaint.

184.    Allied denies the allegations contained in paragraph 184 of Count XIII of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

185.     Allied denies that Plaintiffs are entitled to relief request in the "WHEREFORE" paragraph, including all subparts therefore, which immediately follows paragraph 184 of Plaintiffs' Second Amended Complaint.

186.     Allied denies each and every allegation contained in Plaintiffs' Second Amended Complaint not specifically admitted.

## AFFIRMATIVE AND/OR FURTHER DEFENSES

Allied asserts that Plaintiffs' claims are barred, in whole or in part, by the defenses set forth below. By setting forth these defenses, Allied does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Moreover, nothing herein stated is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiffs' allegations. Allied reserves the right to plead any affirmative defense asserted by any co-defendant(s) or any and all affirmative defenses that may become evident or appreciated after investigation and discovery in this matter.

1.     Plaintiffs have failed to state a claim against Allied upon which relief can be granted.

2.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to Mo. Rev. Stat. 516.120 and any limitations period which applies to actions under the Price-Anderson Act.

3.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of repose.

4.     If Plaintiffs have been damaged, which is not hereby admitted, such damages were caused by unforeseeable, independent, intervening, and/or superseding events for which Allied is not legally responsible.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

5.      Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not hereby admitted, such injury or damage may have been caused or contributed to by the negligence or fault of persons or entities over whom this Defendant had no control, and such injuries or damages were not caused or contributed to by the negligence or fault of this Defendant or any of its agents, servants or employees.

6.      Pleading in the alternative, if Plaintiffs suffered any injury or damage, which is not hereby admitted, the negligence or fault of the parties to this case should be compared by the trier-of-fact; further, any negligence or fault apportioned to Plaintiffs should act to bar any recovery or reduce any recovery in direct proportion to any such assessment of fault, all in accordance with the laws of the State of Missouri.

7.      Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not admitted, this Defendant requests that the negligence alleged by Plaintiffs against others including other Defendants,  though not hereby admitted, be compared to the negligence or fault of this Defendant, to the extent that any such negligence is found to have caused or contributed to cause any injuries or damages alleged by Plaintiffs, and recovery against this Defendant should be reduced in direct proportion to such assessment of fault.

8.      If Plaintiffs have been damaged, the negligence or fault of persons or entities, for whose conduct Allied is not legally responsible, must be compared, reducing or completely barring Plaintiffs' alleged right to recover against Allied.

9.      If Plaintiffs have been damaged, the damages were caused by operation of nature, idiosyncratic reaction(s), pre-existing condition(s), and/or subsequent injury over which Allied had no control.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

10.     If Plaintiffs have been damaged, which is not admitted, any recovery is barred to the extent each Plaintiff voluntarily exposed himself or herself to a known risk. Any recovery should not include alleged damages that Plaintiffs could have avoided by reasonable care and diligence.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of assumption of the risk, by Plaintiffs' failure to mitigate damages, and/or by Plaintiffs' own conduct.

12.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent, whether it be by Plaintiffs or other third parties who later approved the landfill's activities.

13.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver and/or the doctrine of estoppel.

14.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

15.     Plaintiffs' Second Amended Complaint and each purported cause of action therein are barred, in whole or in part, by the doctrine of unclean hands.

16.     Plaintiffs failed to exhaust their administrative remedies.

17.     Plaintiffs' claims are barred, in whole or in part, because they at all times had actual and/or constructive knowledge of the circumstances upon which the Complaint is based, and the Plaintiffs accepted those circumstances.

18.     Plaintiffs' claims are barred, in whole or in part, because at all times and places mentioned in the Complaint, Allied complied with the state of the art, and therefore, Plaintiffs are not entitled to recover from Allied as a matter of law.

19.     Plaintiffs' claims are barred, in whole or in part, because the potential for injuries or damages alleged in the Complaint were not known to Allied, nor did Allied have reason to know of the risk of said harm.

20.     Allied has completely satisfied all legal duties, if any, with regard to the Plaintiffs and thus is released from liability.

21.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

22.     Plaintiffs failed to join St. Louis Lambert Airport as a necessary or indispensable party to the extent the injunctive relief sought by Plaintiffs affects the airport's negative easement at Bridgeton Landfill.

23.     Plaintiffs failed to join the U.S. Environmental Protection Agency, the Department of Energy or other successor entities to the Atomic Energy Commission, and other federal agencies, which are indispensable parties for the claims made in this Complaint.

24.     Plaintiffs' request for injunctive relief is preempted as it attempts to shape and therefore challenge the remedy already underway under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and violates the timing of review provisions thereunder, 42 U.S.C. § 9613(h).

25.     Plaintiffs' claims should be dismissed for their failure to join indispensable parties.

26.     The federal government, through federal statutes, has preempted the field of law applicable to the claims at issue. The activities referred to in the Complaint were and are controlled by federal law, which governs the nuclear industry at all times. Plaintiffs' claims are thus preempted in whole or in part such that they fail to state a cause of action upon which relief can be granted.

27.     Allied asserts any and all defenses, claims, credits, offsets, or remedies provided by the Price Anderson Act, 42 U.S.C. 2210, as amended, and reserves the right to amend its

Answer to file such further pleadings as are necessary to preserve and assert such defenses, claims, credits, offsets, or remedies.

28.     Allied has at all times acted in conformance with applicable guidelines or regulations that establish the standard of care and has otherwise acted with due care and the caution of a reasonably prudent entity.

29.     Allied acted reasonably, in good faith, and with the skill, prudence, and diligence exercised by a reasonably prudent actor at all times relevant to this action.

30.     Allied conducted all actions in accordance with industry standards, government requirements, and the prevailing state of the art and technology in the industry at the time of the alleged act.

31.     Plaintiffs' claims are barred, in whole or in part, because the injuries and damages alleged were not known to Allied, nor did Allied have reason to know of the alleged risk of harm.

32.     Any allegedly wrongful acts or omissions of Allied, if and to the extent such acts or omissions occurred, were legally excused or justified.

33.     Plaintiffs' claims are barred, in whole or in part, because Allied did not breach any duty to Plaintiffs.

34.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were not exposed to any substance allegedly caused by Allied's acts sufficient to establish by a reasonable degree of probability that any such exposure caused any alleged injury, damage or loss.

35.     Plaintiffs' claims are barred, in whole or in part, because the damages Plaintiffs seek are too remote, indirect, and/or speculative.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

36.     The Complaint and each purported cause of action therein are barred, in whole or in part, because the operations at issue were in existence and ongoing prior to the Plaintiffs purchasing and/or moving to their residence.

37.     The Complaint and each purported cause of action therein are barred because the utility of the conduct of which Plaintiffs complain outweighs any alleged harm to Plaintiffs.

38.     Plaintiffs' claims are barred to the extent they rely on the retroactive application of statutes, rules, regulations or common-law standards of conduct, or otherwise seek to impose liability retroactively for conduct that was not actionable at the time it occurred, which violates the Constitutions of the United States and the State of Missouri.

39.     To the extent Plaintiffs' claims are based upon any theory providing for liability without proof of causation, they violate Allied's rights under the United States Constitution and/or the Constitution of the State of Missouri, and the Constitution of any other state law that may be found to apply.

40.     The punitive damages sought by Plaintiffs are not recoverable under the causes of action set forth in Plaintiffs' Second Amended Complaint and Plaintiffs' allegations are legally insufficient to support a claim for punitive damages.

41.     Allied denies that Plaintiffs are entitled to recover punitive damages in this case because Allied's conduct demonstrated reasonable care. Intent to injure, actual or constructive, is completely absent in this case. Allied did not act with actual malice, and no act or omission of Allied was done with reckless indifference or reckless disregard toward the rights or safety of others, and therefore any award of punitive damages is barred.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

42.     Allied denies all allegations of wrongdoing and damages as alleged in the
Complaint, but if in fact Plaintiffs did sustain damages, Plaintiffs' damages do not include
punitive damages.

43.     Any assessment of punitive damages violates Allied's constitutional rights under
the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, the
Missouri Constitution Article 1, Sections 18A, 19, 21, and 22A, and any other applicable State
Constitution in one or more of the following respects:

a)      The guidelines, standards, and/or instructions for assessing punitive
damages are vague, indefinite, and/or uncertain, supply no notice of the potential repercussions
of any alleged conduct, set no limit on the damages that can be awarded, fail to require proof of
every element beyond a reasonable doubt, are subject to the unbridled discretion of the jury, and
do not allow adequate judicial review, thereby denying due process;

b)      The assessment of punitive damages is criminal or penal in nature and,
therefore, the rights given defendants in criminal proceedings are applicable;

c)      The assessment of punitive damages amounts to the imposition of an
excessive fine and/or cruel and unusual punishment;

d)      The assessment of punitive damages exposes Allied to multiple
punishments and fines for the same act;

e)      The assessment of punitive damages constitutes double jeopardy;

f)      The assessment of punitive damages discriminates in that corporate status,
wealth, or net worth may be considered by the jury in determining the amounts of any such
damage awards and different amounts can be awarded against different defendants for the same

act depending solely on the status or material wealth of the various defendants, thereby denying equal protection under the law;

g)      The assessment of punitive damages does not provide an adequate procedure for the determination of punitive damages in violation of the equal protection and substantive and procedural due process requirements of the United States Constitution and applicable State Constitutions in violation of the United States Supreme Court's decision in *Pacific Mutual Ins. Co. v. Haslip*;

h)      The assessment of punitive damages constitutes an impermissible burden on interstate commerce; and

i)      The assessment of punitive damages constitutes a violation of due process and other constitutional rights of Allied as set forth in the United States Supreme Court decisions in *State Farm Mut. Auto. Ins. Co. v. Campbell, Pacific Mutual Ins. Co. v. Haslip,* and *BMW of North America, Inc. v. Gore;* and the Missouri Supreme Court's holding in *Alcorn v. Union Pacific R.R. Co.*

44.      To the extent that any defense to punitive damages arousing out of Chapter 537 or other sections of the Missouri Revised Statutes accrues to the benefit of Allied, Allied reserves the right to assert the same should the facts warrant it.

45.      Plaintiffs' purported cause of action and alleged damages, if any, were not proximately caused by any act or omission of Allied.

46.      If Plaintiffs recover from Allied, Allied is entitled to contribution, set-off, and/or indemnification, either in whole or in part, from all persons or entities whose negligence or fault proximately caused or contributed to cause Plaintiffs' alleged damages.

47.     Plaintiffs' claims are or may be barred, in whole or in part, to the extent that Plaintiffs have released, settled with, entered into an accord and satisfaction, or otherwise compromised their claims. Allied is entitled to a set-off for the entire amount of proceeds Plaintiffs have or may recover from other sources.

48.     Pursuant to R.S.Mo. 537.060, if and to the extent that any other Defendant or party enter into a release agreement, covenant not to sue or note to enforce a judgment, or any other type of settlement agreement with Plaintiffs, this Defendant is entitled to have any judgments that may be rendered against it reduced by the stipulated amount of the agreement, or the amount of the consideration paid, whichever is greater.

49.     If the property in question was exposed to any chemical or compound connected to this Defendant, which is specifically denied, then such exposure was inconsequential or de minimis, thus barring any recovery by the Plaintiffs.

50.     This Defendant was at all times in full compliance with all applicable industry and regulatory standards and, therefore, had no further duty to warn.

51.     Allied pleads all applicable limitation on Plaintiffs' recovery of damages as to amount or type as may be applicable to this matter under Missouri law or other applicable law or statute.

52.     Plaintiffs' claims are barred to the extent Plaintiffs do not have standing to seek relief.

53.     Allied hereby adopts and incorporates herein any other defense asserted by any other Defendant in this action.

54.     Allied reserves the right to amend its Answer as discovery progresses to plead additional defenses, and to assert cross-claims, counterclaims or third-party claims.

55. Plaintiffs claims are barred by the doctrines of collateral estoppel and res judicata.

WHEREFORE, having fully answered Plaintiffs' Second Amended Complaint, Allied Services, LLC requests that Plaintiffs take nothing by their Complaint, that the Second Amended Complaint be dismissed, that Allied be awarded its costs, expenses, and attorney's fees incurred in the defense of this litigation, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, LLC, and Rock Road Industries, Inc.[4] demand a jury trial on all claims for which they are entitled to a jury trial.

---

[4] As of April 9, 2018, Rock Road Industries, Inc. formally merged into Bridgeton Landfill, LLC, a Delaware Limited Liability Company.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Dated:  November 5, 2019                    LATHROP GAGE LLP


                                            By:  /s/ William G. Beck
                                                 William G. Beck          26849MO
                                                 Peter F. Daniel          33798MO
                                                 Allyson E. Cunningham  64802MO
                                                 2345 Grand Boulevard, Suite 2200
                                                 Kansas City, Missouri 64108-2618
                                                 Telephone:      (816) 292-2000
                                                 Telecopier:     (816) 292-2001
                                                 wbeck@lathropgage.com
                                                 pdaniel@lathropgage.com
                                                 acunningham@lathropgage.com


                                                 Patricia Lehtinen Silva    67213MO
                                                 Pierre Laclede Center
                                                 7701 Forsyth Boulevard, Suite 500
                                                 Clayton, Missouri 63105
                                                 Telephone:      (314) 613-2800
                                                 Telecopier:     (314) 613-2801
                                                 psilva@lathropgage.com

                                                 ATTORNEYS FOR DEFENDANTS

                              **CERTIFICATE OF SERVICE**

       I hereby certify that on November 5, 2019, I electronically filed the foregoing document
via the Court's CM/ECF system, which will serve notice on all counsel of record.


                                                   /s/ William G. Beck
                                                 An Attorney for Defendants

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MICHAEL DAILEY, et al.                    )
                                          )
                                          )
            Plaintiffs,                   )
                                          )   Case No.  4:17-cv-00024-CDP
vs.                                       )
                                          )
BRIDGETON LANDFILL, LLC, et al.           )
                                          )
                                          )
            Defendants.                   )

<u>**ANSWER OF SEPARATE DEFENDANT BRIDGETON LANDFILL, LLC**</u>
<u>**TO PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

Defendant Bridgeton Landfill, LLC ("Bridgeton"), for its Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint ("Complaint"), states as follows:

1.      Bridgeton denies the allegations contained in paragraph 1 of Plaintiffs' Second Amended Complaint.

2.      Bridgeton denies the allegations contained in paragraph 2 of Plaintiffs' Second Amended Complaint.

3.      Bridgeton denies the allegations contained in paragraph 3 of Plaintiffs' Second Amended Complaint.

4.      Bridgeton denies the allegations contained in paragraph 4 of Plaintiffs' Second Amended Complaint.

5.      Bridgeton denies the allegations contained in paragraph 5 of Plaintiffs' Second Amended Complaint.

6.      Bridgeton states that paragraph 6 of Plaintiffs' Second Amended Complaint pleads no facts and instead makes assertions based on unsupported theories and legal conclusions

and, therefore, does not require a response. To the extent the Court deems a response to paragraph 6 necessary, Bridgeton denies the allegations contained therein.

7.     Bridgeton denies the allegations contained in paragraph 7 of Plaintiffs' Second Amended Complaint.

8.     Bridgeton denies the allegations contained in paragraph 8 of Plaintiffs' Second Amended Complaint.

9.     Bridgeton moves to strike Paragraph 9 of Plaintiffs' Second Amended Complaint because according to Plaintiffs it is "informational only" and therefore not part of its Second Amended Complaint. Further answering Paragraph 9 Bridgeton denies the allegations contained in paragraph 9 of Plaintiffs' Second Amended Complaint.

## JURISDICTION, AUTHORITY, AND VENUE

10.     In response to paragraph 10 of Plaintiffs' Second Amended Complaint, Bridgeton denies that the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County has jurisdiction and authority over the claims made by Plaintiffs pursuant to the Price-Anderson Act. Bridgeton denies any jurisdiction over "state tort law claims" because any such purported claim is preempted by the Price-Anderson Act. Bridgeton denies that Plaintiffs have properly pleaded venue for this Court.

11.     Answering Paragraph 11 Bridgeton admits that as of the dates this case was originally filed that diversity jurisdiction did not exist however Bridgeton denies that this Court is without subject matter jurisdiction. Bridgeton denies each fact not specifically admitted.

12.     Answering paragraph 12 Bridgeton denies that venue is proper in the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County. Bridgeton denies that Plaintiffs have adequately pleaded jurisdiction in this Court.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

13. Bridgeton denies the statement in Paragraph 13. Whether or not Plaintiffs voluntarily classify their causes of action as federal ones, their causes of action fit squarely in the framework of the Price-Anderson Act ("PAA" or "the Act"), 42 U.S.C. § 2011 *et seq.* Artful pleading cannot remedy the fact that Plaintiffs may sue "under the PAA or not at all." *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).

14. Answering Paragraph 14 Bridgeton denies the assertion of Paragraph 14 that Plaintiffs' claims do not fall within the scope of the Price Anderson Act.

A. Whether or not the Landfill is a licensed nuclear facility is irrelevant to whether the Price Anderson Act applies. Upon its review of cases from around the country, the court in *Estate of Ware ex rel. Boyer v. Hospital of University of Pennsylvania*, expressly rejected the view that a public liability claim under the PAA is "limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities." 73 F. Supp. 3d 530 (E.D. Pa. 2014); *see, also, Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503-04 (10th Cir. 1997) ("Congress intended to expand federal control over safety and liability issues involving the nuclear industry," and the PAA created "a federal forum for any tort claim even remotely involving atomic energy production"); *Cotromano*, 7 F. Supp. 3d at 1257–58 (application of PAA is not limited to licensed activities).

B. Whether or not Defendants received a license to possess, transport, or dispose of any radioactive wastes on or in the Landfill is irrelevant to whether the Price Anderson Act applies. As noted above, a license is not required for the Price Anderson Act to apply. Further, the entity that deposited the RIM at the West Lake Landfill—Cotter Corporation—did, in fact, hold a source material license

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

issued by the AEC, which authorized it to possess an unlimited amount of uranium from December 3, 1969 to December 31, 1974.[1]

C.    Whether or not Defendants entered into an indemnification agreement with the United States government under 42 U.S.C. § 2210 is irrelevant to whether the Price Anderson Act applies.  The Act provides that a "person indemnified" by the licensee and the federal government is "the person with whom an indemnity agreement is executed or who is required to maintain a financial protection, **and any other person who may be liable for public liability**."  42 U.S.C. § 2014(t) (emphasis added).  Federal courts have held the Act's plain meaning indicates the PAA is not limited to parties to indemnification agreements.  *See, e.g., Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[O]ne purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only."); *Estate of Ware v. Hosp. of the Univ. of Pa.*, 73 F. Supp. 3d 519, 530–31 (E.D. Pa. 2014) (adopting analysis of courts "which have concluded that possession of…an indemnification agreement is unrelated to establishing jurisdiction under PAA"); *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1259 (S.D. Fla. 2014) ("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson"); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999) ("there can be an [extraordinary nuclear occurrence] to which no indemnity agreement applies.").

15.    Bridgeton denies the allegations of paragraph 15 of Plaintiffs' Second Amended Complaint.  The statement quoted from Defendants Rock Road and Bridgeton's Memorandum in

---

[1] Source Material License No. SUB-1022 is attached as Exhibit 1.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Support of Motion to Dismiss (the "Memorandum") in *Adams v. MI Holdings, Inc.* (Eastern

District of Missouri Case No. 4:12-cv-00641) (Doc. No. 15), are taken out of context and are

distinguishable.  The *Adams* Complaint incorrectly alleged Rock Road Industries, Inc. and

Bridgeton Landfill, LLC "or their predecessors and/or agents have at all relevant times held such

federal [Nuclear Regulatory Commission] licenses."  Eastern District of Missouri Case No. 4:12-

cv-00641, Doc. No. 1 ¶ 65.  A PAA claim was alleged based upon the possession of these

licenses and activities in which Defendants Rock Road and Bridgeton were never involved.  In

their Memorandum in Support of Motion to Dismiss (E.D. Mo. Doc. No. 15), then-existing Rock

Road and Bridgeton refuted the specific allegations appearing in the *Adams* Complaint and the

purported effect of those allegations.  The Defendants did not make a general statement of PAA

applicability.

      16.     Bridgeton denies the allegations of paragraph16 of Plaintiffs' Second Amended

Complaint.  Despite Plaintiffs' attempt to frame their claims in strictly state law terms, Plaintiffs'

Second Amended Complaint asserts a nuclear incident because they cite an alleged occurrence

that caused bodily injury, disease, damage to property, or loss of use of property, within the

United States, arising or resulting from the radioactive properties of material deposited at the

West Lake Landfill.  Because the factual allegations underlying Plaintiffs' purported injuries all

relate to the Defendants' conduct in connection with nuclear and radioactive materials, Plaintiffs'

claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action

is the only remedy available for Plaintiffs' alleged injuries.  *McClurg*, 933 F. Supp. 2d at 1186.

      17.     Bridgeton denies the allegations of paragraph 17 of Plaintiffs' Second Amended

Complaint.  A small number of courts in the Eastern District of Missouri have determined that

the Price Anderson Act does not apply to the wastes at issue here.  *See, e.g., Strong v. Republic*

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

*Servs., Inc.*, 2017 WL 4758958 (E.D. Mo. 2017)*; Banks v. Cotter Corp.*, No. 4:18-CV-00624

JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). Defendants respectfully challenge

these decisions and assert that other federal courts have correctly interpreted the plain language

of the Act, as well as the Congressional intent behind the 1988 amendments, to hold that neither

a license nor an indemnity agreement is required for federal subject matter jurisdiction under the

PAA.[2] Even the decisions on which Plaintiffs rely have noted there is case law on both sides of

the argument and chosen to apply a presumption in favor of remand.

18.     Bridgeton denies the allegations of paragraph 18 of Plaintiffs' Second Amended

Complaint. The waste at issue is leached barium sulfate residue, a product of uranium

processing by Mallinckrodt Chemical Company as part of its work for the United States Army

related to the Manhattan Project. The leached barium sulfate residue, which is estimated to have

contained approximately seven tons of uranium, was mixed with topsoil and then brought to the

West Lake Landfill. Because the waste at issue contained uranium it meets the PAA definition

of "source material."[3]

19.     Bridgeton denies the allegations of paragraph 19 of Plaintiffs' Second Amended

Complaint. The "mill tailings" that Plaintiffs reference throughout the Second Amended

Complaint are leached barium sulfate residues, which meet the definition of "source material"

under the Price Anderson Act.

20.     Bridgeton denies the allegations of paragraph 20 of Plaintiffs' Second Amended

Complaint. Cotter's disposal of the leached barium sulfate residues was undertaken pursuant to

---

[2] In particular, Defendants note that the decisions on which Plaintiffs rely are based largely on a Magistrate Judge's twenty-one-year-old ruling that has been overturned in its own Circuit, *Gilberg v. Stepan Co.*, 24 F. Supp. 325 (D.N.J. 1998). *Gilberg* mistakenly limited the PAA definitions by ignoring the sweeping 1988 amendments to the Act after Three Mile Island and held an indemnification agreement was a jurisdictional requirement. This case has been widely criticized in other circuits in more recent decisions.
[3] The PAA defines "source material" as "(1) uranium, thorium, . . .; or (2) ores containing one or more of the foregoing materials[.]" 42 U.S.C.A. § 2014(z).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

an appropriate federal license. Cotter's source material license, issued by the Atomic Energy Commission, authorized it to possess an unlimited amount of uranium from December 3, 1969 to December 31, 1974. Further, when seeking to terminate its license, Cotter certified that the licensed material was lawfully disposed. In reliance on that representation, the AEC terminated Cotter's license. Thus, Defendants are alleged to have received the waste material directly from Cotter, a licensed entity, pursuant to the terms of its licensure.

21.     Bridgeton denies the allegations of paragraph 21 of Plaintiffs' Second Amended Complaint including the allegation that "mill tailings" are at issue. As noted above, the leached barium sulfate residues Cotter disposed at West Lake Landfill are subject to the Price Anderson Act.

## II.  THE PARTIES

### Plaintiffs

22.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

23.     Bridgeton denies the allegations contained in paragraph 23 of Plaintiffs' Second Amended Complaint.

### Defendants

24.     Bridgeton admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill. Bridgeton denies that that Rock Road Industries, Inc. still exists. Bridgeton denies each and every other allegation of Paragraph 24 not specifically admitted.

25.     Bridgeton denies it was formerly "Laidlaw Waste Systems." Bridgeton admits it is a Delaware Limited Liability Company with its principle place of business in Arizona.

Bridgeton denies the remaining allegations contained in paragraph 25 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

26.     Bridgeton admits that Rock Road Industries, Inc. was a Missouri corporation and owns or owned the West Lake Landfill.  Bridgeton denies the remaining allegations contained in paragraph 26 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

27.     Bridgeton admits that Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona.  Bridgeton acknowledges that Republic Services, Inc. is one of the larger providers of services in the solid waste industry and that it focuses on being a progressive contributor in the industry on both environmental and sustainability issues. Bridgeton denies the remaining allegations contained in paragraph 27 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

28.     Bridgeton admits that Allied Services, LLC is a Delaware limited liability company.  Bridgeton denies the remaining allegations contained in paragraph 28 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

29.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth and falsity of the allegations contained in paragraph 29 of Plaintiffs' Second Amended Complaint and therefore, denies the same. Bridgeton denies the remaining allegations contained in paragraph 29 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

### III. FACTS

30.     Bridgeton denies the allegations contained in paragraph 30 of Plaintiffs' Second Amended Complaint.

31.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

32.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

33.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

34.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

35.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

36.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

37.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

38.     Bridgeton denies the allegations contained in paragraph 38 of Plaintiffs' Second Amended Complaint.

39.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

40.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

41.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

42.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

43.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

44.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

45.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

46.     Answering Paragraph 46 Bridgeton admits that Cotter, without authority from or knowledge on the part of Bridgeton, caused leached barium sulfate residue to be trucked to the Westlake Landfill in 1973.  Defendant Bridgeton denies each and every allegation not specifically admitted.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

47. Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47 of Plaintiffs' Second Amended Complaint.

48. Bridgeton denies the allegations contained in paragraph 48 of Plaintiffs' Second Amended Complaint.

49. Bridgeton denies the allegations contained in paragraph 49 of Plaintiffs' Second Amended Complaint.

50. Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50 of Plaintiffs' Second Amended Complaint.

51. Bridgeton denies the allegations contained in paragraph 51 of Plaintiffs' Second Amended Complaint.

52. Bridgeton denies the allegations contained in paragraph 52 of Plaintiffs' Second Amended Complaint.

53. Bridgeton denies the allegations contained in paragraph 53 of Plaintiffs' Second Amended Complaint.

54. Bridgeton denies the allegations contained in paragraph 54 of Plaintiffs' Second Amended Complaint.

55. Bridgeton denies the allegations contained in paragraph 55 of Plaintiffs' Second Amended Complaint.

56. Bridgeton denies the allegations contained in paragraph 56 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

57.     Bridgeton denies the allegations contained in paragraph 57 of Plaintiffs' Second Amended Complaint.

58.     Bridgeton denies the allegations contained in paragraph 58 of Plaintiffs' Second Amended Complaint.

59.     Bridgeton moves to strike the allegations of Paragraph 59 because they are not necessary, according to Plaintiffs for their claims.    Answering Paragraph 59 Bridgeton admits upon information and belief that Cotter did not obtain a transportation license to transport radioactive mill tailings to the West Lake Landfill.  Bridgeton denies that the Leached Barium Sulfate Residue ("LBSR") is mill tailings.  Bridgeton denies that the LBSR is not source material.  Bridgeton denies that the LBSR was not subject to Cotter's license.   Bridgeton denies each and every other allegation of paragraph 59 not specifically admitted.

60.     Bridgeton denies the allegations contained in paragraph 60 of Plaintiffs' Second Amended Complaint.

61.     Bridgeton denies the allegations contained in paragraph 61 of Plaintiffs' Second Amended Complaint.

62.     Bridgeton denies the allegations contained in paragraph 62 of Plaintiffs' Second Amended Complaint.

63.     Bridgeton denies the allegations contained in paragraph 63 of Plaintiffs' Second Amended Complaint.

64.     Bridgeton denies the allegations contained in paragraph 64 of Plaintiffs' Second Amended Complaint.

65.     Bridgeton denies the allegations contained in paragraph 65 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Case: 4:17-cv-00024-CDP   Doc. #: 1-5   Filed: 11/05/19   Page: 13 of 39 PageID #: 2879

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

66.     Bridgeton denies the allegations contained in paragraph 66 of Plaintiffs' Second Amended Complaint.

67.     Bridgeton denies the allegations contained in paragraph 67 of Plaintiffs' Second Amended Complaint.

68.     Bridgeton denies the allegations contained in paragraph 68 of Plaintiffs' Second Amended Complaint.

69.     Bridgeton denies the allegations contained in paragraph 69 of Plaintiffs' Second Amended Complaint.

70.     Bridgeton denies the allegations contained in paragraph 70 of Plaintiffs' Second Amended Complaint.

71.     Bridgeton denies the allegations contained in paragraph 71 of Plaintiffs' Second Amended Complaint.

72.     Bridgeton denies the allegations contained in paragraph 72 of Plaintiffs' Second Amended Complaint.

73.     Bridgeton denies the allegations contained in paragraph 73 of Plaintiffs' Second Amended Complaint.

74.     Bridgeton denies the allegations contained in paragraph 74 of Plaintiffs' Second Amended Complaint.

75.     Bridgeton denies the allegations contained in paragraph 75 of Plaintiffs' Second Amended Complaint.

76.     Bridgeton denies the allegations contained in paragraph 76 of Plaintiffs' Second Amended Complaint.

77.     Bridgeton denies the allegations contained in paragraph 77 of Plaintiffs' Second Amended Complaint.

78.     Bridgeton denies the allegations contained in paragraph 78 of Plaintiffs' Second Amended Complaint.

79.     Bridgeton denies the allegations contained in paragraph 79 of Plaintiffs' Second Amended Complaint.

80.     Bridgeton denies the allegations contained in paragraph 80 of Plaintiffs' Second Amended Complaint.

81.     Bridgeton denies the allegations contained in paragraph 81 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

82.     Bridgeton denies the allegations contained in paragraph 82 of Plaintiffs' Second Amended Complaint.

83.     Bridgeton denies the allegations contained in paragraph 83 of Plaintiffs' Second Amended Complaint.

84.     Bridgeton denies the allegations contained in paragraph 84 of Plaintiffs' Second Amended Complaint.

85.     Bridgeton denies the allegations contained in paragraph 85 of Plaintiffs' Second Amended Complaint.

86.     Bridgeton denies the allegations contained in paragraph 86 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

87.     Bridgeton denies the allegations contained in paragraph 87 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

88.     Bridgeton denies the allegations contained in paragraph 88 of Plaintiffs' Second Amended Complaint.

89.     Bridgeton denies the allegations contained in paragraph 89 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

90.     Bridgeton denies the allegations contained in paragraph 90 of Plaintiffs' Second Amended Complaint.

91.     Bridgeton denies the allegations contained in paragraph 91 of Plaintiffs' Second Amended Complaint.

92.     Bridgeton denies the allegations contained in paragraph 92 of Plaintiffs' Second Amended Complaint.

93.     Bridgeton denies the allegations contained in paragraph 93 of Plaintiffs' Second Amended Complaint.

94.     Bridgeton denies the allegations contained in paragraph 94 of Plaintiffs' Second Amended Complaint.

95.     Bridgeton denies the allegations contained in paragraph 95 of Plaintiffs' Second Amended Complaint.

96.     Bridgeton denies the allegations contained in paragraph 96 of Plaintiffs' Second Amended Complaint.

97.     Bridgeton denies the allegations contained in paragraph 97 of Plaintiffs' Second Amended Complaint.

98.     Bridgeton denies the allegations contained in paragraph 98 of Plaintiffs' Second Amended Complaint.

99.    Bridgeton denies the allegations contained in paragraph 99 of Plaintiffs' Second Amended Complaint.

## COUNT I – TRESPASS

100.    In response to paragraph 100 of Count I of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the Second Amended Complaint.

101.    Bridgeton is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 101 and therefore denies the allegations contained in paragraph 101 of Count I of Plaintiffs' Second Amended Complaint.

102.    Bridgeton admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill.  Bridgeton denies that Rock Road Industries, Inc. currently exists.  Bridgeton denies every allegation not specifically admitted contained in paragraph 102 of Count I of Plaintiffs' Second Amended Complaint.

103.    Bridgeton denies the allegations contained in paragraph 103 of Count I of Plaintiffs' Second Amended Complaint.

104.    Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 104 of Count I of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

105.    Bridgeton denies the allegations contained in paragraph 105 of Count I of Plaintiffs' Second Amended Complaint.

106.    Bridgeton denies the allegations contained in paragraph 106 of Count I of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

107.    Bridgeton denies the allegations contained in paragraph 107 of Count I of Plaintiffs' Second Amended Complaint.

108.    Bridgeton denies the allegations contained in paragraph 108 of Count I of Plaintiffs' Second Amended Complaint.

109.    Bridgeton denies the allegations contained in paragraph 109 of Count I of Plaintiffs' Second Amended Complaint.

110.    Bridgeton denies the allegations contained in paragraph 110 of Count I of Plaintiffs' Second Amended Complaint.

111.    Bridgeton denies the allegations contained in paragraph 111 of Count I of Plaintiffs' Second Amended Complaint.

112.    Bridgeton denies the allegations contained in paragraph 112 of Count I of Plaintiffs' Second Amended Complaint.

## COUNT II – PERMANENT NUISANCE

113.    In response to paragraph 113 of Count II of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, and 100 through 112 of Count I of Plaintiffs' Second Amended Complaint.

114.    Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 114 of Count II of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

115.    Bridgeton admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill, and Rock Road Industries, Inc. owned and operated the West Lake Landfill.  Bridgeton

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

denies the remaining allegations contained in paragraph 115 of Count II of Plaintiffs' Second Amended Complaint.

116.    Bridgeton denies the allegations contained in paragraph 116 of Count II of Plaintiffs' Second Amended Complaint.

117.    Bridgeton denies the allegations contained in paragraph 117 of Count II of Plaintiffs' Second Amended Complaint.

118.    Bridgeton denies the allegations contained in paragraph 118 of Count II of Plaintiffs' Second Amended Complaint.

119.    Paragraph 119 of Count II of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Bridgeton.  IF and to the extent a response is deemed to be required by the Court, Bridgeton denies the allegations contained in paragraph 119 of Count II of Plaintiffs' Second Amended Complaint.

120.    Bridgeton denies the allegations contained in paragraph 120 of Count II of Plaintiffs' Second Amended Complaint.

121.    Bridgeton denies the allegations contained in paragraph 121 of Count II of Plaintiffs' Second Amended Complaint.

122.    Bridgeton denies the allegations contained in paragraph 122 of Count II of Plaintiffs' Second Amended Complaint.

123.    Bridgeton denies the allegations contained in paragraph 123 of Count II of Plaintiffs' Second Amended Complaint.

124.    Bridgeton denies the allegations contained in paragraph 124 of Count II of Plaintiffs' Second Amended Complaint.

## COUNT III – TEMPORARY NUISANCE

125.    In response to paragraph 125 of Plaintiffs' Second Amended Complaint,

Bridgeton incorporates by reference its answers and responses to each and every allegation

contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, and

113 through 124 of Count II of Plaintiffs' Second Amended Complaint.

126.    Bridgeton is without information or knowledge sufficient to form a belief as to the

truth or falsity of the allegations contained in paragraph 126 of Plaintiffs' Second Amended

Complaint and, therefore, denies the same.

127.    Bridgeton admits that Bridgeton Landfill, LLC owns and operates the Bridgeton

Landfill.  Bridgeton denies that Rock Road Industries, Inc. exists.  Bridgeton denies each and

every allegation in paragraph 127 of Plaintiffs' Second Amended Complaint not specifically

admitted.

128.    Bridgeton denies the allegations contained in paragraph 128 of Plaintiffs' Second

Amended Complaint.

129.    Bridgeton denies the allegations contained in paragraph 129 of Plaintiffs' Second

Amended Complaint.

130.    Bridgeton denies the allegations contained in paragraph 130 of Plaintiffs' Second

Amended Complaint.

131.    Bridgeton denies the allegations contained in paragraph 131 of Plaintiffs' Second

Amended Complaint.

132.    Bridgeton denies the allegations contained in paragraph 132 of Plaintiffs' Second

Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

133.     Bridgeton denies the allegations contained in paragraph 133 of Plaintiffs' Second Amended Complaint.

134.     Bridgeton denies the allegations contained in paragraph 134 of Plaintiffs' Second Amended Complaint.

**COUNT IV – NEGLIGENCE**

135.     In response to paragraph 135 of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III of Plaintiffs' Second Amended Complaint.

136.     Bridgeton denies the allegations contained in paragraph 136 of Plaintiffs' Second Amended Complaint.

137.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 137 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

138.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 138 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

139.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 139 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

140.     Bridgeton denies the allegations contained in paragraph 140 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

141.    Bridgeton denies the allegations contained in paragraph 141 of Plaintiffs' Second Amended Complaint.

142.    Bridgeton denies the allegations contained in paragraph 142 of Plaintiffs' Second Amended Complaint.

143.    Bridgeton denies the allegations contained in paragraph 143 of Plaintiffs' Second Amended Complaint.

144.    Bridgeton denies the allegations contained in paragraph 144 of Plaintiffs' Second Amended Complaint.

145.    Bridgeton denies the allegations contained in paragraph 145 of Plaintiffs' Second Amended Complaint.

146.    Bridgeton denies the allegations contained in paragraph 146 of Plaintiffs' Second Amended Complaint.

147.    Bridgeton denies the allegations contained in paragraph 147 of Plaintiffs' Second Amended Complaint.

148.    Bridgeton denies the allegations contained in paragraph 148 of Plaintiffs' Second Amended Complaint.

149.    Bridgeton denies the allegations contained in paragraph 149 of Plaintiffs' Second Amended Complaint.

150.    Bridgeton denies the allegations contained in paragraph 150 of Plaintiffs' Second Amended Complaint.

151.    Bridgeton denies the allegations contained in paragraph 151 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

152.     Bridgeton denies the allegations contained in paragraph 152 of Plaintiffs' Second Amended Complaint.

## COUNT V – NEGLIGENCE PER SE

153.     In response to paragraph 153 of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III and 135 through 152 of Count IV of Plaintiffs' Second Amended Complaint.

154.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 of Count IV of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

155.     Bridgeton denies the allegations contained in paragraph 155 of Count IV of Plaintiffs' Second Amended Complaint.

156.     Bridgeton denies the allegations contained in paragraph 156 of Count IV of Plaintiffs' Second Amended Complaint.

157.     Bridgeton is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 157 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

158.     Paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Bridgeton.  If and to the extent a response is deemed to be required by the Court, Bridgeton denies the allegations contained in paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

159.    Bridgeton denies the allegations contained in paragraph 159 of Count IV of Plaintiffs' Second Amended Complaint.

160.    Bridgeton denies the allegations contained in paragraph 160 of Count IV of Plaintiffs' Second Amended Complaint.

161.    Bridgeton denies the allegations contained in paragraph 161 of Count IV of Plaintiffs' Second Amended Complaint.

162.    Bridgeton denies the allegations contained in paragraph 162 of Count IV of Plaintiffs' Second Amended Complaint.

163.    Bridgeton denies the allegations contained in paragraph 163 of Count IV of Plaintiffs' Second Amended Complaint.

164.    Bridgeton denies the allegations contained in paragraph 164 of Count IV of Plaintiffs' Second Amended Complaint.

## COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY

165.    In response to paragraph 165 of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV and 153 through 164 of Count V of Plaintiffs' Second Amended Complaint.

166.    Bridgeton denies the allegations contained in paragraph 166 of Count VI of Plaintiffs' Second Amended Complaint.

167.    Bridgeton denies the allegations contained in paragraph 167 of Count VI of Plaintiffs' Second Amended Complaint.

168.    Bridgeton denies the allegations contained in paragraph 168 of Count VI of Plaintiffs' Second Amended Complaint.

169.    Bridgeton denies the allegations contained in paragraph 169 of Count VI of Plaintiffs' Second Amended Complaint.

170.    Bridgeton denies the allegations contained in paragraph 170 of Count VI of Plaintiffs' Second Amended Complaint.

171.    Bridgeton denies the allegations contained in paragraph 171 of Count VI of Plaintiffs' Second Amended Complaint.

172.    Bridgeton denies the allegations contained in paragraph 172 of Count VI of Plaintiffs' Second Amended Complaint.

## COUNT VII – INJUNCTIVE RELIEF

173.    In response to paragraph 173 of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V and 165 through 172 of Count VI of Plaintiffs' Second Amended Complaint.

174.    Bridgeton denies the allegations contained in paragraph 174 of Count VII of Plaintiffs' Second Amended Complaint.

175.    Bridgeton denies the allegations contained in paragraph 175 of Count VII of Plaintiffs' Second Amended Complaint.

176.    Bridgeton denies the allegations contained in paragraph 176 of Count VII of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

177.   Bridgeton denies the allegations contained in paragraph 177 of Count VII of Plaintiffs' Second Amended Complaint.

178.   Bridgeton denies the allegations contained in paragraph 178 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 178 of Plaintiffs' Second Amended Complaint Bridgeton states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

179.   Bridgeton denies the allegations contained in paragraph 179 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 179 of Plaintiffs' Second Amended Complaint Bridgeton states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

180.   Bridgeton denies the allegations contained in paragraph 180 of Count VII of Plaintiffs' Second Amended Complaint.  Further answering paragraph 178 of Plaintiffs' Second Amended Complaint Bridgeton states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

## COUNT XIII – PUNITIVE DAMAGES

181.    In response to paragraph 181 of Plaintiffs' Second Amended Complaint, Bridgeton incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V, 165 through 172 of Count VI and 173 through 188 of Count VII of Plaintiffs' Second Amended Complaint.

182.   Bridgeton denies the allegations contained in paragraph 182 of Count XIII of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

183.    Bridgeton denies the allegations contained in paragraph 183 of Count XIII of Plaintiffs' Second Amended Complaint.

184.    Bridgeton denies the allegations contained in paragraph 184 of Count XIII of Plaintiffs' Second Amended Complaint.

185.    Bridgeton denies that Plaintiffs are entitled to relief request in the "WHEREFORE" paragraph, including all subparts therefore, which immediately follows paragraph 184 of Plaintiffs' Second Amended Complaint.

186.    Bridgeton denies each and every allegation contained in Plaintiffs' Second Amended Complaint not specifically admitted.

## AFFIRMATIVE AND/OR FURTHER DEFENSES

Bridgeton asserts that Plaintiffs' claims are barred, in whole or in part, by the defenses set forth below. By setting forth these defenses, Bridgeton does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Moreover, nothing herein stated is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiffs' allegations. Bridgeton reserves the right to plead any affirmative defense asserted by any co-defendant(s) or any and all affirmative defenses that may become evident or appreciated after investigation and discovery in this matter.

1.    Plaintiffs have failed to state a claim against Bridgeton upon which relief can be granted.

2.    Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to Mo. Rev. Stat. 516.120 and any limitations period which applies to actions under the Price-Anderson Act.

3.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of repose.

4.     If Plaintiffs have been damaged, which is not hereby admitted, such damages were caused by unforeseeable, independent, intervening, and/or superseding events for which Bridgeton is not legally responsible.

5.     Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not hereby admitted, such injury or damage may have been caused or contributed to by the negligence or fault of persons or entities over whom this Defendant had no control, and such injuries or damages were not caused or contributed to by the negligence or fault of this Defendant or any of its agents, servants or employees.

6.     Pleading in the alternative, if Plaintiffs suffered any injury or damage, which is not hereby admitted, the negligence or fault of the parties to this case should be compared by the trier-of-fact; further, any negligence or fault apportioned to Plaintiffs should act to bar any recovery or reduce any recovery in direct proportion to any such assessment of fault, all in accordance with the laws of the State of Missouri.

7.     Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not admitted, this Defendant requests that the negligence alleged by Plaintiffs against others including other Defendants,  though not hereby admitted, be compared to the negligence or fault of this Defendant, to the extent that any such negligence is found to have caused or contributed to cause any injuries or damages alleged by Plaintiffs, and recovery against this Defendant should be reduced in direct proportion to such assessment of fault.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

8.    If Plaintiffs have been damaged, the negligence or fault of persons or entities, for whose conduct Bridgeton is not legally responsible, must be compared, reducing or completely barring Plaintiffs' alleged right to recover against Bridgeton.

9.    If Plaintiffs have been damaged, the damages were caused by operation of nature, idiosyncratic reaction(s), pre-existing condition(s), and/or subsequent injury over which Bridgeton had no control.

10.    If Plaintiffs have been damaged, which is not admitted, any recovery is barred to the extent each Plaintiff voluntarily exposed himself or herself to a known risk. Any recovery should not include alleged damages that Plaintiffs could have avoided by reasonable care and diligence.

11.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of assumption of the risk, by Plaintiffs' failure to mitigate damages, and/or by Plaintiffs' own conduct.

12.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent, whether it be by Plaintiffs or other third parties who later approved Bridgeton's activities.

13.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver and/or the doctrine of estoppel.

14.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

15.    Plaintiffs' Second Amended Complaint and each purported cause of action therein are barred, in whole or in part, by the doctrine of unclean hands.

16.    Plaintiffs failed to exhaust their administrative remedies.

17.    Plaintiffs' claims are barred, in whole or in part, because they at all times had actual and/or constructive knowledge of the circumstances upon which the Complaint is based, and the Plaintiffs accepted those circumstances.

18.     Plaintiffs' claims are barred, in whole or in part, because at all times and places mentioned in the Complaint, Bridgeton complied with the state of the art, and therefore, Plaintiffs are not entitled to recover from Bridgeton as a matter of law.

19.     Plaintiffs' claims are barred, in whole or in part, because the potential for injuries or damages alleged in the Complaint were not known to Bridgeton, nor did Bridgeton have reason to know of the risk of said harm.

20.     Bridgeton has completely satisfied all legal duties, if any, with regard to the Plaintiffs and thus is released from liability.

21.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

22.     Plaintiffs failed to join St. Louis Lambert Airport as a necessary or indispensable party to the extent the injunctive relief sought by Plaintiffs affects the airport's negative easement at Bridgeton Landfill.

23.     Plaintiffs failed to join the U.S. Environmental Protection Agency, the Department of Energy or other successor entities to the Atomic Energy Commission, and other federal agencies, which are indispensable parties for the claims made in this Complaint.

24.     Plaintiffs' request for injunctive relief is preempted as it attempts to shape and therefore challenge the remedy already underway under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and violates the timing of review provisions thereunder, 42 U.S.C. § 9613(h).

25.     Plaintiffs' claims should be dismissed for their failure to join indispensable parties.

26.     The federal government, through federal statutes, has preempted the field of law applicable to the claims at issue. The activities referred to in the Complaint were and are

controlled by federal law, which governs the nuclear industry at all times. Plaintiffs' claims are thus preempted in whole or in part such that they fail to state a cause of action upon which relief can be granted.

27.     Bridgeton asserts any and all defenses, claims, credits, offsets, or remedies provided by the Price Anderson Act, 42 U.S.C. 2210, as amended, and reserves the right to amend its Answer to file such further pleadings as are necessary to preserve and assert such defenses, claims, credits, offsets, or remedies.

28.     Bridgeton has at all times acted in conformance with applicable guidelines or regulations that establish the standard of care and has otherwise acted with due care and the caution of a reasonably prudent entity.

29.     Bridgeton acted reasonably, in good faith, and with the skill, prudence, and diligence exercised by a reasonably prudent actor at all times relevant to this action.

30.     Bridgeton conducted all actions in accordance with industry standards, government requirements, and the prevailing state of the art and technology in the industry at the time of the alleged act.

31.     Plaintiffs' claims are barred, in whole or in part, because the injuries and damages alleged were not known to Bridgeton, nor did Bridgeton have reason to know of the alleged risk of harm.

32.     Any allegedly wrongful acts or omissions of Bridgeton, if and to the extent such acts or omissions occurred, were legally excused or justified.

33.     Plaintiffs' claims are barred, in whole or in part, because Bridgeton did not breach any duty to Plaintiffs.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

34.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were not exposed to any substance allegedly caused by Bridgeton's acts sufficient to establish by a reasonable degree of probability that any such exposure caused any alleged injury, damage or loss.

35.     Plaintiffs' claims are barred, in whole or in part, because the damages Plaintiffs seek are too remote, indirect, and/or speculative.

36.     The Complaint and each purported cause of action therein are barred, in whole or in part, because the operations at issue were in existence and ongoing prior to the Plaintiffs purchasing and/or moving to their residence.

37.     The Complaint and each purported cause of action therein are barred because the utility of the conduct of which Plaintiffs complain outweighs any alleged harm to Plaintiffs.

38.     Plaintiffs' claims are barred to the extent they rely on the retroactive application of statutes, rules, regulations or common-law standards of conduct, or otherwise seek to impose liability retroactively for conduct that was not actionable at the time it occurred, which violates the Constitutions of the United States and the State of Missouri.

39.     To the extent Plaintiffs' claims are based upon any theory providing for liability without proof of causation, they violate Bridgeton's rights under the United States Constitution and/or the Constitution of the State of Missouri, and the Constitution of any other state law that may be found to apply.

40.     The punitive damages sought by Plaintiffs are not recoverable under the causes of action set forth in Plaintiffs' Second Amended Complaint and Plaintiffs' allegations are legally insufficient to support a claim for punitive damages.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

41.     Bridgeton denies that Plaintiffs are entitled to recover punitive damages in this case because Bridgeton's conduct demonstrated reasonable care. Intent to injure, actual or constructive, is completely absent in this case. Bridgeton did not act with actual malice, and no act or omission of Bridgeton was done with reckless indifference or reckless disregard toward the rights or safety of others, and therefore any award of punitive damages is barred.

42.     Bridgeton denies all allegations of wrongdoing and damages as alleged in the Complaint, but if in fact Plaintiffs did sustain damages, Plaintiffs' damages do not include punitive damages.

43.     Any assessment of punitive damages violates Bridgeton's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, the Missouri Constitution Article 1, Sections 18A, 19, 21, and 22A, and any other applicable State Constitution in one or more of the following respects:

a)      The guidelines, standards, and/or instructions for assessing punitive damages are vague, indefinite, and/or uncertain, supply no notice of the potential repercussions of any alleged conduct, set no limit on the damages that can be awarded, fail to require proof of every element beyond a reasonable doubt, are subject to the unbridled discretion of the jury, and do not allow adequate judicial review, thereby denying due process;

b)      The assessment of punitive damages is criminal or penal in nature and, therefore, the rights given defendants in criminal proceedings are applicable;

c)      The assessment of punitive damages amounts to the imposition of an excessive fine and/or cruel and unusual punishment;

d)      The assessment of punitive damages exposes Bridgeton to multiple punishments and fines for the same act;

Case: 4:27-cv-00162-CDP Doc. #: 1-51 Filed: 01/20/22 Page: 115 of 449 PageID #: 2699
Case: 4:17-cv-00024-CDP Doc. #: 151 Filed: 11/03/19 Page: 33 of 36 PageID #: 2919
Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

e) The assessment of punitive damages constitutes double jeopardy;

f) The assessment of punitive damages discriminates in that corporate status, wealth, or net worth may be considered by the jury in determining the amounts of any such damage awards and different amounts can be awarded against different defendants for the same act depending solely on the status or material wealth of the various defendants, thereby denying equal protection under the law;

g) The assessment of punitive damages does not provide an adequate procedure for the determination of punitive damages in violation of the equal protection and substantive and procedural due process requirements of the United States Constitution and applicable State Constitutions in violation of the United States Supreme Court's decision in *Pacific Mutual Ins. Co. v. Haslip*;

h) The assessment of punitive damages constitutes an impermissible burden on interstate commerce; and

i) The assessment of punitive damages constitutes a violation of due process and other constitutional rights of Bridgeton as set forth in the United States Supreme Court decisions in *State Farm Mut. Auto. Ins. Co. v. Campbell, Pacific Mutual Ins. Co. v. Haslip,* and *BMW of North America, Inc. v. Gore;* and the Missouri Supreme Court's holding in *Alcorn v. Union Pacific R.R. Co.*

44. To the extent that any defense to punitive damages arousing out of Chapter 537 or other sections of the Missouri Revised Statutes accrues to the benefit of Bridgeton, Bridgeton reserves the right to assert the same should the facts warrant it.

45. Plaintiffs' purported cause of action and alleged damages, if any, were not proximately caused by any act or omission of Bridgeton.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

46.     If Plaintiffs recover from Bridgeton, Bridgeton is entitled to contribution, set-off, and/or indemnification, either in whole or in part, from all persons or entities whose negligence or fault proximately caused or contributed to cause Plaintiffs' alleged damages.

47.     Plaintiffs' claims are or may be barred, in whole or in part, to the extent that Plaintiffs have released, settled with, entered into an accord and satisfaction, or otherwise compromised their claims. Bridgeton is entitled to a set-off for the entire amount of proceeds Plaintiffs have or may recover from other sources.

48.     Pursuant to R.S.Mo. 537.060, if and to the extent that any other Defendant or party enter into a release agreement, covenant not to sue or note to enforce a judgment, or any other type of settlement agreement with Plaintiffs, this Defendant is entitled to have any judgments that may be rendered against it reduced by the stipulated amount of the agreement, or the amount of the consideration paid, whichever is greater.

49.     If the property in question was exposed to any chemical or compound connected to this Defendant, which is specifically denied, then such exposure was inconsequential or de minimis, thus barring any recovery by the Plaintiffs.

50.     This Defendant was at all times in full compliance with all applicable industry and regulatory standards and, therefore, had no further duty to warn.

51.     Bridgeton pleads all applicable limitation on Plaintiffs' recovery of damages as to amount or type as may be applicable to this matter under Missouri law or other applicable law or statute.

52.     Plaintiffs' claims are barred to the extent Plaintiffs do not have standing to seek relief.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

53.     Bridgeton hereby adopts and incorporates herein any other defense asserted by any other Defendant in this action.

54.     Bridgeton reserves the right to amend its Answer as discovery progresses to plead additional defenses, and to assert cross-claims, counterclaims or third-party claims.

55.     Plaintiffs claims are barred by the doctrines of collateral estoppel and res judicata.

WHEREFORE, having fully answered Plaintiffs' Second Amended Complaint, Bridgeton Landfill, LLC requests that Plaintiffs take nothing by their Complaint, that the Second Amended Complaint be dismissed, that Bridgeton be awarded its costs, expenses, and attorney's fees incurred in the defense of this litigation, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, LLC, and Rock Road Industries, Inc.[4] demand a jury trial on all claims for which they are entitled to a jury trial.

---

[4] As of April 9, 2018, Rock Road Industries, Inc. formally merged into Bridgeton Landfill, LLC, a Delaware Limited Liability Company.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Dated:  November 5, 2019          LATHROP GAGE LLP

By: /s/ William G. Beck
     William G. Beck      26849MO
     Peter F. Daniel       33798MO
     Allyson E. Cunningham  64802MO
     2345 Grand Boulevard, Suite 2200
     Kansas City, Missouri 64108-2618
     Telephone:     (816) 292-2000
     Telecopier:    (816) 292-2001
     wbeck@lathropgage.com
     pdaniel@lathropgage.com
     acunningham@lathropgage.com

     Patricia Lehtinen Silva   67213MO
     Pierre Laclede Center
     7701 Forsyth Boulevard, Suite 500
     Clayton, Missouri 63105
     Telephone:     (314) 613-2800
     Telecopier:    (314) 613-2801
     psilva@lathropgage.com

     ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2019, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve notice on all counsel of record.

     /s/ William G. Beck
     An Attorney for Defendants

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MICHAEL DAILEY, et al.                     )
                                           )
                                           )
                  Plaintiffs,              )
                                           )   Case No.  4:17-cv-00024-CDP
vs.                                        )
                                           )
BRIDGETON LANDFILL, LLC, et al.            )
                                           )
                                           )
                  Defendants.              )

**ANSWER OF SEPARATE DEFENDANT REPUBLIC SERVICES, INC.**
**TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendant Republic Services, Inc. ("Republic"), for its Answer and Affirmative Defenses

to Plaintiffs' Second Amended Complaint ("Complaint"), states as follows:

1.      Republic denies the allegations contained in paragraph 1 of Plaintiffs' Second

Amended Complaint.

2.      Republic denies the allegations contained in paragraph 2 of Plaintiffs' Second

Amended Complaint.

3.      Republic denies the allegations contained in paragraph 3 of Plaintiffs' Second

Amended Complaint.

4.      Republic denies the allegations contained in paragraph 4 of Plaintiffs' Second

Amended Complaint.

5.      Republic denies the allegations contained in paragraph 5 of Plaintiffs' Second

Amended Complaint.

6.      Republic states that paragraph 6 of Plaintiffs' Second Amended Complaint pleads

no facts and instead makes assertions based on unsupported theories and legal conclusions, and,

therefore, does not require a response. To the extent the Court deems a response to paragraph 6 necessary, Republic denies the allegations contained therein.

7. Republic denies the allegations contained in paragraph 7 of Plaintiffs' Second Amended Complaint.

8. Republic denies the allegations contained in paragraph 8 of Plaintiffs' Second Amended Complaint.

9. Republic moves to strike Paragraph 9 of Plaintiffs' Second Amended Complaint because according to Plaintiffs it is "informational only" and therefore not part of its Second Amended Complaint. Further answering Paragraph 9 Republic denies the allegations contained in paragraph 9 of Plaintiffs' Second Amended Complaint.

## JURISDICTION, AUTHORITY, AND VENUE

10. In response to paragraph 10 of Plaintiffs' Second Amended Complaint, Republic denies that the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County has jurisdiction and authority over the claims made by Plaintiffs. pursuant to the Price-Anderson Act. Republic denies any jurisdiction over "state tort law claims" because any such purported claim is preempted by the Price-Anderson Act. Republic denies that Plaintiffs have properly pleaded venue for this Court.

11. Answering Paragraph 11 Republic admits that as of the dates this case was originally filed that diversity jurisdiction did not exist however Republic denies that this Court is without subject matter jurisdiction. Republic denies each fact not specifically admitted.

12. Answering paragraph 12 Republic denies that venue is proper in the Twenty-First Judicial Circuit of the State of Missouri in St. Louis County. Republic denies that Plaintiffs have adequately pleaded jurisdiction in this Court.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

13.     Republic denies the statement in Paragraph 13.  Whether or not Plaintiffs voluntarily classify their causes of action as federal ones, their causes of action fit squarely in the framework of the Price-Anderson Act ("PAA" or "the Act"), 42 U.S.C. § 2011 *et seq.*  Artful pleading cannot remedy the fact that Plaintiffs may sue "under the PAA or not at all."  *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013).

14.     Answering Paragraph 14 Republic denies the assertion of Paragraph 14 that Plaintiffs' claims do not fall within the scope of the Price Anderson Act.

A.     Whether or not the Landfill is a licensed nuclear facility is irrelevant to whether the Price Anderson Act applies.  Upon its review of cases from around the country, the court in *Estate of Ware ex rel. Boyer v. Hospital of University of Pennsylvania*, expressly rejected the view that a public liability claim under the PAA is "limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities."  73 F. Supp. 3d 530 (E.D. Pa. 2014); *see, also, Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1503-04 (10th Cir. 1997) ("Congress intended to expand federal control over safety and liability issues involving the nuclear industry," and the PAA created "a federal forum for any tort claim even remotely involving atomic energy production"); *Cotromano*, 7 F. Supp. 3d at 1257–58 (application of PAA is not limited to licensed activities).

B.     Whether or not Defendants received a license to possess, transport, or dispose of any radioactive wastes on or in the Landfill is irrelevant to whether the Price Anderson Act applies.  As noted above, a license is not required for the Price Anderson Act to apply.  Further, the entity that deposited the RIM at the West Lake Landfill—Cotter Corporation—did, in fact, hold a source material license

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

issued by the AEC, which authorized it to possess an unlimited amount of uranium from December 3, 1969 to December 31, 1974.[1]

C.    Whether or not Defendants entered into an indemnification agreement with the United States government under 42 U.S.C. § 2210 is irrelevant to whether the Price Anderson Act applies. The Act provides that a "person indemnified" by the licensee and the federal government is "the person with whom an indemnity agreement is executed or who is required to maintain a financial protection, **and any other person who may be liable for public liability**." 42 U.S.C. § 2014(t) (emphasis added). Federal courts have held the Act's plain meaning indicates the PAA is not limited to parties to indemnification agreements. *See, e.g., Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[O]ne purpose behind the 1988 amendments was to expand the scope of federal jurisdiction beyond actions arising from 'extraordinary nuclear occurrences' only."); *Estate of Ware v. Hosp. of the Univ. of Pa.*, 73 F. Supp. 3d 519, 530–31 (E.D. Pa. 2014) (adopting analysis of courts "which have concluded that possession of…an indemnification agreement is unrelated to establishing jurisdiction under PAA"); *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1259 (S.D. Fla. 2014) ("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson"); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999) ("there can be an [extraordinary nuclear occurrence] to which no indemnity agreement applies.").

15.    Republic denies the allegations of paragraph 15 of Plaintiffs' Second Amended Complaint. The statement quoted from Defendants Rock Road and Bridgeton's Memorandum in

---

[1] Source Material License No. SUB-1022 is attached as Exhibit 1.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

Support of Motion to Dismiss (the "Memorandum") in *Adams v. MI Holdings, Inc.* (Eastern

District of Missouri Case No. 4:12-cv-00641) (Doc. No. 15), are taken out of context and are

distinguishable. The *Adams* Complaint incorrectly alleged Rock Road Industries, Inc. and

Bridgeton Landfill, LLC "or their predecessors and/or agents have at all relevant times held such

federal [Nuclear Regulatory Commission] licenses." Eastern District of Missouri Case No. 4:12-

cv-00641, Doc. No. 1 ¶ 65. A PAA claim was alleged based upon the possession of these

licenses and activities in which Defendants Rock Road and Bridgeton were never involved. In

their Memorandum in Support of Motion to Dismiss (E.D. Mo. Doc. No. 15), then-existing Rock

Road and Bridgeton refuted the specific allegations appearing in the *Adams* Complaint and the

purported effect of those allegations. The Defendants did not make a general statement of PAA

applicability.

16.     Republic denies the allegations of paragraph16 of Plaintiffs' Second Amended

Complaint. Despite Plaintiffs' attempt to frame their claims in strictly state law terms, Plaintiffs'

Second Amended Complaint asserts a nuclear incident because they cite an alleged occurrence

that caused bodily injury, disease, damage to property, or loss of use of property, within the

United States, arising or resulting from the radioactive properties of material deposited at the

West Lake Landfill. Because the factual allegations underlying Plaintiffs' purported injuries all

relate to the Defendants' conduct in connection with nuclear and radioactive materials, Plaintiffs'

claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action

is the only remedy available for Plaintiffs' alleged injuries. *McClurg*, 933 F. Supp. 2d at 1186.

17.     Republic denies the allegations of paragraph 17 of Plaintiffs' Second Amended

Complaint. A small number of courts in the Eastern District of Missouri have determined that

the Price Anderson Act does not apply to the wastes at issue here. *See, e.g., Strong v. Republic*

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

*Servs., Inc.*, 2017 WL 4758958 (E.D. Mo. 2017)*; Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). Defendants respectfully challenge these decisions and assert that other federal courts have correctly interpreted the plain language of the Act, as well as the Congressional intent behind the 1988 amendments, to hold that neither a license nor an indemnity agreement is required for federal subject matter jurisdiction under the PAA.[2] Even the decisions on which Plaintiffs rely have noted there is case law on both sides of the argument and chosen to apply a presumption in favor of remand.

18.      Republic denies the allegations of paragraph 18 of Plaintiffs' Second Amended Complaint. The waste at issue is leached barium sulfate residue, a product of uranium processing by Mallinckrodt Chemical Company as part of its work for the United States Army related to the Manhattan Project. The leached barium sulfate residue, which is estimated to have contained approximately seven tons of uranium, was mixed with topsoil and then brought to the West Lake Landfill. Because the waste at issue contained uranium it meets the PAA definition of "source material."[3]

19.      Republic denies the allegations of paragraph 19 of Plaintiffs' Second Amended Complaint. The "mill tailings" that Plaintiffs reference throughout the Second Amended Complaint are leached barium sulfate residues, which meet the definition of "source material" under the Price Anderson Act.

20.      Republic denies the allegations of paragraph 20 of Plaintiffs' Second Amended Complaint. Cotter's disposal of the leached barium sulfate residues was undertaken pursuant to

---

[2] In particular, Defendants note that the decisions on which Plaintiffs rely are based largely on a Magistrate Judge's twenty-one-year-old ruling that has been overturned in its own Circuit, *Gilberg v. Stepan Co.*, 24 F. Supp. 325 (D.N.J. 1998). *Gilberg* mistakenly limited the PAA definitions by ignoring the sweeping 1988 amendments to the Act after Three Mile Island and held an indemnification agreement was a jurisdictional requirement. This case has been widely criticized in other circuits in more recent decisions.

[3] The PAA defines "source material" as "(1) uranium, thorium, . . .; or (2) ores containing one or more of the foregoing materials[.]" 42 U.S.C.A. § 2014(z).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

an appropriate federal license. Cotter's source material license, issued by the Atomic Energy Commission, authorized it to possess an unlimited amount of uranium from December 3, 1969 to December 31, 1974. Further, when seeking to terminate its license, Cotter certified that the licensed material was lawfully disposed. In reliance on that representation, the AEC terminated Cotter's license. Thus, Defendants are alleged to have received the waste material directly from Cotter, a licensed entity, pursuant to the terms of its licensure.

21.     Republic denies the allegations of paragraph 21 of Plaintiffs' Second Amended Complaint including the allegation that "mill tailings" are at issue. As noted above, the leached barium sulfate residues Cotter disposed at West Lake Landfill are subject to the Price Anderson Act.

## II.  THE PARTIES

### Plaintiffs

22.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 22 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

23.     Republic denies the allegations contained in paragraph 23 of Plaintiffs' Second Amended Complaint.

### Defendants

24.     Republic admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill. Republic denies that that Rock Road Industries, Inc. still exists. Republic denies each and every other allegation of Paragraph 24 not specifically admitted.

25.     Republic denies Bridgeton Landfill, LLC was formerly "Laidlaw Waste Systems." Republic admits Bridgeton Landfill, LLC is a Delaware Limited Liability Company

with its principle place of business in Arizona. Republic denies the remaining allegations contained in paragraph 25 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

26. Republic admits that Rock Road Industries, Inc. was a Missouri corporation and owns or owned the West Lake Landfill. Republic denies the remaining allegations contained in paragraph 26 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

27. Republic admits that it is a Delaware corporation with its principal place of business in Arizona. Republic acknowledges that it is one of the larger providers of services in the solid waste industry and that it focuses on being a progressive contributor in the industry on both environmental and sustainability issues. Republic denies the remaining allegations contained in paragraph 27 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

28. Republic admits that Allied Services, LLC is a Delaware limited liability company. Republic denies the remaining allegations contained in paragraph 28 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

29. Republic is without information or knowledge sufficient to form a belief as to the truth and falsity of the allegations contained in paragraph 29 of Plaintiffs' Second Amended Complaint and therefore, denies the same.

### III. FACTS

30. Republic denies the allegations contained in paragraph 30 of Plaintiffs' Second Amended Complaint.

31. Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

32.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 32 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

33.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

34.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

35.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 35 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

36.      Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 36 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

37.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 37 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

38.     Republic denies the allegations contained in paragraph 38 of Plaintiffs' Second Amended Complaint.

39.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

40.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 40 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

41.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

42.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 42 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

43.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 43 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

44.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 44 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

45.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

46.     Answering Paragraph 46 Republic admits that Cotter, without authority from or knowledge on the part of Republic, caused leached barium sulfate residue to be trucked to the Westlake Landfill in 1973.  Defendant Republic denies each and every allegation not specifically admitted.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

47.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 47 of Plaintiffs' Second Amended Complaint.

48.     Republic denies the allegations contained in paragraph 48 of Plaintiffs' Second Amended Complaint.

49.     Republic denies the allegations contained in paragraph 49 of Plaintiffs' Second Amended Complaint.

50.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 50 of Plaintiffs' Second Amended Complaint.

51.     Republic denies the allegations contained in paragraph 51 of Plaintiffs' Second Amended Complaint.

52.     Republic denies the allegations contained in paragraph 52 of Plaintiffs' Second Amended Complaint.

53.     Republic denies the allegations contained in paragraph 53 of Plaintiffs' Second Amended Complaint.

54.     Republic denies the allegations contained in paragraph 54 of Plaintiffs' Second Amended Complaint.

55.     Republic denies the allegations contained in paragraph 55 of Plaintiffs' Second Amended Complaint.

56.     Republic denies the allegations contained in paragraph 56 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

57.     Republic denies the allegations contained in paragraph 57 of Plaintiffs' Second Amended Complaint.

58.     Republic denies the allegations contained in paragraph 58 of Plaintiffs' Second Amended Complaint.

59.     Republic moves to strike the allegations of Paragraph 59 because they are not necessary, according to Plaintiffs for their claims.  Answering Paragraph 59 Republic admits upon information and belief that Cotter did not obtain a transportation license to transport radioactive mill tailings to the West Lake Landfill.  Republic denies that the Leached Barium Sulfate Residue ("LBSR") is mill tailings.  Republic denies that the LBSR is not source material. Republic denies that the LBSR was not subject to Cotter's license.  Republic denies each and every other allegation of paragraph 59 not specifically admitted.

60.     Republic denies the allegations contained in paragraph 60 of Plaintiffs' Second Amended Complaint.

61.     Republic denies the allegations contained in paragraph 61 of Plaintiffs' Second Amended Complaint.

62.     Republic denies the allegations contained in paragraph 62 of Plaintiffs' Second Amended Complaint.

63.     Republic denies the allegations contained in paragraph 63 of Plaintiffs' Second Amended Complaint.

64.     Republic denies the allegations contained in paragraph 64 of Plaintiffs' Second Amended Complaint.

65.     Republic denies the allegations contained in paragraph 65 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

66.     Republic denies the allegations contained in paragraph 66 of Plaintiffs' Second Amended Complaint.

67.     Republic denies the allegations contained in paragraph 67 of Plaintiffs' Second Amended Complaint.

68.     Republic denies the allegations contained in paragraph 68 of Plaintiffs' Second Amended Complaint.

69.     Republic denies the allegations contained in paragraph 69 of Plaintiffs' Second Amended Complaint.

70.     Republic denies the allegations contained in paragraph 70 of Plaintiffs' Second Amended Complaint.

71.     Republic denies the allegations contained in paragraph 71 of Plaintiffs' Second Amended Complaint.

72.     Republic denies the allegations contained in paragraph 72 of Plaintiffs' Second Amended Complaint.

73.     Republic denies the allegations contained in paragraph 73 of Plaintiffs' Second Amended Complaint.

74.     Republic denies the allegations contained in paragraph 74 of Plaintiffs' Second Amended Complaint.

75.     Republic denies the allegations contained in paragraph 75 of Plaintiffs' Second Amended Complaint.

76.     Republic denies the allegations contained in paragraph 76 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

77.    Republic denies the allegations contained in paragraph 77 of Plaintiffs' Second Amended Complaint.

78.    Republic denies the allegations contained in paragraph 78 of Plaintiffs' Second Amended Complaint.

79.    Republic denies the allegations contained in paragraph 79 of Plaintiffs' Second Amended Complaint.

80.    Republic denies the allegations contained in paragraph 80 of Plaintiffs' Second Amended Complaint.

81.    Republic denies the allegations contained in paragraph 81 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

82.    Republic denies the allegations contained in paragraph 82 of Plaintiffs' Second Amended Complaint.

83.    Republic denies the allegations contained in paragraph 83 of Plaintiffs' Second Amended Complaint.

84.    Republic denies the allegations contained in paragraph 84 of Plaintiffs' Second Amended Complaint.

85.    Republic denies the allegations contained in paragraph 85 of Plaintiffs' Second Amended Complaint.

86.    Republic denies the allegations contained in paragraph 86 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

87.    Republic denies the allegations contained in paragraph 87 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

88. Republic denies the allegations contained in paragraph 88 of Plaintiffs' Second Amended Complaint.

89. Republic denies the allegations contained in paragraph 89 of Plaintiffs' Second Amended Complaint, including all subparts thereof.

90. Republic denies the allegations contained in paragraph 90 of Plaintiffs' Second Amended Complaint.

91. Republic denies the allegations contained in paragraph 91 of Plaintiffs' Second Amended Complaint.

92. Republic denies the allegations contained in paragraph 92 of Plaintiffs' Second Amended Complaint.

93. Republic denies the allegations contained in paragraph 93 of Plaintiffs' Second Amended Complaint.

94. Republic denies the allegations contained in paragraph 94 of Plaintiffs' Second Amended Complaint.

95. Republic denies the allegations contained in paragraph 95 of Plaintiffs' Second Amended Complaint.

96. Republic denies the allegations contained in paragraph 96 of Plaintiffs' Second Amended Complaint.

97. Republic denies the allegations contained in paragraph 97 of Plaintiffs' Second Amended Complaint.

98. Republic denies the allegations contained in paragraph 98 of Plaintiffs' Second Amended Complaint.

99.     Republic denies the allegations contained in paragraph 99 of Plaintiffs' Second Amended Complaint.

## COUNT I – TRESPASS

100.     In response to paragraph 100 of Count I of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the Second Amended Complaint.

101.     Republic is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 101 and therefore denies the allegations contained in paragraph 101 of Count I of Plaintiffs' Second Amended Complaint.

102.     Republic admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill.  Republic denies that Rock Road Industries, Inc. currently exists.   Republic denies every allegation not specifically admitted contained in paragraph 102 of Count I of Plaintiffs' Second Amended Complaint.

103.     Republic denies the allegations contained in paragraph 103 of Count I of Plaintiffs' Second Amended Complaint.

104.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 104 of Count I of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

105.     Republic denies the allegations contained in paragraph 105 of Count I of Plaintiffs' Second Amended Complaint.

106.     Republic denies the allegations contained in paragraph 106 of Count I of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

107.     Republic denies the allegations contained in paragraph 107 of Count I of Plaintiffs' Second Amended Complaint.

108.     Republic denies the allegations contained in paragraph 108 of Count I of Plaintiffs' Second Amended Complaint.

109.     Republic denies the allegations contained in paragraph 109 of Count I of Plaintiffs' Second Amended Complaint.

110.     Republic denies the allegations contained in paragraph 110 of Count I of Plaintiffs' Second Amended Complaint.

111.     Republic denies the allegations contained in paragraph 111 of Count I of Plaintiffs' Second Amended Complaint.

112.     Republic denies the allegations contained in paragraph 112 of Count I of Plaintiffs' Second Amended Complaint.

## COUNT II – PERMANENT NUISANCE

113.     In response to paragraph 113 of Count II of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, and 100 through 112 of Count I of Plaintiffs' Second Amended Complaint.

114.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 114 of Count II of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

115.     Republic admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill, and Rock Road Industries, Inc. owned and operated the West Lake Landfill.  Republic

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

denies the remaining allegations contained in paragraph 115 of Count II of Plaintiffs' Second Amended Complaint.

116.    Republic denies the allegations contained in paragraph 116 of Count II of Plaintiffs' Second Amended Complaint.

117.    Republic denies the allegations contained in paragraph 117 of Count II of Plaintiffs' Second Amended Complaint.

118.    Republic denies the allegations contained in paragraph 118 of Count II of Plaintiffs' Second Amended Complaint.

119.    Paragraph 119 of Count II of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Republic.  IF and to the extent a response is deemed to be required by the Court, Republic denies the allegations contained in paragraph 119 of Count II of Plaintiffs' Second Amended Complaint.

120.    Republic denies the allegations contained in paragraph 120 of Count II of Plaintiffs' Second Amended Complaint.

121.    Republic denies the allegations contained in paragraph 121 of Count II of Plaintiffs' Second Amended Complaint.

122.    Republic denies the allegations contained in paragraph 122 of Count II of Plaintiffs' Second Amended Complaint.

123.    Republic denies the allegations contained in paragraph 123 of Count II of Plaintiffs' Second Amended Complaint.

124.    Republic denies the allegations contained in paragraph 124 of Count II of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## COUNT III – TEMPORARY NUISANCE

125.     In response to paragraph 125 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99of the "FACTS" section, 100 through 112 of Count I, and 113 through 124 of Count II of Plaintiffs' Second Amended Complaint.

126.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 126 of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

127.     Republic admits that Bridgeton Landfill, LLC owns and operates the Bridgeton Landfill.  Republic denies that Rock Road Industries, Inc. exists.  Republic denies each and every allegation in paragraph 127 of Plaintiffs' Second Amended Complaint not specifically admitted.

128.     Republic denies the allegations contained in paragraph 128 of Plaintiffs' Second Amended Complaint.

129.     Republic denies the allegations contained in paragraph 129 of Plaintiffs' Second Amended Complaint.

130.     Republic denies the allegations contained in paragraph 130 of Plaintiffs' Second Amended Complaint.

131.     Republic denies the allegations contained in paragraph 131 of Plaintiffs' Second Amended Complaint.

132.     Republic denies the allegations contained in paragraph 132 of Plaintiffs' Second Amended Complaint.

133.     Republic denies the allegations contained in paragraph 133 of Plaintiffs' Second Amended Complaint.

134.     Republic denies the allegations contained in paragraph 134 of Plaintiffs' Second Amended Complaint.

**COUNT IV – NEGLIGENCE**

135.     In response to paragraph 135 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III of Plaintiffs' Second Amended Complaint.

136.     Republic denies the allegations contained in paragraph 136 of Plaintiffs' Second Amended Complaint.

137.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 137 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

138.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 138 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

139.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 139 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

140.     Republic denies the allegations contained in paragraph 140 of Plaintiffs' Second Amended Complaint.

141. Republic denies the allegations contained in paragraph 141 of Plaintiffs' Second Amended Complaint.

142. Republic denies the allegations contained in paragraph 142 of Plaintiffs' Second Amended Complaint.

143. Republic denies the allegations contained in paragraph 143 of Plaintiffs' Second Amended Complaint.

144. Republic denies the allegations contained in paragraph 144 of Plaintiffs' Second Amended Complaint.

145. Republic denies the allegations contained in paragraph 145 of Plaintiffs' Second Amended Complaint.

146. Republic denies the allegations contained in paragraph 146 of Plaintiffs' Second Amended Complaint.

147. Republic denies the allegations contained in paragraph 147 of Plaintiffs' Second Amended Complaint.

148. Republic denies the allegations contained in paragraph 148 of Plaintiffs' Second Amended Complaint.

149. Republic denies the allegations contained in paragraph 149 of Plaintiffs' Second Amended Complaint.

150. Republic denies the allegations contained in paragraph 150 of Plaintiffs' Second Amended Complaint.

151. Republic denies the allegations contained in paragraph 151 of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

152.     Republic denies the allegations contained in paragraph 152 of Plaintiffs' Second Amended Complaint.

## COUNT V – NEGLIGENCE PER SE

153.     In response to paragraph 153 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III and 135 through 152 of Count IV of Plaintiffs' Second Amended Complaint.

154.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 of Count IV of Plaintiffs' Second Amended Complaint and, therefore, denies the same.

155.     Republic denies the allegations contained in paragraph 155 of Count IV of Plaintiffs' Second Amended Complaint.

156.     Republic denies the allegations contained in paragraph 156 of Count IV of Plaintiffs' Second Amended Complaint.

157.     Republic is without information or knowledge sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 157 of Plaintiffs' Second Amended Complaint, and, therefore, denies the same.

158.     Paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint states legal conclusions and, therefore, requires no response from Republic.  If and to the extent a response is deemed to be required by the Court, Republic denies the allegations contained in paragraph 158 of Count IV of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

159.    Republic denies the allegations contained in paragraph 159 of Count IV of Plaintiffs' Second Amended Complaint.

160.    Republic denies the allegations contained in paragraph 160 of Count IV of Plaintiffs' Second Amended Complaint.

161.    Republic denies the allegations contained in paragraph 161 of Count IV of Plaintiffs' Second Amended Complaint.

162.    Republic denies the allegations contained in paragraph 162 of Count IV of Plaintiffs' Second Amended Complaint.

163.    Republic denies the allegations contained in paragraph 163 of Count IV of Plaintiffs' Second Amended Complaint.

164.    Republic denies the allegations contained in paragraph 164 of Count IV of Plaintiffs' Second Amended Complaint.

## COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY

165.    In response to paragraph 165 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV and 153 through 164 of Count V of Plaintiffs' Second Amended Complaint.

166.    Republic denies the allegations contained in paragraph 166 of Count VI of Plaintiffs' Second Amended Complaint.

167.    Republic denies the allegations contained in paragraph 167 of Count VI of Plaintiffs' Second Amended Complaint.

168.    Republic denies the allegations contained in paragraph 168 of Count VI of Plaintiffs' Second Amended Complaint.

169.    Republic denies the allegations contained in paragraph 169 of Count VI of Plaintiffs' Second Amended Complaint.

170.    Republic denies the allegations contained in paragraph 170 of Count VI of Plaintiffs' Second Amended Complaint.

171.    Republic denies the allegations contained in paragraph 171 of Count VI of Plaintiffs' Second Amended Complaint.

172.    Republic denies the allegations contained in paragraph 172 of Count VI of Plaintiffs' Second Amended Complaint.

## COUNT VII – INJUNCTIVE RELIEF

173.    In response to paragraph 173 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V and 165 through 172 of Count VI of Plaintiffs' Second Amended Complaint.

174.    Republic denies the allegations contained in paragraph 174 of Count VII of Plaintiffs' Second Amended Complaint.

175.    Republic denies the allegations contained in paragraph 175 of Count VII of Plaintiffs' Second Amended Complaint.

176.    Republic denies the allegations contained in paragraph 176 of Count VII of Plaintiffs' Second Amended Complaint.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

177.    Republic denies the allegations contained in paragraph 177 of Count VII of Plaintiffs' Second Amended Complaint.

178.    Republic denies the allegations contained in paragraph 178 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 178 of Plaintiffs' Second Amended Complaint Republic states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

179.    Republic denies the allegations contained in paragraph 179 of Count VII of Plaintiffs' Second Amended Complaint.   Further answering paragraph 179 of Plaintiffs' Second Amended Complaint Republic states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

180.    Republic denies the allegations contained in paragraph 180 of Count VII of Plaintiffs' Second Amended Complaint.  Further answering paragraph 178 of Plaintiffs' Second Amended Complaint Republic states that the injunctive relief sought by Plaintiffs is an independent basis for federal question jurisdiction.

## COUNT XIII – PUNITIVE DAMAGES

181.    In response to paragraph 181 of Plaintiffs' Second Amended Complaint, Republic incorporates by reference its answers and responses to each and every allegation contained in paragraphs 1 through 99 of the "FACTS" section, 100 through 112 of Count I, 113 through 124 of Count II, and 125 through 134 of Count III, 135 through 152 of Count IV, 153 through 164 of Count V, 165 through 172 of Count VI and 173 through 188 of Count VII of Plaintiffs' Second Amended Complaint.

182.    Republic denies the allegations contained in paragraph 182 of Count XIII of Plaintiffs' Second Amended Complaint.

183.   Republic denies the allegations contained in paragraph 183 of Count XIII of Plaintiffs' Second Amended Complaint.

184.   Republic denies the allegations contained in paragraph 184 of Count XIII of Plaintiffs' Second Amended Complaint.

185.   Republic denies that Plaintiffs are entitled to relief request in the "WHEREFORE" paragraph, including all subparts therefore, which immediately follows paragraph 184 of Plaintiffs' Second Amended Complaint.

186.   Republic denies each and every allegation contained in Plaintiffs' Second Amended Complaint not specifically admitted.

## AFFIRMATIVE AND/OR FURTHER DEFENSES

Republic asserts that Plaintiffs' claims are barred, in whole or in part, by the defenses set forth below. By setting forth these defenses, Republic does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiffs. Moreover, nothing herein stated is intended or shall be construed as an acknowledgement that any particular issue or subject matter is relevant to Plaintiffs' allegations. Republic reserves the right to plead any affirmative defense asserted by any co-defendant(s) or any and all affirmative defenses that may become evident or appreciated after investigation and discovery in this matter.

1.     Plaintiffs have failed to state a claim against Republic upon which relief can be granted.

2.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to Mo. Rev. Stat. 516.120 and any limitations period which applies to actions under the Price-Anderson Act.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

3.      Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of repose.

4.      If Plaintiffs have been damaged, which is not hereby admitted, such damages were caused by unforeseeable, independent, intervening, and/or superseding events for which Republic is not legally responsible.

5.      Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not hereby admitted, such injury or damage may have been caused or contributed to by the negligence or fault of persons or entities over whom this Defendant had no control, and such injuries or damages were not caused or contributed to by the negligence or fault of this Defendant or any of its agents, servants or employees.

6.      Pleading in the alternative, if Plaintiffs suffered any injury or damage, which is not hereby admitted, the negligence or fault of the parties to this case should be compared by the trier-of-fact; further, any negligence or fault apportioned to Plaintiffs should act to bar any recovery or reduce any recovery in direct proportion to any such assessment of fault, all in accordance with the laws of the State of Missouri.

7.      Pleading in the alternative, if Plaintiffs have suffered any injury or damage, which is not admitted, this Defendant requests that the negligence alleged by Plaintiffs against others including other Defendants,  though not hereby admitted, be compared to the negligence or fault of this Defendant, to the extent that any such negligence is found to have caused or contributed to cause any injuries or damages alleged by Plaintiffs, and recovery against this Defendant should be reduced in direct proportion to such assessment of fault.

8.      If Plaintiffs have been damaged, the negligence or fault of persons or entities, for whose conduct Republic is not legally responsible, must be compared, reducing or completely barring Plaintiffs' alleged right to recover against Republic.

9.      If Plaintiffs have been damaged, the damages were caused by operation of nature, idiosyncratic reaction(s), pre-existing condition(s), and/or subsequent injury over which Republic had no control.

10.     If Plaintiffs have been damaged, which is not admitted, any recovery is barred to the extent each Plaintiff voluntarily exposed himself or herself to a known risk. Any recovery should not include alleged damages that Plaintiffs could have avoided by reasonable care and diligence.

11.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of assumption of the risk, by Plaintiffs' failure to mitigate damages, and/or by Plaintiffs' own conduct.

12.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of consent, whether it be by Plaintiffs or other third parties who later approved the landfill's activities.

13.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver and/or the doctrine of estoppel.

14.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

15.     Plaintiffs' Second Amended Complaint and each purported cause of action therein are barred, in whole or in part, by the doctrine of unclean hands.

16.     Plaintiffs failed to exhaust their administrative remedies.

17.     Plaintiffs' claims are barred, in whole or in part, because they at all times had actual and/or constructive knowledge of the circumstances upon which the Complaint is based, and the Plaintiffs accepted those circumstances.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

18.      Plaintiffs' claims are barred, in whole or in part, because at all times and places mentioned in the Complaint, Republic complied with the state of the art, and therefore, Plaintiffs are not entitled to recover from Republic as a matter of law.

19.      Plaintiffs' claims are barred, in whole or in part, because the potential for injuries or damages alleged in the Complaint were not known to Republic, nor did Republic have reason to know of the risk of said harm.

20.      Republic has completely satisfied all legal duties, if any, with regard to the Plaintiffs and thus is released from liability.

21.      Plaintiffs' claims are barred, in whole or in part, by the doctrine of ratification.

22.      Plaintiffs failed to join St. Louis Lambert Airport as a necessary or indispensable party to the extent the injunctive relief sought by Plaintiffs affects the airport's negative easement at Bridgeton Landfill.

23.      Plaintiffs failed to join the U.S. Environmental Protection Agency, the Department of Energy or other successor entities to the Atomic Energy Commission, and other federal agencies, which are indispensable parties for the claims made in this Complaint.

24.      Plaintiffs' request for injunctive relief is preempted as it attempts to shape and therefore challenge the remedy already underway under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9604, and violates the timing of review provisions thereunder, 42 U.S.C. § 9613(h).

25.      Plaintiffs' claims should be dismissed for their failure to join indispensable parties.

26.      The federal government, through federal statutes, has preempted the field of law applicable to the claims at issue. The activities referred to in the Complaint were and are

controlled by federal law, which governs the nuclear industry at all times. Plaintiffs' claims are thus preempted in whole or in part such that they fail to state a cause of action upon which relief can be granted.

27. Republic asserts any and all defenses, claims, credits, offsets, or remedies provided by the Price Anderson Act, 42 U.S.C. 2210, as amended, and reserves the right to amend its Answer to file such further pleadings as are necessary to preserve and assert such defenses, claims, credits, offsets, or remedies.

28. Republic has at all times acted in conformance with applicable guidelines or regulations that establish the standard of care and has otherwise acted with due care and the caution of a reasonably prudent entity.

29. Republic acted reasonably, in good faith, and with the skill, prudence, and diligence exercised by a reasonably prudent actor at all times relevant to this action.

30. Republic conducted all actions in accordance with industry standards, government requirements, and the prevailing state of the art and technology in the industry at the time of the alleged act.

31. Plaintiffs' claims are barred, in whole or in part, because the injuries and damages alleged were not known to Republic, nor did Republic have reason to know of the alleged risk of harm.

32. Any allegedly wrongful acts or omissions of Republic, if and to the extent such acts or omissions occurred, were legally excused or justified.

33. Plaintiffs' claims are barred, in whole or in part, because Republic did not breach any duty to Plaintiffs.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

34.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were not exposed to any substance allegedly caused by Republic's acts sufficient to establish by a reasonable degree of probability that any such exposure caused any alleged injury, damage or loss.

35.     Plaintiffs' claims are barred, in whole or in part, because the damages Plaintiffs seek are too remote, indirect, and/or speculative.

36.     The Complaint and each purported cause of action therein are barred, in whole or in part, because the operations at issue were in existence and ongoing prior to the Plaintiffs purchasing and/or moving to their residence.

37.     The Complaint and each purported cause of action therein are barred because the utility of the conduct of which Plaintiffs complain outweighs any alleged harm to Plaintiffs.

38.     Plaintiffs' claims are barred to the extent they rely on the retroactive application of statutes, rules, regulations or common-law standards of conduct, or otherwise seek to impose liability retroactively for conduct that was not actionable at the time it occurred, which violates the Constitutions of the United States and the State of Missouri.

39.     To the extent Plaintiffs' claims are based upon any theory providing for liability without proof of causation, they violate Republic's rights under the United States Constitution and/or the Constitution of the State of Missouri, and the Constitution of any other state law that may be found to apply.

40.     The punitive damages sought by Plaintiffs are not recoverable under the causes of action set forth in Plaintiffs' Second Amended Complaint and Plaintiffs' allegations are legally insufficient to support a claim for punitive damages.

41.     Republic denies that Plaintiffs are entitled to recover punitive damages in this case because Republic's conduct demonstrated reasonable care. Intent to injure, actual or constructive, is completely absent in this case. Republic did not act with actual malice, and no act or omission of Republic was done with reckless indifference or reckless disregard toward the rights or safety of others, and therefore any award of punitive damages is barred.

42.     Republic denies all allegations of wrongdoing and damages as alleged in the Complaint, but if in fact Plaintiffs did sustain damages, Plaintiffs' damages do not include punitive damages.

43.     Any assessment of punitive damages violates Republic's constitutional rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution, the Missouri Constitution Article 1, Sections 18A, 19, 21, and 22A, and any other applicable State Constitution in one or more of the following respects:

a)     The guidelines, standards, and/or instructions for assessing punitive damages are vague, indefinite, and/or uncertain, supply no notice of the potential repercussions of any alleged conduct, set no limit on the damages that can be awarded, fail to require proof of every element beyond a reasonable doubt, are subject to the unbridled discretion of the jury, and do not allow adequate judicial review, thereby denying due process;

b)     The assessment of punitive damages is criminal or penal in nature and, therefore, the rights given defendants in criminal proceedings are applicable;

c)     The assessment of punitive damages amounts to the imposition of an excessive fine and/or cruel and unusual punishment;

d)     The assessment of punitive damages exposes Republic to multiple punishments and fines for the same act;

e)      The assessment of punitive damages constitutes double jeopardy;

f)      The assessment of punitive damages discriminates in that corporate status, wealth, or net worth may be considered by the jury in determining the amounts of any such damage awards and different amounts can be awarded against different defendants for the same act depending solely on the status or material wealth of the various defendants, thereby denying equal protection under the law;

g)      The assessment of punitive damages does not provide an adequate procedure for the determination of punitive damages in violation of the equal protection and substantive and procedural due process requirements of the United States Constitution and applicable State Constitutions in violation of the United States Supreme Court's decision in *Pacific Mutual Ins. Co. v. Haslip*;

h)      The assessment of punitive damages constitutes an impermissible burden on interstate commerce; and

i)      The assessment of punitive damages constitutes a violation of due process and other constitutional rights of Republic as set forth in the United States Supreme Court decisions in *State Farm Mut. Auto. Ins. Co. v. Campbell, Pacific Mutual Ins. Co. v. Haslip,* and *BMW of North America, Inc. v. Gore;* and the Missouri Supreme Court's holding in *Alcorn v. Union Pacific R.R. Co.*

44.     To the extent that any defense to punitive damages arousing out of Chapter 537 or other sections of the Missouri Revised Statutes accrues to the benefit of Republic, Republic reserves the right to assert the same should the facts warrant it.

45.     Plaintiffs' purported cause of action and alleged damages, if any, were not proximately caused by any act or omission of Republic.

46.     If Plaintiffs recover from Republic, Republic is entitled to contribution, set-off, and/or indemnification, either in whole or in part, from all persons or entities whose negligence or fault proximately caused or contributed to cause Plaintiffs' alleged damages.

47.     Plaintiffs' claims are or may be barred, in whole or in part, to the extent that Plaintiffs have released, settled with, entered into an accord and satisfaction, or otherwise compromised their claims. Republic is entitled to a set-off for the entire amount of proceeds Plaintiffs have or may recover from other sources.

48.     Pursuant to R.S.Mo. 537.060, if and to the extent that any other Defendant or party enter into a release agreement, covenant not to sue or note to enforce a judgment, or any other type of settlement agreement with Plaintiffs, this Defendant is entitled to have any judgments that may be rendered against it reduced by the stipulated amount of the agreement, or the amount of the consideration paid, whichever is greater.

49.     If the property in question was exposed to any chemical or compound connected to this Defendant, which is specifically denied, then such exposure was inconsequential or de minimis, thus barring any recovery by the Plaintiffs.

50.     This Defendant was at all times in full compliance with all applicable industry and regulatory standards and, therefore, had no further duty to warn.

51.     Republic pleads all applicable limitation on Plaintiffs' recovery of damages as to amount or type as may be applicable to this matter under Missouri law or other applicable law or statute.

52.     Plaintiffs' claims are barred to the extent Plaintiffs do not have standing to seek relief.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

53. Republic hereby adopts and incorporates herein any other defense asserted by any other Defendant in this action.

54. Republic reserves the right to amend its Answer as discovery progresses to plead additional defenses, and to assert cross-claims, counterclaims or third-party claims.

55. Plaintiffs claims are barred by the doctrines of collateral estoppel and res judicata.

WHEREFORE, having fully answered Plaintiffs' Second Amended Complaint, Republic Services, Inc. requests that Plaintiffs take nothing by their Complaint, that the Second Amended Complaint be dismissed, that Republic be awarded its costs, expenses, and attorney's fees incurred in the defense of this litigation, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, LLC, and Rock Road Industries, Inc.[4] demand a jury trial on all claims for which they are entitled to a jury trial.

---

[4] As of April 9, 2018, Rock Road Industries, Inc. formally merged into Bridgeton Landfill, LLC, a Delaware Limited Liability Company.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Dated: November 5, 2019        LATHROP GAGE LLP


By: /s/ William G. Beck
     William G. Beck     26849MO
     Peter F. Daniel     33798MO
     Allyson E. Cunningham  64802MO
     2345 Grand Boulevard, Suite 2200
     Kansas City, Missouri 64108-2618
     Telephone:    (816) 292-2000
     Telecopier:   (816) 292-2001
     wbeck@lathropgage.com
     pdaniel@lathropgage.com
     acunningham@lathropgage.com


     Patricia Lehtinen Silva   67213MO
     Pierre Laclede Center
     7701 Forsyth Boulevard, Suite 500
     Clayton, Missouri 63105
     Telephone:    (314) 613-2800
     Telecopier:   (314) 613-2801
     psilva@lathropgage.com

     ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

     I hereby certify that on November 5, 2019, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve notice on all counsel of record.


     /s/ William G. Beck
     An Attorney for Defendants

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

# EXHIBIT 1

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

DML:DFH
40-8035

DEC 3  1969

Cotter Corporation
P. O. Box 1000
Roswell, New Mexico 88201

Attention:  Mr. David P. Marcott
            Executive Vice President and
               General Manager

Gentlemen:

        Enclosed is ABC Source Material License No. SUB-1022.

                    Sincerely,

                    Original signed by
                    Don F. ......

                    Don F. Harmon
                    Source and Special Nuclear
                      Materials Branch
                    Division of Materials Licensing

Enclosure:
As stated                    DISTRIBUTION:
                             PDR, w/encl.
                             State Health [license only)
                             Docket file, w/encl.
                             Branch R/F, w/encl.
                             Division R/F, w/o encl.
                             Harmon's R/F, w/encl.
                             CO, Region IV, w/encl.
                             N. Doulos, DML

| OFFICE ▶ | DML | | | | |
|----------|-----|--|--|--|--|
| SURNAME ▶ | DFHarmon/dmb | | | | |
| | 12/30/69 | | | | |

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Form AEC—410
(1–61)

# UNITED STATES
## ATOMIC ENERGY COMMISSION

## SOURCE MATERIAL LICENSE

Pursuant to the Atomic Energy Act of 1954, and Title 10, Code of Federal Regulations, Chapter 1, Part 40, "Licensing of Source Material," and in reliance on statements and representations heretofore made by the licensee, a license is hereby issued authorizing the licensee to receive, possess and import the source material designated below; to use such material for the purpose(s) and at the place(s) designated below; and to deliver or transfer such material to persons authorized to receive it in accordance with the regulations in said Part. This license shall be deemed to contain the conditions specified in Section 183 of the Atomic Energy Act of 1954 and is subject to all applicable rules, regulations, and orders of the Atomic Energy Commission, now or hereafter in effect, including Title 10, Code of Federal Regulations, Chapter 1, Part 20, "Standards for Protection Against Radiation," and to any conditions specified below.

| Licensee | 3. License No. |
|---|---|
| 1. Name Cotter Corporation | SUB-1022 |
| 2. Address P. O. Box 1000 Roswell, New Mexico 88201 | 4. Expiration Date December 31, 1974 |
| | 5. Docket No. 40-8035 |

| 6. Source Material Uranium | 7. Maximum quantity of source material which licensee may possess at any one time under this license Unlimited |
|---|---|

## CONDITIONS

8. Authorized use (Unless otherwise specified, the authorized place of use is the licensee's address stated in Item 2 above.)

   For use in accordance with the procedures described in the licensee's application dated December 16, 1969.

9. Authorized place of use: The licensee's facility located at 9200 Latty Avenue, Hazelwood, Missouri.

12/30/69

| | For the U. S. ATOMIC ENERGY COMMISSION |
|---|---|
| Date of issuance DEC 3 1969 | Original signed by Don F. Harmon Don F. Harmon Division of Materials Licensing |

* U. S. GOVERNMENT PRINTING OFFICE : 1962 O - 633984

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAILEY, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 24 CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO REMAND**

Plaintiffs, through undersigned counsel, respectfully ask this Court to remand this case to state court.

Defendants removed this case claiming federal question jurisdiction under the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 et seq, and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. In three factually similar cases, this court has squarely addressed the question of whether the PAA applies when Defendants do not have an applicable license or indemnity agreement covering the alleged activities. In all three cases, this court determined that there cannot be a nuclear incident under the PAA without such an applicable license or indemnity agreement. It was further determined that Defendants do not have an applicable license or indemnity agreement and remanded each matter back to state court. *See Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017); *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 606 (E.D. Mo. 2019). Two of these cases, *Strong* and *Kitchin*, are nearly identical to this case as they involve the same landfills and the same radioactive wastes. Moreover, in addition to determining that the court lacked subject matter

jurisdiction under the PAA, the *Kitchin* decision determined that the court also lacked jurisdiction under CERCLA.

Neither the PAA or CERCLA applies and these are state law claims, not claims based on a law or treaty of the United States. This Court does not have jurisdiction. Plaintiffs' Memorandum in Support of this Motion is filed contemporaneously herewith and sets forth in more detail the reasons why this Court does not have jurisdiction.

WHEREFORE, Plaintiffs respectfully ask this Court to remand this case to state court.


## <u>ORAL ARGUMENT REQUESTED</u>

Pursuant to Local Rule 78-4.02, Plaintiffs request oral argument on their Motion to Remand. Oral argument is warranted to provide the opportunity to further discuss the important issues presented, the parties' position on these issues, and the cited case law. In particular, oral argument will afford the parties an opportunity to discuss and answer any questions the Court may have regarding the specific pleading deficiencies.

Respectfully Submitted,

/s/ Celeste Brustowicz
Stuart H. Smith (LSBA 17805), Pro Hac Vice
Barry J. Cooper, Jr. (LSBA 27202), Pro Hac Vice
Celeste Brustowicz (LSBA 16835), Pro Hac Vice
Victor T. Cobb (LSBA 36830), Pro Hac Vice
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, Louisiana 70130
Phone:       504-399-0009
Facsimile:  504-291-1352
Email: ssmith@clfnola.com
          bcooper@clfnola.com
          cbrustowicz@clfnola.com
          vcobb@clfnola.com
ATTORNEYS FOR PLAINTIFFS,
MICHAEL AND ROBBIN DAILEY

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ Celeste Brustowicz
Celeste Brustowicz (LSBA 16835), Pro Hac Vice

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY, *et al.*,                     )
                                              )
        Plaintiffs,                           )
                                              )
        v.                                    )          Case No. 4:17 CV 24 CDP
                                              )
BRIDGETON LANDFILL, LLC, *et al.*,            )
                                              )
        Defendants.                           )

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND**

**I.    INTRODUCTION**

    This case belongs in state court. No federal questions are invoked or are at issue; federal

diversity jurisdiction does not exist. Defendants attempts to create federal subject matter

jurisdiction should be rebuffed.

    This matter was initially filed on November 15, 2016 in the 21st Judicial Circuit of the State

of Missouri alleging state law claims related to radioactive mill-tailings wastes dumped in the West

Lake Landfill. Defendants removed claiming federal question jurisdiction under the Price-

Anderson Act ("PAA") and the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA").

    Plaintiffs prior lead counsel, who has since withdrawn, filed a Motion to Remand (Doc No.

48) but erroneously withdrew it before this court ruled. Then, both Defendants' counsel and

Plaintiffs' prior lead counsel believed that the PAA applied giving this Court federal subject matter

jurisdiction.

    On April 21, 2017, Plaintiffs' prior lead counsel erroneously amended the state court

Petition to assert claims under the PAA as well as state law causes of action based on the same

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

facts and circumstances alleged in the Original Petition. Defendants filed Motions to Dismiss the Amended Complaint on May 12, 2017. On October 27, 2017, this Court granted Defendants' Motions to Dismiss with respect to Plaintiffs' state law claims and denied Defendants' Motion to Dismiss with respect to Plaintiffs erroneously pled PAA claims. The Court reasoned that "[a]lthough the Eighth Circuit has not addressed the issue of PAA preemption of state-law claims, numerous other courts have found that the PAA is the sole avenue for recovery *when a public liability action for a nuclear incident is plead*". (Doc. No. 89) (emphasis added)

In early 2018, undersigned counsel took over as lead counsel for the Daileys and quickly determined that the PAA is not applicable because Defendants do not meet the jurisdictional prerequisites. Defendants do not have, and never had, any license or indemnity agreement covering the activities complained of – the unauthorized dumping and acceptance of radioactive wastes at a facility not designed or licensed for the disposal of such wastes. Accordingly, on March 27, 2018, Plaintiffs filed a motion for leave to amend to withdraw the PAA claims, reinstate state law claims and remand this matter to state court because the court lacks jurisdiction under the PAA.

On April 8, 2019, this Court denied Plaintiffs motion for leave to amend to withdraw the PAA claims, reinstate state law claims and remand to state court. This court indicated that the Eighth Circuit has stated quite clearly that "granting leave to amend a complaint where the plaintiff has not submitted a proposed amended complaint is inappropriate." (Doc. No. 156) (citations omitted). This Court further indicated that it would be "inappropriate to grant a motion to remand based on an unfiled complaint…On this basis, therefore, I will deny the motion to amend and to remand." This Court allowed Plaintiffs until April 29, 2019 to either file a motion to dismiss the case without prejudice or to file a renewed motion for leave to file a Second Amended Complaint, accompanied by the proposed amended complaint.

On April 29, 2019, Plaintiffs filed a renewed motion for leave to file a Second Amended Complaint and attached a proposed amended complaint. This motion was granted on October 22, 2019 at which time Plaintiffs were ordered to file a motion to remand within twenty-one days. Accordingly, Plaintiffs file this motion to remand.

In three factually similar cases, this court has had the opportunity to squarely address the question of whether a "nuclear incident" under the PAA requires the alleged unlawful conduct to have arisen from NRC-licensed activities or under a DOE contract with indemnification agreements. In all three cases, this court determined that there cannot be a nuclear incident under the PAA without such an applicable license or indemnity agreement. It was further determined that Defendants do not have an applicable license or indemnity agreement and remanded each matter back to state court. *See Strong v. Republic Servs., Inc.*, *283* F. Supp. 3d 759 (E.D. Mo. 2017); *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 606 (E.D. Mo. 2019).[1] Two of these cases, *Strong* and *Kitchin*, are nearly identical to this case as they involve the same landfills and the same radioactive wastes. Moreover, in addition to determining that the court lacked subject matter jurisdiction under the PAA, the *Kitchin* decision determined that the court also lacked jurisdiction under CERCLA.

## II.   LAW AND ANALYSIS

### A.  Federal Question Jurisdiction

Federal courts are courts of limited jurisdiction and "they possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

---

[1] The *Kitchin* matter was appealed to the Eight Circuit based on CAFA's "local controversy" exception, which is not at issue here.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*(citations omitted).

The party seeking removal and opposing remand carries the heavy burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence. *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). All doubt must be resolved in favor of remand to state court. *In re Prempro*, 591 F.3d at 620. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The basis for federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint, rather than from any defenses asserted by Defendants. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiffs are the "masters" of their claims and "may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

**B. The Price-Anderson Act Does Not Apply to Plaintiffs Claims**

As previously determined in *Strong*, *Banks* and *Kitchin*, there cannot be a nuclear incident under the PAA without an applicable license or indemnity agreement. *Strong*, 283 F. Supp. 3d at 772; *Banks*, 2019 WL 1426259, at *6; *Kitchin*, 389 F. Supp. 3d at 611. As further determined by *Strong*, *Banks* and *Kitchin*, defendants do not have the requisite license or indemnification agreement to trigger the PAA and its exclusive federal court jurisdiction. *Strong*, 283 F. Supp. 3d at 774; *Banks*, 2019 WL 1426259, at *9; *Kitchin*, 389 F. Supp. 3d at 613. Simply put, "[n]one of the defendants here is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification. The PAA therefore does not apply to plaintiffs' claims, and defendants have failed to meet their burden of establishing federal-question jurisdiction under the PAA" *Id*. at 613-614.

## 1. Background and Purpose of the Price-Anderson Act

In 1954, Congress enacted the Atomic Energy Act ("AEA") to encourage private sector involvement in atomic energy. The AEA provided for federal regulation and licensing of private construction, ownership, and operation of commercial nuclear power reactors. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983). In 1957, Congress amended the AEA with the PAA "which provided certain federal licensees with a system of private insurance, government indemnification, and limited liability for claims of 'public liability.'" *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473 (1999).

The PAA was enacted to meet two basic objectives: 1) remove the deterrent to private sector participation in atomic energy presented by the threat of potentially enormous liability in the event of a catastrophic nuclear accident, and 2) ensure that adequate funds are available to the public to satisfy liability claims if such an accident were to occur. *NRC, The Price–Anderson Act— Crossing the Bridge to the Next Century: A Report to Congress* at xii (August 1, 1998). Congress accomplished these goals by 1) requiring that licensees provide financial protection, 2) indemnifying the nuclear power industry as necessary, and 3) capping total liability in the event of an incident. *Id.* While the PAA has been amended since in enactment, these amendments have not changed the statutory framework of the PAA, i.e. the licensing/indemnity scheme.

In 1998, the NRC prepared a report to Congress which detailed the need for continuation or modification of the PAA. In Part 1 of this report, the NRC provides an overview of the PAA system and discussed the scope of the PAA. According to the NRC, the PAA only applies to the following categories of licensees: 1) licensees of nuclear power plants having a rated capacity of 100MW(e) or more, 2) licensees authorized to operate nuclear reactors of less than 10 MW(t) capacity, 3) federal agencies licensed to operate nuclear reactors, 4) state-owned educational

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

institutions, 4) plutonium processing and fuel fabrication facilities, and 5) radiopharmaceutical licensees. Critically, subsequent to 1977, the NRC also evaluated whether it should exercise its discretionary authority and require financial protection for materials licensees other than those processing plutonium and the NRC decided that "no apparent need existed to extend Price-Anderson to other classes of materials licensees." *NRC, The Price–Anderson Act— Crossing the Bridge to the Next Century: A Report to Congress* at 4-5 (August 1, 1998).

Put simply, "[t]he scope of Price-Anderson coverage includes any nuclear incident in the course of transportation of nuclear fuel to a reactor site, the storage of fuel at a site, the operation of reactors including discharges of radioactive emissions or effluents, the storage of nuclear wastes at reactor sites, and the transportation of radioactive material from reactors." *NRC, The Price– Anderson Act—Crossing the Bridge to the Next Century: A Report to Congress* at xii (August 1, 1998).

### 2. The Price-Anderson Act Does Not Apply Without an Applicable License or Indemnity Agreement

The PAA's jurisdictional provision, 42 U.S.C. § 2210(n)(2), provides in relevant part:

> "With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place, ... shall have original jurisdiction without regard to citizenship of any party or the amount in controversy ..."

A "public liability action" is "any suit asserting public liability." 42 U.S.C. § 2014(hh). "Public liability" means "any legal liability arising out of or resulting from a nuclear incident[.]" 42 U.S.C. § 2014(w). "Accordingly, only lawsuits that involve 'nuclear incidents' as defined by the PAA are subject to PAA federal question jurisdiction." *Kitchin*, 389 F. Supp. 3d at 610-11 (citations omitted). A "nuclear incident" is defined in 42 U.S.C. § 2014(q) as:

> any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease,

or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material… *provided further,* That as the term is used in section 2210(d)of this title, it shall include any such occurrence outside the United States if such occurrence involves source, special nuclear, or byproduct material owned by, and used by or under contract with, the United States: *And provided further,* That as the term is used in section 2210(c) of this title, it shall include any such occurrence outside both the United States and any other nation if such occurrence arises out of or results from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material licensed pursuant to subchapters V, VI, VII, and IX of this division, which is used in connection with the operation of a licensed stationary production or utilization facility or which moves outside the territorial limits of the United States in transit from one person licensed by the Nuclear Regulatory Commission to another person licensed by the Nuclear Regulatory Commission.

i.    **Statutory Construction Dictates that the Price-Anderson Act Does Not Apply Without an Applicable License or Indemnity Agreement**

In ascertaining the plain meaning of a statute, the Court relies on established rules of statutory interpretation, looking not only to the particular statutory language at issue, but also the design of the statute as a whole. *DeBough v. Shulman*, 799 F.3d 1210, 1212 (8th Cir. 2015*); United States v. I.L.*, 614 F.3d 817, 820-21 (8th Cir. 2010) (citations omitted). "It is a fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation. but must be drawn from the context in which it is used." *Textron Lycoming Reciprocating Engine Div. v. United Auto., Aerospace and Agric. Implement Workers of Am.,* 523 U.S. 653, 657(1998) (quoting *Deal v. United States*, 508 U.S. 129, 132, (1993)).

As pointed out in the *Kitchin* case, the definition of "nuclear incident" refers to the use of the term in §§ 2210(c) and (d), which govern the PAA's indemnification plan for NRC licensees and DOE contractors. Section 2210(c) requires the NRC, "*with respect to licenses issued* between August 30, 1954, and December 31, 2025," to "agree to indemnify and hold harmless *the licensee* and other persons indemnified ... from public liability arising from nuclear incidents[.] ... *Such a contract of indemnification shall cover public liability arising out of or in connection*

7

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

*with the licensed activity.*" 42 U.S.C. § 2210(c) (emphasis added). Section 2210(d) requires the

DOE to enter into indemnification agreements with "any person who may conduct activities *under*

*a contract* with the Department of Energy that involve the risk of public liability[.]" 42 U.S.C. §

2210(d)(1)(A) (emphasis added)

> As articulated in *Kitchin,* 389 F. Supp. 3d at 612:

> when the definition is read *in toto* and in conjunction with § 2210, "nuclear incidents" are those occurrences within and outside the United States that arise from activities conducted under DOE contracts or in connection with NRC-licensed activity. When considered with the plain text of § 2210(c) and (d) – that public liability actions can arise only from activities under a contract with the DOE or in connection with NRC-licensed activity – I must agree with the court's observation in *Strong* that "the terms 'nuclear incident' and 'occurrence' are inextricably intertwined with 'licenses' and 'indemnification agreements,' thus suggesting licenses and indemnification agreements are an integral part of the PAA's statutory scheme[.]" *Strong*, 283 F. Supp. 3d at 771. In light of this, I also agree with the *Strong* court's conclusion that, therefore, "there cannot be a nuclear incident without an applicable license or indemnity agreement."

Applying a different statutory analysis, the *Strong* and *Banks* decisions reach the same

conclusion that there cannot be a nuclear incident without an applicable license or indemnity

agreement. *Strong* and *Banks* found the reasoning from *Gilberg v. Stepan Co*., 24 F. Supp.2d 325,

343 (D. N.J. 1998), to be persuasive and found it significant that the definition of nuclear incident

uses "occurrence" together with the clause "including an extraordinary nuclear occurrence." An

"extraordinary nuclear occurrence" is in relevant part "any event causing a discharge…from its

intended place of confinement in amounts off-site, or causing radiation levels offsite…" 42 U.S.C.

§ 2014(q). As used in the definition of extraordinary nuclear occurrence, "offsite" means "away

from 'the location' or 'the contract location' as defined in the applicable Nuclear Regulatory

Commission or the Secretary of Energy…indemnity agreement, entered into pursuant to section

2210." *Id*.

As a matter of statutory construction, because of the proximity to and interrelationship between the word "occurrence" and the phrase "extraordinary nuclear occurrence", it was reasoned that "the occurrence which underlies a 'nuclear incident,' can only be an event at 'the location' or 'the contract location' as that term is defined in an indemnity agreement entered into under § 2210. *Banks*, 2019 WL 1426259, at *7. Thus, "[i]n the absence of an indemnification agreement, entered into under 42 U.S.C. § 2210 and covering the activities which gave rise to the liability alleged, there can be no 'occurrence,' that is, no event at the site of 'licensed activity,' that would constitute a "nuclear incident." *Strong*, 283 F. Supp. 3d at 767 (citing *Gilberg*, 24 F. Supp.2d at 340).

*Strong* and *Banks* acknowledge that there are varied and conflicting opinions regarding what is required for federal subject matter jurisdiction pursuant to the PAA. However, "[g]iven the conflicting interpretations of the PAA regarding whether there must be a license or an indemnity agreement for the PAA to apply and, hence, for a federal court to have subject matter jurisdiction, and considering that conflicts should be resolved by finding no federal preemption, the Court finds that this matter should be resolved in favor of finding that there cannot be federal jurisdiction under the PAA without a license or an indemnity agreement." *Strong*, 283 F. Supp. 3d at 772; See also *Cook v. Rockwell International, Corp.*, 790 F.3d 1088, 1094 (10th Cir. 2015).

ii.    **Legislative History Dictates that the Price-Anderson Act Does Not Preempt Plaintiffs' State Law Claims**

Review of the legislative history of the PAA supports the conclusion that the PAA does not apply without an applicable license or indemnity agreement. As defined by Congress itself, "[t]he Price-Anderson system is a comprehensive, compensation-oriented system of liability insurance *for Department of Energy contractors and Nuclear Regulatory Commission licensees* operating nuclear facilities." S. Rep. No. 100-70, 14, 1988 U.S.C.C.A.N. 1424, 1426 (emphasis added).

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Moreover, S. REP. NO. 85–296, 1957 WL 5103, at *1817–18 (May 9, 1957), is instructive:

IT WAS NOT THOUGHT THAT AN INCIDENT WOULD NECESSARILY HAVE TO OCCUR WITHIN ANY RELATIVELY SHORT PERIOD OF TIME .... THE *OCCURRENCE* WHICH IS THE SUBJECT OF THIS DEFINITION *IS THAT EVENT AT THE SITE OF THE LICENSED ACTIVITY*, OR ACTIVITY FOR WHICH THE COMMISSION HAS ENTERED IN TO A CONTRACT, WHICH MAY CAUSE DAMAGE, RATHER THAN THE SITE WHERE THE DAMAGE MAY PERHAPS BE CAUSED. THE SITE MUST BE WITHIN THE UNITED STATES.... *IT DOES NOT MATTER WHAT LICENSE MAY BE APPLICABLE* IF THE OCCURENCE IS WITHIN THE UNITED STATES.... *THE INDEMNIFICATION AGREEMENTS ARE INTENDED TO COVER DAMAGES CAUSED BY NUCLEAR INCIDENTS* FOR WHICH THERE MAY BE LIABILITY NO MATTER WHEN THE DAMAGE IS DISCOVERED, I.E., EVEN AFTER THE END OF THE LICENSE. THAT IS WHY THE DEFINITION OF 'NUCLEAR INCIDENT' HAS THE PHRASE 'ANY OCCURENCE * * * CAUSING BODILY INJURY, SICKNESS, DISEASE, OR DEATH' AND WHY THE DEFINITION OF 'PUBLIC LIABILITY' IS TIED TO ANY LEGAL LIABILITY ARISING OUT OF, OR RESULTING FROM, A NUCLEAR INCIDENT. (emphasis added)

It is implicit in the language of the above quoted legislative history that the terms "nuclear incident" and "occurrence" are inextricably intertwined with "licenses" and "indemnification agreements," thus suggesting licenses and indemnification agreements are an integral part of the PAA's statutory scheme and that there cannot be a nuclear incident without an applicable license or indemnity agreement. *Strong*, 283 F. Supp. 3d at 770-71; *Banks*, 2019 WL 1426259, at *7.

### 3.  Defendants Do Not Have an Applicable License or Indemnity Agreement

The only possible license Defendants could argue confers jurisdiction under the PAA is Cotter Corporation's 1969 "source material" license. However, all courts that have considered this issue have determined that Cotter's license does not support subject matter jurisdiction under the PAA for the landfills at issue as well as for the radioactive wastes at issue.

In *Strong*, a case dealing with the *exact same landfills and the exact same radioactive waste*, the court determined that "assuming that a license is required for federal subject matter jurisdiction pursuant to the PAA, the Court fails to see how Cotter's Source Material License

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

applies to Plaintiffs' claims." *Strong*, 283 F. Supp. 3d at 772. The Court further reasoned that "to the extent the material at issue is uranium mill tailings, in 1969, when Cotter obtained the Source Material License, and, in 1973, when the Landfills allegedly accepted the material at issue, the definition of 'byproduct material' did not include uranium or thorium mill tailings. It was not until 1978 that Congress expanded the definition of "byproduct material" to include uranium and thorium mill tailings." *Id*. at 772-73.

Here, throughout the Second Amended Complaint, Plaintiffs have specifically alleged that the materials at issue are mill tailings and that these wastes were generated from the processing of uranium ore in downtown St. Louis. (ECF. No. 166 ¶¶ 3, 91) Plaintiffs further allege that their "claims do not fall within the Jurisdiction of the Price Anderson Act because the mill tailings that Cotter disposed of and the Landfill Defendants accepted were not at the time subject to the Atomic Energy Act and the Price Anderson Act." (ECF No. 166 at ¶ 19)

Further, "[r]egardless of whether uranium mill tailings are the radioactive wastes at issue in this case or whether plaintiffs properly pled that they are, Cotter's license nevertheless does not affect [the] determination that the PAA does not apply to plaintiffs' claims." *Kitchin*, 389 F. Supp. 3d at 613. As pointed out in *Kitchin*, Cotter's license authorized it to receive, possess and import the source material, to use such material for the purpose(s) and the place(s) designated, i.e. 9200 Latty Avenue, and to deliver or transfer such material to persons authorized to receive it.  As in *Kitchin*, plaintiffs' damages here arise from defendants' unauthorized disposal and receipt of the material and their unauthorized use of the material at an unauthorized site. "Cotter's Source Material License did not cover its delivery or transfer of the material to such unauthorized entities. Nor did it cover defendants' activities at the Landfill. Cotter's license therefore does not provide

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

basis for federal subject matter jurisdiction under the PAA." *Kitchin*, 389 F. Supp. 3d at 613; See also *Banks* 2019 WL 1426259, at *9.

### 4. Defendants' Own Judicial Admissions Negate Federal Jurisdiction

Defendants Rock Road Industries and Bridgeton Landfill, LLC previously, and correctly, declared that the PAA does not apply because the West Lake Landfill is not a licensed nuclear facility. Below are quoted admissions argued by Rock Road Industries and Bridgeton Landfill, LLC in *Paulette M. Adams, et al., v. MI Holdings, Inc., et al*, Case No. 4:12-cv-00641-JCH, a case involving the same radioactive wastes at issue here:

> "Rock Road and Bridgeton Landfill, as owners of the West Lake Landfill, are, nor have they ever been Nuclear Regulatory Commission licensees."[2]

> "Count One, arising under the Price-Anderson Act, is wholly inapplicable to Rock Road and Bridgeton Landfill, as the West Lake Landfill is not a nuclear facility subject to licensing by the Nuclear Regulatory Commission."[3]

> "the West Lake Landfill and defendants Rock Road and Bridgeton Landfill are not, and have not ever been, subject to the Price-Anderson Act, 42. U.S.C. 2011, et seq."[4]

> "Rock Road and Bridgeton Landfill have never been engaged in the development, use, and control of atomic energy within the terms of the Atomic Energy Act, and are not now, nor were they ever, Nuclear Regulatory Commission ("NRC") licensees"[5]

### 5. Applying the Price-Anderson Act to Every Case Involving Nuclear Material or Radiation Leads to Absurd Results

In their notice of removal Defendants argue that "the factual allegations undergirding Plaintiffs' purported injuries all relate to the Defendants' conduct in connection with nuclear and radioactive materials. As a result, Plaintiffs' claims arise out of an alleged nuclear incident[.]"

---

[2] Defendants Rock Road Industries and Bridgeton Landfill, LLC's Memorandum in Support of Motion to Dismiss (Doc 15), *Adams v. MI Holdings, Inc*., Case No. 4:12-cv-00641-JCH at page 2.
[3] Id at page 3.
[4] Id at page 10.
[5] Id at page 10.

(Doc. 1 at ¶ 42). This approach ignores the history, structure, language and purpose of the PAA and would lead to absurd results. "Nothing in the PAA – either originally enacted or through its evolution – provides that it is, or was intended to be, the exclusive remedy for all claims involving nuclear radiation." *Kitchin*, 389 F. Supp. 3d at 612.

Under Defendants' approach, the PAA covers all nuclear tortfeasors under any conceivable circumstance. It would cover the properly licensed and indemnified owner of a nuclear plant, as well as any corporate opportunist who foregoes licensing and regulations to conduct operations at a discount, and even those who seek to do evil. Such an extreme result was not Congress' intent and is not supported by the language of the PAA. This Court should resist Defendants' invitation to depart from the purpose and language of the PAA by assigning an interpretation that would have absurd consequences.

### 6. Applying Price-Anderson Act Preemption to Encompass all State Law Claims Involving Radiation Violates the Due Process Clause

The Due Process Clause of the United States Constitution prevents the government from taking away long-held common law rights, especially property rights such as recourse for nuisance, without providing a reasonable alternative remedy. The Supreme Court of the United States considered a due process challenge to the PAA's preemption provisions in *Duke Power Co. v. Carolina Envtl. Study Group, Inc.* 438 U.S. 59, 88 (U.S. 1978). The Court held that the requirements of the Due Process Clause were satisfied, in part because the PAA provided "a reasonably just substitute for the common-law or state tort law remedies it replaces." *Id.* It reached this decision in part based on the fact that the indemnity provisions of PAA provided "assurance" of available funds to satisfy potential radiation claims. *Id.* at 90-91.

Defendants' position is that all state-law claims for lost property that in any way involve damage from radiation are preempted by the PAA—including those not covered by

13

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

indemnification. Adopting this position would mean that the PAA deprives injured claimants of their common law property rights without any substitute. Per the Supreme Court's analysis in *Duke Power*, this would be an unconstitutional due process violation.

### C.  CERCLA Does Not Provide a Basis for Federal Question Jurisdiction Under the Facts Alleged.

Plaintiffs do not cite CERCLA as a basis for their claims or seek reimbursement of response costs or any other form of relief available under its provisions. Plaintiffs are not requesting relief that would interfere with the EPA's remediation plans and their claims do not challenge the effectiveness of the remediation plans. Nor do plaintiffs seek specific action that could conflict with the remediation process. Plaintiffs are seeking relief under common law theories that have long been recognized by Missouri courts as a basis of recovery from parties responsible for personal injury and property damage occurring as a result of the release of hazardous substances. *E.g.*, *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo. Ct. App. 1988) (nuisance, negligence); *Kansas City v. W.R. Grace & Co.*, 778 S.W.2d 264 (Mo. Ct. App. 1989) (negligence, strict liability, civil conspiracy), *abrogated on other grounds by Ellison v. Fry*, 437 S.W.3d 762 (Mo. banc 2014).

Defendants assert that this Court also has federal question jurisdiction because Plaintiffs seek injunctive relief challenging a CERCLA cleanup in progress at the West Lake Landfill Superfund Site and that Plaintiffs' allegations regarding radioactive contamination at their property inherently bring the property under the EPA's jurisdiction because Plaintiffs allege the property contains contamination from the Superfund Site. (Doc. 1 at ¶ 45,46) This argument was considered and rejected in *Kitchin* which reasoned that:

> To take defendants' argument to its logical conclusion, then, even with a properly-pled claim under 42 U.S.C. § 9607, private property owners could themselves be liable under CERCLA because their contaminated property, for which they otherwise would seek to recover reimbursement for response costs, would itself be

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

a "facility" even without release of hazardous material from their property. This is not a logical reading of CERCLA, nor does it further CERCLA's intended purpose.

*Kitchin*, 389 F. Supp. 3d at 615.

As in *Kitchin*, plaintiffs are not seeking relief that would require defendants to take action that would overlap with, alter or contradict any EPA remedy that is being reviewed and/or taken at the site under CERCLA. Nor do the causes of action set forth in Plaintiffs' Second Amended Complaint depend on the resolution of substantial questions regarding response-cost liabilities or other obligations imposed by CERCLA. Accordingly, defendants have failed to meet their burden of establishing that Plaintiffs' Second Amended Complaint raises any actually disputed and/or substantial issues arising under CERCLA. *Kitchin*, 389 F. Supp. 3d at 615.

## III.  CONCLUSION

Contrary to Defendants' arguments, this court lack jurisdiction over Plaintiffs' state law claims. Three decisions from this court in factually similar cases have already determined that there is no subject matter jurisdiction under the PAA. One of these decisions dealing with same landfill and the same wastes also determined that CERCLA does not provide a basis for federal question jurisdiction. This matter should be no different.

The PAA does not apply because Defendants do not possess an applicable license or indemnity agreement and Plaintiffs have alleged that no "nuclear incident" giving rise to PAA jurisdiction has occurred. CERCLA does not provide jurisdiction because the relief sought by Plaintiffs does not interfere with CERCLA and does not constitute a "challenge" to the EPA's cleanup plan. Based on the fact that removal statutes are strictly construed and any doubts about the correctness of removal are resolved in favor of state court jurisdiction and remand, this matter must be remanded to Missouri state court because the defendants have not carried their heavy burden of establishing jurisdiction.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Respectfully Submitted,

/s/ Celeste Brustowicz
Stuart H. Smith (LSBA 17805), Pro Hac Vice
Barry J. Cooper, Jr. (LSBA 27202), Pro Hac Vice
Celeste Brustowicz (LSBA 16835), Pro Hac Vice
Victor T. Cobb (LSBA 36830), Pro Hac Vice
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, Louisiana 70130
Phone:      504-399-0009
Facsimile:  504-291-1352
Email: ssmith@clfnola.com
         bcooper@clfnola.com
         cbrustowicz@clfnola.com
         vcobb@clfnola.com
ATTORNEYS FOR PLAINTIFFS,
MICHAEL AND ROBBIN DAILEY

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed the foregoing document

with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing

to counsel of record.

/s/ Celeste Brustowicz
Celeste Brustowicz (LSBA 16835), Pro Hac Vice

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY, | |
| Plaintiffs, | Case No.  4:17-cv-00024 |
| v. | ORAL ARGUMENT REQUESTED |
| BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., COTTER CORPORATION, | |
| Defendants. | |

**COTTER CORPORATION (N.S.L.)'s[1] MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

## I.   INTRODUCTION

Plaintiffs Michael and Robbin Dailey's ("Plaintiffs") Second Amended Complaint ("SAC"), which contains entirely state-law claims, should be dismissed with prejudice because those claims are preempted by the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*  When examining Plaintiffs' First Amended Complaint ("FAC"), this Court found that the PAA preempted Plaintiffs' state-law claims.  *See Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1098-99 (E.D. Mo. 2017).  Although the SAC has been revised to remove the express PAA claim so that, on its face, it contains only state-law claims, preemption still applies because the allegations in the SAC still assert a "nuclear incident" within the meaning of the PAA.  Just as with the FAC, Plaintiffs allege that their damages stem from radioactive contamination.  Liability for such claims is governed and preempted by the PAA, which provides an exclusive, retroactive, federal public liability cause of action for all tort claims stemming from nuclear

---

[1] Improperly pled as Cotter Corporation.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

incidents and radiation injuries. As a result, Counts I – VIII of the SAC, which are premised on state law and allege radiation injuries, are preempted by the PAA and should be dismissed. And even assuming Plaintiffs had asserted a public liability claim, Plaintiffs failed to allege an essential element for such a claim: namely, exposure to radiation in excess of federal radiation dose limits. Cotter's motion should be granted, and the SAC should be dismissed with prejudice.

## II.    ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

Plaintiffs allege that their house has been "contaminated with radioactive material" that was "generated from the processing of uranium ores." *See* Dkt. 166 ¶¶ 1, 3, 7. This radioactive material originated seven decades ago, when a government contractor[2] began "processing, handling, and storing radioactive materials in the St. Louis area," including "uranium ores." *See id.* ¶ 1; *see generally id.* ¶¶ 39-58. The processing of these uranium ores allegedly produced "hazardous, toxic, carcinogenic, radioactive mill tailing waste." *Id.* This hazardous, toxic, and radioactive material, which was generated from uranium processing, was then allegedly dumped "into the West Lake Landfill." *See id.* Testing by the federal government now allegedly confirms that "the same radioactive mill tailings wastes generated in the processing of uranium ores in the St. Louis area" have contaminated "the areas around the West Lake and Bridgeton Landfills." Dkt. 166 ¶ 3; *see also id.* ¶¶ 74-80, 86. One of these contaminated areas is allegedly Plaintiffs' residence, which "is contaminated with the radioactive material from the Landfill." *Id.* at ¶ 7; *see also id.* ¶¶ 89-97. In short, Plaintiffs contend that their property "is contaminated by radioactive material," that this contamination is linked to radioactive emissions from the Landfill, that "[t]he contamination was caused by Defendants' improper handling, storage, and disposal of radioactive materials," and that the contamination resulted in damage to their

---

[2] That contractor's corporate successor, Mallinckrodt LLC, was originally a party to this action, but has since settled with Plaintiffs and been dismissed. *See* Dkt. 120 & 122; Dkt. 166 at 7, fn. 6.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

property. *See id.* ¶¶ 89-99. Based on these allegations, Plaintiffs assert claims for: Trespass (Count I); Permanent Nuisance (Count II); Temporary Nuisance (Count III); Negligence (Count IV); Negligence Per Se (Count V); Strict Liability/Absolute Liability (Count VI); Injunctive Relief (Count VII) and Punitive Damages (Count VIII). In addition to statutory, punitive and exemplary damages, Plaintiffs seek monetary damages "for the loss and use of enjoyment of Plaintiffs' property; annoyance and discomfort; damage to Plaintiffs' personal property; the diminution in market value of Plaintiffs' property; as well as the costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation." *Id.* at p. 38. Plaintiffs also seek "appropriate injunctive and equitable relief, including medical monitoring." *Id.* at p. 39.

## III.    LEGAL STANDARD

"Pursuant to Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Haney v. Portfolio Recovery Assocs. LLC*, 837 F.3d 918, 924 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 566 U.S. at 679 (internal quotations omitted). Therefore, "[t]he reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but is not required to accept the legal conclusions the plaintiff draws from the facts alleged." *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 1007, 1011 (E.D. Mo. 2014) (citing *Iqbal*, 566 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-79 (8th Cir. 2012)).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Rule 12(b)(6) is an appropriate procedural vehicle for seeking the dismissal of a complaint on the basis of federal preemption. *Dougherty v. Source Naturals, Inc.*, 148 F. Supp. 3d 831, 835 (E.D. Mo. 2015) (citing *Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1139 (8th Cir. 2014); *Moretti v. Mut. Pharm. Co.*, 518 F. App'x 486, 487 (8th Cir. 2013)); *see also Thompson*, 993 F. Supp. 2d at 1014 (granting defendant's motion to dismiss, pursuant to Rule 12(b)(6), on the basis of federal preemption of state-law claims).

## IV.   THE PRICE-ANDERSON ACT PREEMPTS PLAINTIFFS' CLAIMS

Plaintiffs' SAC should be dismissed pursuant to Rule 12(b)(6) because each and every cause of action that Plaintiffs assert against Cotter is preempted by the PAA. When this Court previously dismissed Plaintiffs' state law claims from the FAC, it joined the "many appellate courts" that have held that the PAA "preempts state-law claims when a nuclear incident is alleged." *Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1098 (E.D. Mo. 2017). Although Plaintiffs have removed their express PAA claim (Count I of the FAC), the PAA still preempts all claims in the SAC.  Plaintiffs cannot escape the application of that Act by simply scrubbing its name from the pleading.  Their claims are still, at their essence, PAA claims, and the PAA still preempts all state-law claims in the SAC, requiring their dismissal.

### a.   The State Law Claims in the SAC Are Preempted by the Price-Anderson Act

#### i.   The PAA Preempts All Claims that Allege a "Nuclear Incident"

The PAA provides for preemption of state law claims whenever a "nuclear incident" has occurred.  Indeed, this Court previously recognized as much, noting that:

> other appellate courts have exhaustively examined this issue following the 1988 amendments to the PAA, and they have found federal preemption of state-law claims for nuclear incidents.  *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing *a nuclear incident claim*); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts state law claims and they

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

"cannot stand as separate causes of action"); *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994) (a federal cause of action for a nuclear safety claim "supplants" the prior state cause of action); *In re TMI Litig. Cases Consol. II (TMI II)*, 940 F.2d 832, 854 (3d Cir. 1991) (*a nuclear incident claim* is "compensable under the [PAA] or it is not compensable at all.").

*Dailey*, 299 F. Supp. 3d at 1097 (emphasis added).[3]  This Court joined these "many appellate courts" and held that the PAA "preempts state-law claims *when a nuclear incident is alleged*." *Id.* at 1098 (emphasis added).  Although the SAC no longer contains an expressly pled PAA count, it has not fundamentally changed, as the essence of the SAC is still a PAA claim. Accordingly, this Court's prior ruling applies equally to the allegations in the SAC.

### ii. The SAC Alleges a Nuclear Incident

Under the PAA, a nuclear incident involves "bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material."  42 U.S.C. § 2014(q).  "The term 'source material' means (1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of [Title 42] to be source material."  42 U.S.C. § 2014(z).  Likewise, the implementing regulation broadly defines source material as "Uranium or thorium, or any combination thereof, in any physical or chemical form."  10 C.F.R. § 40.4.  Given these definitions, the SAC clearly alleges a nuclear incident because it claims that Plaintiffs' property damage arose from uranium and thorium.

For example, in the opening paragraph of the SAC, Plaintiffs allege that companies processed, handled, and stored "radioactive materials in the St. Louis area," including "uranium ores."  Dkt. 166 at ¶ 1.  This radioactive material was eventually allegedly dumped "into the

---

[3] *See also* Dkt. 33 at 6-10, Dkt. 72 at 5-9, for additional discussion of why the PAA applies here.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

West Lake Landfill." *See id.* Allegedly, testing by the federal government has confirmed that the radioactive material in the Landfill has contaminated "the areas around the West Lake and Bridgeton Landfills." *Id.* at ¶ 3. One of these contaminated areas is allegedly Plaintiffs' residence, which "is contaminated with the radioactive material from the Landfill. The radioactive material consists of high levels of Uranium (U-238) decay products, including Thorium (Th-230), Lead (Pb-210), and Radon (Ra-226)." *Id.* at ¶ 7.

In a transparent attempt to plead around the PAA, Plaintiffs allege that the waste deposited in the Landfill was not in fact "source material," but "radioactive mill tailings wastes." *See, e.g.*, *id.* at ¶¶ 1, 3-4. Plaintiffs further contend that the PAA does not apply to mill tailings wastes. *See id.* at ¶¶ 19, 21.[4] The Court should reject Plaintiffs' artful pleading. First, their contention that this material was mill tailings (and thus, not source material) is belied by the Source Material License that the Atomic Energy Commission ("AEC") issued to Cotter. *See* Dkt. 64-5. This license expressly stated that it was for source material. *See id.* Indeed, the fact that the material was "source material" is underscored by Plaintiffs' FAC. There, Plaintiffs explicitly alleged that "Cotter transferred *source material* from Latty Avenue to the West Lake Landfill." *See* Dkt. 70 at ¶ 62 (emphasis added). Just because Plaintiffs have removed the phrase "source material" from their SAC does not change what that material is.

Second, even if one accepts Plaintiffs' characterization, "mill tailings" are a "byproduct material" under the Atomic Energy Act, 42 U.S.C. § 2014(e)(2), which also are covered under the PAA. *See* 42 U.S.C. § 2014(q) (covering "source, special nuclear, or byproduct material").

---

[4] Paragraphs 19-20 rely on "Exhibit 1 – Declaration of Richard B. Stewart (April 24, 2018), which is not attached to the amended pleading filed on the docket and should not be considered as part of the SAC. This same affidavit is the subject of a prior motion to strike, which was denied as moot when the Court permitted Plaintiffs to refile their motion for leave to amend. *See* Dkt. 158. Cotter reserves all objections to that exhibit.

Finally, Plaintiffs' allegations that the PAA does not apply to the material that was deposited in the Landfill are legal conclusions, *see* Dkt. 166 at ¶¶ 19, 21, and this Court "is not required to accept the legal conclusions the plaintiff draws from the facts alleged." *Thompson*, 993 F. Supp. at 1011 (citing *Iqbal*, 566 U.S. at 678; *Retro Television*, 696 F.3d at 768-79).

For these reasons, this Court should reject Plaintiffs' attempts to plead around the PAA. Both the AEC and Plaintiffs' FAC acknowledged that the material Cotter handled was "source material," and Plaintiffs' renaming it "mill tailings" in the SAC does not change this fact.

### iii. Consistent with the Reasoning in the Court's October 27, 2017 Opinion, the State-Law Claims in the SAC Are Preempted

This Court's reasoning in its previous opinion finding that the PAA preempted the FAC's permanent and temporary nuisance claims applies equally to the SAC's state-law claims. This Court found that the nuisance claims were preempted by the PAA, noting "almost every paragraph of the amended complaint in these two state-law counts mentions the radioactive contamination. These allegations fall under the PAA's definition of 'nuclear incident.'" *Dailey*, 299 F. Supp. 3d at 1099 (citing Dkt. 70 at ¶¶ 100–36 p. 34–38). Because the FAC nuisance counts are nearly identical to the SAC's nuisance counts, *compare* Dkt. 70 at ¶¶ 100–36 p. 34–38 *with* Dkt. 166 at ¶¶ 113-134,[5] it necessarily follows that the PAA also preempts the SAC counts.

Although the SAC contains additional counts for trespass, negligence, negligence per se, and strict liability, this Court's previous reasoning shows that they, too, are preempted. As with the nuisance counts, almost every paragraph of the SAC in these state-law counts mentions radioactive contamination. *See* Dkt. 166 at ¶¶ 103-11, 136-40, 142-45, 147-48, 154-63, 166-72.

---

[5] The sole difference between the FAC and SAC nuisance counts is that the SAC no longer contains the allegation that "Defendants' tortious acts have contaminated the Dailey Home with radioactive-cancer causing materials such as Uranium and Thorium." *See* Dkt. 70 at ¶¶ 112, 136 p. 35, 37. The deletion of these references to uranium and thorium is a blatant attempt to plead around the PAA's definition of "source material." *See* 42 U.S.C. § 2014(z) (defining "source material" to include uranium and thorium).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Therefore, these allegations "undoubtedly" fall under the PAA's definition of "nuclear incident" and are preempted. *Dailey*, 299 F. Supp. 3d at 1099.

**b.  Neither a License Nor an Indemnity Agreement Are Required for the PAA to Apply**

Plaintiffs' contention that their "claims do not fall within the scope of the [PAA because] Defendants have never received a license to possess, transport, or dispose of any radioactive wastes on or in the Landfill" and "have never entered into an indemnification agreement with the United States government under 42 U.S.C. § 2210 with respect to the complained activities," *see* Dkt. 166 at ¶ 14, should be rejected because it relies on a tortured reading of the statute, and has been rejected by courts across the country.

First, the PAA does not require defendants to have a license for preemption to apply. Rather, "[i]n passing the [PAA], Congress recognized that a nuclear incident might be caused by any number of participants in the nuclear industry beyond the actual licensee." *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1378 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994). Indeed, numerous courts have expressly rejected the contention that "the PAA is limited to nuclear incidents occurring at [nuclear power plants] and other licensed facilities." *See Estate of Ware v. Hosp. of Univ. of Pa.*, 73 F. Supp. 3d 519, 530 (E.D. Pa. 2014) (citation and internal quotation marks omitted) (involving a nuclear incident occurring at a university research facility), *aff'd*, 871 F.3d 273 (3d Cir. 2017); *see also Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1258 (S.D. Fla. 2014) ("Thus, demonstration of a license for radioactive materials is not a prerequisite to federal jurisdiction under the plain language of the [PAA].");
*Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 804 (N.D. Ill. 1999) (rejecting argument to limit PAA to release from a facility licensed by the NRC).

Plaintiffs' reliance on *Strong v. Republic Services, Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017) (Hamilton, J.) is misplaced, *see* Dkt. 166 at ¶ 17 & n.3, because *Strong*'s holding that a

8

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

license is a prerequisite is based almost exclusively on *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998), a case that has routinely been criticized and was recently rejected by the Third Circuit, hereby removing any persuasive authority it may have had. *See Ware*, 871 F.3d at 283 (agreeing with the Fifth Circuit that *Gilberg* "misses" the purpose of the 1988 amendments [to the PAA] and relies "'on faulty statutory interpretation and [is] contrary to Congressional intent'" (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000))), *cert. denied*, 138 S. Ct. 2018 (2018).[6] Plaintiffs' reliance on *Banks v. Cotter Corp.*, No. 4:18-cv-00624, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019) is similarly misplaced, because *Banks* relied on *Strong*.[7] This Court should not join the now-defunct reasoning of *Gilberg*, but rather, in keeping with the PAA's plain language and Congress's intent, find that the PAA is "broad enough to create a federal forum for any tort claims even remotely involving atomic energy production." *See Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997).

Second, contrary to Plaintiffs' assertion at paragraphs 14 and 17 of the SAC that a nuclear incident can occur only if a defendant had an indemnification agreement with the government – which also comes from the now-defunct and often criticized *Gilberg* – such an agreement is not a prerequisite for the PAA to apply. Indeed, as with the license issue discussed

---

[6] The U.S. District Court for the Southern District of Florida has rejected *Strong*'s finding. In *Pinares v. United Technologies Corp.*, the plaintiffs relied solely on *Strong* for the proposition that the PAA requires a license or indemnity agreement. *See* No. 9:10-cv-80883, Dkt. 345 at 24 (S.D. Fla. June 6, 2018). Finding that the PAA preempted plaintiffs' claims, the court rejected plaintiffs' license/indemnity contention, relying on the same cases Cotter relies on herein. *See Pinares v. United Techs. Corp.*, No. 9:10-cv-80883, 2018 U.S. Dist. LEXIS 195073, at *14 n.5 (S.D. Fla. Nov. 14, 2018).
[7] Importantly, *Banks* and *Strong* both involved motions to remand, and the only issue conclusively decided by a remand order is the forum. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 647 (2006). Moreover, the court in *Banks* did not definitely find that a license was a jurisdictional prerequisite of the PAA. Rather, the court stated that it was faced with "'competing preemption narratives,'" and it had a "'duty to accept the reading that disfavored preemption.'" *See Banks*, 2019 WL 1426259, at *8 (citation omitted).

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

above, most courts addressing this issue have flatly rejected Plaintiffs' argument. *See Ware*, 871 F.3d at 282-83 (rejecting *Gilberg*'s contention that the PAA "only covers defendants that have indemnity agreements with the NRC"); *Acuna*, 200 F.3d at 339 ("There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on . . . whether the facility is covered under the separate indemnification portions of the Act."); *Cotromano*, 7 F. Supp. 3d at 1259 ("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson to this case."). Similarly, none of the statutory definitions limit the jurisdiction over nuclear claims to defendants that had an indemnification agreement. *See* 42 U.S.C. § 2014(w) ("public liability"); *id.* at § 2014(hh) ("public liability action"); *id.* at § 2014(q) ("nuclear incident"). In addition, Congress included "indemnification" language in other portions of the statute, *see, e.g.*, *id.* at § 2210(a)–(b), but excluded it from the jurisdictional definitions. This evinces Congress's intention and purpose to exclude indemnification as a jurisdictional prerequisite. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997).

Nor should this Court be persuaded by *Strong*'s finding that an indemnity agreement is a jurisdictional prerequisite. In addition to relying on the often-criticized *Gilberg*, *Strong* erred in its consideration of the PAA's legislative history. After examining the legislative history of the *1957 amendments*, the court mistakenly concluded that "the terms 'nuclear incident' and 'occurrence' are inextricably intertwined with 'licenses' and 'indemnification agreements,' thus suggesting . . . there cannot be a nuclear incident without an applicable license or indemnity agreement." *See Strong*, 283 F. Supp. 3d at 770-71.

This was an error for two reasons. First, *as the court expressly acknowledged*, the 1957 amendments were "prior to the 1988 Amendments to the PAA." *Id.* at 770. Because the term

10

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

"nuclear incident" was not added to the PAA's jurisdictional provision *until 1988*, any statements using the words "nuclear incident" thirty-one years before cannot possibly shed light on its meaning.  Second, had the court simply read just one paragraph further in the Senate Report, its error would have been revealed, as the following text shows that even in 1957, Congress intended the PAA's jurisdiction to extend to other entities:

> *The definition "person indemnified" means more than just the person with whom the indemnity agreement is executed. . . . The phrase "person indemnified" also covers any other persons who may be liable. . . . [I]t is not meant to be limited solely to those who may be found liable due to their contractual relationship with the licensee*.  In the hearings, the question of protecting the public was raised where some unusual incident, such as negligence in maintaining an airplane motor, should cause an airplane to crash into a reactor and thereby cause damage to the public.  Under this bill the public is protected and the airplane company can also take advantage of the indemnification and other proceedings.  The proposed AEC limitation to those in privity with the licensee was reconsidered by the Commission, and *the Commission decided to accept the premise of the original bills which would make the person indemnified any person who might be found liable, regardless of the contractual relation*.

S. REP. NO. 85-296 (May 9, 1957), *reprinted in* 1957 U.S.C.C.A.N. 1803, 1818 (1957) (emphasis added).  Contrary to *Strong*, this legislative history corroborates the plain text of the statute and cases that have found no indemnity agreement is required.  For this additional reason, an indemnity agreement is not required for the PAA to apply.[8]

V. **BECAUSE THE PAA PREEMPTS PLAINTIFFS' SUBSTANTIVE STATE-LAW CLAIMS, THEIR CLAIMS FOR INJUNCTIVE RELIEF AND PUNITIVE DAMAGES SHOULD BE DISMISSED**

Because the PAA preempts Plaintiffs' trespass, permanent nuisance, temporary nuisance,

---

[8] Cotter acknowledges that in *Kitchin v. Bridgeton Landfill, LLC* – another remand decision – Judge Perry ruled that (1) the PAA applies "only to public liability claims arising out of NRC-licensed activity or DOE-contracted activity operating indemnification agreements."  389 F. Supp. 3d 600, 612-13 (E.D. Mo. 2019) (citations omitted).  Cotter was not a party to *Kitchin*, and that opinion, therefore, is not binding on Cotter.  Regardless, for the reasons discussed above, *Kitchin* was wrongly decided because the PAA does not require defendants to have a license or indemnification agreement for it to apply.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

negligence, negligence per se, and strict liability claims, they cannot sustain claims for injunctive relief or punitive damages.  As such, Counts VII and VIII[9] of the SAC should be dismissed.

    a.   **Plaintiffs' Injunctive Relief Claim Should Be Dismissed**

        Injunctive relief constitutes a remedy, not an independent cause of action.  *See Church v. Missouri*, 268 F. Supp. 3d 992, 1022 (W.D. Mo. 2017) (citing *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011) ("[A]n injunction is a remedy and not a cause of action[.]").  "Thus, a request for such [a] remed[y] 'must be based on some recognized and pleaded legal theory.'"  *Id.* (quoting *Goerlitz*, 333 S.W.3d at 455).  Since the PAA preempts each of Plaintiffs' substantive claims for trespass, permanent nuisance, temporary nuisance, negligence, negligence per se, and strict liability, these claims should be dismissed.  Thus, Plaintiffs cannot obtain injunctive relief because there are no longer any viable and operative legal theories independent of their claim for injunctive relief, *see id.*, and Count VII of the SAC should be dismissed.

    b.   **Plaintiffs' Punitive Damages Claim Should Be Dismissed**

        "Punitive damages cannot constitute an independent cause of action.  They can only be an incident of another cause of action."  *Landum v. Livingston*, 394 S.W.3d 573, 578 (Mo. App. 1965).  "Before punitive damages can be recovered there must be a cause of action for compensatory damages."  *Id.*; *see also Compton v. Williams Bros. Pipeline Co.*, 499 S.W.2d 795, 797 (Sup. Ct. Mo. 1973) (stating that it is well established "that actual or nominal damages must be recovered before punitive damages can be recovered").  Here, as set forth above, the only causes of action against Cotter that could give rise to a claim for punitive damages should be dismissed as preempted by the PAA.  As such, Count VIII of the SAC should be dismissed.

---

[9] Plaintiffs' incorrectly number their Eighth Count as "Count XIII."  *See* Dkt. 166 at ¶¶ 181-84.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## VI.   PLAINTIFFS HAVE NOT, AND CANNOT, ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR PUBLIC LIABILITY UNDER THE PAA

Assuming *arguendo* Plaintiffs have pled a PAA public liability claim, the SAC's factual allegations are nonetheless insufficient to support such a claim.  Namely, Plaintiffs have failed to allege exposure to radiation in exceedance of federal dose limits.  Further, Plaintiffs have not identified any federal nuclear safety regulations that Cotter may have breached.

Courts throughout the country are in near-universal agreement that liability for purposes of the PAA is defined by a federal standard of care derived from federal nuclear safety regulations.  *See, e.g.*, *Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir. 1998) (stating "federal safety regulations conclusively establish the duty of care owed in a public liability action"); *O'Conner*, 13 F.3d at 1105 ("the federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action."); *In re TMI II*, 940 F.2d 832, 859-60 (3d Cir. 1991) (concluding federal permissible dose limits would apply as "states are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal regulation in the field of nuclear safety, and thus would conflict with federal law"); *see also McClurg v. MI Holdings, Inc.,* 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013) (to assert PAA public liability claim, plaintiffs must allege violation of federal radiation dose limit because "the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injuries"). Indeed, in *McClurg*, the district court observed that "every Circuit Court" to address the issue – namely the Third, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits – has held "that the maximum permissible radiation dose levels set by federal safety standards establish the duty of care for radiation injures, and that imposing a non-federal duty would conflict with [the PAA]." *Id.*

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

While this Court previously declined to dismiss Plaintiffs' PAA claims, finding that "application of a specific federal dosing standard of care at this stage in the litigation is premature," *see Dailey*, 299 F. Supp. 3d at 1101, that conclusion was premised on the Court's reluctance to extend the federal dose limit requirement to property damage claims. *Id. at* 1100-1101. The law is clear that the federal dose limits apply to *both* personal injury and property damage claims, however. *See Reeves v. Commonwealth Edison Co.*, No. 06-cv-5540, 2008 WL 239030, at *4 (N.D. Ill. Jan. 28, 2008) (noting that *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 (7th Cir. 1994) "mandates that federal regulations provide the applicable standard of care in a public liability action, whether or not the claim is for property damages) (emphasis added)); *see also Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 769 (E.D. Tenn. 2012) (noting that regardless of whether a plaintiff alleges personal injury, **property damage, or both** as a result of radiation exposure, "every circuit court of appeals to address the question . . . has held that [a] plaintiff must prove a dose in excess of the federal permissible dose limits in order to show a breach of duty in a public liability action under the [PAA]"); *Carey,* 60 F. Supp. 2d at 809-11 (adopting 10 C.F.R. § 20.1301 (Dose Limits for Individual Members of the Public) as "sole duty owed to landowners" in an action for trespass and nuisance claims for property damage, and granting defendants' motion for summary judgment because "plaintiffs have presented no evidence that thorium tailings in excess of the NRC dose limits were released.").

Although the Court previously distinguished these cases because they involved licensed facilities, the pertinent question is whether a case is a public liability action. If it is, then the federal dose standards must apply, regardless of whether the damages were to persons or to property. *See Smith v. Carbide & Chems. Corp.*, 5:97-cv-3, 2009 WL 3007127, at *3 (W.D. Ky. Sept. 16, 2009) (in property damage case, agreeing "with the clear weight of authority that holds

that federal regulatory standards preempt state statutory or common-law standards in Price-Anderson public liability actions"). Were it otherwise, this "would undermine the purpose of a comprehensive and exclusive federal scheme for nuclear incident liability.'" *Id.* (quoting *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2008)).

Plaintiffs' failure to plead this "essential element of their claim" is fatal. *Adkins*, 960 F. Supp. at 769. Plaintiffs' claims, which are preempted by the PAA, require dismissal because they have not alleged exposure to radiation in excess of federal dose limits, nor have they identified any federal nuclear safety regulations or standards that Cotter may have breached.

## VII.   DISMISSAL SHOULD BE WITH PREJUDICE

The three years that this case has been before this Court have seen three different complaints, and a fourth is not warranted. A court may deny leave to amend where there has been undue delay, failure to cure deficiencies by amendment, and undue prejudice to the defendant. *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015-16 (8th Cir. 2015). Allowing a fourth pleading would cause undue delay by dragging this case, which was originally filed in state court in 2016, into its fourth year. This would prejudice Cotter, as it has to expend significant time and resources every time Plaintiffs decide to change their legal theories, as well as create a further imposition on this Court. Plaintiffs initially relied only on state law claims in their initial complaint. When they filed the FAC, they did a 180-degree turn and advanced a PAA claim. They then did another about-face with the SAC, returning to their original state-law claims. They should not be allowed to reverse course again.

## VIII.   CONCLUSION

For the foregoing reasons, the Court should grant Cotter's motion and dismiss Plaintiffs' Second Amended Complaint with prejudice.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Dated: November 12, 2019

Respectfully submitted,

/s/ John McGahren
MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (ID 046791990N)
john.mcgahren@morganlewis.com
Stephanie R. Feingold. Esq. (ID 23182005N)
stephanie.feingold@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

BRYAN CAVE LLP
Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed the foregoing document

with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to counsel of record.

/s/ John McGahren

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAILEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 24 CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION TO STAY PROCEEDINGS**

Come now, Robbin and Michael Dailey, through undersigned counsel, and hereby move this court for an order staying all proceedings, including Cotter Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc No. 175), pending resolution of Plaintiffs' currently pending Motion to Remand (Doc. No. 174).

Respectfully Submitted,

/s/ Celeste Brustowicz
Stuart H. Smith (LSBA 17805), Pro Hac Vice
Barry J. Cooper, Jr. (LSBA 27202), Pro Hac Vice
Celeste Brustowicz (LSBA 16835), Pro Hac Vice
Victor T. Cobb (LSBA 36830), Pro Hac Vice
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, Louisiana 70130
Phone:      504-399-0009
Facsimile:  504-291-1352
Email:  ssmith@clfnola.com
           bcooper@clfnola.com
           cbrustowicz@clfnola.com
           vcobb@clfnola.com
ATTORNEYS FOR PLAINTIFFS,
MICHAEL AND ROBBIN DAILEY

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ Celeste Brustowicz
Celeste Brustowicz (LSBA 16835), Pro Hac Vice

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY and ROBBIN DAILEY,

                       Plaintiffs,

      v.

BRIDGETON LANDFILL, LLC, REPUBLIC
SERVICES, INC., ALLIED SERVICES, LLC,
ROCK ROAD INDUSTRIES, INC., COTTER
CORPORATION,

                       Defendants.

Case No.  4:17-cv-00024

ORAL ARGUMENT REQUESTED

**DEFENDANT COTTER CORPORATION (N.S.L.)'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Defendant Cotter Corporation (N.S.L.) ("Cotter") (improperly pleaded as Cotter Corporation), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiffs' Motion to Remand (Dkt. 174).

## I.    PRELIMINARY STATEMENT

Plaintiffs' Motion to Remand must be denied because their arguments are based on an incorrect reading of the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*  Contrary to Plaintiffs' contentions – which are rooted in heavily criticized and generally rejected case law – neither a license nor an indemnification agreement is required for there to be a "nuclear incident" under the PAA, or for a finding of federal jurisdiction pursuant to the PAA.  Rather, Plaintiffs' state law claims are preempted, and federal jurisdiction is proper, because their Second Amended Complaint ("SAC") asserts that Cotter is liable for a nuclear incident in which the hazardous properties of radioactive material caused them property damage.  Numerous courts have rejected the flawed analysis that Plaintiffs employ, and neither the plain text of the PAA nor its legislative history support their contentions.  Furthermore, Plaintiffs do not come close to demonstrating that PAA preemption of their state law claims would be arbitrary and irrational, and thus, their Due Process Clause argument fails.  For these reasons, remand is not warranted, and Plaintiffs' motion must be denied.

## II.    LEGAL STANDARD FOR COMPLETE PREEMPTION

"Generally, an action arises under federal law only if issues of federal law are raised in the plaintiff's well-pleaded complaint."  *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir. 1999) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).  "An exception to this rule is the 'complete preemption' doctrine.  This doctrine provides that 'to the extent that Congress has displaced a plaintiff's state law claim a plaintiff's attempt to utilize the displaced state law is

properly 'recharacterized' as a complaint arising under federal law.'" *Id.* (quoting *Rice v. Panchal*, 65 F.3d 637, 640 n.2 (7th Cir. 1995)). Complete preemption not only "confer[s] federal jurisdiction, it also limits claims and remedies exclusively to those provided by" the federal statute. *Id.* (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 302 (8th Cir. 1993)). Per this exception, the District Court should not accept Plaintiffs' characterization of their claims, but rather it should examine the "essence" of the claims to determine if they rest on a cause of action provided by federal law. *See Hull*, 188 F.3d at 942 (finding that ERISA preempted the plaintiff's state law claims because "although [his] characterization of his claims sound in medical malpractice, the essence of his claims rests on the denial of benefits"). When determining if Plaintiffs' claims are preempted, the District Court should determine whether a finding of non-preemption "'would pose an obstacle to the purposes and objectives of Congress.'" *Id.* (quoting *Pilot Life*, 481 U.S. at 52).

The PAA is a federal statute that provides for complete preemption whenever plaintiffs plead that a "nuclear incident" has occurred. Indeed, this Court previously recognized as much, noting that:

> other appellate courts have exhaustively examined this issue following the 1988 amendments to the PAA, and they have found federal preemption of state-law claims for nuclear incidents. *See In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing a nuclear incident claim); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts state law claims and they "cannot stand as separate causes of action"); *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1100 (7th Cir. 1994) (a federal cause of action for a nuclear safety claim "supplants" the prior state cause of action); *In re TMI Litig. Cases Consol. II (TMI II)*, 940 F.2d 832, 854 (3d Cir. 1991) (a nuclear incident claim is "compensable under the [PAA] or it is not compensable at all.").

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

*Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1097 (E.D. Mo. 2017).  By this ruling, this Court joined the "many appellate courts" holding that the PAA "preempts state-law claims when a nuclear incident is alleged."  *Id.* at 1098.

## III.    PLAINTIFFS' READING OF THE PAA IS INCORRECT

### a.    The Plain Text of the PAA, Coupled With the Intent of the 1988 Amendments, Shows That Plaintiffs' Claims Are Preempted

By focusing on the PAA, as enacted in 1954 and amended in 1957, (*see* Dkt. 174-1 at 5, 10), and zeroing in on the term "extraordinary nuclear occurrence," Plaintiffs ignore that Congress's 1988 amendments to the PAA "deliberately increased the scope of the Act's coverage." *Estate of Ware v. Hosp. of Univ. of Pa.*, 871 F.3d 273, 279 (3d Cir. 2017) (citing *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)), *cert. denied*, 138 S. Ct. 2018 (2018).  Prior to these amendments, federal jurisdiction under the PAA was automatically conferred *only* when claims arose out of an "extraordinary nuclear occurrence."  *Acuna*, 200 F.3d at 339.  Due to the substantiality requirements of this phrase, only a limited number of cases qualified for PAA jurisdiction prior to the 1988 amendments.  *See* 42 U.S.C. § 2014(j) (requiring a finding that a discharge or dispersal of nuclear material "has resulted or will probably result in **substantial** damages" (emphasis added)).  Following the nuclear accident at Three Mile Island, however, the shortcomings of the PAA's narrow applicability were exposed, as claims could not be consolidated in federal court.  *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999).  As a result, Congress amended the PAA to broaden federal jurisdiction.  *Id.*  In doing so, Congress took "another step toward federalizing the law applicable to nuclear accidents." *Ware*, 871 F.3d at 279. Congress also made those changes retroactive. Pub. L. No. 100-408 § 20(b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act.").

In relevant part, the PAA's current scope is not limited to solely "extraordinary nuclear occurrences," but rather, provides that:

> With respect to any **public liability action** arising out of or resulting from a **nuclear incident**,[1] the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant . . . any such action pending in any State court . . . shall be removed . . . to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2) (emphasis added). "Public liability action," in turn, is defined as "any suit asserting public liability." 42 U.S.C. § 2014(hh). "Public liability" means "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ." *Id.* § 2014(w). And "nuclear incident" is defined as:

> any **occurrence**, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . .

*Id.* at § 2014(q) (emphasis added).

Although the term "occurrence" is not separately defined, when a separate definition is lacking, courts give terms their "ordinary meaning" as found in dictionaries. *See Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016) (using *Black's Law Dictionary* (10th ed. 2014) to supply meaning to the term "contract"). "Occurrence" simply means "[s]omething that happens or takes place." *Black's Law Dictionary* 1109 (8th ed. 2004); *see also Ware*, 871 F.3d at 281 (applying *Webster's Third New International Dictionary* (1993) definition of "occurrence," which includes "'something that takes place'" or "'the action or process of

---

[1] Prior to the 1988 amendments, the phrase "extraordinary nuclear occurrence" appeared in this definition. With those amendments, however, Congress broadened the PAA's reach by "striking 'an extraordinary nuclear occurrence' each place it appear[ed] and inserting 'a nuclear incident.'" Pub. L. 100-408 at § 11(a)(1)(A)-(B).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

happening or taking place'" (quoting *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 805 (N.D. Ill. 1999))).

Given the meaning of these definitions, and Congress's intent to broaden the scope of the PAA with the 1988 amendments, it is clear that the PAA preempts Plaintiffs' claims, as all of the jurisdictional prerequisites are met. First, because Plaintiffs seek to hold Cotter accountable for "legal liability" arising out of a nuclear incident, this matter involves a "public liability action." 42 U.S.C. § 2014(w), (hh). Second, this matter arose out of a "nuclear incident" because something happened – *i.e.*, an "occurrence" – that allegedly caused "damage to property . . . arising out of . . . radioactive . . . properties of source, special nuclear, or byproduct material." *Id.* at § 2014(q); *see also* Dkt. 166 at ¶ 7 (noting that Plaintiffs' residence "is contaminated with the radioactive material from the Landfill."). The plain text of the PAA demands nothing more in order for jurisdiction to be conferred, and this should be the end of the inquiry. *See Ware*, 871 F.3d at 279 (citation omitted) (stating that the PAA now provides "federal jurisdiction over any actions 'asserting public liability,' arising from a 'nuclear incident,' which generally includes any 'occurrence' causing physical harm resulting from radioactive properties of nuclear material"). Indeed, even *Cook v. Rockwell* – a case which Plaintiffs claim greatly aids their cause – acknowledges the simplicity of the PAA's jurisdictional provision: "[A] public liability action is a suit in which a party asserts that another party bears any legal liability arising out of an incident in which the hazardous properties of radioactive material caused bodily injury, sickness, **or property damage**.'" 790 F.3d 1088, 1094-95 (10th Cir. 2015) (quoting *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011)) (emphasis added). Rather than facing this plain language, however, Plaintiffs

engage in a convoluted effort of statutory interpretation that improperly attempts to nullify the 1988 amendments.[2]

### i. Plaintiffs Wrongly Read the 1988 Amendments Out of the PAA

By claiming that the narrow phrase "extraordinary nuclear occurrence" places limits on the broader term "occurrence," *see* Dkt. 174-1 at 8-10, Plaintiffs ignore the 1988 amendments, which were undisputedly enacted to broaden the scope of PAA preemption. *El Paso*, 526 U.S. at 477; *Ware*, 871 F.3d at 279; *Acuna*, 200 F.3d at 339. As discussed above, prior to these amendments, jurisdiction was conferred on federal courts only when there was an "extraordinary nuclear occurrence." *Acuna*, 200 F.3d at 339. But if Plaintiffs are correct that "occurrence" and "extraordinary nuclear occurrence" should be given similar meanings, thus limiting preemption to only certain narrow circumstances, the 1988 amendments would be meaningless. This cannot possibly be the correct reading of the PAA, because it would violate two canons of statutory construction.[3]

First, using the term "extraordinary nuclear occurrence" to define and limit "occurrence" would violate the canon that courts should "'give effect to every clause and word' of the Act." *Sester v. United States*, 566 U.S. 231, 239 (2012) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)); *United States v. Johnson*, 703 F.3d 464, 468 (8th Cir. 2013) (citation omitted)

---

[2] The Court should not be misled by Plaintiffs' attempt at a "parade of horribles" argument. Contrary to their assertion, Cotter is not arguing that the PAA should apply to "every case involving nuclear materials or radiation." (Dkt. 174-1 at 12-13.) Rather, the PAA squarely applies *to this case* because it involves source material from the Manhattan Project. (*See, e.g.*, Dkt. 166 at 1, 7, 39-41, 44-45, 86.)

[3] Plaintiffs' reading of the PAA also ignores the usage of the word "including" in the definition of "nuclear incident." As discussed above, "nuclear incidents" are defined to encompass "any occurrence, **including** an extraordinary nuclear occurrence." 42 U.S.C. § 2014(q) (emphasis added). Given Congress's usage of the word "including," this clearly shows that "occurrences" are a large set of happenings, which consist of, but are not limited to, the smaller subset of "extraordinary nuclear occurrences."

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

(noting that this is a "'cardinal principle of statutory construction'").  Second, by narrowly interpreting "occurrence" in the face of Congress's intent to broaden PAA jurisdiction, Plaintiffs' construction would violate the canon that a definition "must not be given a restrictive meaning which frustrate[s] the congressional intent." *First Nat'l Bank in Plant City, Fla. v. Dickinson*, 396 U.S. 122, 134 (1969); *Foothill Presbyterian Hosp. v. Shalala*, 152 F.3d 1132, 1134 (9th Cir. 1998) (citation omitted) ("[W]e must reject constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement.").  For these reasons, this Court should reject Plaintiffs' attempt to read the term "occurrence" out of the PAA and should instead effectuate Congress's intent of broadening the PAA's jurisdictional reach.

### ii. Numerous Courts Have Criticized the Same Analysis Advanced by Plaintiffs Here, and Rejected the Case on Which They Rely

In an effort to limit "occurrence" to the more narrowly defined "extraordinary nuclear occurrence," Plaintiffs employ the flawed analysis from *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998).  Plaintiffs not only heavily cite to it, but they also fail to inform the Court that the Third Circuit recently rejected *Gilberg*, thereby removing any persuasive authority it may have had.  *See Ware*, 871 F.3d at 283 (agreeing with the Fifth Circuit that *Gilberg* "misses" the purpose of the 1988 amendments and relies "'on faulty statutory interpretation and [is] contrary to Congressional intent'" (quoting *Acuna*, 200 F.3d at 339)).

In addition to joining the Fifth Circuit's rejection of *Gilberg*, the Third Circuit is now in accord with district courts from the Eleventh and Seventh Circuits that have noted flaws in *Gilberg*'s reasoning.  *See, e.g.*, *Cotromano v. United Techs. Corp.*, 7 F. Supp. 3d 1253, 1258 (S.D. Fla. 2014) ("A plain reading of the [PAA] contradicts the *Gilberg* court's flawed reasoning . . . ."); *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999) (noting that there "are, in fact, numerous problems with the path *Gilberg* takes," faulting its "use of a narrowing

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

term to restrict what was obviously intended to be a broader term," and finding its "restrictive reading of the plain wording of the statute is at odds with Congress' intent"). This Court should follow the Third Circuit's more recent decision rejecting the reasoning of Plaintiffs and *Gilberg* and find, in keeping with the PAA's plain language and Congress's intent, that the PAA is "broad enough to create a federal forum for any tort claims even remotely involving atomic energy production." *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997). For these reasons, this Court should reject Plaintiffs' analysis and find that this Court has jurisdiction under the PAA.

**b. <u>A License or Indemnity Agreement Is Not a Prerequisite for Jurisdiction</u>**

Plaintiffs' argument that a license or indemnity agreement is required in order for there to have been a "nuclear incident" relies on a tortured (and incorrect) reading of the statute. This Court should not be misled by Plaintiffs' contention, because acceptance of their analysis would nullify the purpose of the 1988 amendments. Moreover, the analysis Plaintiffs adopt has been repeatedly criticized and rejected by numerous courts.

**i. A License Is Not a Jurisdictional Prerequisite**

Contrary to Plaintiffs' contention, the PAA does not require a license as a jurisdictional prerequisite. Rather, "[i]n passing the [PAA], Congress recognized that a nuclear incident might be caused by any number of participants in the nuclear industry beyond the actual licensee." *O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1378 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994). Indeed, numerous courts have expressly rejected the contention that "the PAA is limited to nuclear incidents occurring at utilization and production facilities and other licensed facilities." *Estate of Ware v. Hosp. of Univ. of Pa.*, 73 F. Supp. 3d 519, 530 (E.D. Pa. 2014) (citation and internal quotation marks omitted) (involving a nuclear incident occurring at a university research facility), *aff'd*, 871 F.3d 273 (3d Cir. 2017); *see also Cotromano*, 7 F. Supp.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

3d at 1258 ("Thus, demonstration of a license for radioactive materials is not a prerequisite to federal jurisdiction under the plain language of the [PAA]."); *Carey*, 60 F. Supp. 2d at 804 (rejecting argument to limit application of PAA to only the facility licensed by the NRC).

That these courts have rejected Plaintiffs' license contention is not surprising, because none of the statutory definitions limit the jurisdiction over nuclear claims to licensed activity. 42 U.S.C. § 2014(w) ("public liability"), § 2014(hh) ("public liability action"). Critically, in other provisions of the PAA, Congress expressly used terms such as "licensed activity," "licensed facility," and "facility subject to licensing." *See, e.g.*, 42 U.S.C. § 2201(m) ("agreements regarding production"); 42 U.S.C. § 2284(a) ("sabotage of nuclear facilities or fuel"). As the Supreme Court has ruled, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *United States v. Gonzales*, 520 U.S. 1, 5 (1997). Applying this canon of construction to the PAA, this means that Congress acted "intentionally and purposefully" by excluding any licensing requirement from the PAA's jurisdictional provisions. *Cotromano*, 7 F. Supp. 3d at 1257-58 (adopting this analysis regarding the PAA).

Equally unavailing is Plaintiffs' argument that Congress's definition of "nuclear incident" supports their contention that a license is needed for a nuclear incident to occur. Their reading is incorrect because it ignores the definition's distinction between occurrences happening "within the United States" and "outside the United States." *See* 42 U.S.C. § 2014(q). The general definition of "nuclear incident," which applies to occurrences happening "within the United States," does not condition jurisdiction on possession of a license. *Id.* It is *other* parts of the definition, which apply to occurrences happening "outside the United States," that reference licensed materials and

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

persons. *Id.* These latter definitions, however, are not applicable to this case because there is no dispute that the nuclear incident took place within the United States, in Missouri.

Plaintiffs' reliance on three cases from this District which have held that a license is a jurisdictional prerequisite is also misplaced. The first of these cases to be decided, *Strong v. Republic Services, Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017) (Hamilton, J.), was wrongly decided because *Strong*'s holding that a license is a prerequisite is based almost exclusively on *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998), which, as discussed above, has been routinely criticized and was recently rejected by the Third Circuit, thereby removing any persuasive authority it may have had. *Ware*, 871 F.3d at 283. Since *Strong* was decided, furthermore, at least one court has declined to follow that case's ruling. In *Pinares v. United Technologies Corp.*, the plaintiffs relied solely on *Strong* for the proposition that the PAA requires a license or indemnity agreement. *See* No. 9:10-cv-80883, Dkt. 345 at 24 (S.D. Fla. June 6, 2018). Finding that the PAA preempted plaintiffs' claims, the U.S. District Court for the Southern District of Florida rejected plaintiffs' contention that the PAA requires a license or indemnity agreement, relying on the same cases Cotter relies on herein. *Pinares v. United Techs. Corp.*, No. 9:10-cv-80883, 2018 U.S. Dist. LEXIS 195073, at *14 n.5 (S.D. Fla. Nov. 14, 2018). Moreover, Cotter – the license-holder – was not a party to *Strong* in 2017 and, as a result, did not have an opportunity to brief the jurisdictional issues before Judge Hamilton, as it does here.

Plaintiffs' reliance on the opinion issued in *Banks v. Cotter Corp.*, No. 4:18-cv-00624, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019) is similarly misplaced, because *Banks* heavily relied on *Strong* and *Gilberg*. Additionally, as with the original *Strong* decision, Cotter – the license-holder – was not a party to *Kitchin* or the briefing in that case, *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600 (E.D. Mo. 2019)*,* and did not have a chance to raise the arguments contained

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

herein. To the extent the opinions in *Banks* and *Kitchin* relied on *Strong*, which in turn relied on the now-defunct reasoning of *Gilberg*, they were wrongly decided. This Court should not join their incorrect reasoning but, rather, should find that a license is not a PAA jurisdictional prerequisite.

### ii. Assuming, *Arguendo*, That a License Is a Jurisdictional Prerequisite, Cotter's Source Material License Confers This Court With Jurisdiction

Although the PAA does not condition jurisdiction on the possession of a license, Plaintiffs' fixation on this point is simply a red herring, as they admit that Cotter possessed a source material license. *See* Dkt. 174-1 at 10. Pointing to *Strong*, Plaintiffs attempt to sidestep this admission by claiming that Cotter's license did not cover "uranium mill tailings," which they claim are the wastes that are allegedly at issue in this case.[4] *Id.* (citing Dkt. 166 at ¶ 3, 91). The Court should reject Plaintiffs' attempt to plead around the PAA because their contention that this material was uranium mill tailings (and thus, not source material) is belied by the actual Source Material License that the Atomic Energy Commission ("AEC") issued to Cotter for the materials located at the Latty Avenue property. *See* Dkt. 64-5. By way of background, on February 14, 1966, the AEC issued License No. SMA-862 for Continental Mining & Milling Co. to possess and take other actions with "source material." Dkt. 64-2. The source material is described in the license as "uranium and thorium" of up to "125,000 tons of residues . . . ." *Id.*. The AEC also issued licenses for these source materials in 1963, 1966, and 1969. *See* Dkt. 64-3, 64-4, 64-5. The license issued to Cotter expressly stated that the material at Latty Avenue – which included the material that Plaintiffs

---

[4] *Strong* did not conclude that Cotter's 1969 license could not support jurisdiction under the PAA. Rather, Judge Hamilton merely found that Cotter's license did not extend to uranium mill tailings, while simultaneously declining to determine, based on the record before it, whether the radioactive materials allegedly in the landfill *were*, in fact, uranium mill tailings. *Strong*, 283 F. Supp. 3d at 772-73. As set forth herein, this Court can conclude that the material is source material, not uranium mill tailings.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

allege was disposed of at West Lake Landfill – was source material. *Id.*[5] The term 'source material,' moreover, means (1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of [Title 42] to be source material." 42 U.S.C. § 2014(z). Likewise, the implementing regulation broadly defines source material as "Uranium or thorium, or any combination thereof, in any physical or chemical form." 10 C.F.R. § 40.4; *see also* Dkt. 175 at 5-7 (discussing how the allegations in the SAC describe harm from source material, including uranium and its decay products). Indeed, the fact that the material was "source material" is underscored by Plaintiffs' First Amended Complaint ("FAC"). There, Plaintiffs explicitly alleged that "Cotter transferred **source material** from Latty Avenue to the West Lake Landfill." Dkt. 70 at ¶ 62 (emphasis added). Just because Plaintiffs have removed the phrase "source material" from their SAC does not change what that material is.

Equally meritless are Plaintiffs' contentions that Cotter's license authorized it only "to receive, possess and import source material" and that Cotter was not authorized to dispose of "the material at an unauthorized site." *See* Dkt. 174-1 at 11; *see also* Dkt. 166 at ¶ 59 ("Cotter failed to obtain a license from any governmental authority to transport radioactive mill tailings wastes to the West Lake Landfill."). Plaintiffs are incorrect because Cotter did not need a license to dispose of the material in the landfill. 42 U.S.C. § 2092. Tellingly, Plaintiffs' SAC has removed reference to § 2092, which is the PAA provision governing transport of source material. *Compare* Dkt. 166 at ¶ 59, *with* Dkt. 70 ¶ 62. Plaintiffs' omission is no doubt intentional, as that provision provides:

> Unless authorized by a general or specific license issued by the Commission which the Commission is authorized to issue, no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its

---

[5] Cotter's Source Material License No. SUB-1022 was terminated on November 13, 2014. Dkt. 64-6.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

place of deposit in nature, *except that licenses shall not be required for quantities of source material which, in the opinion of the Commission, are **unimportant***.

42 U.S.C. § 2092 (emphasis added).  For the following reasons, the quantity of source material that Cotter disposed of met the definition of "unimportant quantities."

The NRC has determined that whenever a person transfers "source material in any chemical mixture, compound, solution, or alloy in which the source material is by weight less than one-twentieth of 1 percent (0.05 percent) of the mixture, compound, solution or alloy," that "person is exempt from . . . the requirements for a license."  10 C.F.R. § 40.13(a) ("Unimportant quantities of source material").  This regulation has been in place since the 1960s.  *See* 26 Fed. Reg. 284 (Jan. 14, 1961).  Given this definition, the administrative record for the West Lake Landfill Superfund Site shows that the material Cotter disposed of was an "unimportant quantity," and thus, not subject to licensing requirements.  The 8700 tons of leached barium sulfate residue ("LBSR") that Cotter disposed of contained 0.05-0.1 percent source material (uranium) *prior to* being combined with 39,000 tons of soil.  (Remedial Investigation Addendum, West Lake Landfill, Operable Unit 1, at 159-61, *available at* https://semspub.epa.gov/work/07/30352110.pdf.)  Thus, when the soil was added to the LBSR, it created a mixture that reduced the percentage of source material to between 0.01%-0.02%.  This amount is well below NRC's "unimportant quantity" threshold of "less than one-twentieth of 1 percent (0.05 percent) of the mixture."  *See* 10 C.F.R. § 40.13(a).  For this reason, Cotter was not required to obtain a license to transport the LBSR to the landfill.

Regardless, this Court has already ruled *in this case* that the PAA applies even though Cotter allegedly did not have a license that allowed it to transport source material to the Landfill.  This Court previously ruled that the PAA claim in Plaintiffs' FAC preempted their state-law claims.  *Dailey*, 299 F. Supp. 3d at 1097-99.  Importantly, the FAC alleged that "Cotter failed to

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

obtain a license from the Atomic Energy Commission (AEC) or its successor the Nuclear Regulatory Commission (NRC) to transport radioactive wastes to the West Lake Landfill." Dkt. 70 at ¶ 60; *see also id.* at ¶ 62 ("Cotter transferred source material from Latty Avenue to the West Lake Landfill without a license in violation of 42 U.S.C. § 2092.").

This allegation is almost word-for-word the same as the SAC's allegation that "Cotter failed to obtain a license from any governmental authority to transport radioactive mill tailings wastes to the West Lake Landfill." Dkt. 166 at ¶ 59. Additionally, Plaintiffs raised this point in their brief opposing Defendants' motion to dismiss the FAC. Dkt. 77 at 9 ("Likewise, as Plaintiffs note in their Complaint, Defendants violated 42 USC § 2092 by the unlicensed transfer of source material to the Landfill." (citing Dkt. 70 at ¶ 62)). Plaintiffs overlook this previous ruling, which should apply to the instant motion.

For these reasons, this Court should join the numerous courts that have found that a license is not a PAA jurisdictional prerequisite. Even if this Court finds that a license is a prerequisite, it still has jurisdiction because Cotter was exempt from any licensing requirement by virtue of the "unimportant quantities" exemption.

### iii. An Indemnity Agreement Is Not a Jurisdictional Prerequisite

Contrary to Plaintiffs' assertion that a nuclear incident can occur only if a defendant had an indemnification agreement with the government – which also comes from the now-rejected *Gilberg* – such an agreement is not a jurisdictional prerequisite. Indeed, as with the license issue, most courts that have addressed this issue have flatly rejected Plaintiffs' argument. *Ware*, 871 F.3d at 282-83 (rejecting *Gilberg*'s contention that the PAA "only covers defendants that have indemnity agreements with the NRC"); *Acuna*, 200 F.3d at 339 ("There is nothing in the definition of 'nuclear incident' which suggests it should be contingent on . . . whether the facility is covered under the separate indemnification portions of the Act."); *Cotromano*, 7 F. Supp. 3d at 1259

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

("Whether or not Defendants have indemnification agreements with the federal government is not dispositive of the applicability of Price-Anderson to this case."); *Carey*, 60 F. Supp. 2d at 806 ("The inclusion of the phrase ['to which an indemnity agreement applies'] clearly indicates Congress' belief that there can be an [extraordinary nuclear occurrence] to which no indemnity agreement applies.").

Plaintiffs' contention must also be rejected because the same canon of construction that undercuts their license argument also undercuts this indemnification assertion. Specifically, none of the statutory definitions limit the jurisdiction over nuclear claims to defendants that had an indemnification agreement. 42 U.S.C. § 2014(w) ("public liability"), § 2014(hh) ("public liability action"), § 2014(q) ("nuclear incident"). In *other* provisions of the PAA, Congress expressly used terms such as "indemnification," "indemnities," "indemnitor," and "persons indemnified." *See, e.g.*, 42 U.S.C. § 2210(a)-(c). Because Congress included indemnification language in certain portions of the statute, but excluded it from the jurisdictional definitions, this evinces Congress's intent to exclude indemnification as a jurisdictional prerequisite. *See Gonzales*, 520 U.S. at 5.

Plaintiffs' argument also ignores the PAA's definition of "persons indemnified,"[6] which is "the person with whom an indemnity agreement is executed or who is required to maintain financial protection, *and any other person who may be liable for public liability*." 42 U.S.C. § 2014(t)(1) (emphasis added). Were the Court to accept Plaintiffs' contention that PAA jurisdiction is conferred on only those with an indemnification agreement, the entire clause "and any other person who may be liable for public liability" would be meaningless. Stated differently, even if indemnification were a jurisdictional prerequisite under the PAA – which, as discussed above, it

---

[6] As discussed in the preceding paragraph, Congress used the term "persons indemnified" in a number of places of the PAA, but it does not appear in the provision vesting U.S. district courts with jurisdiction. 42 U.S.C. § 2210(n)(2).

is not – the definition of "persons indemnified" is sufficiently broad that Defendants here would still fall within that definition.

Nor should this Court be persuaded by *Strong*'s finding that an indemnity agreement is a jurisdictional prerequisite. In addition to relying on the now-rejected *Gilberg*, *Strong* erred in its consideration of the PAA's legislative history. After examining the legislative history of the *1957 amendments*, including the 1957 Senate Report, the court mistakenly concluded that "the terms 'nuclear incident' and 'occurrence' are inextricably intertwined with 'licenses' and 'indemnification agreements,' thus suggesting . . . there cannot be a nuclear incident without an applicable license or indemnity agreement." *Strong*, 283 F. Supp. 3d at 770-71. This was an error because the term "nuclear incident" was not added to the PAA's jurisdictional provision *until 1988*. Therefore, any statements from the 1957 Senate Report using the words "nuclear incident" thirty-one years earlier does not shed light on its meaning. Second, had the court read one paragraph further in the Senate Report, it would have seen that even in 1957, Congress intended the PAA's jurisdiction to extend to entities other than those who possessed an indemnity agreement:

> The definition "person indemnified" means ***more than just the person with whom the indemnity agreement is executed***. . . . [and] ***also covers any other persons who may be liable***. . . . [I]t is ***not meant*** to be limited solely to those who may be found liable due to their contractual relationship with the licensee. In the hearings, the question of protecting the public was raised where some unusual incident, such as negligence in maintaining an airplane motor, should cause an airplane to crash into a reactor and thereby cause damage to the public. Under this bill the public is protected and the airplane company can also take advantage of the indemnification and other proceedings. The proposed AEC limitation to those in privity with the licensee was reconsidered by the Commission, and the Commission decided to accept the premise of the original bills which would make the person indemnified ***any person who might be found liable, regardless of the contractual relation***.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

S. REP. NO. 85-296 (May 9, 1957), *reprinted in* 1957 U.S.C.C.A.N. 1803, 1818 (1957) (emphasis added). This legislative history confirms the plain text of the statute and the cases that have found no indemnity agreement is required.

Plaintiffs also fail to take into account that the PAA expressly states that the AEC/NRC **may** require indemnity agreements, but does not mandate that all source material license holders hold such agreements. Specifically:

> Each license issued under section 2133 or 2134 of this title and each construction permit issued under section 2235 of this title **shall**, and each license issued under section 2073, **2093**, or 2111 of this title **may**, . . . have as a condition of the license a requirement that the licensee have and maintain financial protection of such type and in such amounts as the Nuclear Regulatory Commission . . . shall require in accordance with subsection (b) of this section to cover public liability claims. Whenever such financial protection is required, **it may be a further condition of the license that the licensee execute and maintain an indemnification agreement** in accordance with subsection (c) of this section.

42 U.S.C. § 2210(a) (emphasis added). Section 2093 (referenced in the block quote) pertains to source material licenses. Thus, indemnification agreements **may** be a condition for a licensee but are **not required** in every instance that the AEC/NRC issues a source material license.[7]

## IV.  PAA PREEMPTION OF PLAINTIFFS' STATE LAW CLAIMS WOULD NOT VIOLATE DUE PROCESS

Plaintiffs do not, and cannot, meet their burden of establishing that PAA preemption of their state law claims would violate the Due Process Clause of the Fifth Amendment. The

---

[7] Rather than acknowledge this provision, Plaintiffs instead mistakenly rely on a 1998 report by NRC to Congress. Dkt. 174-1 at 5-6. This report was submitted for the purpose of reauthorizing NRC indemnity provisions, not to reauthorize the PAA as a whole. If anything, this report shows that the PAA applies to entities without indemnification agreements, noting that from "1957 to December 1997, claims for 195 alleged incidents involving nuclear material under various liability policies were filed. Most, **but not all**, of the reported claims experience is related to indemnified nuclear facilities." NRC, *The Price-Anderson Act – Crossing the Bridge to the Next Century: A Report to Congress* at xix (Aug. 1, 1998), *available at* https://www.nrc.gov/docs/ML1217/ML12170A857.pdf (emphasis added). As this report shows, facilities lacking indemnification agreements were still able to file claims.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

"liability-limitation provision" of the PAA has been described as "a classic example of an economic regulation." *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59, 83 (1978) (citing *Usery v. Turner Elkhorn Mining Co.*, 438 U.S. 1, 15 (1976)). Thus, the PAA "'come[s] to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.'" *Id.* (quoting *Usery*, 428 U.S. at 15). Rather than attempting to meet this high burden, Plaintiffs instead resort to mischaracterizing the U.S. Supreme Court's *Duke Power* holding.

Although Plaintiffs contend otherwise, the Court found that the Due Process Clause does not necessarily require that a Congressional act "either duplicate the recovery at common law or provide a reasonable substitute remedy." *Duke Power*, 438 U.S. at 88 ("Initially, it is not at all clear that the Due Process Clause in fact requires that a legislatively enacted compensation scheme either duplicate the recovery at common law or provide a reasonable substitute remedy."). The Court further explained that its "'cases have clearly established that a person has no property, no vested interest, in any rules of the common law.'" *Id.* at 88 n.32 (citation omitted). The Court also observed that, if the Constitution did require duplication of recovery or a "reasonable substitute remedy," the PAA provided such a substitute. *Id.* at 88 (citations omitted). In other words, even if Plaintiffs were correct that the PAA cannot take away any rights without providing a "reasonable substitute remedy," their argument still fails, because the PAA does provide such a substitute. Moreover, subsequent cases confirm that the PAA does not *take away* any rights. Rather, it "transforms" actions based on state law claims that seek to impose public liability into federal actions – regardless of how those claims are titled by plaintiffs. *See Neztsosie*, 526 U.S. at 484. For these reasons, Plaintiffs have not come close to meeting their high burden regarding their argument that PAA preemption of their state law claims would violate their due process rights.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

V.    **CONCLUSION**

Because Plaintiffs seek to hold Cotter liable for damages arising out of a nuclear incident, their motion to remand must be denied, as this Court has jurisdiction. Nothing in the text of the statute or its legislative history shows that possession of a license or indemnity agreement is a jurisdictional prerequisite. The few cases that have found otherwise are either no longer good law or rely on faulty statutory construction. Finally, preemption of Plaintiffs' state law claims would not violate due process. For these reasons, Plaintiffs' motion must be denied.

Dated: November 26, 2019

Respectfully submitted,

/s/ John McGahren
MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (ID 046791990N)
john.mcgahren@morganlewis.com
Stephanie Feingold, Esq. (ID 23182005N)
stephanie.feingold@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

BRYAN CAVE LEIGHTON PAISNER LLP
Dale A. Guariglia, Mo. Bar 32988
daguariglia@bclplaw.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bclplaw.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ John McGahren

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL DAILEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.  4:17-cv-00024-CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS BRIDGETON LANDFILL, LLC,**
**REPUBLIC SERVICES, INC. AND ALLIED SERVICES, LLC'S**
**RESPONSE TO PLAINTIFFS' MOTION TO REMAND**

**I.      INTRODUCTION AND SUMMARY**

This Court should not remand this case.  It has subject matter jurisdiction over the claims because no matter how artfully the Plaintiffs try to plead around it, they require application of the national standard of care under the Price-Anderson Act ("PAA").  This issue has been briefed numerous times in this case and elsewhere.   Defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), and Allied Services, LLC ("Allied") ask that if there is any question whether this Court has jurisdiction over the Plaintiffs claims then at a minimum, the Court certify the case for interlocutory appeal to the 8th Circuit.

**II.      LEGAL STANDARD**

Federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. "A civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003) (*citing* § 1441). "Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

bounds." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359

(1989). If Plaintiffs have a cause of action, it is under the PAA because their claim is for damage

arising from radioactive material and they plead a nuclear incident.

## III.   **ARGUMENT**

    A.   **The text, structure, purpose, and history of the Price-Anderson Act indicates that Congress intended to grant federal jurisdiction over any action alleging liability for bodily injury or property damage resulting from the radioactive or toxic properties of atomic material or waste.**

        1.   **The PAA transforms into a federal action any public liability action arising out of or resulting from a nuclear incident.**

The Court need not reach any analysis other than the plain meaning of the Act to find that

Plaintiffs have artfully pleaded a PAA claim subject to determination in a federal forum. When a

statute's plain meaning is unambiguous, the court's inquiry begins and ends with the text. *Nat'l*

*Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018). With respect to any **public liability**

**action** arising out of or resulting from a **nuclear incident**, the United States District Court in the

district where the nuclear incident takes place, or in the case of a nuclear incident taking place

outside the United States, the United States District Court for the District of Columbia, shall

have original jurisdiction without regard to the citizenship of any party or the amount in

controversy." 42 U.S.C. § 2210(n)(2) (emphasis added).

- A "public liability action" is defined as "any suit asserting public liability." 42 U.S.C. § 2014(hh).

- A "public liability" is "any legal liability arising out of or resulting from a **nuclear incident**[.]" 42 U.S.C. § 2014(w) (emphasis added).

A "nuclear **incident**" is "any **occurrence**, including an extraordinary nuclear occurrence,

within the United States causing, within or outside the United States, bodily injury, sickness,

disease, or death, or loss of or damage to property, or loss of use of property, arising out of or

resulting from the radioactive, toxic, explosive, or other hazardous properties of **source, special**

**nuclear, or byproduct material**." 42 U.S.C.A. § 2014(q) (emphasis added). Because "occurrence" is not further defined in the statute, the phrase must be given its ordinary meaning. *Carey v. Kerr-McGee Chem. Corp.*, 60 F. Supp. 2d 800, 805-06 (N.D. Ill. 1999). "[O]ccurrence" simply means "happening or event" . . . . *Id.* at 805-06.

      **Source material** means "(1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of this title to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time." 42 U.S.C.A. § 2014(z) (emphasis added).

      Byproduct material means "(1) any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material; (2) the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content; . . ." 42 U.S.C.A. § 2014(e).

      **2.**      **The PAA provides for removal to a federal court as of right if a putative PAA action is brought in a state court.**

      The statute provides that a PAA claim "shall be removed" to the federal courts. 42 U.S.C. § 2014(n)(2). With that provision, Congress expressed "an unmistakable preference for a federal forum, at the behest of the defending party, both for litigating a Price–Anderson claim on the merits and for determining whether a claim falls under Price–Anderson when removal is contested." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999). In 2018, the Eighth Circuit in *Halbrook v. Mallinckrodt, LLC*, 88 F.3d 971, 977 (8th Cir. 2018) ruled Congress "spoke clearly" when stating that a PAA cause of action arises under federal law and creates a

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

federal cause of action. Defendants adopt and incorporate their prior briefing at Doc. No. 129 delving further into the case law.

As the Supreme Court has explained, "By its unusual preemption provision, *see* 42 U.S.C. § 2014(hh), the Price–Anderson Act transforms into a federal action 'any public liability action arising out of or resulting from a nuclear incident,' § 2210(n)(2)." *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 (1999). The Supreme Court has emphasized that the PAA "not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court *even when they assert only state-law claims*." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003) (emphasis added).

Where, as here, "an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). In this context, the Supreme Court has observed that:

> It may seem odd that, for purposes of determining whether removal was proper, we analyze a claim brought under state law, in state court, by a party who has continuously objected to district court jurisdiction over its case, as if that party had been trying to get original federal court jurisdiction all along. That irony, however, is a more-or-less constant feature of the removal statute, under which a case is removable if a federal district court could have taken jurisdiction had the same complaint been filed.

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 20, 103 S. Ct. 2841, 2852, 77 L. Ed. 2d 420 (1983) (citing Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 Law & Contemp. Prob. 216, 234 (1948)).

Thus, if Plaintiffs allege that their injuries were caused by exposure to radioactive material (as demonstrated below), their claims "arise under" the PAA, e.g.:

> This suit is a "public liability action" as defined by the PAA, because the plaintiffs allege that they suffered injuries and illnesses due to their exposure to radiation, and because they assert that the defendants bear legal liability arising out of these

incidents of exposure to radiation. Since it is a "public liability action," it is to be treated as arising under federal law: "A public liability action shall be deemed to be an action arising under section 2210 of this title ...." 42 U.S.C. § 2014(hh).

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 194 (5th Cir. 2011).

Here, Plaintiffs' claims fit squarely within the broadly-defined term "public liability action." In their second amended petition, Plaintiffs allege as follows:

- The radioactive material at issue in this case includes "uranium ore." ECF No. 166 at 25. *See* § 2014(z) ("source material" includes "uranium" and "ores containing" uranium).

- Plaintiffs' injuries arise out of or are a result of "hazardous, toxic, carcinogenic, radioactive mill tailings wastes resulting from the processing of these ores[.]" ECF No. 166 at 1. *See* § 2014(q) ("nuclear incident" means an injury "arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.").

- Defendants mishandled "these hazardous, toxic, carcinogenic, radioactive mill tailings wastes[.]" ECF No. 166 at 1.

- "[R]adioactive material" was "negligently dumped [by Defendants] in an area surrounded by peaceful neighborhoods and playgrounds[.]" *Id.* at 2.

- The Dailey's property "is contaminated with radioactive material from the Landfill." *Id.* at 3.

- "Defendants' negligent acts and omissions were a direct and proximate cause of Plaintiffs' injuries." *Id.* at 34.

- "Plaintiffs are entitled to recover damages for damage to property and/or loss of use of property." *Id.* at 34.

Plaintiffs' assert liability against Defendants for damage to property and/or loss of use of property arising out of or resulting from a radioactive and toxic properties of uranium ores and mill tailings. As such, their claims fall within the Price-Anderson Act's broad grant of federal jurisdiction.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

The labels and conclusions that Plaintiffs attach to their claims (or remove from their complaint) are irrelevant to the question of jurisdiction under the PAA. *See Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir. 2002).

> **3.      There is no presumption against federal jurisdiction under the PAA because, in enacting the PAA, Congress expressed an unmistakable preference for a federal forum, at the behest of the defending party.**

The Eastern District's decisions in *Kitchin*, *Strong*, and *Banks* relied on a presumption against federal jurisdiction. There is no presumption against federal jurisdiction under the Price-Anderson Act. In enacting the PAA, Congress "expressed an unmistakable preference for a federal forum, at the behest of the defending party[.]" *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484–85 (1999). "Any generalized sense of comity toward nonfederal courts is obviously displaced by the provisions for preemption and removal from state courts, which are thus accorded neither jot nor tittle of deference." *Id.* at 485. "The situation here is the rare one in which statutory provisions for conversion of state claims to federal ones and removal to federal courts express congressional preference for a federal forum." *Id.* at 485, n.7.

> **4.      Neither a license nor indemnity agreement is a requirement for federal jurisdiction under the PAA because the PAA does not "clearly state" that a license or indemnity agreement is jurisdictional.**

Jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf v. USI Film Products*, 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (citation omitted). In recent years, the Supreme Court has cracked down on courts that attach the "jurisdictional" label to rules and requirements that are not truly jurisdictional, and has instructed courts to apply the following test: "A rule is jurisdictional if the Legislature *clearly states* that a threshold limitation on a statute's scope shall count as

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

jurisdictional." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (cleaned up) (emphasis added).[1, 2] "Other rules, even if important and mandatory, we have said, should not be given the jurisdictional brand." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

For example, Title VII prohibits an employer from discriminating against an employee on the basis of sex, and Title VII's numerosity requirement defines an employer as a person having "fifteen or more employees." The numerosity requirement is not a component of federal jurisdiction because neither the jurisdictional provision nor the numerosity provision clearly state that the latter counts as jurisdictional. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16, and n. 11 (2006). Likewise, under section 411 of the Copyright Act, a copyright holder may not bring a suit for infringement in federal court under the Act until the copyright holder has registered its claim pursuant to section 411 of the Act. Per the Supreme Court: "We must consider whether § 411(a) 'clearly states' that its registration requirement is 'jurisdictional.' *Arbaugh, supra*, at 515, 126 S.Ct. 1235. It does not." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 163 (2010). The Court explained that federal jurisdiction does not depend on compliance with the registration provisions because the Act does not condition its jurisdictional grant "on whether copyright holders have registered their works before suing for infringement." *Id.* at 164–65.

Here, the PAA grants jurisdiction through two provisions, 42 U.S.C. § 2014(hh), and § 2210(n)(2). Neither provision "clearly states" that a license or indemnity agreement is "jurisdictional." Past decisions from the Eastern District of Missouri have stated that the PAA's

---

[1] *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010) ("Our recent cases evince a marked desire to curtail such 'drive-by jurisdictional rulings,' *ibid.*, which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and non-jurisdictional limitations on causes of action.").

[2] *See also In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) ("Although in *Berg* we referred to bodily injury as a jurisdictional prerequisite, *id.* at 1131–33, we used the term 'jurisdictional' in the loose sense, perhaps too loose, to mean that medical monitoring claims were not compensable under the PAA absent physical injury. We have been guilty of such expansive use of the term before. . . . The district court in this case clearly had subject matter jurisdiction under the PAA to decide the issue; the district court simply did not have the power to grant the relief requested because the plaintiffs have not suffered any physical injury.")

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

substantive provisions are "inextricably intertwined," with its jurisdictional provisions because of apparent cross-references between them. But "[m]ere proximity will not turn a rule that speaks in non-jurisdictional terms into a jurisdictional hurdle." *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012) ("§ 2253(c)(2) is non-jurisdictional, even though it too cross-references § 2253(c)(1) and is cross-referenced by § 2253(c)(3).").

Those prior decisions in the Eastern District of Missouri also noted that the PAA was primarily concerned with regulating licensing and indemnity agreements, but the licensing and indemnity provisions of the PAA, "even if important and mandatory," *Shinseki*, 562 U.S. at 435, do not speak to the court's subject matter jurisdiction and must be treated as non-jurisdictional. *See also United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015) ("even assuming legislative history alone could provide a clear statement (which we doubt), none does so here"); *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ("we will not presume . . . that . . . the statute's overarching goal must be the law").

In this case, the Court's jurisdiction under the PAA does not depend on whether any Defendant possessed a licensing or indemnity agreement under the PAA. The case should not be remanded on that basis.[3]

---

[3] Bridgeton, Republic and Allied note that the Court may have an alternative basis for jurisdiction, at least for the purpose of determining whether Plaintiffs are entitled to some of the relief they seek. Federal courts have "exclusive original jurisdiction over all controversies arising under" CERCLA, "without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C.A. § 9613(b). Federal jurisdiction under 42 U.S.C. § 9613(b) is more expansive than only those claims expressly created by CERCLA, and covers any challenge to a CERCLA cleanup. *See generally Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999); Lehman Bros. Inc. v. City of Lodi, 333 F. Supp. 2d 895 (E.D. CA. 2004)(Court had jurisdiction extended beyond claims created by CERCLA). In paragraph 26 of their Second Amended Complaint the Plaintiffs allege continuing contamination of their property "during the proposed cleanup." The "proposed cleanup" is inescapably the EPA's clean up remedy for the West Lake Landfill. By seeking relief in a court that could impact the chosen remedy they have potentially interfered with CERCLA. This Court should maintain jurisdiction if for no other reason than to conduct proceedings regarding the propriety of a claim than can impact a CERCLA remedy. *See McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995) ("MESS, for all practical purposes, seeks to improve on the CERCLA cleanup as embodied in the Interagency Agreement. Its action qualifies as a 'challenge' to the cleanup."). This basic issue is now before the United States Supreme Court on a writ of certiorari from the Supreme court of Montana. There the Montana Court allowed a state court case regarding a Superfund smelter cite

**B.    The Court Should Certify Its Ruling for Interlocutory Review.**

This case is a strong case for interlocutory appeal under 28 U.S.C. § 1292(b).  As detailed

here and in the multiple briefings filed before the Court, there is ample case law supporting the

PAA's preemptive scope.  If for any reason the Court is inclined to remand, the decision will

necessarily rest on a determination that Plaintiffs may pursue state law claims and forgo the PAA

and, hence, that the PAA does not preempt state law.  Thus, the decision will involve a

controlling question of law as to which there is substantial ground for difference of opinion.  The

time to have these issues heard in a federal appellate court is now—not after a state court trial,

and multiple levels of state appellate courts.

Application of the PAA is a critical question as it determines not only the venue and

jurisdiction but also the standard of care. *See, e.g.*, *Roberts v. Fla. Power & Light Co.*, 146 F.3d

1305, 1308 (11th Cir. 1998); *O'Conner v. Commonwealth Edison*, 13 F.3d at 1090, 1105 (7th

Cir. 1994); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 859-60 (3d Cir. 1991); *McClurg v.*

*MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013); *Corcoran v. New York Power*

*Authority,* 935 F. Supp. 376, 387 (S.D.N.Y. 1996); *Carey*, 60 F. Supp. 2d at 807-08.

The scope of the PAA's application to numerous cases in this District has repeatedly

evaded review. *See Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259 (E.D.

Mo. Mar. 29, 2019) (remand order); *Marc Czapla, et al. v. Republic Servs., Inc., et al.* E.D.Mo.

Case No. 4:18-cv-00357-JAR Doc. No. 41 (remand order); *Strong, et al. v. Republic Servs., Inc.,*

*et al.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017) (remand order).[4]  Hence, granting leave to amend

---

to proceed despite that some of the remedies sought would impact the CERCLA remedy.  The case is *Atlantic Richfield Company v. Gregory A. Christian, et al*, In the United State Supreme Court, No. 17-1498.
    [4] This Court in *John C. Kitchin et al v. Bridgeton Landfill, LLC, et al.*, Case No. 4:18-cv-00672-CDP, also ruled on the scope of the PAA and remanded the case.  The complete remand order in that case is appealable under 28 U.S.C. §§ 1453(c) and 1291 because of the Class Action Fairness Act ("CAFA") and is currently being briefed before the Eighth Circuit Court of Appeals on CAFA grounds.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

may set the stage for an unappealable remand order. An immediate appeal of the order would materially advance the litigation by providing appellate determination of the PAA's scope. Allowing the Court's order to be appealed would also help resolve the conflict between the Eastern District of Missouri cases and the decisions detailed above ruling regarding the PAA's broad preemptive scope.

IV. **CONCLUSION**

Defendants properly removed this case to federal court under the Price-Anderson Act and CERCLA. The Court should deny the Motion to Remand but if it is included to grant it then it should certify the case for immediate interlocutory appeal.

Dated: November 26, 2019                    Respectfully submitted,


                                            s/ *William G. Beck*
                                            _____
                                            William G. Beck (26849MO)
                                            Peter F. Daniel (33798MO)
                                            Allyson E. Cunningham (64802MO)
                                            2345 Grand Boulevard, Suite 2200
                                            Kansas City, Missouri 64108
                                            (816) 292-2000 (telephone)
                                            (816) 292-2001 (facsimile)
                                            wbeck@lathropgage.com
                                            pdaniel@lathropgage.com
                                            acunningham@lathropgage.com

                                            Patricia Lehtinen Silva (67213MO)
                                            Pierre Laclede Center
                                            7701 Forsyth Boulevard, Suite 500
                                            Clayton, Missouri 63105
                                            (314) 613-2800 (telephone)
                                            (314) 613-2801 (facsimile)
                                            psilva@lathropgage.com

                                            Attorneys for Defendants

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2019, I electronically filed the foregoing document via the Court's CM/ECF system, which will serve notice on all counsel of record.

        s/ *William G. Beck*
        An attorney for Defendants

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAILEY, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 24 CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFFS' MOTION
TO REMAND**

**I.    Introduction**

This case properly belongs in Saint Louis County Circuit Court. Plaintiffs sue only under

state law and no federal laws are applicable or essential to their claims. The Court must view

Plaintiffs' Second Amended Complaint as it truly is – an action for damages under Missouri state

law – and not as Defendants seek to characterize it. The Price Anderson Act ("PAA") cannot apply

because Plaintiffs are not asserting a public liability action because there has been no "nuclear

incident" as statutorily defined. Without an appropriate and applicable federal license or an

indemnification agreement, there is no "nuclear incident" and thus no "public liability action"

under the PAA. Likewise, the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA") cannot apply because Plaintiffs claims do not amount to a CERCLA

"challenge." Federal courts are courts of limited jurisdiction and Defendants simply have not

carried their burden of establishing that federal jurisdiction is proper. Given that all doubts as to

whether remand is proper should favor remand, this matter belongs in Saint Louis County,

Missouri State Court. Moreover, when faced with "competing preemption narratives," the Court

has the "duty to accept the reading that disfavors preemption." *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1094 (10th Cir. 2015) (citing *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005). This duty is only "heightened" where (as here) the area of law in question is one of traditional state regulation like public health and safety. *Id.* at 1094 (citing *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 334, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008).

## II.    The Price Anderson Act Does Not Apply to Plaintiffs' Claims

"At the threshold of every action asserting liability growing out of a nuclear incident, then, there is a federal definitional matter to be resolved: Is this a public liability action? If the answer to that question is "yes," the provisions of the Price–Anderson Act apply[.]" *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854–55 (3d Cir. 1991). Here, there is no applicable license or indemnity agreement that would trigger the PAA.

While this Court has determined the PAA preempts state law when the PAA is plead, this Court has not considered whether the PAA should apply in the first place. Plaintiffs contend that the PAA does not apply and this Court lacks subject matter jurisdiction, thus requiring remand. As determined by three factually related cases in this Court, the PAA does not apply because the Defendants lack an appropriate federal license or indemnity agreement needed to trigger the PAA and its exclusive federal jurisdiction. *See Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017); *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 606 (E.D. Mo. 2019).

### a.    The PAA Does Not Apply Without a License or Indemnity Agreement

As determined in *Strong*, *Banks* and *Kitchin*, the PAA does not apply under the facts of this case because defendants do not have an appropriate license or indemnity agreement that would apply to the complained of activity. Defendants take issue with these decisions because of their

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

reliance on *Gilberg v. Stepan Co.*, 24 F. Supp. 2d 325 (D.N.J. 1998), which has been criticized by other courts. It is important to note that this court has acknowledged that there are conflicting opinions, yet even so has determined that the PAA does not apply under these circumstances. *See Banks*, 2019 WL 1426259, at *6; *Strong*, 283 F. Supp. 3d 759, 767 (E.D. Mo. 2017).

Moreover, this Court in *Kitchin* conducted an independent analysis of the language of the PAA and without any reliance on *Gilberg* or its reasoning reached the same conclusion that "there cannot be a nuclear incident without an applicable license or indemnity agreement" *Kitchin*, 389 F. Supp. 3d 600, 612 (E.D. Mo. 2019) (citing *Strong*, 283 F. Supp. 3d at 771.) As stated in *Kitchin*, "when the definition [of 'nuclear incident'] is read *in toto* and in conjunction with § 2210, 'nuclear incidents' are those occurrences within and outside the United States that arise from activities conducted under DOE contracts or in connection with NRC-licensed activity." *Kitchin*, 389 F. Supp. 3d 600, 612 (E.D. Mo. 2019). The Court in *Kitchin* also reviewed the legislative history of the PAA and found it to support this conclusion.

### b. Defendants Do Not Have an Applicable License or Indemnity Agreement

Defendants assert that Cotter's 1969 source material license provides a basis for the application of the PAA under these circumstances. However, this Court has squarely addressed this issue and determined that this exact license does not support subject matter jurisdiction under the PAA for this exact same landfill as well as for these exact same radioactive wastes. *See Strong*, 283 F. Supp. 3d at 772; *Kitchin*, 389 F. Supp. 3d at 613.

In *Strong* the court determined that "assuming that a license is required for federal subject matter jurisdiction pursuant to the PAA, the Court fails to see how Cotter's Source Material License applies to Plaintiffs' claims." *Strong*, 283 F. Supp. 3d at 772. The Court reasoned that "to the extent the material at issue is uranium mill tailings, in 1969, when Cotter obtained the Source

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Material License, and, in 1973, when the Landfills allegedly accepted the material at issue, the definition of 'byproduct material' did not include uranium or thorium mill tailings. It was not until 1978 that Congress expanded the definition of "byproduct material" to include uranium and thorium mill tailings." *Id*. at 772-73. Plaintiffs here have affirmatively plead that the wastes at issue are in fact mill tailings.

Even so, "[r]egardless of whether uranium mill tailings are the radioactive wastes at issue in this case or whether plaintiffs properly pled that they are, Cotter's license nevertheless does not affect [the] determination that the PAA does not apply to plaintiffs' claims." *Kitchin*, 389 F. Supp. 3d at 613. Cotter's license authorized it to receive, possess and import the source material, to use such material for the purpose(s) and the place(s) designated, *i.e. 9200 Latty Avenue*, and to deliver or transfer such material to persons authorized to receive it. Plaintiffs' damages here arise from defendants' unauthorized disposal and receipt of the material and their unauthorized use of the material at an unauthorized site. "Cotter's Source Material License did not cover its delivery or transfer of the material to such unauthorized entities. Nor did it cover defendants' activities at the Landfill. Cotter's license therefore does not provide basis for federal subject matter jurisdiction under the PAA." *Kitchin*, 389 F. Supp. 3d at 613.

Interestingly, Cotter claims that they "did not need a license to dispose of the material in the landfill." Doc No. 180 at p. 12. In other words, Cotter maintains that their license permitted them to dump thousands of tons of radioactive wastes into the West Lake Landfill. A municipal landfill that has no liner and was never designed for the disposition of radioactive wastes and which has been determined to be a Superfund Site based on the presence of these wastes.

Cotter bases this argument on the contention that the wastes dumped were "unimportant." However, even if this argument were true, which it is not, the basis for federal jurisdiction must

be apparent from the face of Plaintiffs' well-pleaded complaint, rather than from any defenses asserted by Defendants. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). When no federal question appears on the face of the complaint, federal courts do not have jurisdiction. *M. Nahas & Co. v. First National Bank of Hot Springs*, 930 F.2d 608, 611 (8th Cir. 1991). Here, the argument proposed by Cotter and the information used to support the argument does not appear in Plaintiffs complaint and it cannot be considered by this Court when determining whether jurisdiction is proper. Plaintiffs have alleged that Cotter failed to get the proper authorization before dumping these radioactive wastes into the landfill.

It is important to note that if Cotter is correct, they concede that the wastes disposed of were "not subject to licensing requirements." Doc. No. 180 at p. 13. Accordingly, as with mill tailings, these wastes would not provide a basis for jurisdiction under the PAA.

### c.   Defendants' Interpretation of the 1988 Amendments is Incorrect and Leads to Absurd Results

Plaintiffs do not dispute that the 1988 Amendments expanded federal jurisdiction – however, not to the extent of disregarding common sense and safety. The 1988 Amendments expanded the PAA to nuclear incidents not considered to be "substantial." They did not erase the entire statutory framework, i.e. the licensing/indemnity scheme. If Congress had intended such a radical change it would have been exhaustively featured in the legislative history.

This court has already analyzed the 1988 Amendments and has determined that "nothing in the 1988 amendments alter the purpose of the PAA, which is to provide a compensation plan and liability assessment for nuclear incidents arising out of DOE-contracted activity and NRC-licensed activity. *Kitchin*, 389 F. Supp. 3d 600, 612 (E.D. Mo. 2019). As stated in *Banks*,

> It is clear that the 1988 amendments were enacted to expand the scope of federal jurisdiction to a broader class of nuclear liability cases than those arising just from extraordinary nuclear occurrences as well as to provide for consolidation of those

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

claims in federal court. However, in light of the PAA's concerns related to liability limitation and indemnification, the Court is not convinced that the 1988 amendments were meant to extend the reach of the PAA to activities not covered by applicable licenses or indemnity agreements. Defendants' construction overlooks the original purposes and framework of the AEA and the PAA - to require those involved in the nuclear industry to obtain licenses and maintain financial protections.

*Banks v. Cotter Corp.*, 2019 WL 1426259, at *8.

Defendant Cotter relies on *Estate of Ware v. Hosp. of the Univ. of Pa.,* 871 F.3d 273 (3d Cir. 2017) ("Estate of Ware II"),  to assert that following the 1988 amendments, federal jurisdiction exists for any occurrence causing physical harm resulting from the radioactive properties of nuclear material. *Estate of Ware II* acknowledged that the PAA is "complicated" and "interlocking". *Id.* at 279.  The court also acknowledged that the 1988 Amendments expanded the scope of the PAA, but not to the extent that Defendants suggest: "None of this is to say that the Act applies to all harm occurring from nuclear material in any situation whatsoever….we do not decide whether the possession of a license….might affect the Act's applicability to a particular case. We note only that [this] implicit limitation on the Price–Anderson Act's scope would not preclude its application here." *Id*. at 284-285

It is important to note that according to the NRC, the PAA applies to state-owned educational institutions. The same is not true for materials licensees other than those processing plutonium. *NRC, The Price–Anderson Act—Crossing the Bridge to the Next Century: A Report to Congress* at 4-5 (August 1, 1998). In *Estate of Ware II*, the University of Pennsylvania is a state-owned institution and they possessed a license for exact activity for which they were being sued. On the other hand, Cotter only had a materials license for materials other than plutonium and they are being sued for activities that fall outside the scope of said license.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Defendants also misplace their reliance on *Acuna v. Brown & Root Inc*., 200 F.3d 335 (5th Cir. 2000), to support their broad view of PAA jurisdiction. In *Acuna*, the court stated that "[u]ranium extraction and processing are part of the nuclear weapons and power industries, and therefore come within the ambit of § 2210(n)(2)" *Id*. at 340. The landfill that is the subject of this litigation is not part of the nuclear weapons and power industries and as such does not come within the ambit of § 2210(n)(2). Moreover, *Acuna* did not consider the "complicated" and "interlocking nature" of the PAA.

To understand the 1988 Amendments, the changes made must be considered in the context of the entire statutory framework. The AEA provides for federal regulation and licensing of private construction, ownership, and operation of commercial nuclear power reactors. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983). The PAA amended the AEA to "provide *certain federal licensees* with a system of private insurance, government indemnification, and limited liability for claims of 'public liability'." *El Paso Nat. Gas Co. v. Neztsosie,* 526 U.S. 473, 119 S. Ct. 1430, 143 L. Ed. 2d 635 (1999) (emphasis added). The PAA was designed to cushion liability risks for participating licensees and contractors conducting their nuclear related activities in accordance with federal licensing and regulatory requirements. *See* George T. Mazuzan and J. Samuel Walker, THE BEGINNINGS OF NUCLEAR REGULATION 1946-62 103 (1984).

Defendants erroneously assert that because they bear liability due to hazardous properties of radioactive material causing property damage, the Plaintiffs' claims are governed by the PAA. Such a proposition throws the entire statutory frame out the window. Under Defendants' interpretation, any time the hazardous properties of radioactive material cause damage, the PAA applies and defendants are entitled to seek shelter behind the PAA's system that provides for

limited liability and government indemnification. If Defendants are correct, corporations with no governmental ties or authorization whatsoever would be encouraged to forego licensing and insurance requirements.

Defendants ignore the entire foundation on which the PAA is built. Here, the Court "must look at the [Price Anderson] Amendments Act in the context of the entire federal statutory scheme of nuclear power. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1095 (7th Cir.1994), *cert. denied,* 512 U.S. 1222, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994). Defendants assert it was Congress' intent in enacting the 1988 amendments to wipe away decades of legislation and regulations that form the framework on which this country ensures that radioactive materials are handled properly by licensed facilities. The Court should decline Defendants' invitation to adopt their absurd arguments. It bears repeating that the PAA does not afford protections to private entities and persons engaged in activities that lack the authority, license, or permission contemplated under the Act.

### d. Defendants' Interpretation Would Violate Due Process

Defendant Cotter argues that the PAA provides a reasonable substitute remedy to Plaintiffs state law claims. Cotter supports this argument by asserting that the PAA "transforms" actions based on state law claims into federal actions. However, if it is determined that the PAA applies and that it preempts Plaintiffs state law claims, there is no doubt that this raises a serious constitutional problem. Congress cannot simply eliminate longstanding common law rights without providing any reasonable alternative remedy unless there is a "compelling" reason to do so. *PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 93–94, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980) (Marshall, J., concurring).

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

The Plaintiffs in *Cook v. Rockwell Int'l Corp.* proposed a similar argument that Plaintiffs propose here. 790 F.3d 1088 (10th Cir. 2015) As stated by now Supreme Court Justice Neil Gorsuch, "[t]his of course is no trivial argument, but because we find the defendants' reading of the statute unconvincing on its own terms it is also one we happily need not reach or resolve." *Id.* at 1099. Here, this Court should find unconvincing Defendants' arguments as they relate to the PAA's application in the absence of an applicable license or indemnity agreement and there should be no need to resolve the due process issue. However, if this Court determines that the PAA applies and it preempts Plaintiffs state law claims, then the court must consider this not so trivial argument.

## III.  CERCLA Does Not Provide a Basis for Federal Question Jurisdiction

In a footnote, the Landfill Defendants cite *Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999) and *Lehman Bros, Inc. v. City of Lodi*, 333 F. Supp. 2d 895 (E.D. CA. 2004) to support there contention that Plaintiffs claims constitute a "challenge" to the EPA's cleanup plan at the landfill and thus CERCLA provides an alternative basis for jurisdiction. The Landfill Defendants made this same argument and cited these same cases in *Kitchin* and the Court determined that CERCLA does not provide a basis for jurisdiction under essentially the same facts. *Kitchin*, 389 F. Supp. 3d at 615. The Landfill Defendants also cite *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 330 (9th Cir. 1995) to support their contention that Plaintiffs claims constitute a "challenge" to the EPA's cleanup plan at the landfill. In *McClellan* Plaintiffs sought to improve on a CERCLA cleanup which was determined to be a "challenge" to the cleanup. Here, Plaintiffs are not seeking to improve on the EPA's cleanup plan. Simply put, Defendants have not and cannot point to anything in the Second Amended Complaint that would require defendants to take action that would overlap with, alter, challenge or contradict any EPA remedy that is being reviewed and/or taken at the Landfill.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

## IV.     Appellate Review of a District Court's Order Remanding a Case is Impermissible

Here, the Landfill Defendants are requesting review of a remand order which has yet to be issued. However, the Landfill Defendants fail to recognize that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d).[1] This matter was not removed pursuant to section 1442 or 1443. As such, the law is explicit that a decision to remand this case would not be reviewable on appeal or otherwise. "Reviewability of a remand order depends entirely upon the trial court's stated grounds for its decision to remand. Remand after removal is controlled by § 1447(c), which provides that '[i]f ... it appears that the district court lacks subject matter jurisdiction, the case shall be remanded....' Through the prohibitory effect of 28 U.S.C. § 1447(d), remand orders under § 1447(c) are not reviewable on appeal, by mandamus, or otherwise, except in civil rights cases." *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1026 (5th Cir. 1991) (internal citations omitted).  Despite the Landfills' assertion that 28 U.S.C. § 1292 would allow them to appeal a remand order, they cannot escape the restrictions governing the procedure for removal found in 28 U.S.C. § 1447(d). Simply put, the text of 1447(d) forbids appellate review of a district court order remanding a case to state court.

Defendants own brief opposing Plaintiffs' Motion to Remand confirms this result as they argue that "granting leave to amend may set the stage for an *unappealable remand order*." Doc.

---

[1] "As a general matter, appellate review of orders remanding cases to state court is not permitted, as specified by 28 U.S.C. 1447(d)."  S.Rep. No. 109–14, at 49 (2005).

No. 181 at pages 9-10 (emphasis added). Here, leave to amend has been granted and the only decision left to be made is whether remand is proper, a decision that is unappealable under § 1447(d). It is telling that Defendants offer no basis in law as to how this matter could be certified for appellate review.

**V.      Conclusion**

Despite Defendants attempt to create federal jurisdiction where none exists, this matter belongs in state court. The PAA nor CERCLA are essential to Plaintiffs' claims and they do not preempt Plaintiffs' state law causes of action. On its face, the PAA is not a model of clarity and the cases interpreting it are nuanced. There are, however, three recent decisions from this Court involving the same Defendants, the same landfills, and the same radioactive wastes. Those cases have all been remanded back to state court. This case should be remanded as well.

Defendants have not carried their burden of establishing that jurisdiction is proper under the PAA or CERCLA, especially considering that any doubts about the correctness of removal are resolved in favor of state court jurisdiction and remand and that when faced with competing preemption arguments the court has a duty to accept the reading that disfavors preemption.

This Court should ignore the Landfill Defendants' attempt to circumvent 28 U.S.C. § 1447(d) which prohibits the review of remand orders on appeal or otherwise.

Respectfully Submitted,

/s/ Celeste Brustowicz
Stuart H. Smith (LSBA 17805), Pro Hac Vice
Barry J. Cooper, Jr. (LSBA 27202), Pro Hac Vice
Celeste Brustowicz (LSBA 16835), Pro Hac Vice
Victor T. Cobb (LSBA 36830), Pro Hac Vice
**COOPER LAW FIRM, LLC**
1525 Religious Street
New Orleans, Louisiana 70130
Phone:      504-399-0009

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Facsimile: 504-291-1352
Email: ssmith@clfnola.com
          bcooper@clfnola.com
          cbrustowicz@clfnola.com
          vcobb@clfnola.com
ATTORNEYS FOR PLAINTIFFS,
MICHAEL AND ROBBIN DAILEY

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2019, I electronically filed the foregoing document

with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing

to counsel of record.

/s/ Celeste Brustowicz
Celeste Brustowicz (LSBA 16835), Pro Hac Vice

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DAILEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 24 CDP |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER OF REMAND**

After filing their second amended complaint in this removed case, plaintiffs Michael and Robbin Dailey move to remand this action to state court for lack of federal subject-matter jurisdiction. Because this Court neither currently has nor ever had subject-matter jurisdiction over this action, I will remand the case to state court under 28 U.S.C. § 1447(c).

### **Background**

Husband and wife plaintiffs, Michael and Robbin Dailey, seek damages and injunctive relief for radioactive contamination of their home allegedly caused by neighboring West Lake Landfill, located in North St. Louis County, Missouri. The Daileys assert that their property has been damaged by soil, dust, and air contamination from improper generation, handling, storage, and disposal of

radioactive materials by several corporate defendants.[1]  The remaining defendants in this action are the owners and operators of the Landfill – namely Bridgeton Landfill, LLC; Republic Services, Inc.; Allied Services, LLC; and Rock Road Industries, Inc. (collectively, "the Landfill Defendants") – as well as a waste generator and disposer, Cotter Corporation.

The Daileys originally filed this suit in St. Louis County Circuit Court in November 2016, pleading state-law claims of trespass, permanent nuisance, temporary nuisance, negligence, negligence per se, strict liability, and medical monitoring.  On January 6, 2017, defendants invoked federal-question jurisdiction under 28 U.S.C. § 1331 and removed the action to this Court, arguing that the allegations in the state-court petition arise under federal law – specifically the Price-Anderson Act (PAA) as amended in 1988, 42 U.S.C. §§ 2010, *et seq.*, which provides a federal compensation regime for damages resulting from a nuclear incident; and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601, *et seq.*, which established a federal "Superfund" to clean up uncontrolled or abandoned hazardous-waste sites, and provides for liability of persons responsible for releases of hazardous waste at these sites.

---

[1] The detailed history of the events and circumstances that allegedly caused this radioactive contamination is set out in my Memorandum and Order entered October 27, 2017, and is incorporated herein.  (*See* ECF 89 at pp. 3-5.)

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Shortly after removal, defendants moved to dismiss the case, arguing, first, that the PAA preempted the Daileys' state-law claims and, second, that the petition failed to state a PAA claim because it failed to allege an essential element, that is, that the Daileys were exposed to radiation in excess of federal dose limits.[2]  Before responding to the motions to dismiss, the Daileys moved to remand the case to state court, arguing that their petition did not plead any federal claims, that the PAA did not apply to the claims, and that no "nuclear incident" (which is required for a PAA claim) was pled or could be inferred from the petition's factual averments.

After the motion to remand was fully briefed, the Daileys abruptly withdrew the motion without explanation.  Thereafter, in lieu of a response to defendants' pending motions to dismiss, the Daileys filed an amended complaint (with defendants' consent), which restated the factual averments nearly verbatim from their original state-court petition.  In an apparent nod to defendants' motions to dismiss, however, the Daileys added a new factual allegation that the radioactive material contaminated their property at specific dosage levels greater than what relevant federal safety regulations allowed.  Accordingly, in addition to state-law claims of nuisance and strict liability for abnormally dangerous activity, the Daileys added a separate and distinct claim for relief under the PAA, that is, that

---

[2] Although defendants invoked CERCLA as a basis for removal, none of the defendants addressed CERCLA in their motions to dismiss.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

defendants' conduct caused a "nuclear incident" or a series of "nuclear incidents" under the PAA, thus making this a "'public liability action' arising under 42 U.S.C. § 2210 asserting legal liability resulting from a 'nuclear incident[.]'"  (ECF 70 at ¶ 105.)

On defendants' renewed motions to dismiss the amended complaint, I dismissed the Daileys' state-law claims as being preempted by the explicitly pled PAA claim.  To the extent defendants argued that the PAA claim failed on its face as well because it did not adequately allege exposure to radiation in excess of the relevant federal standards, I determined that the federal dose limit did not appear to apply to the claim raised here, that is, "a property damage claim against a non-NRC[3] licensed facility."  (ECF 89 at p. 19.)  On this basis, I allowed the Daileys' PAA-captioned claim to proceed.

In the meanwhile, another judge of this Court determined that the "nuclear incidents" to which the PAA applies are only those occurrences involving NRC licensees or those with an indemnity agreement as described in the statute.  *See generally Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017).  Where neither an NRC licensee nor an indemnity agreement is involved, there can be no "nuclear incident" under the PAA and thus no federal subject-matter jurisdiction under the PAA.  *Id.*

---

[3] Nuclear Regulatory Commission.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

In both their state-court petition and amended complaint, the Daileys made the factual averment that the Landfill was not a licensed nuclear facility. And in their amended complaint, they alleged that Cotter did not hold the required license to transport radioactive waste to the Landfill. Moreover, the Daileys never alleged at any time that any defendant operated under an indemnity agreement as contemplated by the PAA.

After the Court's determination in *Strong*, the Daileys moved to amend their complaint again, seeking to eliminate the PAA claim first asserted in their amended complaint and to reinstate their state-law claims as originally pled in their state-court petition. In support of their motion to amend, the Daileys argued that the PAA never applied to this action from the outset because defendants never possessed the appropriate federal license or indemnity agreement needed to trigger the PAA. I granted leave to file this second amended complaint on October 22, 2019.

The second amended complaint tracks the factual averments and allegations made in the original state-court petition, expands the explanation regarding the mill tailings Cotter allegedly transported to and disposed of at the Landfill, and omits the first amended complaint's allegations regarding levels of contamination meeting federal standards. The claims for relief are those set out in the original petition, namely, state-law claims of trespass, permanent nuisance, temporary

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

nuisance, negligence, negligence per se, strict liability/absolute liability, injunctive relief (medical monitoring), and punitive damages. And the second amended complaint goes to great lengths to disavow any connection to federal law, explicitly stating that the claims are not within the scope of the PAA given defendants' lack of a required license and the absence of an indemnification agreement, as well as the exclusion of mill tailings as covered substances under the PAA or the Atomic Energy Act during the relevant period.

The Daileys now move to remand the action to state court, arguing that this Court lacks federal subject-matter jurisdiction.

## Discussion

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

A federal district court may exercise removal jurisdiction only where the court would have had original subject-matter jurisdiction had the action initially been filed there. *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000) (citing 28 U.S.C. § 1441(b)). For actions removed on the basis of federal-question jurisdiction, "[t]he presence or absence of [such] jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[A] case may *not* be removed to federal court on the basis of a federal defense[.]" *Id.* at 393 (emphasis in *Caterpillar*).

The party invoking removal jurisdiction and opposing remand carries the burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence. *Kokkonen*, 511 U.S. at 377; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). Generally, a court must resolve all doubts about federal jurisdiction in favor of remand to state court. *In re Prempro*, 591 F.3d at 620. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A.     No Federal-Question Jurisdiction Under the PAA

Several judges in this Court, including me, have held that a "nuclear incident" under the PAA requires that the alleged unlawful conduct must have arisen from NRC-licensed activities or under a contract with the Department of Energy (DOE) with agreements of indemnification. *Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759, 772 (E.D. Mo. 2017); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 612-13 (E.D. Mo. 2019); *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). As the reasoning in those cases explains, there cannot be a nuclear incident under the

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

PAA without an applicable NRC license or DOE indemnity agreement.[4]

None of the defendants here is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification. The Daileys have never alleged such jurisdictional facts, either in state court or here, and indeed have consistently pled facts that preclude application of the PAA. With the absence of these PAA-required jurisdictional facts, federal subject-matter jurisdiction under the PAA never existed from the outset.

Attaching a PAA moniker to the first amended complaint did not change this circumstance. A complaint cannot be amended to produce federal jurisdiction where none actually existed before. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989). And the mere assertion of a federal claim where there is an actual lack of required jurisdictional facts cannot confer federal subject-matter jurisdiction over the action. *Id.* (a district court cannot remedy defective jurisdictional facts); *CU Capital Mkt. Solutions., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *7-8 (D. Kan. June 26, 2019). *See also GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661, at *3 (N.D. Iowa Apr. 11, 2019) (amended complaint does not allege

---

[4] Defendants argue that these cases were wrongly decided, but I do not agree. I continue to believe the cases are correct so I will not reconsider their reasoning, which I fully adopt for this case.

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

facts that would give rise to federal-question jurisdiction regardless of whether plaintiff asserted it). Therefore, regardless of the specifically-pled PAA claim, the amended complaint could not and did not cure the lack of federal subject-matter jurisdiction over this action.

Required jurisdictional facts for a PAA claim – that the alleged unlawful conduct arose from either NRC-licensed activities or a DOE contract with indemnification – never existed in this action. Accordingly, the PAA never applied to the Daileys' claims. *Kitchin*, 389 F. Supp. 3d at 612-13; *Strong* 283 F. Supp. 3d at 772; *Banks*, 2019 WL 1426259, at *6.

Defendant Cotter Corporation argues, however, that it handled, processed, and transported the radioactive wastes to the Landfill pursuant to a Source Material License issued to it by the Atomic Energy Commission (AEC) (now licensed by the NRC) in 1969. Cotter contends that, therefore, to the extent a license is required for exclusive federal jurisdiction under the PAA, the Daileys' claims involve radioactive materials that were handled and disposed of by an AEC licensee, making the licensed activity inextricably part of the claims and thus within the PAA. I disagree.

Cotter's 1969 Source Material License authorized it to "receive, possess and import the source material [uranium]; to use such material for the purpose(s) and at the place(s) designated [9200 Latty Avenue, Hazelwood, Missouri]; and to deliver

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

or transfer such material to persons authorized to receive it[.]"  (ECF 64-5, Feingold Decl., Exh. D.)  As alleged by the Daileys throughout this litigation, their damages do not arise from the use of the radioactive material at the Latty Site, but rather from the Landfill Defendants' unauthorized receipt of the material and their unauthorized use of the material at an unauthorized site, the Landfill.  Cotter's Source Material License did not cover its delivery or transfer of the material to such unauthorized entities.  Nor did it cover the Landfill Defendants' activities at the Landfill.  Cotter's license therefore does not provide a basis for federal subject-matter jurisdiction under the PAA.  *See Kitchin*, 389 F. Supp. 3d at 613; *Banks*, 2019 WL 1426259, at *9.

Somewhat incongruously, Cotter also argues that it did not need a license to transport the radioactive material at issue in this case because the quantities of such material it deposited at the Landfill were "unimportant" under 42 U.S.C. § 2092.[5] An "unimportant" quantity of source material for which persons are exempt from federal regulatory licensing is that which is "by weight less than one-twentieth of 1 percent (0.05 percent) of the mixture, compound, solution or alloy."  10 C.F.R. §

---

[5] Section 2092 provides:

Unless authorized by a general or specific license issued by the Commission, which the Commission is authorized to issue, no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its place of deposit in nature, except that licenses shall not be required for quantities of source material which, in the opinion of the Commission, are unimportant.

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

40.13(a).  Referring to a "Remedial Investigation Addendum, West Lake Landfill," Cotter avers that the level of source material in the soil mixture it delivered to the Landfill was less than the 0.05 percent required for federal licensing.  (ECF 180 at p. 13.)  Assuming arguendo that Cotter was indeed exempt from federal licensing requirements for the conduct alleged here, the lack of a license removes the alleged conduct from PAA governance and exclusive federal jurisdiction given that NRC licensing or a DOE indemnification agreement is required to invoke the PAA and federal jurisdiction.  Cotter's defense does not provide federal subject-matter jurisdiction over this action.

None of the defendants in this action is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification.  The PAA therefore does not apply to the Daileys' claims.

B.    No Federal-Question Jurisdiction Under CERCLA

In their removal petition, defendants asserted that the injunctive relief sought in the Daileys' state-court petition constituted a CERCLA challenge because such relief would interfere with the EPA's remediation plans at the federal Superfund site.  They further argued that because the Daileys allege that the Landfill is the source of the radioactive contamination found on their properties, and the Landfill is a federal Superfund site over which the EPA has exclusive jurisdiction, then the

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

EPA likewise has exclusive jurisdiction over their property under CERCLA.

Nothing in the Daileys' original state-court petition or amended complaints shows that they are requesting relief that would interfere with the EPA's remediation plans. Although the Daileys refer to the Landfill as a Superfund site, they do not expressly challenge the effectiveness of the Landfill remedy, request modification of the remedial plan, or seek specific action that could conflict with the remediation process. And defendants offer no explanation as to how the requested relief would alter EPA's plans in a way that is somehow inconsistent with any particular federal obligation or requirement. The Daileys do not cite CERCLA as a basis for their claims; nor do they seek reimbursement of response costs or any other form of relief available under its provisions. Nor does CERCLA completely preempt the Daileys' claims or otherwise foreclose them from relying on common law theories for the relief they seek. *See Kitchin*, 389 F. Supp. 3d at 614-15.

Defendants' argument that the EPA has exclusive jurisdiction over the Landfill Superfund site and thus over any private property that is contaminated with hazardous substances from the Superfund site was squarely rejected in *Kitchin*, and I reject it here for the same reasons. 389 F. Supp. 3d at 614-15.

Finally, to the extent defendants contend that the EPA nevertheless has exclusive jurisdiction over the Landfill Superfund site, nothing in the Daileys'

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

allegations raised throughout this litigation shows that they seek relief that would require defendants to take action that would overlap with, alter, or contradict any EPA remedy that is being reviewed and/or or taken at the site under CERCLA. The Daileys' claims do nothing to take away from the EPA's jurisdiction over the Superfund site. And CERCLA does not completely preempt state tort liability for damages caused by the release of hazardous substances. The causes of action the Daileys pursue do not necessarily depend on resolution of substantial questions regarding response-cost liabilities or other obligations imposed by CERCLA. Nor have defendants demonstrated that the Daileys are making a CERCLA challenge by requesting relief that would interfere with the EPA's remediation plans. *See Kitchin*, 389 F. Supp. 3d at 614-15, and cases cited therein.

Throughout this litigation, the Daileys never raised any actually disputed and/or substantial issues arising under CERCLA. I therefore reject defendants' contention that CERCLA provides a basis for federal subject-matter jurisdiction over this cause of action. I will not further address the CERCLA argument raised in defendants' response to the Daileys' pending motion to remand (ECF 181 at p. 8 n.3), given that it was mentioned only by way of a footnote. *See Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.4 (8th Cir. 2011).

## Conclusion

I do not have federal-question jurisdiction over this action under either the

Electronically Filed - St. Louis County - April 20, 2020 - 07:20 PM

PAA or CERCLA. And defendants provide no other argument or evidence establishing any other basis for federal subject-matter jurisdiction. Accordingly, the case shall be remanded to state court. 28 U.S.C. § 1447(c). In light of this determination, I need not address the Daileys' argument that applying the PAA to their claims would deprive them of due process. Further, because this remand order is based on § 1447(c) for lack of subject-matter jurisdiction, the court of appeals would lack jurisdiction to review it. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000); 28 U.S.C. § 1447(d). I will therefore deny defendants' request that I certify the order for interlocutory appeal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs Michael and Robbin Daileys' Motion to Remand [174] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of St. Louis County, Missouri, from which it was removed. All other motions that remain pending in this action are reserved for ruling by that court.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2020.

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:    BRIAN OCONNOR WATSON, Attorney for Defendant
SERVICE EMAIL:    bwatson@rshc-law.com


SERVICE PARTY:    RYAN A. KEANE, Attorney for Plaintiff
SERVICE EMAIL:    ryan@keanelawllc.com


SERVICE PARTY:    ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:    erin.brooks@bryancave.com


SERVICE PARTY:    DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:    ddefeo@defeolaw.com


SERVICE PARTY:    ANTHONY DOUGLAS GRAY, Attorney for Plaintiff
SERVICE EMAIL:    gray.lawyer1@gmail.com, agray@johnsongraylaw.com, ejones@stannmo.org

Electronically Filed - St Louis County - April 20, 2020 - 07:20 PM

Electronically Filed - St Louis County - April 10, 2020 - 11:36 AM

**IN THE TWENTY FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI**
**ST. LOUIS COUNTY**

| | | |
|---|---|---|
| MICHAEL DAILEY, and | ) | |
| ROBBIN DAILEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16SL-CC04240 |
| v. | ) | |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE**

**COMES NOW,** Anthony D. Gray of Johnson Gray, LLC and enters his appearance on

behalf of Plaintiffs in the above-captioned matter.

Dated: April 10, 2020

Respectfully submitted,

Anthony D. Gray, #51534
Attorney for Defendant
319 North 4th Street, Suite 212
St. Louis, MO 63102
(314) 385-9500 tel
(314) 594-2052 fax

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 10, 2020, a true and accurate copy of the
foregoing was served by filing it in the court's electronic Case.net filing and notification system,
which will provide notice to all parties and attorneys of record.

Anthony D. Gray

Electronically Filed - St Louis County - April 10, 2020 - 11:36 AM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   BRIAN OCONNOR WATSON, Attorney for Defendant
SERVICE EMAIL:   bwatson@rshc-law.com


SERVICE PARTY:   RYAN A. KEANE, Attorney for Plaintiff
SERVICE EMAIL:   ryan@keanelawllc.com


SERVICE PARTY:   ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:   erin.brooks@bryancave.com


SERVICE PARTY:   NATHANIEL RICHARD CARROLL, Attorney for Plaintiff
SERVICE EMAIL:   nathaniel@keanelawllc.com


SERVICE PARTY:   DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:   ddefeo@defeolaw.com

Electronically Filed - St Louis County - April 09, 2020 - 11:54 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

MICHAEL DAILEY and ROBBIN DAILEY,

           Plaintiffs,

v.

BRIDGETON LANDFILL, LLC, et al.,

           Defendants.

Case No. 16SL-CC04240
Division No. 11

**ENTRY OF APPEARANCE**

The undersigned attorneys enter their appearance on behalf of Defendant Cotter

Corporation (N.S.L.) without waiver of jurisdictional or other defenses.

       Dated: April 9, 2020

Respectfully submitted,

*/s/ Brian O. Watson*
RILEY SAFER HOLMES & CANCILA LLP
Edward Casmere, #64326MO
Brian O. Watson, #68678MO
70 W. Madison St., Ste. 2900
Chicago, Illinois  60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
ecasmere@rshc-law.com
bwatson@rshc-law.com
docketdept@rshc-law.com

Electronically Filed - St Louis County - April 09, 2020 - 11:54 AM

## CERTIFICATE OF SERVICE

The undersigned attorney certifies on April 9, 2020, these papers were filed through Missouri Court's eFiling system, which will serve an electronic copy upon all counsel of record.

Respectfully submitted,

*/s/ Brian O. Watson*

RILEY SAFER HOLMES & CANCILA LLP
Edward Casmere, #64326MO
Brian O. Watson, #68678MO
70 W. Madison St., Ste. 2900
Chicago, Illinois  60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
ecasmere@rshc-law.com
bwatson@rshc-law.com
docketdept@rshc-law.com

4819-4334-5337, v. 1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:   erin.brooks@bryancave.com


SERVICE PARTY:   DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:   ddefeo@defeolaw.com

Electronically Filed - St Louis County - April 09, 2020 - 11:54 AM

Electronically Filed - St Louis County - April 07, 2020 - 02:10 PM

**IN THE TWENTY FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI
ST. LOUIS COUNTY**

MICHAEL DAILEY, and          )
ROBBIN DAILEY,               )
                             )
          Plaintiffs,        )
                             )     Case No. 16SL-CC04240
v.                           )
                             )
BRIDGETON LANDFILL, LLC, et al.,   )
                             )
          Defendants.        )

**ENTRY OF APPEARANCE**

COMES NOW Nathaniel R. Carroll of Keane Law, LLC and enters his appearance on behalf of Plaintiffs in the above-captioned matter.

Dated: April 7, 2020                    Respectfully submitted,

                                        KEANE LAW LLC

                          By:     /s/ Nathaniel R. Carroll
                                  Ryan A. Keane, # 62112
                                  Nathaniel R. Carroll, # 67988
                                  7777 Bonhomme Ave, Ste 1600
                                  St. Louis, MO 63105
                                  Ph: (314) 391-4700
                                  Fx: (314) 244-3778
                                  ryan@keanelawllc.com
                                  nathaniel@keanelawllc.com
                                  *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 7, 2020, a true and accurate copy of the foregoing was served by filing it in the court's electronic Case.net filing and notification system, which will provide notice to all parties and attorneys of record.

                                  /s/ Nathaniel R. Carroll

1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:   erin.brooks@bryancave.com


SERVICE PARTY:   DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:   ddefeo@defeolaw.com

Electronically Filed - St Louis County - April 07, 2020 - 02:10 PM

Electronically Filed - St Louis County - April 07, 2020 - 02:12 PM

**IN THE TWENTY FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI
ST. LOUIS COUNTY**

| | | |
|---|---|---|
| MICHAEL DAILEY, and | ) | |
| ROBBIN DAILEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16SL-CC04240 |
| v. | ) | |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE**

COMES NOW Ryan A. Keane of Keane Law, LLC and enters his appearance on behalf of Plaintiffs in the above-captioned matter.

Dated: April 7, 2020                  Respectfully submitted,

KEANE LAW LLC

By:     /s/ Ryan A. Keane
         Ryan A. Keane, # 62112
         Nathaniel R. Carroll, # 67988
         7777 Bonhomme Ave, Ste 1600
         St. Louis, MO 63105
         Ph: (314) 391-4700
         Fx: (314) 244-3778
         ryan@keanelawllc.com
         nathaniel@keanelawllc.com
         *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 7, 2020, a true and accurate copy of the foregoing was served by filing it in the court's electronic Case.net filing and notification system, which will provide notice to all parties and attorneys of record.

/s/ Ryan A. Keane

1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:    ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:    erin.brooks@bryancave.com


SERVICE PARTY:    DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:    ddefeo@defeolaw.com

Electronically Filed - St Louis County - April 07, 2020 - 02:12 PM

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

**IN THE TWENTY FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI**
**ST. LOUIS COUNTY**

| | | |
|---|---|---|
| MICHAEL DAILEY, and ROBBIN DAILEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16SL-CC04240 |
| | ) | |
| BRIDGETON LANDFILL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF REMAND**

Plaintiffs Michael Dailey and Robbin Dailey, through their undersigned counsel, hereby respectfully notify this honorable Court that on March 23, 2020, the United States District Court for the Eastern District of Missouri has entered its order remanding this matter to the Circuit Court of St. Louis County under 28 U.S.C. §1447(c). *See Dailey et al. v. Bridgeton Landfill, LLC, et al.*, No. 4:17-cv-00024-CDP, Docket No. 186, Memorandum and Order of Remand (Mar. 23, 2020). Plaintiffs attach a copy of said Order hereto as Exhibit 1.

Dated:  April 7, 2020

Respectfully submitted,

KEANE LAW LLC

/s/ *Nataniel R. Carroll*
Ryan A. Keane, #62112
Nathaniel R. Carroll, #67988
7777 Bonhomme Ave., Suite 1600
St. Louis, MO 63105
314-391-4700
314-244-3778 (fax)
ryan@keanelawllc.com
nathaniel@keanelawllc.com
*Attorneys for Plaintiffs*

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 7, 2020, a true and accurate copy of the foregoing was served by filing it in the court's electronic Case.net filing and notification system, which will provide notice to all parties and attorneys of record.

/s/ *Nathaniel R. Carroll*

2

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY, et al.,                )
                                       )
            Plaintiffs,                )
                                       )
v.                                     )   Case No. 4:17 CV 24 CDP
                                       )
BRIDGETON LANDFILL, LLC, et al.,       )
                                       )
            Defendants.                )

## MEMORANDUM AND ORDER OF REMAND

After filing their second amended complaint in this removed case, plaintiffs
Michael and Robbin Dailey move to remand this action to state court for lack of
federal subject-matter jurisdiction.  Because this Court neither currently has nor
ever had subject-matter jurisdiction over this action, I will remand the case to state
court under 28 U.S.C. § 1447(c).

### Background

Husband and wife plaintiffs, Michael and Robbin Dailey, seek damages and
injunctive relief for radioactive contamination of their home allegedly caused by
neighboring West Lake Landfill, located in North St. Louis County, Missouri.  The
Daileys assert that their property has been damaged by soil, dust, and air
contamination from improper generation, handling, storage, and disposal of

Electronically Filed - St. Louis County - April 07, 2020 - 02:15 PM

radioactive materials by several corporate defendants.[1]  The remaining defendants in this action are the owners and operators of the Landfill – namely Bridgeton Landfill, LLC; Republic Services, Inc.; Allied Services, LLC; and Rock Road Industries, Inc. (collectively, "the Landfill Defendants") – as well as a waste generator and disposer, Cotter Corporation.

The Daileys originally filed this suit in St. Louis County Circuit Court in November 2016, pleading state-law claims of trespass, permanent nuisance, temporary nuisance, negligence, negligence per se, strict liability, and medical monitoring.  On January 6, 2017, defendants invoked federal-question jurisdiction under 28 U.S.C. § 1331 and removed the action to this Court, arguing that the allegations in the state-court petition arise under federal law – specifically the Price-Anderson Act (PAA) as amended in 1988, 42 U.S.C. §§ 2010, *et seq.*, which provides a federal compensation regime for damages resulting from a nuclear incident; and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601, *et seq.*, which established a federal "Superfund" to clean up uncontrolled or abandoned hazardous-waste sites, and provides for liability of persons responsible for releases of hazardous waste at these sites.

---

[1] The detailed history of the events and circumstances that allegedly caused this radioactive contamination is set out in my Memorandum and Order entered October 27, 2017, and is incorporated herein.  (*See* ECF 89 at pp. 3-5.)

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

Shortly after removal, defendants moved to dismiss the case, arguing, first, that the PAA preempted the Daileys' state-law claims and, second, that the petition failed to state a PAA claim because it failed to allege an essential element, that is, that the Daileys were exposed to radiation in excess of federal dose limits.[2]  Before responding to the motions to dismiss, the Daileys moved to remand the case to state court, arguing that their petition did not plead any federal claims, that the PAA did not apply to the claims, and that no "nuclear incident" (which is required for a PAA claim) was pled or could be inferred from the petition's factual averments.

After the motion to remand was fully briefed, the Daileys abruptly withdrew the motion without explanation.  Thereafter, in lieu of a response to defendants' pending motions to dismiss, the Daileys filed an amended complaint (with defendants' consent), which restated the factual averments nearly verbatim from their original state-court petition.  In an apparent nod to defendants' motions to dismiss, however, the Daileys added a new factual allegation that the radioactive material contaminated their property at specific dosage levels greater than what relevant federal safety regulations allowed.  Accordingly, in addition to state-law claims of nuisance and strict liability for abnormally dangerous activity, the Daileys added a separate and distinct claim for relief under the PAA, that is, that

---

[2] Although defendants invoked CERCLA as a basis for removal, none of the defendants addressed CERCLA in their motions to dismiss.

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

defendants' conduct caused a "nuclear incident" or a series of "nuclear incidents" under the PAA, thus making this a "'public liability action' arising under 42 U.S.C. § 2210 asserting legal liability resulting from a 'nuclear incident[.]'"  (ECF 70 at ¶ 105.)

On defendants' renewed motions to dismiss the amended complaint, I dismissed the Daileys' state-law claims as being preempted by the explicitly pled PAA claim.  To the extent defendants argued that the PAA claim failed on its face as well because it did not adequately allege exposure to radiation in excess of the relevant federal standards, I determined that the federal dose limit did not appear to apply to the claim raised here, that is, "a property damage claim against a non-NRC[3] licensed facility."  (ECF 89 at p. 19.)  On this basis, I allowed the Daileys' PAA-captioned claim to proceed.

In the meanwhile, another judge of this Court determined that the "nuclear incidents" to which the PAA applies are only those occurrences involving NRC licensees or those with an indemnity agreement as described in the statute.  *See generally Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017). Where neither an NRC licensee nor an indemnity agreement is involved, there can be no "nuclear incident" under the PAA and thus no federal subject-matter jurisdiction under the PAA.  *Id.*

---

[3] Nuclear Regulatory Commission.

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

In both their state-court petition and amended complaint, the Daileys made the factual averment that the Landfill was not a licensed nuclear facility.  And in their amended complaint, they alleged that Cotter did not hold the required license to transport radioactive waste to the Landfill.  Moreover, the Daileys never alleged at any time that any defendant operated under an indemnity agreement as contemplated by the PAA.

After the Court's determination in *Strong*, the Daileys moved to amend their complaint again, seeking to eliminate the PAA claim first asserted in their amended complaint and to reinstate their state-law claims as originally pled in their state-court petition.  In support of their motion to amend, the Daileys argued that the PAA never applied to this action from the outset because defendants never possessed the appropriate federal license or indemnity agreement needed to trigger the PAA.  I granted leave to file this second amended complaint on October 22, 2019.

The second amended complaint tracks the factual averments and allegations made in the original state-court petition, expands the explanation regarding the mill tailings Cotter allegedly transported to and disposed of at the Landfill, and omits the first amended complaint's allegations regarding levels of contamination meeting federal standards.  The claims for relief are those set out in the original petition, namely, state-law claims of trespass, permanent nuisance, temporary

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

nuisance, negligence, negligence per se, strict liability/absolute liability, injunctive

relief (medical monitoring), and punitive damages. And the second amended

complaint goes to great lengths to disavow any connection to federal law,

explicitly stating that the claims are not within the scope of the PAA given

defendants' lack of a required license and the absence of an indemnification

agreement, as well as the exclusion of mill tailings as covered substances under the

PAA or the Atomic Energy Act during the relevant period.

The Daileys now move to remand the action to state court, arguing that this

Court lacks federal subject-matter jurisdiction.

## Discussion

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies

outside this limited jurisdiction, and the burden of establishing the contrary rests

upon the party asserting jurisdiction." *Id.* (citations omitted).

A federal district court may exercise removal jurisdiction only where the

court would have had original subject-matter jurisdiction had the action initially

been filed there. *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir.

2000) (citing 28 U.S.C. § 1441(b)). For actions removed on the basis of federal-

question jurisdiction, "[t]he presence or absence of [such] jurisdiction is governed

by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[A]

case may *not* be removed to federal court on the basis of a federal defense[.]" *Id.*

at 393 (emphasis in *Caterpillar*).

     The party invoking removal jurisdiction and opposing remand carries the

burden of establishing federal subject-matter jurisdiction by a preponderance of the

evidence. *Kokkonen*, 511 U.S. at 377; *In re Prempro Prods. Liab. Litig.*, 591 F.3d

613, 620 (8th Cir. 2010). Generally, a court must resolve all doubts about federal

jurisdiction in favor of remand to state court. *In re Prempro*, 591 F.3d at 620. "If

at any time before final judgment it appears that the district court lacks subject

matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A.    <u>No Federal-Question Jurisdiction Under the PAA</u>

     Several judges in this Court, including me, have held that a "nuclear

incident" under the PAA requires that the alleged unlawful conduct must have

arisen from NRC-licensed activities or under a contract with the Department of

Energy (DOE) with agreements of indemnification. *Strong v. Republic Servs.,

Inc.*, 283 F. Supp. 3d 759, 772 (E.D. Mo. 2017); *Kitchin v. Bridgeton Landfill,

LLC*, 389 F. Supp. 3d 600, 612-13 (E.D. Mo. 2019); *Banks v. Cotter Corp.*, No.

4:18-CV-00624 JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). As the

reasoning in those cases explains, there cannot be a nuclear incident under the

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

PAA without an applicable NRC license or DOE indemnity agreement.[4]

None of the defendants here is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification. The Daileys have never alleged such jurisdictional facts, either in state court or here, and indeed have consistently pled facts that preclude application of the PAA. With the absence of these PAA-required jurisdictional facts, federal subject-matter jurisdiction under the PAA never existed from the outset.

Attaching a PAA moniker to the first amended complaint did not change this circumstance. A complaint cannot be amended to produce federal jurisdiction where none actually existed before. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989). And the mere assertion of a federal claim where there is an actual lack of required jurisdictional facts cannot confer federal subject-matter jurisdiction over the action. *Id.* (a district court cannot remedy defective jurisdictional facts); *CU Capital Mkt. Solutions., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *7-8 (D. Kan. June 26, 2019). *See also GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661, at *3 (N.D. Iowa Apr. 11, 2019) (amended complaint does not allege

---

[4] Defendants argue that these cases were wrongly decided, but I do not agree. I continue to believe the cases are correct so I will not reconsider their reasoning, which I fully adopt for this case.

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

facts that would give rise to federal-question jurisdiction regardless of whether plaintiff asserted it).  Therefore, regardless of the specifically-pled PAA claim, the amended complaint could not and did not cure the lack of federal subject-matter jurisdiction over this action.

Required jurisdictional facts for a PAA claim – that the alleged unlawful conduct arose from either NRC-licensed activities or a DOE contract with indemnification – never existed in this action.  Accordingly, the PAA never applied to the Daileys' claims.  *Kitchin*, 389 F. Supp. 3d at 612-13; *Strong* 283 F. Supp. 3d at 772; *Banks*, 2019 WL 1426259, at *6.

Defendant Cotter Corporation argues, however, that it handled, processed, and transported the radioactive wastes to the Landfill pursuant to a Source Material License issued to it by the Atomic Energy Commission (AEC) (now licensed by the NRC) in 1969.  Cotter contends that, therefore, to the extent a license is required for exclusive federal jurisdiction under the PAA, the Daileys' claims involve radioactive materials that were handled and disposed of by an AEC licensee, making the licensed activity inextricably part of the claims and thus within the PAA.  I disagree.

Cotter's 1969 Source Material License authorized it to "receive, possess and import the source material [uranium]; to use such material for the purpose(s) and at the place(s) designated [9200 Latty Avenue, Hazelwood, Missouri]; and to deliver

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

or transfer such material to persons authorized to receive it[.]"  (ECF 64-5,

Feingold Decl., Exh. D.)  As alleged by the Daileys throughout this litigation, their

damages do not arise from the use of the radioactive material at the Latty Site, but

rather from the Landfill Defendants' unauthorized receipt of the material and their

unauthorized use of the material at an unauthorized site, the Landfill.  Cotter's

Source Material License did not cover its delivery or transfer of the material to

such unauthorized entities.  Nor did it cover the Landfill Defendants' activities at

the Landfill.  Cotter's license therefore does not provide a basis for federal subject-

matter jurisdiction under the PAA.  *See Kitchin*, 389 F. Supp. 3d at 613; *Banks*,

2019 WL 1426259, at *9.

      Somewhat incongruously, Cotter also argues that it did not need a license to

transport the radioactive material at issue in this case because the quantities of such

material it deposited at the Landfill were "unimportant" under 42 U.S.C. § 2092.[5]

An "unimportant" quantity of source material for which persons are exempt from

federal regulatory licensing is that which is "by weight less than one-twentieth of 1

percent (0.05 percent) of the mixture, compound, solution or alloy."  10 C.F.R. §

---

[5] Section 2092 provides:

    Unless authorized by a general or specific license issued by the Commission, which
    the Commission is authorized to issue, no person may transfer or receive in
    interstate commerce, transfer, deliver, receive possession of or title to, or import
    into or export from the United States any source material after removal from its
    place of deposit in nature, except that licenses shall not be required for quantities
    of source material which, in the opinion of the Commission, are unimportant.

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

40.13(a).  Referring to a "Remedial Investigation Addendum, West Lake Landfill," Cotter avers that the level of source material in the soil mixture it delivered to the Landfill was less than the 0.05 percent required for federal licensing.  (ECF 180 at p. 13.)  Assuming arguendo that Cotter was indeed exempt from federal licensing requirements for the conduct alleged here, the lack of a license removes the alleged conduct from PAA governance and exclusive federal jurisdiction given that NRC licensing or a DOE indemnification agreement is required to invoke the PAA and federal jurisdiction.  Cotter's defense does not provide federal subject-matter jurisdiction over this action.

None of the defendants in this action is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification.  The PAA therefore does not apply to the Daileys' claims.

B.    No Federal-Question Jurisdiction Under CERCLA

In their removal petition, defendants asserted that the injunctive relief sought in the Daileys' state-court petition constituted a CERCLA challenge because such relief would interfere with the EPA's remediation plans at the federal Superfund site.  They further argued that because the Daileys allege that the Landfill is the source of the radioactive contamination found on their properties, and the Landfill is a federal Superfund site over which the EPA has exclusive jurisdiction, then the

Electronically Filed - St. Louis County - April 07, 2020 - 02:15 PM

EPA likewise has exclusive jurisdiction over their property under CERCLA.

Nothing in the Daileys' original state-court petition or amended complaints shows that they are requesting relief that would interfere with the EPA's remediation plans. Although the Daileys refer to the Landfill as a Superfund site, they do not expressly challenge the effectiveness of the Landfill remedy, request modification of the remedial plan, or seek specific action that could conflict with the remediation process. And defendants offer no explanation as to how the requested relief would alter EPA's plans in a way that is somehow inconsistent with any particular federal obligation or requirement. The Daileys do not cite CERCLA as a basis for their claims; nor do they seek reimbursement of response costs or any other form of relief available under its provisions. Nor does CERCLA completely preempt the Daileys' claims or otherwise foreclose them from relying on common law theories for the relief they seek. *See Kitchin*, 389 F. Supp. 3d at 614-15.

Defendants' argument that the EPA has exclusive jurisdiction over the Landfill Superfund site and thus over any private property that is contaminated with hazardous substances from the Superfund site was squarely rejected in *Kitchin*, and I reject it here for the same reasons. 389 F. Supp. 3d at 614-15.

Finally, to the extent defendants contend that the EPA nevertheless has exclusive jurisdiction over the Landfill Superfund site, nothing in the Daileys'

allegations raised throughout this litigation shows that they seek relief that would require defendants to take action that would overlap with, alter, or contradict any EPA remedy that is being reviewed and/or or taken at the site under CERCLA. The Daileys' claims do nothing to take away from the EPA's jurisdiction over the Superfund site. And CERCLA does not completely preempt state tort liability for damages caused by the release of hazardous substances. The causes of action the Daileys pursue do not necessarily depend on resolution of substantial questions regarding response-cost liabilities or other obligations imposed by CERCLA. Nor have defendants demonstrated that the Daileys are making a CERCLA challenge by requesting relief that would interfere with the EPA's remediation plans. *See Kitchin*, 389 F. Supp. 3d at 614-15, and cases cited therein.

Throughout this litigation, the Daileys never raised any actually disputed and/or substantial issues arising under CERCLA. I therefore reject defendants' contention that CERCLA provides a basis for federal subject-matter jurisdiction over this cause of action. I will not further address the CERCLA argument raised in defendants' response to the Daileys' pending motion to remand (ECF 181 at p. 8 n.3), given that it was mentioned only by way of a footnote. *See Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.4 (8th Cir. 2011).

## Conclusion

I do not have federal-question jurisdiction over this action under either the

Electronically Filed - St. Louis County - April 07, 2020 - 02:15 PM

Electronically Filed - St. Louis County - April 07, 2020 - 02:15 PM

PAA or CERCLA. And defendants provide no other argument or evidence establishing any other basis for federal subject-matter jurisdiction. Accordingly, the case shall be remanded to state court. 28 U.S.C. § 1447(c). In light of this determination, I need not address the Daileys' argument that applying the PAA to their claims would deprive them of due process. Further, because this remand order is based on § 1447(c) for lack of subject-matter jurisdiction, the court of appeals would lack jurisdiction to review it. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000); 28 U.S.C. § 1447(d). I will therefore deny defendants' request that I certify the order for interlocutory appeal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs Michael and Robbin Daileys' Motion to Remand [174] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of St. Louis County, Missouri, from which it was removed. All other motions that remain pending in this action are reserved for ruling by that court.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2020.

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   ERIN LYNN BROOKS, Attorney for Defendant
SERVICE EMAIL:   erin.brooks@bryancave.com


SERVICE PARTY:   DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:   ddefeo@defeolaw.com

Electronically Filed - St Louis County - April 07, 2020 - 02:15 PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

# FILED

**MAR 3 1 2020**

**JOAN M. GILMER**
CIRCUIT CLERK, ST. LOUIS COUNTY

MICHAEL DAILEY, et al.,                    )
                                           )
             Plaintiffs,                   )
                                           )
    v.                                     )      Case No. 4:17 CV 24 CDP
                                           )
BRIDGETON LANDFILL, LLC, et al.,           )      1652-CC04240
                                           )
             Defendants.                   )

## MEMORANDUM AND ORDER OF REMAND

After filing their second amended complaint in this removed case, plaintiffs

Michael and Robbin Dailey move to remand this action to state court for lack of

federal subject-matter jurisdiction.  Because this Court neither currently has nor

ever had subject-matter jurisdiction over this action, I will remand the case to state

court under 28 U.S.C. § 1447(c).

## Background

Husband and wife plaintiffs, Michael and Robbin Dailey, seek damages and

injunctive relief for radioactive contamination of their home allegedly caused by

neighboring West Lake Landfill, located in North St. Louis County, Missouri.  The

Daileys assert that their property has been damaged by soil, dust, and air

contamination from improper generation, handling, storage, and disposal of

radioactive materials by several corporate defendants.[1]  The remaining defendants
in this action are the owners and operators of the Landfill – namely Bridgeton
Landfill, LLC; Republic Services, Inc.; Allied Services, LLC; and Rock Road
Industries, Inc. (collectively, "the Landfill Defendants") – as well as a waste
generator and disposer, Cotter Corporation.

The Daileys originally filed this suit in St. Louis County Circuit Court in
November 2016, pleading state-law claims of trespass, permanent nuisance,
temporary nuisance, negligence, negligence per se, strict liability, and medical
monitoring.  On January 6, 2017, defendants invoked federal-question jurisdiction
under 28 U.S.C. § 1331 and removed the action to this Court, arguing that the
allegations in the state-court petition arise under federal law – specifically the
Price-Anderson Act (PAA) as amended in 1988, 42 U.S.C. §§ 2010, *et seq.*, which
provides a federal compensation regime for damages resulting from a nuclear
incident; and the Comprehensive Environmental Response, Compensation, and
Liability Act (CERCLA), 42 U.S.C. §§ 9601, *et seq.*, which established a federal
"Superfund" to clean up uncontrolled or abandoned hazardous-waste sites, and
provides for liability of persons responsible for releases of hazardous waste at
these sites.

---

[1] The detailed history of the events and circumstances that allegedly caused this radioactive
contamination is set out in my Memorandum and Order entered October 27, 2017, and is
incorporated herein.  (*See* ECF 89 at pp. 3-5.)

- 2 -

Shortly after removal, defendants moved to dismiss the case, arguing, first, that the PAA preempted the Daileys' state-law claims and, second, that the petition failed to state a PAA claim because it failed to allege an essential element, that is, that the Daileys were exposed to radiation in excess of federal dose limits.[2]  Before responding to the motions to dismiss, the Daileys moved to remand the case to state court, arguing that their petition did not plead any federal claims, that the PAA did not apply to the claims, and that no "nuclear incident" (which is required for a PAA claim) was pled or could be inferred from the petition's factual averments.

After the motion to remand was fully briefed, the Daileys abruptly withdrew the motion without explanation.  Thereafter, in lieu of a response to defendants' pending motions to dismiss, the Daileys filed an amended complaint (with defendants' consent), which restated the factual averments nearly verbatim from their original state-court petition.  In an apparent nod to defendants' motions to dismiss, however, the Daileys added a new factual allegation that the radioactive material contaminated their property at specific dosage levels greater than what relevant federal safety regulations allowed.  Accordingly, in addition to state-law claims of nuisance and strict liability for abnormally dangerous activity, the Daileys added a separate and distinct claim for relief under the PAA, that is, that

---

[2] Although defendants invoked CERCLA as a basis for removal, none of the defendants addressed CERCLA in their motions to dismiss.

defendants' conduct caused a "nuclear incident" or a series of "nuclear incidents" under the PAA, thus making this a "'public liability action' arising under <u>42 U.S.C. § 2210</u> asserting legal liability resulting from a 'nuclear incident[.]'" (<u>ECF 70 at</u> ¶ 105.)

On defendants' renewed motions to dismiss the amended complaint, I dismissed the Daileys' state-law claims as being preempted by the explicitly pled PAA claim. To the extent defendants argued that the PAA claim failed on its face as well because it did not adequately allege exposure to radiation in excess of the relevant federal standards, I determined that the federal dose limit did not appear to apply to the claim raised here, that is, "a property damage claim against a non-NRC[3] licensed facility." (<u>ECF 89 at</u> p. 19.) On this basis, I allowed the Daileys' PAA-captioned claim to proceed.

In the meanwhile, another judge of this Court determined that the "nuclear incidents" to which the PAA applies are only those occurrences involving NRC licensees or those with an indemnity agreement as described in the statute. *See generally Strong v. Republic Servs., Inc.*, <u>283 F. Supp. 3d 759</u> (E.D. Mo. 2017). Where neither an NRC licensee nor an indemnity agreement is involved, there can be no "nuclear incident" under the PAA and thus no federal subject-matter jurisdiction under the PAA. *Id.*

---

[3] Nuclear Regulatory Commission.

- 4 -

In both their state-court petition and amended complaint, the Daileys made the factual averment that the Landfill was not a licensed nuclear facility. And in their amended complaint, they alleged that Cotter did not hold the required license to transport radioactive waste to the Landfill. Moreover, the Daileys never alleged at any time that any defendant operated under an indemnity agreement as contemplated by the PAA.

After the Court's determination in *Strong*, the Daileys moved to amend their complaint again, seeking to eliminate the PAA claim first asserted in their amended complaint and to reinstate their state-law claims as originally pled in their state-court petition. In support of their motion to amend, the Daileys argued that the PAA never applied to this action from the outset because defendants never possessed the appropriate federal license or indemnity agreement needed to trigger the PAA. I granted leave to file this second amended complaint on October 22, 2019.

The second amended complaint tracks the factual averments and allegations made in the original state-court petition, expands the explanation regarding the mill tailings Cotter allegedly transported to and disposed of at the Landfill, and omits the first amended complaint's allegations regarding levels of contamination meeting federal standards. The claims for relief are those set out in the original petition, namely, state-law claims of trespass, permanent nuisance, temporary

- 5 -

nuisance, negligence, negligence per se, strict liability/absolute liability, injunctive relief (medical monitoring), and punitive damages. And the second amended complaint goes to great lengths to disavow any connection to federal law, explicitly stating that the claims are not within the scope of the PAA given defendants' lack of a required license and the absence of an indemnification agreement, as well as the exclusion of mill tailings as covered substances under the PAA or the Atomic Energy Act during the relevant period.

The Daileys now move to remand the action to state court, arguing that this Court lacks federal subject-matter jurisdiction.

<div align="center">

**Discussion**

</div>

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

A federal district court may exercise removal jurisdiction only where the court would have had original subject-matter jurisdiction had the action initially been filed there. *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 922 (8th Cir. 2000) (citing 28 U.S.C. § 1441(b)). For actions removed on the basis of federal-question jurisdiction, "[t]he presence or absence of [such] jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists

- 6 -

only when a federal question is presented on the face of the plaintiff's properly

pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[A]

case may *not* be removed to federal court on the basis of a federal defense[.]" *Id.*

at 393 (emphasis in *Caterpillar*).

The party invoking removal jurisdiction and opposing remand carries the

burden of establishing federal subject-matter jurisdiction by a preponderance of the

evidence. *Kokkonen*, 511 U.S. at 377; *In re Prempro Prods. Liab. Litig.*, 591 F.3d

613, 620 (8th Cir. 2010). Generally, a court must resolve all doubts about federal

jurisdiction in favor of remand to state court. *In re Prempro*, 591 F.3d at 620. "If

at any time before final judgment it appears that the district court lacks subject

matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

A.    No Federal-Question Jurisdiction Under the PAA

Several judges in this Court, including me, have held that a "nuclear

incident" under the PAA requires that the alleged unlawful conduct must have

arisen from NRC-licensed activities or under a contract with the Department of

Energy (DOE) with agreements of indemnification. *Strong v. Republic Servs.,*

*Inc.*, 283 F. Supp. 3d 759, 772 (E.D. Mo. 2017); *Kitchin v. Bridgeton Landfill,*

*LLC*, 389 F. Supp. 3d 600, 612-13 (E.D. Mo. 2019); *Banks v. Cotter Corp.*, No.

4:18-CV-00624 JAR, 2019 WL 1426259, at *6 (E.D. Mo. Mar. 29, 2019). As the

reasoning in those cases explains, there cannot be a nuclear incident under the

- 7 -

PAA without an applicable NRC license or DOE indemnity agreement.[4]

None of the defendants here is an indemnitee or licensee as contemplated under the PAA, and their alleged conduct does not arise from NRC-licensed activity or under a DOE contract with indemnification. The Daileys have never alleged such jurisdictional facts, either in state court or here, and indeed have consistently pled facts that preclude application of the PAA. With the absence of these PAA-required jurisdictional facts, federal subject-matter jurisdiction under the PAA never existed from the outset.

Attaching a PAA moniker to the first amended complaint did not change this circumstance. A complaint cannot be amended to produce federal jurisdiction where none actually existed before. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831-32 (1989). And the mere assertion of a federal claim where there is an actual lack of required jurisdictional facts cannot confer federal subject-matter jurisdiction over the action. *Id.* (a district court cannot remedy defective jurisdictional facts); *CU Capital Mkt. Solutions., LLC v. Olden Lane Sec., LLC*, No. 18-2597-DDC-KGG, 2019 WL 2612940, at *7-8 (D. Kan. June 26, 2019). *See also GenoSource, LLC v. Inguran, LLC*, No. 18-CV-113-CJW-KEM, 2019 WL 2041661, at *3 (N.D. Iowa Apr. 11, 2019) (amended complaint does not allege

---

[4] Defendants argue that these cases were wrongly decided, but I do not agree. I continue to believe the cases are correct so I will not reconsider their reasoning, which I fully adopt for this case.

facts that would give rise to federal-question jurisdiction regardless of whether plaintiff asserted it). Therefore, regardless of the specifically-pled PAA claim, the amended complaint could not and did not cure the lack of federal subject-matter jurisdiction over this action.

Required jurisdictional facts for a PAA claim – that the alleged unlawful conduct arose from either NRC-licensed activities or a DOE contract with indemnification – never existed in this action. Accordingly, the PAA never applied to the Daileys' claims. *Kitchin*, 389 F. Supp. 3d at 612-13; *Strong* 283 F. Supp. 3d at 772; *Banks*, 2019 WL 1426259, at \*6.

Defendant Cotter Corporation argues, however, that it handled, processed, and transported the radioactive wastes to the Landfill pursuant to a Source Material License issued to it by the Atomic Energy Commission (AEC) (now licensed by the NRC) in 1969. Cotter contends that, therefore, to the extent a license is required for exclusive federal jurisdiction under the PAA, the Daileys' claims involve radioactive materials that were handled and disposed of by an AEC licensee, making the licensed activity inextricably part of the claims and thus within the PAA. I disagree.

Cotter's 1969 Source Material License authorized it to "receive, possess and import the source material [uranium]; to use such material for the purpose(s) and at the place(s) designated [9200 Latty Avenue, Hazelwood, Missouri]; and to deliver

- 9 -

or transfer such material to persons authorized to receive it[.]" (ECF 64-5, Feingold Decl., Exh. D.)  As alleged by the Daileys throughout this litigation, their damages do not arise from the use of the radioactive material at the Latty Site, but rather from the Landfill Defendants' unauthorized receipt of the material and their unauthorized use of the material at an unauthorized site, the Landfill.  Cotter's Source Material License did not cover its delivery or transfer of the material to such unauthorized entities.  Nor did it cover the Landfill Defendants' activities at the Landfill.  Cotter's license therefore does not provide a basis for federal subject-matter jurisdiction under the PAA.  *See Kitchin,* 389 F. Supp. 3d at 613; *Banks,* 2019 WL 1426259, at *9.

Somewhat incongruously, Cotter also argues that it did not need a license to transport the radioactive material at issue in this case because the quantities of such material it deposited at the Landfill were "unimportant" under 42 U.S.C. § 2092.[5] An "unimportant" quantity of source material for which persons are exempt from federal regulatory licensing is that which is "by weight less than one-twentieth of 1 percent (0.05 percent) of the mixture, compound, solution or alloy."  10 C.F.R. §

---

[5] Section 2092 provides:

> Unless authorized by a general or specific license issued by the Commission, which the Commission is authorized to issue, no person may transfer or receive in interstate commerce, transfer, deliver, receive possession of or title to, or import into or export from the United States any source material after removal from its place of deposit in nature, except that licenses shall not be required for quantities of source material which, in the opinion of the Commission, are unimportant.

40.13(a). Referring to a "Remedial Investigation Addendum, West Lake Landfill,"
Cotter avers that the level of source material in the soil mixture it delivered to the
Landfill was less than the 0.05 percent required for federal licensing. (ECF 180 at
p. 13.) Assuming arguendo that Cotter was indeed exempt from federal licensing
requirements for the conduct alleged here, the lack of a license removes the alleged
conduct from PAA governance and exclusive federal jurisdiction given that NRC
licensing or a DOE indemnification agreement is required to invoke the PAA and
federal jurisdiction. Cotter's defense does not provide federal subject-matter
jurisdiction over this action.

None of the defendants in this action is an indemnitee or licensee as
contemplated under the PAA, and their alleged conduct does not arise from NRC-
licensed activity or under a DOE contract with indemnification. The PAA
therefore does not apply to the Daileys' claims.

B.    No Federal-Question Jurisdiction Under CERCLA

In their removal petition, defendants asserted that the injunctive relief sought
in the Daileys' state-court petition constituted a CERCLA challenge because such
relief would interfere with the EPA's remediation plans at the federal Superfund
site. They further argued that because the Daileys allege that the Landfill is the
source of the radioactive contamination found on their properties, and the Landfill
is a federal Superfund site over which the EPA has exclusive jurisdiction, then the

- 11 -

EPA likewise has exclusive jurisdiction over their property under CERCLA.

Nothing in the Daileys' original state-court petition or amended complaints shows that they are requesting relief that would interfere with the EPA's remediation plans. Although the Daileys refer to the Landfill as a Superfund site, they do not expressly challenge the effectiveness of the Landfill remedy, request modification of the remedial plan, or seek specific action that could conflict with the remediation process. And defendants offer no explanation as to how the requested relief would alter EPA's plans in a way that is somehow inconsistent with any particular federal obligation or requirement. The Daileys do not cite CERCLA as a basis for their claims; nor do they seek reimbursement of response costs or any other form of relief available under its provisions. Nor does CERCLA completely preempt the Daileys' claims or otherwise foreclose them from relying on common law theories for the relief they seek. *See Kitchin*, 389 F. Supp. 3d at 614-15.

Defendants' argument that the EPA has exclusive jurisdiction over the Landfill Superfund site and thus over any private property that is contaminated with hazardous substances from the Superfund site was squarely rejected in *Kitchin*, and I reject it here for the same reasons. 389 F. Supp. 3d at 614-15.

Finally, to the extent defendants contend that the EPA nevertheless has exclusive jurisdiction over the Landfill Superfund site, nothing in the Daileys'

- 12 -

allegations raised throughout this litigation shows that they seek relief that would require defendants to take action that would overlap with, alter, or contradict any EPA remedy that is being reviewed and/or or taken at the site under CERCLA. The Daileys' claims do nothing to take away from the EPA's jurisdiction over the Superfund site.  And CERCLA does not completely preempt state tort liability for damages caused by the release of hazardous substances.  The causes of action the Daileys pursue do not necessarily depend on resolution of substantial questions regarding response-cost liabilities or other obligations imposed by CERCLA.  Nor have defendants demonstrated that the Daileys are making a CERCLA challenge by requesting relief that would interfere with the EPA's remediation plans.  *See Kitchin*, 389 F. Supp. 3d at 614-15, and cases cited therein.

Throughout this litigation, the Daileys never raised any actually disputed and/or substantial issues arising under CERCLA.  I therefore reject defendants' contention that CERCLA provides a basis for federal subject-matter jurisdiction over this cause of action.  I will not further address the CERCLA argument raised in defendants' response to the Daileys' pending motion to remand (ECF 181 at p. 8 n.3), given that it was mentioned only by way of a footnote.  *See Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 763 n.4 (8th Cir. 2011).

## Conclusion

I do not have federal-question jurisdiction over this action under either the

PAA or CERCLA.  And defendants provide no other argument or evidence establishing any other basis for federal subject-matter jurisdiction.  Accordingly, the case shall be remanded to state court.  28 U.S.C. § 1447(c).  In light of this determination, I need not address the Daileys' argument that applying the PAA to their claims would deprive them of due process.  Further, because this remand order is based on § 1447(c) for lack of subject-matter jurisdiction, the court of appeals would lack jurisdiction to review it.  *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1066 (8th Cir. 2000); 28 U.S.C. § 1447(d).  I will therefore deny defendants' request that I certify the order for interlocutory appeal.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs Michael and Robbin Daileys' Motion to Remand [174] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of St. Louis County, Missouri, from which it was removed.  All other motions that remain pending in this action are reserved for ruling by that court.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of March, 2020.

- 14 -

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

**FILED**

IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY DIV. JAN 11 2017 11
STATE OF MISSOURI

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

MICHAEL DAILEY and ROBBIN DAILEY,

Plaintiffs,

v.

BRIDGETON LANDFILL, LLC, REPUBLIC
SERVICES, INC., ALLIED SERVICES, LLC,
ROCK ROAD INDUSTRIES, INC., MI
HOLDINGS, INC., MALLINCKRODT, INC.,
COTTER CORPORATION,
COMMONWEALTH EDISON COMPANY, and
EXELON CORPORATION,

Defendants.

Cause No. 16SL-CC04240

JURY TRIAL DEMANDED

<u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

PLEASE TAKE NOTICE THAT Defendant Cotter Corporation (N.S.L), improperly named as Cotter Corporation, with the consent of Defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied Services"), Rock Road Industries, Inc. ("Rock Road"), MI Holdings, Inc. ("MI"), Mallinckrodt, Inc. ("Mallinckrodt, Inc."), Commonwealth Edison Company ("ComEd"), and Exelon Corporation ("Exelon"), through undersigned counsel, hereby certify that on January 6, 2017, it caused to be filed a Notice of Removal of this action in the United States District Court for the Eastern District of Missouri on January 6, 2017.

A copy of the said Notice of Removal is attached hereto as <u>Exhibit 1</u>.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Respectfully submitted,

BRYAN CAVE LLP

Dated: January 6, 2017                    /s/ Erin L. Brooks

BRYAN CAVE LLP

Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice
application pending*)
john.mcgahren@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORP. (N.S.L.)



Circuit Clerk
Kathleen M Cody
Deputy Circuit Clerk

SL01DOCS\6761051.1\C302320\0388146

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2017, the foregoing was electronically filed, which will provide notice to all counsel of record, and a copy sent via FedEx to:


TIMOTHY DANIEL DEFEO
DEFEO & KOLKER, LLC
1627 MAIN STREET
SUITE 801
KANSAS CITY, MO 64108

*Attorney for Plaintiffs*

/s/ Erin L. Brooks_____

3

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY,<br><br>Plaintiffs,<br><br>v.<br><br>BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., MI HOLDINGS, INC., MALLINCKRODT, INC., COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, and EXELON CORPORATION,<br><br>Defendants. | Civil Action No.<br><br>_____ |

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and any other applicable laws, Defendant Cotter Corporation (N.S.L.) ("Cotter") (improperly named as Cotter Corporation), on its own behalf and on behalf of (and with the consent of) the other named defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied Services"), Rock Road Industries, Inc. ("Rock Road"), Mallinckrodt LLC (incorrectly named as MI Holdings, Inc. and Mallinckrodt, Inc. ) ("Mallinckrodt"), Commonwealth Edison Company ("ComEd"), and Exelon Corporation ("Exelon") (Cotter and the other named defendants collectively, "Defendants"), hereby give notice of removal of this action from the Circuit Court of St. Louis County, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division.   Copies of the defendants' respective Consents to Removal are appended hereto as **Exhibit D**.  As grounds for removal, Defendants state as follows:

DB1/ 90291412.1

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

## INTRODUCTION

1.      On or about November 15, 2016, Plaintiffs Michael Dailey and Robbin Dailey ("Plaintiffs") filed a complaint (the "Complaint") in the Circuit Court of St. Louis County, Missouri, Twenty First Judicial Circuit, thereby commencing the action styled, *Michael Dailey and Robbin Dailey v. Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, LLC, Rock Road Industries, Inc., MI Holdings, Inc., Mallinckrodt, Inc., Cotter Corporation, Commonwealth Edison Company, and Exelon Corporation,* Case No. 16SL-CC04240. A copy of the Complaint together with all materials filed in connection with this matter is attached hereto as **Exhibit A**.

2.      In their Complaint, Plaintiffs allege that, as a result of Defendants' collective conduct over the span of several decades, radioactive materials were released into the environment in and around the Bridgeton and West Lake Landfills located in Bridgeton, Missouri (the "Landfill"), contaminating Plaintiffs' property with radioactive materials and causing various forms of property damage. *See generally*, Exh. A, ¶¶ 33-99.

3.      Plaintiffs' seven-count Complaint seeks injunctive and monetary relief for damages suffered as a result of trespass, permanent nuisance, temporary nuisance, negligence, negligence *per se*, and strict liability injuries, and asserts a claim for medical monitoring.

4.      As a result of the alleged conduct by Defendants, Plaintiffs contend that they are entitled to monetary recovery stemming from: the loss of use of enjoyment of their property; annoyance and discomfort; damage to their personal property; diminution in the market value of their property; costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including the cost of remediation and relocation; statutory damages under Missouri state law; punitive and exemplary damages; and costs and attorneys' fees. *See* Exh. A, pp. 46-

47.    Additionally, Plaintiffs seek injunctive relief in the form of medical and scientific monitoring of their home and property, as well as environmental testing, clean-up, and continued medical testing. *See* Exh. A. ¶¶ 8, 177.

5.    Several related lawsuits alleging similar exposure to radioactive materials in St. Louis County are pending under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012).

## PARTIES

6.    Plaintiffs are Missouri citizens who own real and personal property located in Bridgeton, Missouri. Exh. A, ¶ 11, p. 47.

7.    Plaintiffs assert that MI Holdings, Inc. and Mallinckrodt, Inc. are the corporate successors to the businesses formerly known as Mallinckrodt Missouri, Mallinckrodt Chemical Works, Mallinckrodt Nuclear Corporation. *See* Exh. A, ¶¶ 15, 21-24.  However, MI Holdings, Inc., formerly known as Mallinckrodt, Inc. (a Missouri Corporation), is not currently associated with Mallinckrodt LLC, the successor in interest to Mallinckrodt Chemical Works.  Mallinckrodt LLC and MI Holdings, Inc., formerly known as Mallinckrodt, Inc. (a Missouri Corporation) consent to the removal of this action.

8.    Plaintiffs maintain that Mallinckrodt is responsible for the radioactive contamination of Plaintiffs' property, stemming from the uranium processing operations undertaken by its corporate predecessors in and around St. Louis, Missouri. *See generally* Exh. A, ¶ 25, 44-51, 66, 87, 90-99.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

9.      Plaintiffs assert that Cotter is a subsidiary of or otherwise related to limited liability entities ComEd, Exelon, and Exelon Generation, LLC ("Exelon Generation")[1]. *See* Exh. A, ¶¶ 15, 28-32.

10.      Plaintiffs allege that Cotter, ComEd, Exelon, and Exelon Generation are responsible for the radioactive contamination of Plaintiffs' property, stemming from Cotter's handling, storage and disposal of radioactive materials generated from Mallinckrodt's uranium processing operations in St. Louis. *See generally* Exh. A, ¶¶ 29-32, 52-55, 59, 66, 87, 90-99.

11.      Plaintiffs allege that Bridgeton and Rock Road own or owned the Landfill, with Allied Services as the Landfill's operator, and Republic as the owner, overseer, and director of environmental decisions and conduct of Bridgeton, Rock Road and Allied Services, as well as operator of the Landfill. *See* Exh. A, ¶¶ 14, 16-20.

12.      Plaintiffs contend that Bridgeton, Rock Road, Allied Services, and Republic are responsible for the radioactive contamination of Plaintiffs' property, stemming from their operation and maintenance of the Landfill and the radioactive materials contained therein. *See generally* Exh. A, ¶¶ 16-20, 56-65, 68-70, 82-85, 88, 89-99.

## FACTUAL BACKGROUND

13.      According to their Complaint, Plaintiffs maintain that, from 1942 to 1957, Mallinckrodt's corporate predecessors conducted uranium processing operations on behalf of the United States government in a facility located in downtown St. Louis (the "Downtown Site"). Exh. A, ¶ 44-45.

14.      According to Plaintiffs, in the late 1940s, the United States government purchased a 21.7-acre tract of land near the Lambert airport to store radioactive waste, scraps and

---

[1] Although Plaintiffs refer to Exelon Generation as a defendant in two paragraphs of their Complaint, *see generally* Exh. A, ¶¶ 28, 32 ("Defendants"), the Complaint does not list Exelon Generation in its caption or otherwise name it as a party.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

byproducts generated by Mallinckrodt. Exh. A, ¶ 48. This site is commonly referred to as the St. Louis Airport Site ("SLAPS").

15.     Plaintiffs maintain that following the purchase of SLAPS by the government and through to 1957, Mallinckrodt continued to process uranium and ship resulting radioactive waste, scrap and by-products for storage at SLAPS. Exh. A, ¶¶ 49-50.

16.     Plaintiffs contend that in the 1960s, certain radioactive materials that had been stored at SLAPS, including 8,700 tons of leached barium sulfate, which allegedly contained approximately seven tons of uranium, were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"). Allegedly, certain of those materials were subsequently purchased by Cotter. Exh. A, ¶¶ 51-52.

17.     Plaintiffs allege that Cotter ultimately mixed the 8,700 tons of leached barium sulfate with approximately 38,000 tons of radioactively contaminated soil, attempted to market the mixture as a suitable "daily cover" for Landfill operations, and, in 1973, disposed of this material in the Landfill. Exh. A, ¶ 54, 59.

18.     Plaintiffs claim that the Landfill was "never an adequate storage or disposal site for this highly radioactive contaminated waste," and that as a result "surrounding communities are now contaminated." Exh. A, ¶¶ 60-61.

19.     Plaintiffs assert that all "Defendants caused or contributed to improper generation, handling, storage, and disposal of an estimated 500,000 cubic yards of radioactive wastes in the . . . Landfill," that those Defendants who owned and operated the Landfill improperly spread waste throughout the Landfill, that Defendants failed to prevent off-site contamination by not exercising necessary precautions, and that the staff working at the Landfill were and remain unqualified to handle or dispose of radioactive wastes in a safe manner. Exh. A, ¶¶ 66-69.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

20.     Plaintiffs further maintain that Bridgeton, Rock Road, Allied Services, and Republic have allowed subsurface fires to spread uncontrolled near the Landfill, and contend that should these fires reach radioactively contaminated portions of the Landfill, the result may be increased exposure to airborne and waterborne radioactive contaminants. Exh. A, ¶¶ 71-79.

21.     Moreover, Plaintiffs assert that "Defendants have violated standards for protection against radiation" and that "Defendants' negligent generation, handling, storage and disposal of radioactive wastes and radioactive soil as daily cover caused dangerous contaminants to be deposited in several areas throughout the Landfill site," allegedly rendering these materials "highly susceptible to off-site migration of radioactive materials," and allegedly resulting in waterborne and airborne contamination of communities surrounding the Landfill. Exh. A. ¶ 81-86, 88.

22.     Plaintiffs also maintain that, in addition to emissions from the Landfill, "decades of careless and reckless hauling and storage of wastes" resulted in the contamination of homes and businesses near the Landfill. Exh. A, ¶ 87.

23.     Ultimately, Plaintiffs contend that their property "is contaminated by radioactive material," that this contamination is linked to radioactive emissions from the Landfill (as well as from materials spilled during transport to the Landfill), that "[t]he contamination was caused by Defendants' improper generation, handling, storage, and disposal of radioactive materials," and that the contamination resulted in damage to their property. *See* Exh. A, ¶¶ 90-99.

## FEDERAL QUESTION JURISDICTION EXISTS

24.     Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over this action because it "arises under" federal law, and in particular, the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*, which completely preempts Plaintiffs' state-law causes of action.  In

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

light of this complete preemption of Plaintiffs' state-law causes of action, the Court has federal question jurisdiction over this action.

25.     "Ordinarily, determining whether a particular case arises under federal law turns on the well-pleaded complaint rule," which provides that:

> "whether a case is one arising under the Constitution or law or treaty of the United States, in the sense of the jurisdictional statute[,] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914).

26.     Pursuant to the complete pre-emption doctrine, while "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law," the Supreme Court has recognized that a "state claim may be removed" if "a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id. (alteration in original); see Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Davila*, 542 U.S. at 207-08 (quoting *Beneficial Nat. Bank*, 539 U.S. at 8.

27.     Further, under the artful pleading doctrine, a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as a basis for the claim, and the claim is in fact based on a federal statute. *See Franchise Tax Bd. v. Constr. Laborers*, 463 U.S. 1, 22 (1983) ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law.").

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

28.     Indeed, the artful pleading doctrine permits courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Comms. Corp.*, 210 F. Supp. 2d 1106, 1112-13 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)); *see also State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1109 n. 4 (8th Cir. 1999) (stating that under the artful pleading doctrine, federal courts have subject matter jurisdiction over purported state law claims if a plaintiff failed to plead a federal right or immunity that is an essential element of cause of action); *Missouri v. Webb*, No. 4:11CV1237, 2012 WL 1033414, at *3 (E.D. Mo. Mar. 27, 2012) (observing that "[u]nder the 'artful pleading' doctrine . . . a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim," and stating that "[o]nce an area of state law has been completely pre-empted by the operation of a federal statute, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

I.     **The PAA Provides an Exclusive, Retroactive Federal Cause of Action that Completely Preempts Plaintiffs' State-Law Claims**

29.     Plaintiffs' state-law claims alleging that Defendants improperly generated, handled, stored, and disposed of radioactive materials at the Landfill arise from a nuclear incident and, as a result, liability in this matter is governed by the PAA, which completely preempts all state-law causes of action related to nuclear incidents. Plaintiffs' state-law claims have been completely displaced by the PAA and, therefore, Defendants may remove this action to federal court.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

### A.    Federal Preemption Under the PAA

30.    In 1988, Congress amended the PAA to create a federal "public liability" cause of action for injuries to persons and property arising out of or resulting from any "nuclear incident." *See* 42 U.S.C. §§ 2014(hh), 2014(w); Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084.

31.    A public liability action under the PAA is the exclusive, retroactive federal cause of action governing liability for injuries arising out of nuclear incidents. Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA, as amended, "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

32.    Indeed, virtually every circuit court to address the issue has concluded that "the Price-Anderson Act completely preempts state law causes of action for public liability arising out of or resulting from a nuclear incident." *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 767-68 (E.D. Tenn. 2012) (canvassing federal case law and observing that the Third, Seventh, Ninth, Tenth and Eleventh Circuits are in agreement with the Sixth Circuit's conclusion that the PAA completely preempts state law causes of action); *see also In re Berg Litig.*, 293 F.3d 1127, 1132 (9th Cir. 2002) (observing that a PAA public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price–Anderson Amendments Act of 1988 . . . creating an exclusive federal cause of action for radiation injury."); *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997) (observing that the PAA's provisions "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The PAA on its face provides the sole remedy for the torts alleged . . ."); *O'Conner,*

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

13 F.3d at 1100, 1105 (stating that "a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir. 1991) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all*.").[2]

33.     As observed by the Seventh Circuit, the 1988 amendments to the PAA "'create[d] a federal cause of action which did not exist prior to the Act, establish[ed] federal jurisdiction for that cause of action, and channel[ed] all legal liability to federal courts through the cause of action.'" *O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940 F.2d at 856-57); *see also* 42 U.S.C. § 2210(n)(2) ("With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy."). Indeed, "'[b]y creating this federal program which requires the application of federal law, Congress sought to effect uniformity, equity and efficiency in the disposition of public liability claims,'" and "'[w]ith the federal jurisdiction and removal provisions set forth in the [1988 amendments], Congress ensured that all claims resulting from a given nuclear incident would be governed by the same law, provided for the coordination of all phases of litigation and the orderly distribution of funds.'" *O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940 F.2d at 856-57).

_____

[2] Although in *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1996-99 (10th Circuit 2015), the Tenth Circuit found that in specific, limited circumstances not at issue here, a plaintiff's state-law causes of action arising from "lesser nuclear occurrences" may not be preempted by the PAA, the overwhelming majority of courts to address the issue have concluded that the PAA preempts any state-law causes of action arising from or related to nuclear incidents and radiation injuries. In the instant case, the factual allegations in Plaintiffs' complaint amount to a putative claim for public liability arising from a nuclear incident. Whether that claim has been adequately pleaded is not the topic of this application, and Defendants reserve their right to challenge the adequacy of Plaintiffs' claims.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

34.     This is so because the complex federal scheme envisioned by the PAA included "pervasive federal regulation" that "occupied the entire field of nuclear safety concerns." *In re TMI Litig.*, 940 F.2d at 858.

35.     In sum, "the field of nuclear safety has been occupied by federal regulation; there is no room for state law." *O'Conner*, 13 F.3d at 1105.

**B.     Plaintiffs Allege Harms that Constitute a Nuclear Incident and, Therefore, Their State-Law Causes of Action Are Preempted**

36.     In the instant case, the allegations in Plaintiffs' Complaint arise from a "nuclear incident" as defined by the PAA.

37.     Pursuant to the PAA, a "nuclear incident" is broadly defined as "any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous property of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q).

38.     This case arises from an alleged nuclear incident because the basis for Plaintiffs' Complaint, and the state-law causes of action therein, is their contention that Plaintiffs' property "is contaminated by radioactive material," that this contamination is linked to radioactive emissions from the Landfill (as well as from materials spilled during transport to the Landfill), that "[t]he contamination was caused by Defendants' improper generation, handling, storage, and disposal of radioactive materials," and that the contamination has caused damage to Plaintiffs' property. *See* Exh. A, ¶¶ 90-99.

39.     More specifically, Plaintiffs allege Mallinckrodt is responsible for the radioactive contamination of Plaintiffs' property, based on the uranium processing operations undertaken by its predecessors. *See* Exh. A, ¶ 25, 44-51, 66, 87, 90-99.

DB1/ 90291412.1                                   11

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

40.     Plaintiffs maintain that Cotter, ComEd, Exelon, and Exelon Generation are responsible for the radioactive contamination of Plaintiffs' property based on Cotter's handling, storage and disposal of radioactive materials generated from Mallinckrodt's uranium processing. *See* Exh. A, ¶¶ 29-32, 52-55, 59, 66, 87, 90-99.

41.     Plaintiffs assert that Bridgeton, Rock Road, Allied Services, and Republic are responsible for the radioactive contamination of Plaintiffs' property as a result of their operation and maintenance of the Landfill and the radioactive materials contained therein. *See* Exh. A, ¶¶ 16-20, 56-65, 68-70, 82-85, 88, 89-99.

42.     In short, the factual allegations undergirding Plaintiffs' purported injuries all relate to the Defendants' conduct in connection with nuclear and radioactive materials.  As a result, Plaintiffs' claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action is the "exclusive federal cause of action" for Plaintiffs' alleged "radiation injur[ies]," *Roberts,* 146 F.3d at 1306.

43.     Given that Plaintiffs' injuries arise from an alleged nuclear incident, liability in this matter is therefore governed by the PAA.

44.     Accordingly, removal to federal court on the basis of federal question jurisdiction is appropriate because the PAA completely preempts Plaintiffs' state-law causes of action, and Plaintiffs' claim for radiation injuries, although pleaded in terms of state law, are "in reality based on federal law," *Davila,* 542 U.S. at 207-08.

**II.     Federal Question Jurisdiction Exists Under the Comprehensive Environmental Response, Compensation, and Liability Act**

45.     This Court also has federal question jurisdiction because Plaintiffs seek injunctive relief challenging a Comprehensive Environmental Response, Compensation, and Liability Act

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

("CERCLA"), 42 U.S.C. § 9601 *et seq.*, cleanup in progress at the West Lake Landfill and the Bridgeton Landfill, both part of the West Lake Landfill Superfund Site ("Superfund Site").

46.    These challenges to a CERCLA cleanup in progress create a separate basis for federal question jurisdiction under 28 U.S.C. § 1331.

47.    The Complaint artfully fails to mention that the West Lake Landfill and the Bridgeton Landfills are part of the Superfund Site, which the United States Environmental Protection Agency (the "EPA") placed on the National Priorities List ("NPL") in 1990. *See* https://www.epa.gov/mo/west-lake-landfill.

48.    With limited exceptions not applicable here, a district court "shall have exclusive jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b).

49.    In keeping with the broad interpretation of the goals and purposes of CERCLA, federal jurisdiction under 42 U.S.C. § 9613(b) is more expansive than only those claims expressly created by CERCLA, and covers any challenge to a CERCLA cleanup. *Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999).

50.    When claims asserted by a party, including state-law claims, interfere with the "primary objectives of CERCLA which include 'effectuating quick cleanups of hazardous waste sites' and 'encouraging voluntary private action to remedy environmental hazards,'" and threaten to "circumvent the goals of CERCLA," such claims constitute a challenge to CERCLA and "compels [the federal court] to exercise jurisdiction." *Lehman Bros. Inc. v. City of Lodi*, 333 F. Supp. 2d 895, 904-06 (E.D. Cal. 2004) (quoting *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197, 1217 (E.D. Cal. 2003)).

51.    Accordingly, in order to best effectuate the intent of Congress to promote the swift execution of CERCLA cleanups, the exclusive federal jurisdiction provision of 42 U.S.C. §

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

9613(b) is interpreted to cover any challenge to a CERCLA cleanup, including a challenge to, or interference with, the goals and purposes of CERCLA. *See Fort Ord*, 189 F.3d at 832; *Lehman Bros. Inc.*, 333 F. Supp. 2d at 905-06.

52.     Plaintiffs allege that their property is contaminated with radioactive wastes from the Superfund Site: "[t]his radioactive contamination on Plaintiffs' property migrated from the Landfill . . . ." Exh. A, ¶ 98; *see also* Exh. A, ¶¶ 91-97 ("Defendants' Radioactive Particles Contaminated the Plaintiffs' Property"). Indeed, every count in the Complaint can easily be viewed as stemming from allegations regarding radioactive waste at the Superfund Site. *E.g.* Exh. A, ¶¶ 112 (Count I); 120 (Count II); 131 (Count III); 140, 141 (Count IV); 153 (Count V); 165 (Count VI); 173 (Count VII).

53.     Plaintiffs seek "appropriate injunctive relief" and allude to worsening conditions "if [the waste] is not physically removed." Exh. A, ¶ 43, p. 47 ¶ (f). Plaintiffs allege Defendants have not properly handled the waste or remediated issues arising from the waste. Exh. A, ¶¶ 66-70. Further, Plaintiffs speculate as to issues or impacts which may occur in the future with the waste at the Site. Exh. A, ¶¶ 71-80. For example, Plaintiffs allege concern if the radioactive waste meets a subsurface exothermic chemical reaction at the Bridgeton Landfill. Exh. A, ¶¶ 74, 75.

54.     These requests are a challenge to the ongoing investigation and cleanup that is being conducted by certain of the Defendants, under the direction of the EPA, in accordance with CERCLA.

55.     Plaintiffs' allegations regarding radioactive contamination at their property inherently bring the property under the EPA's jurisdiction because Plaintiffs allege the property contains contamination from the Superfund Site.

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

56.     The EPA has already asserted its jurisdiction over the alleged contamination of the Dailey home and neighboring areas, advising Plaintiffs' counsel two days after receiving a copy of the Complaint that the EPA "is developing a plan for sampling dusts and soil at the Dailey home and other areas in Bridgeton.   The EPA will utilize this data to inform the development of a sampling plan." Exh. B, ¶ 3 (November 17, 2016 letter from Alyse Stoy); *see also* Exh. C ("West Lake Update", December 8, 2016, *available at,* https://semspub.epa.gov/ work/07/30303396.pdf, describing the EPA's sampling at the nearby residences as "part of an ongoing comprehensive approach by the agency to address potential environmental health concerns in the area . . ."). The EPA stated it "has also requested all documents and information regarding Plaintiffs' data collection and analysis," further demonstrating EPA's jurisdiction over this issue. Exh. B, ¶ 3.

57.     The Complaint presents a challenge to CERCLA because the relief Plaintiffs seek would interfere with the cleanup that is currently progressing under CERCLA, would compromise the objectives of CERCLA, and would directly contravene the primary objective of encouraging voluntary action, with federal oversight, to remedy environmental hazards.

58.     Here, the EPA – a federal agency with particular expertise in the area of environmental remediation – has jurisdiction over all radiologically impacted material ("RIM") from the Superfund Site.  Thus, under Plaintiffs' allegations that their property has RIM from the Superfund Site, any relief sought in this Complaint would interfere with the EPA's jurisdiction and potentially subject Defendants to inconsistent judgments.

59.     Plaintiffs' claims concerning "radioactive waste" and any alleged failure to properly remediate the same at the Superfund Site and requesting "appropriate injunctive relief"

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

therefore require resolution of significant questions of federal law over which the exercise of jurisdiction in this Court is appropriate and over which this Court has exclusive jurisdiction.

**III.     Notice of Removal Is Timely**

60.     Plaintiffs filed their Complaint on November 15, 2016.

61.     Defendant MI Holdings, Inc., formerly known as Mallinckrodt, Inc. was served on behalf of MI Holdings, Inc. and Mallinckrodt, Inc. on December 7, 2016; Defendants Bridgeton, Republic, Allied Services, and Rock Road were served on December 7, 2016; Defendant Cotter was served on December 14, 2016; and Defendants ComEd and Exelon were served on December 16, 2016.

62.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint upon all Defendants, and within one year of the commencement of this action.

63.     Further, no previous request has been made for the relief requested in this Notice.

**IV.     Removal to This Judicial District is Proper, and Defendants Have Complied With All Procedural Requirements for Removal**

64.     Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the Eastern Division of the United States District Court for the Eastern District of Missouri is the proper venue to which to remove this matter because the Circuit Court for St. Louis County, Missouri is located within the Eastern Division of this judicial district. *See* Local Rule 3-2.07(A)(1) ("The Eastern Division comprises the counties of . . . Saint Louis, and the City of Saint Louis").

65.     Venue is also proper pursuant to Local Rule 3-2.07(B)(3) because the lawsuit is a civil action brought against multiple defendants, some of which are non-residents, and the claims for relief arose in Bridgeton, St. Louis County, Missouri.

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

66.    As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached hereto.  Defendants are unaware of the existence of any additional process, pleadings, or orders other than those included in the exhibits attached hereto.  There are no motions pending before the Circuit Court of St. Louis County, Missouri in connection with this matter, nor are there any hearings or conferences presently scheduled.

67.    Pursuant to Local Rules 3-2.03 and 3-2.09, attached hereto are Defendants' Civil Cover Sheet and the Original Filing Form.  Defendants' Disclosure of Organizational Interests Certificates will be separately filed by the individual Defendants.

68.    Written notice of the filing of this Notice of Removal will be promptly served on Plaintiffs' counsel, and a copy has been filed with the Clerk of the Circuit Court of St. Louis County.

69.    Defendants' Notice to Clerk of Filing Notice of Removal will also be promptly filed with the Clerk of the Circuit Court of St. Louis County.

70.    This matter is related to a number of similar lawsuits under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012).  In those lawsuits (which are currently in the expert discovery phase), the plaintiffs seek damages under the PAA for injuries sustained as a result of alleged exposure to radioactive materials handled by Mallinckrodt's predecessors in interest, and Cotter in St. Louis, County.  The alleged exposures and contamination in all of the cases consolidated in the *McClurg* case are similarly focused on radioactive exposure in St. Louis County at the nearby properties Coldwater Creek, SLAPS, Latty Avenue, and other properties, and are premised on public liability claims under the PAA.

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

The cases consolidated under *McClurg* are currently assigned to Honorable Audrey G. Fleissig, U.S.D.J.

71.     Defendants hereby reserve their rights to assert any and all defenses to Plaintiffs' Complaint.

72.     Defendants hereby reserve the right to amend or supplement this Notice of Removal.

73.     Defendants have not answered the Complaint in state court.

74.     Defendants Bridgeton, Republic, Allied Services, Rock Road, Mallinckrodt, ComEd, and Exelon are actively participating in, and consent to the removal of, this matter and Cotter's filing of this Notice of Removal.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, Defendant Cotter, along with Defendants Bridgeton, Republic, Allied Services, Rock Road, Mallinckrodt, ComEd, and Exelon, respectfully remove this action now pending in the Circuit Court of St. Louis County, State of Missouri, to this Court.

/s/ Dale A. Guariglia
BRYAN CAVE LLP
Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice application forthcoming*)
john.mcgahren@morganlewis.com
502 Carnegie Center

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)

DB1/ 90291412.1

19

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

## IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY
## STATE OF MISSOURI

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY, | Cause No. 16SL-CC04240 |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., MI HOLDINGS, INC., MALLINCKRODT, INC., COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, and EXELON CORPORATION, | |
| Defendants. | |

### NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE THAT Defendant Cotter Corporation (N.S.L), improperly named as Cotter Corporation, with the consent of Defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied Services"), Rock Road Industries, Inc. ("Rock Road"), MI Holdings, Inc. ("MI"), Mallinckrodt, Inc. ("Mallinckrodt, Inc."), Commonwealth Edison Company ("ComEd"), and Exelon Corporation ("Exelon"), through undersigned counsel, hereby certify that on January 6, 2017, it caused to be filed a Notice of Removal of this action in the United States District Court for the Eastern District of Missouri on January 6, 2017.

A copy of the said Notice of Removal is attached hereto as Exhibit 1.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Respectfully submitted,

BRYAN CAVE LLP

Dated: January 6, 2017

/s/ Erin L. Brooks_____

BRYAN CAVE LLP

Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice
application pending*)
john.mcgahren@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORP. (N.S.L.)

---

**SO ORDERED:**
**Notice of Removal received
and filed.**

*Ellen Levy Siwak*

**Judge Ellen Levy Siwak, Div. 11**
**Entered: January 11, 2017**

---

2

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2017, the foregoing was electronically filed, which will provide notice to all counsel of record, and a copy sent via FedEx to:

TIMOTHY DANIEL DEFEO
DEFEO & KOLKER, LLC
1627 MAIN STREET
SUITE 801
KANSAS CITY, MO 64108

*Attorney for Plaintiffs*

/s/ Erin L. Brooks_____

3

SL01DOCS\6761051.1\C302320\0388146

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

**IN THE CIRCUIT COURT OF SAINT LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY,<br><br>  Plaintiffs,<br><br>v.<br><br>BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, ROCK ROAD INDUSTRIES, INC., MI HOLDINGS, INC., MALLINCKRODT, INC., COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, and EXELON CORPORATION,<br><br>  Defendants. | Cause No. 16SL-CC04240<br><br>JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE THAT Defendant Cotter Corporation (N.S.L), improperly named as Cotter Corporation, with the consent of Defendants Bridgeton Landfill, LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied Services"), Rock Road Industries, Inc. ("Rock Road"), MI Holdings, Inc. ("MI"), Mallinckrodt, Inc. ("Mallinckrodt, Inc."), Commonwealth Edison Company ("ComEd"), and Exelon Corporation ("Exelon"), through undersigned counsel, hereby certify that on January 6, 2017, it caused to be filed a Notice of Removal of this action in the United States District Court for the Eastern District of Missouri on January 6, 2017.

A copy of the said Notice of Removal is attached hereto as <u>Exhibit 1</u>.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Respectfully submitted,

BRYAN CAVE LLP

Dated: January 6, 2017

/s/ Erin L. Brooks_____

BRYAN CAVE LLP

Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice
application pending)*
john.mcgahren@morganlewis.com
502 Carnegie Center
Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORP. (N.S.L.)

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2017, the foregoing was electronically filed, which will provide notice to all counsel of record, and a copy sent via FedEx to:


TIMOTHY DANIEL DEFEO
DEFEO & KOLKER, LLC
1627 MAIN STREET
SUITE 801
KANSAS CITY, MO 64108

*Attorney for Plaintiffs*

/s/ Erin L. Brooks_____

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL DAILEY and ROBBIN DAILEY,

                Plaintiffs,

    v.

BRIDGETON LANDFILL, LLC, REPUBLIC
SERVICES, INC., ALLIED SERVICES, LLC,
ROCK ROAD INDUSTRIES, INC., MI
HOLDINGS, INC., MALLINCKRODT, INC.,
COTTER CORPORATION,
COMMONWEALTH EDISON COMPANY, and
EXELON CORPORATION,

                Defendants.

**Civil Action No.**

_____

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and any other applicable laws, Defendant

Cotter Corporation (N.S.L.) ("Cotter") (improperly named as Cotter Corporation), on its own

behalf and on behalf of (and with the consent of) the other named defendants Bridgeton Landfill,

LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied

Services"), Rock Road Industries, Inc. ("Rock Road"), Mallinckrodt LLC (incorrectly named as

MI Holdings, Inc. and Mallinckrodt, Inc. ) ("Mallinckrodt"), Commonwealth Edison Company

("ComEd"), and Exelon Corporation ("Exelon") (Cotter and the other named defendants

collectively, "Defendants"), hereby give notice of removal of this action from the Circuit Court

of St. Louis County, Missouri, to the United States District Court for the Eastern District of

Missouri, Eastern Division.  Copies of the defendants' respective Consents to Removal are

appended hereto as **Exhibit D**.  As grounds for removal, Defendants state as follows:

DB1/ 90291412.1

## INTRODUCTION

1.      On or about November 15, 2016, Plaintiffs Michael Dailey and Robbin Dailey ("Plaintiffs") filed a complaint (the "Complaint") in the Circuit Court of St. Louis County, Missouri, Twenty First Judicial Circuit, thereby commencing the action styled, *Michael Dailey and Robbin Dailey v. Bridgeton Landfill, LLC, Republic Services, Inc., Allied Services, LLC, Rock Road Industries, Inc., MI Holdings, Inc., Mallinckrodt, Inc., Cotter Corporation, Commonwealth Edison Company, and Exelon Corporation*, Case No. 16SL-CC04240.  A copy of the Complaint together with all materials filed in connection with this matter is attached hereto as **Exhibit A**.

2.      In their Complaint, Plaintiffs allege that, as a result of Defendants' collective conduct over the span of several decades, radioactive materials were released into the environment in and around the Bridgeton and West Lake Landfills located in Bridgeton, Missouri (the "Landfill"), contaminating Plaintiffs' property with radioactive materials and causing various forms of property damage.  *See generally*, Exh. A, ¶¶ 33-99.

3.      Plaintiffs' seven-count Complaint seeks injunctive and monetary relief for damages suffered as a result of trespass, permanent nuisance, temporary nuisance, negligence, negligence *per se*, and strict liability injuries, and asserts a claim for medical monitoring.

4.      As a result of the alleged conduct by Defendants, Plaintiffs contend that they are entitled to monetary recovery stemming from: the loss of use of enjoyment of their property; annoyance and discomfort; damage to their personal property; diminution in the market value of their property; costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including the cost of remediation and relocation; statutory damages under Missouri state law; punitive and exemplary damages; and costs and attorneys' fees.  *See* Exh. A, pp. 46-

47.     Additionally, Plaintiffs seek injunctive relief in the form of medical and scientific monitoring of their home and property, as well as environmental testing, clean-up, and continued medical testing.  *See* Exh. A. ¶¶ 8, 177.

5.      Several related lawsuits alleging similar exposure to radioactive materials in St. Louis County are pending under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012).

<u>**PARTIES**</u>

6.      Plaintiffs are Missouri citizens who own real and personal property located in Bridgeton, Missouri.  Exh. A, ¶ 11, p. 47.

7.      Plaintiffs assert that MI Holdings, Inc. and Mallinckrodt, Inc. are the corporate successors to the businesses formerly known as Mallinckrodt Missouri, Mallinckrodt Chemical Works, Mallinckrodt Nuclear Corporation.  *See* Exh. A, ¶¶ 15, 21-24.  However, MI Holdings, Inc., formerly known as Mallinckrodt, Inc. (a Missouri Corporation), is not currently associated with Mallinckrodt LLC, the successor in interest to Mallinckrodt Chemical Works.  Mallinckrodt LLC and MI Holdings, Inc., formerly known as Mallinckrodt, Inc. (a Missouri Corporation) consent to the removal of this action.

8.      Plaintiffs maintain that Mallinckrodt is responsible for the radioactive contamination of Plaintiffs' property, stemming from the uranium processing operations undertaken by its corporate predecessors in and around St. Louis, Missouri.  *See generally* Exh. A, ¶ 25, 44-51, 66, 87, 90-99.

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

9.       Plaintiffs assert that Cotter is a subsidiary of or otherwise related to limited liability entities ComEd, Exelon, and Exelon Generation, LLC ("Exelon Generation")[1].  *See* Exh. A, ¶¶ 15, 28-32.

10.       Plaintiffs allege that Cotter, ComEd, Exelon, and Exelon Generation are responsible for the radioactive contamination of Plaintiffs' property, stemming from Cotter's handling, storage and disposal of radioactive materials generated from Mallinckrodt's uranium processing operations in St. Louis.  *See generally* Exh. A, ¶¶ 29-32, 52-55, 59, 66, 87, 90-99.

11.       Plaintiffs allege that Bridgeton and Rock Road own or owned the Landfill, with Allied Services as the Landfill's operator, and Republic as the owner, overseer, and director of environmental decisions and conduct of Bridgeton, Rock Road and Allied Services, as well as operator of the Landfill.  *See* Exh. A, ¶¶ 14, 16-20.

12.       Plaintiffs contend that Bridgeton, Rock Road, Allied Services, and Republic are responsible for the radioactive contamination of Plaintiffs' property, stemming from their operation and maintenance of the Landfill and the radioactive materials contained therein.  *See generally* Exh. A, ¶¶ 16-20, 56-65, 68-70, 82-85, 88, 89-99.

## FACTUAL BACKGROUND

13.       According to their Complaint, Plaintiffs maintain that, from 1942 to 1957, Mallinckrodt's corporate predecessors conducted uranium processing operations on behalf of the United States government in a facility located in downtown St. Louis (the "Downtown Site"). Exh. A, ¶ 44-45.

14.       According to Plaintiffs, in the late 1940s, the United States government purchased a 21.7-acre tract of land near the Lambert airport to store radioactive waste, scraps and

---

[1] Although Plaintiffs refer to Exelon Generation as a defendant in two paragraphs of their Complaint, *see generally* Exh. A, ¶¶ 28, 32 ("Defendants"), the Complaint does not list Exelon Generation in its caption or otherwise name it as a party.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

byproducts generated by Mallinckrodt. Exh. A, ¶ 48. This site is commonly referred to as the St. Louis Airport Site ("SLAPS").

15.     Plaintiffs maintain that following the purchase of SLAPS by the government and through to 1957, Mallinckrodt continued to process uranium and ship resulting radioactive waste, scrap and by-products for storage at SLAPS. Exh. A, ¶¶ 49-50.

16.     Plaintiffs contend that in the 1960s, certain radioactive materials that had been stored at SLAPS, including 8,700 tons of leached barium sulfate, which allegedly contained approximately seven tons of uranium, were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"). Allegedly, certain of those materials were subsequently purchased by Cotter. Exh. A, ¶¶ 51-52.

17.     Plaintiffs allege that Cotter ultimately mixed the 8,700 tons of leached barium sulfate with approximately 38,000 tons of radioactively contaminated soil, attempted to market the mixture as a suitable "daily cover" for Landfill operations, and, in 1973, disposed of this material in the Landfill. Exh. A, ¶ 54, 59.

18.     Plaintiffs claim that the Landfill was "never an adequate storage or disposal site for this highly radioactive contaminated waste," and that as a result "surrounding communities are now contaminated." Exh. A, ¶¶ 60-61.

19.     Plaintiffs assert that all "Defendants caused or contributed to improper generation, handling, storage, and disposal of an estimated 500,000 cubic yards of radioactive wastes in the . . . Landfill," that those Defendants who owned and operated the Landfill improperly spread waste throughout the Landfill, that Defendants failed to prevent off-site contamination by not exercising necessary precautions, and that the staff working at the Landfill were and remain unqualified to handle or dispose of radioactive wastes in a safe manner. Exh. A, ¶¶ 66-69.

20.     Plaintiffs further maintain that Bridgeton, Rock Road, Allied Services, and Republic have allowed subsurface fires to spread uncontrolled near the Landfill, and contend that should these fires reach radioactively contaminated portions of the Landfill, the result may be increased exposure to airborne and waterborne radioactive contaminants.  Exh. A, ¶¶ 71-79.

21.     Moreover, Plaintiffs assert that "Defendants have violated standards for protection against radiation" and that "Defendants' negligent generation, handling, storage and disposal of radioactive wastes and radioactive soil as daily cover caused dangerous contaminants to be deposited in several areas throughout the Landfill site," allegedly rendering these materials "highly susceptible to off-site migration of radioactive materials," and allegedly resulting in waterborne and airborne contamination of communities surrounding the Landfill.  Exh. A. ¶ 81-86, 88.

22.     Plaintiffs also maintain that, in addition to emissions from the Landfill, "decades of careless and reckless hauling and storage of wastes" resulted in the contamination of homes and businesses near the Landfill.  Exh. A, ¶ 87.

23.     Ultimately, Plaintiffs contend that their property "is contaminated by radioactive material," that this contamination is linked to radioactive emissions from the Landfill (as well as from materials spilled during transport to the Landfill), that "[t]he contamination was caused by Defendants' improper generation, handling, storage, and disposal of radioactive materials," and that the contamination resulted in damage to their property.  *See* Exh. A, ¶¶ 90-99.

## FEDERAL QUESTION JURISDICTION EXISTS

24.     Pursuant to 28 U.S.C. § 1331, this Court has subject-matter jurisdiction over this action because it "arises under" federal law, and in particular, the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*, which completely preempts Plaintiffs' state-law causes of action.  In

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

light of this complete preemption of Plaintiffs' state-law causes of action, the Court has federal

question jurisdiction over this action.

25. "Ordinarily, determining whether a particular case arises under federal law turns

on the well-pleaded complaint rule," which provides that:

> "whether a case is one arising under the Constitution or law or treaty of the
> United States, in the sense of the jurisdictional statute[,] . . . must be determined
> from what necessarily appears in the plaintiff's statement of his own claim in the
> bill or declaration, unaided by anything alleged in anticipation of avoidance of
> defenses which it is thought the defendant may interpose."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74,

75-76 (1914).

26. Pursuant to the complete pre-emption doctrine, while "a defendant may not

[generally] remove a case to federal court unless the plaintiff's complaint establishes that the

case arises under federal law," the Supreme Court has recognized that a "state claim may be

removed" if "a federal statute wholly displaces the state-law cause of action through complete

pre-emption." *Id. (alteration in original); see Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8

(2003). "This is so because '[w]hen the federal statute completely pre-empts the state-law cause

of action, a claim which comes within the scope of that cause of action, even if pleaded in terms

of state law, is in reality based on federal law.'" *Davila*, 542 U.S. at 207-08 (quoting *Beneficial

Nat. Bank*, 539 U.S. at 8.

27. Further, under the artful pleading doctrine, a federal court will have jurisdiction if

a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as a basis

for the claim, and the claim is in fact based on a federal statute. *See Franchise Tax Bd. v.

Constr. Laborers*, 463 U.S. 1, 22 (1983) ("A plaintiff may not avoid federal jurisdiction by

omitting from the complaint federal law essential to his or her claim or by casting in state terms a

claim that can be made only under federal law.").

28.     Indeed, the artful pleading doctrine permits courts to "delve beyond the face of the state court complaint and find federal question jurisdiction" by "recharacteriz[ing] a plaintiff's state-law claim as a federal claim." *Precision Pay Phones v. Qwest Comms. Corp.*, 210 F. Supp. 2d 1106, 1112-13 (N.D. Cal. 2002) (citing *Hunter v. United Van Lines*, 746 F.2d 635, 640 (9th Cir. 1985)); *see also State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1109 n. 4 (8th Cir. 1999) (stating that under the artful pleading doctrine, federal courts have subject matter jurisdiction over purported state law claims if a plaintiff failed to plead a federal right or immunity that is an essential element of cause of action); *Missouri v. Webb*, No. 4:11CV1237, 2012 WL 1033414, at *3 (E.D. Mo. Mar. 27, 2012) (observing that "[u]nder the 'artful pleading' doctrine . . . a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim," and stating that "[o]nce an area of state law has been completely pre-empted by the operation of a federal statute, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

**I.      The PAA Provides an Exclusive, Retroactive Federal Cause of Action that Completely Preempts Plaintiffs' State-Law Claims**

29.     Plaintiffs' state-law claims alleging that Defendants improperly generated, handled, stored, and disposed of radioactive materials at the Landfill arise from a nuclear incident and, as a result, liability in this matter is governed by the PAA, which completely preempts all state-law causes of action related to nuclear incidents. Plaintiffs' state-law claims have been completely displaced by the PAA and, therefore, Defendants may remove this action to federal court.

### A.    Federal Preemption Under the PAA

30.    In 1988, Congress amended the PAA to create a federal "public liability" cause of action for injuries to persons and property arising out of or resulting from any "nuclear incident." *See* 42 U.S.C. §§ 2014(hh), 2014(w); Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084.

31.    A public liability action under the PAA is the exclusive, retroactive federal cause of action governing liability for injuries arising out of nuclear incidents.  Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA, as amended, "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

32.    Indeed, virtually every circuit court to address the issue has concluded that "the Price-Anderson Act completely preempts state law causes of action for public liability arising out of or resulting from a nuclear incident." *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 767-68 (E.D. Tenn. 2012) (canvassing federal case law and observing that the Third, Seventh, Ninth, Tenth and Eleventh Circuits are in agreement with the Sixth Circuit's conclusion that the PAA completely preempts state law causes of action); *see also In re Berg Litig.,* 293 F.3d 1127, 1132 (9th Cir. 2002) (observing that a PAA public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price–Anderson Amendments Act of 1988 . . . creating an exclusive federal cause of action for radiation injury."); *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1504 (10th Cir. 1997) (observing that the PAA's provisions "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The PAA on its face provides the sole remedy for the torts alleged . . ."); *O'Conner,*

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

13 F.3d at 1100, 1105 (stating that "a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety, through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II,* 940 F.2d 832, 854 (3d Cir. 1991) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all.*").[2]

33.     As observed by the Seventh Circuit, the 1988 amendments to the PAA "'create[d] a federal cause of action which did not exist prior to the Act, establish[ed] federal jurisdiction for that cause of action, and channel[ed] all legal liability to federal courts through the cause of action.'" *O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940 F.2d at 856-57); *see also* 42 U.S.C. § 2210(n)(2) ("With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy."). Indeed, "'[b]y creating this federal program which requires the application of federal law, Congress sought to effect uniformity, equity and efficiency in the disposition of public liability claims,'" and "'[w]ith the federal jurisdiction and removal provisions set forth in the [1988 amendments], Congress ensured that all claims resulting from a given nuclear incident would be governed by the same law,  provided for the coordination of all phases of litigation and the orderly distribution of funds.'" *O'Conner*, 13 F.3d at 1101 (quoting *In re TMI Litig.*, 940 F.2d at 856-57).

---

[2] Although in *Cook v. Rockwell Int'l Corp.*, 790 F.3d 1088, 1996-99 (10th Circuit 2015), the Tenth Circuit found that in specific, limited circumstances not at issue here, a plaintiff's state-law causes of action arising from "lesser nuclear occurrences" may not be preempted by the PAA, the overwhelming majority of courts to address the issue have concluded that the PAA preempts any state-law causes of action arising from or related to nuclear incidents and radiation injuries.   In the instant case, the factual allegations in Plaintiffs' complaint amount to a putative claim for public liability arising from a nuclear incident.  Whether that claim has been adequately pleaded is not the topic of this application, and Defendants reserve their right to challenge the adequacy of Plaintiffs' claims.

34.     This is so because the complex federal scheme envisioned by the PAA included "pervasive federal regulation" that "occupied the entire field of nuclear safety concerns." *In re TMI Litig.*, 940 F.2d at 858.

35.     In sum, "the field of nuclear safety has been occupied by federal regulation; there is no room for state law." *O'Conner*, 13 F.3d at 1105.

**B.     Plaintiffs Allege Harms that Constitute a Nuclear Incident and, Therefore, Their State-Law Causes of Action Are Preempted**

36.     In the instant case, the allegations in Plaintiffs' Complaint arise from a "nuclear incident" as defined by the PAA.

37.     Pursuant to the PAA, a "nuclear incident" is broadly defined as "any occurrence . . . within the United States causing . . .  bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous property of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q).

38.     This case arises from an alleged nuclear incident because the basis for Plaintiffs' Complaint, and the state-law causes of action therein, is their contention that Plaintiffs' property "is contaminated by radioactive material," that this contamination is linked to radioactive emissions from the Landfill (as well as from materials spilled during transport to the Landfill), that "[t]he contamination was caused by Defendants' improper generation, handling, storage, and disposal of radioactive materials," and that the contamination has caused damage to Plaintiffs' property.  *See* Exh. A, ¶¶ 90-99.

39.     More specifically, Plaintiffs allege Mallinckrodt is responsible for the radioactive contamination of Plaintiffs' property, based on the uranium processing operations undertaken by its predecessors.  *See* Exh. A, ¶ 25, 44-51, 66, 87, 90-99.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

40.     Plaintiffs maintain that Cotter, ComEd, Exelon, and Exelon Generation are responsible for the radioactive contamination of Plaintiffs' property based on Cotter's handling, storage and disposal of radioactive materials generated from Mallinckrodt's uranium processing. *See* Exh. A, ¶¶ 29-32, 52-55, 59, 66, 87, 90-99.

41.     Plaintiffs assert that Bridgeton, Rock Road, Allied Services, and Republic are responsible for the radioactive contamination of Plaintiffs' property as a result of their operation and maintenance of the Landfill and the radioactive materials contained therein.  *See* Exh. A, ¶¶ 16-20, 56-65, 68-70, 82-85, 88, 89-99.

42.     In short, the factual allegations undergirding Plaintiffs' purported injuries all relate to the Defendants' conduct in connection with nuclear and radioactive materials.  As a result, Plaintiffs' claims arise out of an alleged nuclear incident and, pursuant to the PAA, a public liability action is the "exclusive federal cause of action" for Plaintiffs' alleged "radiation injur[ies]," *Roberts,* 146 F.3d at 1306.

43.     Given that Plaintiffs' injuries arise from an alleged nuclear incident, liability in this matter is therefore governed by the PAA.

44.     Accordingly, removal to federal court on the basis of federal question jurisdiction is appropriate because the PAA completely preempts Plaintiffs' state-law causes of action, and Plaintiffs' claim for radiation injuries, although pleaded in terms of state law, are "in reality based on federal law," *Davila*, 542 U.S. at 207-08.

## II.     Federal Question Jurisdiction Exists Under the Comprehensive Environmental Response, Compensation, and Liability Act

45.     This Court also has federal question jurisdiction because Plaintiffs seek injunctive relief challenging a Comprehensive Environmental Response, Compensation, and Liability Act

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

("CERCLA"), 42 U.S.C. § 9601 *et seq.*, cleanup in progress at the West Lake Landfill and the Bridgeton Landfill, both part of the West Lake Landfill Superfund Site ("Superfund Site").

46.     These challenges to a CERCLA cleanup in progress create a separate basis for federal question jurisdiction under 28 U.S.C. § 1331.

47.     The Complaint artfully fails to mention that the West Lake Landfill and the Bridgeton Landfills are part of the Superfund Site, which the United States Environmental Protection Agency (the "EPA") placed on the National Priorities List ("NPL") in 1990.  *See* https://www.epa.gov/mo/west-lake-landfill.

48.     With limited exceptions not applicable here, a district court "shall have exclusive jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b).

49.     In keeping with the broad interpretation of the goals and purposes of CERCLA, federal jurisdiction under 42 U.S.C. § 9613(b) is more expansive than only those claims expressly created by CERCLA, and covers any challenge to a CERCLA cleanup.  *Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999).

50.     When claims asserted by a party, including state-law claims, interfere with the "primary objectives of CERCLA which include 'effectuating quick cleanups of hazardous waste sites' and 'encouraging voluntary private action to remedy environmental hazards,'" and threaten to "circumvent the goals of CERCLA," such claims constitute a challenge to CERCLA and "compels [the federal court] to exercise jurisdiction."  *Lehman Bros. Inc. v. City of Lodi*, 333 F. Supp. 2d 895, 904-06 (E.D. Cal. 2004) (quoting *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197, 1217 (E.D. Cal. 2003)).

51.     Accordingly, in order to best effectuate the intent of Congress to promote the swift execution of CERCLA cleanups, the exclusive federal jurisdiction provision of 42 U.S.C. §

Case: 4:17-cv-00024 Doc. #: 1-5 Filed: 01/06/17 Page: 14 of 194 PageID #: 14

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

9613(b) is interpreted to cover any challenge to a CERCLA cleanup, including a challenge to, or interference with, the goals and purposes of CERCLA.  *See Fort Ord*, 189 F.3d at 832; *Lehman Bros. Inc.*, 333 F. Supp. 2d at 905-06.

52.     Plaintiffs allege that their property is contaminated with radioactive wastes from the Superfund Site: "[t]his radioactive contamination on Plaintiffs' property migrated from the Landfill . . . ."  Exh. A, ¶ 98; *see also* Exh. A, ¶¶ 91-97 ("Defendants' Radioactive Particles Contaminated the Plaintiffs' Property").  Indeed, every count in the Complaint can easily be viewed as stemming from allegations regarding radioactive waste at the Superfund Site. *E.g.* Exh. A, ¶¶ 112 (Count I); 120 (Count II); 131 (Count III); 140, 141 (Count IV); 153 (Count V); 165 (Count VI); 173 (Count VII).

53.     Plaintiffs seek "appropriate injunctive relief" and allude to worsening conditions "if [the waste] is not physically removed."  Exh. A, ¶ 43, p. 47 ¶ (f).  Plaintiffs allege Defendants have not properly handled the waste or remediated issues arising from the waste.  Exh. A, ¶¶ 66-70.  Further, Plaintiffs speculate as to issues or impacts which may occur in the future with the waste at the Site.  Exh. A, ¶¶ 71-80.  For example, Plaintiffs allege concern if the radioactive waste meets a subsurface exothermic chemical reaction at the Bridgeton Landfill.  Exh. A, ¶¶ 74, 75.

54.     These requests are a challenge to the ongoing investigation and cleanup that is being conducted by certain of the Defendants, under the direction of the EPA, in accordance with CERCLA.

55.     Plaintiffs' allegations regarding radioactive contamination at their property inherently bring the property under the EPA's jurisdiction because Plaintiffs allege the property contains contamination from the Superfund Site.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

56.     The EPA has already asserted its jurisdiction over the alleged contamination of the Dailey home and neighboring areas, advising Plaintiffs' counsel two days after receiving a copy of the Complaint that the EPA "is developing a plan for sampling dusts and soil at the Dailey home and other areas in Bridgeton.  The EPA will utilize this data to inform the development of a sampling plan."  Exh. B, ¶ 3 (November 17, 2016 letter from Alyse Stoy); *see also* Exh. C ("West Lake Update", December 8, 2016, *available at,* https://semspub.epa.gov/work/07/30303396.pdf, describing the EPA's sampling at the nearby residences as "part of an ongoing comprehensive approach by the agency to address potential environmental health concerns in the area . . .").  The EPA stated it "has also requested all documents and information regarding Plaintiffs' data collection and analysis," further demonstrating EPA's jurisdiction over this issue.  Exh. B, ¶ 3.

57.     The Complaint presents a challenge to CERCLA because the relief Plaintiffs seek would interfere with the cleanup that is currently progressing under CERCLA, would compromise the objectives of CERCLA, and would directly contravene the primary objective of encouraging voluntary action, with federal oversight, to remedy environmental hazards.

58.     Here, the EPA – a federal agency with particular expertise in the area of environmental remediation – has jurisdiction over all radiologically impacted material ("RIM") from the Superfund Site.  Thus, under Plaintiffs' allegations that their property has RIM from the Superfund Site, any relief sought in this Complaint would interfere with the EPA's jurisdiction and potentially subject Defendants to inconsistent judgments.

59.     Plaintiffs' claims concerning "radioactive waste" and any alleged failure to properly remediate the same at the Superfund Site and requesting "appropriate injunctive relief"

Electronically Filed - St. Louis County - January 06, 2017 - 05:00 PM

therefore require resolution of significant questions of federal law over which the exercise of jurisdiction in this Court is appropriate and over which this Court has exclusive jurisdiction.

### III.    Notice of Removal Is Timely

60.    Plaintiffs filed their Complaint on November 15, 2016.

61.    Defendant MI Holdings, Inc., formerly known as Mallinckrodt, Inc. was served on behalf of MI Holdings, Inc. and Mallinckrodt, Inc. on December 7, 2016; Defendants Bridgeton, Republic, Allied Services, and Rock Road were served on December 7, 2016; Defendant Cotter was served on December 14, 2016; and Defendants ComEd and Exelon were served on December 16, 2016.

62.    This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint upon all Defendants, and within one year of the commencement of this action.

63.    Further, no previous request has been made for the relief requested in this Notice.

### IV.    Removal to This Judicial District is Proper, and Defendants Have Complied With All Procedural Requirements for Removal

64.    Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the Eastern Division of the United States District Court for the Eastern District of Missouri is the proper venue to which to remove this matter because the Circuit Court for St. Louis County, Missouri is located within the Eastern Division of this judicial district.  *See* Local Rule 3-2.07(A)(1) ("The Eastern Division comprises the counties of . . . Saint Louis, and the City of Saint Louis").

65.    Venue is also proper pursuant to Local Rule 3-2.07(B)(3) because the lawsuit is a civil action brought against multiple defendants, some of which are non-residents, and the claims for relief arose in Bridgeton, St. Louis County, Missouri.

66.     As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached hereto.  Defendants are unaware of the existence of any additional process, pleadings, or orders other than those included in the exhibits attached hereto.  There are no motions pending before the Circuit Court of St. Louis County, Missouri in connection with this matter, nor are there any hearings or conferences presently scheduled.

67.     Pursuant to Local Rules 3-2.03 and 3-2.09, attached hereto are Defendants' Civil Cover Sheet and the Original Filing Form.  Defendants' Disclosure of Organizational Interests Certificates will be separately filed by the individual Defendants.

68.     Written notice of the filing of this Notice of Removal will be promptly served on Plaintiffs' counsel, and a copy has been filed with the Clerk of the Circuit Court of St. Louis County.

69.     Defendants' Notice to Clerk of Filing Notice of Removal will also be promptly filed with the Clerk of the Circuit Court of St. Louis County.

70.     This matter is related to a number of similar lawsuits under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012).  In those lawsuits (which are currently in the expert discovery phase), the plaintiffs seek damages under the PAA for injuries sustained as a result of alleged exposure to radioactive materials handled by Mallinckrodt's predecessors in interest, and Cotter in St. Louis, County.  The alleged exposures and contamination in all of the cases consolidated in the *McClurg* case are similarly focused on radioactive exposure in St. Louis County at the nearby properties Coldwater Creek, SLAPS, Latty Avenue, and other properties, and are premised on public liability claims under the PAA.

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

The cases consolidated under *McClurg* are currently assigned to Honorable Audrey G. Fleissig, U.S.D.J.

71.     Defendants hereby reserve their rights to assert any and all defenses to Plaintiffs' Complaint.

72.     Defendants hereby reserve the right to amend or supplement this Notice of Removal.

73.     Defendants have not answered the Complaint in state court.

74.     Defendants Bridgeton, Republic, Allied Services, Rock Road, Mallinckrodt, ComEd, and Exelon are actively participating in, and consent to the removal of, this matter and Cotter's filing of this Notice of Removal.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, Defendant Cotter, along with Defendants Bridgeton, Republic, Allied Services, Rock Road, Mallinckrodt, ComEd, and Exelon, respectfully remove this action now pending in the Circuit Court of St. Louis County, State of Missouri, to this Court.

<div style="margin-left:50%">

/s/ Dale A. Guariglia

BRYAN CAVE LLP
Dale A. Guariglia, Mo. Bar 32988
daguariglia@bryancave.com
Erin L. Brooks, Mo. Bar 62764
erin.brooks@bryancave.com
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

MORGAN LEWIS & BOCKIUS, LLP
John McGahren, Esq. (*pro hac vice application forthcoming*)
john.mcgahren@morganlewis.com
502 Carnegie Center

</div>

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM

Princeton, NJ 08540
(609) 919-6600 (telephone)
(609) 919-6701 (facsimile)

ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:    ddefeo@defeokolker.com

Electronically Filed - St Louis County - January 06, 2017 - 05:00 PM



Electronically Filed - St Louis County - January 05, 2017 - 08:53 AM

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO 64108 |
| vs. | |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: REPUBLIC SERVICES, INC.

Alias:

R/A: CT CORPORATION SVCS
2390 E. CAMELBACK ROAD
PHOENIX, AZ 85016

*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in this action.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>18-NOV-2016</u>
Date
Further Information:
SMB

_Jean _____
Clerk

---

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Detective_ of _Maricopa_ County, _Arizona_ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Angela Ramirez_ (name) _Administrative Staff_ (title).

☐ other (describe)

Served at _3800 N. Central Ave._ (address)
in _Maricopa_ County, _Arizona_ (state), on _12-13-16_ (date) at _11:50_ (time).

_F. Rossi_
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

Subscribed and Sworn To me before this _15th_ (day) _December_ (month) _2016_ (year)

I am: (check one)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☒ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

(Seal)
BRANDY N. CAMPBELL
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
September 8, 2020

_Brandy N Campbell_  Supervisor
Signature and Title

---

| Service Fees, if applicable | |
|---|---|
| Summons | $ 16.00 |
| Non Est | $ 8.00  Notary |
| Mileage | $ 16.00 ( _____ miles @ $ ____ per mile) |
| Total | $ 40.00 |

See the following page for directions to clerk and to officer making return on service of summons.

---

OSCA (7-04) SM60 *For Court Use Only:* Document ID# 16-SMOS-978      1      (16SL-CC04240)          Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.



# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS

## AFFIDAVIT OF SERVICE

Electronically Filed - St Louis County - January 05, 2017 - 08:54 AM

```
* 0 2 2 9 2 3 6 2 *
```

| CASE NUMBER: 16SLCC04240 | MULT.SER. 2 | DOC. TYPE: SUMMONS |

**DIE DATE: 01/03/2017**   RECEIVED DATE: 12/14/2016   FILED DATE: 11/18/2016   **DIST: 068 SK**
12:00:00 PM

**DEFENDANT**

COMMONWEALTH EDISON COMPANY

350 S NW HIGHWAY

PARK RIDGE, IL 60068

STE 300



**PLANTIFF**

DAILEY, MICHAEL

**ATTORNEY**

DANIEL TIMOTHY DEFEO

1627  MAIN ST 801

KANSAS CITY, MO 64108

(816) 581-4600

**ATTACHED FEE AMOUNT:**

**SERVICE INFORMATION:**     R/A CORPORATE CREATIONS NET

## I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**

BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**

BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS.  ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____.

_____ **(3) UNKNOWN OCCUPANTS:**

BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

__X__ **(4) CORP/CO/BUS/PART:**

BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION __X__ COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5)  PROPERTY RECOVERED:**

NO ONE PRESENT TO RECEIVE ORDER OF COURT.  ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S./D.O.I.:**

BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE.  ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)** AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE  WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

## THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:

| | | |
|---|---|---|
| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESSS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION:     _RECEPTION_

| | ATTEMPTED SERVICES | | |
|---|---|---|---|
| WRIT SERVED ON: _MICHELLE MAIELLE_ | DATE | TIME (AM/PM) | STAR # |
| SEX: (M/F) _16_   RACE: _W_   AGE: _45_ | 12-16 | 305 | 11321 |
| THIS _16_ DAY OF _DEC_, 20_16_ | | : | |
| Thomas J. Dart | | : | |
| SHERIFF, BY: _Brend 11321_, DEPUTY | | : | |

DST421

Electronically Filed - St Louis County - January 05, 2017 - 08:57 AM

# SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS

## AFFIDAVIT OF SERVICE



*02292363*

CASE NUMBER: 16SLCC04240    MULT.SER. 2    DOC. TYPE: SUMMONS

**DIE DATE: 01/03/2017**    RECEIVED DATE: 12/14/2016    FILED DATE: 11/18/2016    **DIST: 068 SK**
12:00:00 PM

**DEFENDANT**                    **PLANTIFF**
EXELON CORPORATION              FFOREIGN    DAILEY, MICHAEL
350 S NW HIGHWAY                            **ATTORNEY**
PARK RIDGE, IL 60068                        DANIEL TIMOTHY DEFEO
STE 300                                     1627 MAIN ST 801
                                            KANSAS CITY, MO 64108
                                            (816) 581-4600

**ATTACHED FEE AMOUNT:**

**SERVICE INFORMATION:**    R/A CORPORATE CREATIONS NET

## I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:

_____ **(1) PERSONAL SERVICE:**

BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

_____ **(2) SUBSTITUTE SERVICE:**

BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE _____ DAY OF _____ 20_____

_____ **(3) UNKNOWN OCCUPANTS:**

BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

___X___ **(4) CORP/CO/BUS/PART:**

BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ___X___ COMPANY _____ BUSINESS _____ PARTNERSHIP _____

_____ **(5) PROPERTY RECOVERED:**

NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

_____ **(6) S.O.S. / D.O.I.:**

BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

_____ **(7) CERTIFIED MAIL**

***** COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT *****

_____ **(8)**    AND BY MAILING ON THE _____ DAY OF _____ 20_____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATION SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

## THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:

| | | |
|---|---|---|
| _____ (01) NO CONTACT | _____ (05) WRONG ADDRESS | _____ (09) DECEASED |
| _____ (02) MOVED | _____ (06) NO SUCH ADDRESSS | _____ (10) NO REGISTERED AGENT |
| _____ (03) EMPTY LOT | _____ (07) EMPLOYER REFUSAL | _____ (11) OUT OF COOK COUNTY |
| _____ (04) NOT LISTED | _____ (08) CANCELLED BY PLAINTIFF ATTY | _____ (12) OTHER REASON (EXPLAIN) |

EXPLANATION:    _RECEPTION_

WRIT SERVED ON:    _MICHELLE MAJELLE_

SEX: M (F)    RACE: _W_    AGE: _45_

THIS _16_ DAY OF _DEC_, 20 _16_

Thomas J. Dart

SHERIFF, BY: _Brand 11321_, DEPUTY

| ATTEMPTED SERVICES | | |
|---|---|---|
| DATE | TIME (AM/PM) | STAR # |
| 12-16 | 3.05 | 11321 |
| | : | |
| | : | |
| | : | |

DST421

Electronically Filed - St Louis County - December 22, 2016 - 07:54 AM

Arapahoe County Sheriff's Office
13101 E. Broncos Parkway
Centennial, Colorado 80112

*Civil Unit – Return of Service*

2016 - 00008623
Docket #: 16SL CC04240

IN THE CIRCUIT COURT OF THE STATE OF MISSOURI

IN AND FOR THE COUNTY OF ST. LOUIS

PLAINTIFF  ) **DAILEY**      **MICHAEL**
           )
VS      )
           )
DEFENDANT ) **BRIDGETON LANDFILL LLC**

CIVIL ACTION NO.:    16SLCC04240

RETURN OF SERVICE ON: **, COTTER CORPORATION**

STATE OF COLORADO    )
                 ) ss
COUNTY OF ARAPAHOE )

    I **ROBERT BOTTONE** being first duly sworn on oath, depose and say; that I am a citizen of the United States and a resident of the State of Colorado, over the age of twenty-one years.  That I am not a party to, nor interested in the above entitled action; that I am a Deputy Sheriff in the County of Arapahoe, State of Colorado; that I received the *SUMMONS* on 12/13/2016, and personally served the same on the 14 of December 2016  at 09:55 AM by handing to and leaving with **DANIEL E DENHAM**, AGENT at    7700  E ARAPAHOE RD 220 , CENTENNIAL, ARAPAHOE COUNTY, COLORADO  80112, a true copy thereof, together with copy of: *(FOR PERSONAL SERVICE OUTSIDE THE STATE OF MISSOURI), PETITION, ATTACHMENTS* attached thereto.

Dated: December 15, 2016

                    DAVID C. WALCHER, SHERIFF
                    ARAPAHOE COUNTY, COLORADO

        9041 **ROBERT BOTTONE** - *DEPUTY SHERIFF*

Subscribed and sworn before me this

16th day of December 2016         _____
                                 Notary Public for the State of Colorado

DIANE SHOUSE
NOTARY PUBLIC
STATE OF COLORADO
Notary ID 19894017563
My Commission Expires 07/13/2018

CVRDS2

Electronically Filed - St. Louis County - December 22, 2016 - 07:54 AM

ARAPAHOE COUNTY SHERIFF'S OFFICE
13101 E. BRONCOS PARKWAY
CENTENNIAL, COLORADO 80112

| CIVIL PAPER # | TYPE | SERVICE NAME | AMOUNT |
|---|---|---|---|
| 2016-00008623 | SUMMONS | COTTER CORPORATION | 39.00 |

```
                                                      ==============
                                          TOTAL PAID . . :     39.00
CHECK :         39.00      CHECK#:  0006311   AMOUNT TENDERED:     39.00
                                          CHANGE/REFUND  :       .00


RECEIVED FROM:  DEFEO & KOLKER LLC              STILL OWES . . :       .00

                1627 MAIN ST 801
                KANSAS CITY              MO  64108

    To report a crime: 303-795-4711
```

Electronically Filed - St Louis County - December 22, 2016 - 07:54 AM



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| vs. | |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  COTTER CORPORATION
           Alias:
R/A: CT CORPORATION CO.
7700 E. ARAPAHOE ROAD, STE 220
CENTENNIAL, CO  80112

*COURT SEAL OF*

        You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
        SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

*ST. LOUIS COUNTY*

<u>18-NOV-2016</u>
Date
Further Information:
SMB

                      Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____           _____
Printed Name of Sheriff or Server           Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
               ☐ the judge of the court of which affiant is an officer.
               ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                  (use for out-of-state officer)
*(Seal)*          ☐ authorized to administer oaths.  (use for court-appointed server)

                                        Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 *For Court Use Only*: Document ID# 16-SMOS-979    1    (16SL-CC04240)        Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo

13DEC '16 07:24

Electronically Filed - St Louis County - December 22, 2016 - 07:54 AM

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

Electronically Filed - St Louis County - December 22, 2016 - 07:54 AM

## THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

Electronically Filed - St Louis County - December 22, 2016 - 07:54 AM

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

(5) **Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

Electronically Filed - St Louis County - December 21, 2016 - 02:12 PM

## AFFIDAVIT OF SERVICE

State of Missouri                County of St. Louis                Circuit Court

Case Number: 16SL-CC04044

Plaintiff/Petitioner:
**SCOTT C. MANS**

vs.

Defendant/Respondent:
**DALLAS AIRMOTIVE, INC., et al.**

Received THE SIMON LAW FIRM to be served on **Clemens Aircraft, LLC., 14789 Southwest 30th Street, Suite 1, Benton, KS 67017**.

I, GRACE HAZELL, being duly sworn, depose and say that on the **7th day of December, 2016 at 9:20 pm, I**:

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Except Attachment Action) and Petition** by leaving with Dwayne Clemens at **14918 Southwest 35th Street, Benton, KS 67017**.

I am over the age of eighteen, and have no interest in the above action.

GRACE HAZELL
Process Server

**THE SIMON LAW FIRM**
**800 Market Street**
**Suite 1700**
**St. Louis, MO 63101**
**(314) 241-2929**

Subscribed and Sworn to before me on the _13_ day
of _December_ , _2016_ by the affiant who is
personally known to me.

NOTARY PUBLIC

SARAS ROGERS
Notary Public - State of Kansas
My Appt. Expires Mar. 26, 2020

Our Job Serial Number: HAT-2016022238

Copyright © 1992-2016 Database Services, Inc. - Process Server's Toolbox V7.1g

Electronically Filed - St Louis County - December 21, 2016 - 02:12 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   PAUL B. LEE, Attorney for Defendant
SERVICE EMAIL:   plee@nlpc-law.com


SERVICE PARTY:   JOHN G. SIMON, Attorney for Plaintiff
SERVICE EMAIL:   jsimon@simonlawpc.com


SERVICE PARTY:   LURA GUST, Co-Counsel for Defendant
SERVICE EMAIL:   lgust@sandbergphoenix.com


SERVICE PARTY:   MATTHEW WILLIAM GEARY, Attorney for Defendant
SERVICE EMAIL:   mgeary@dysarttaylor.com


SERVICE PARTY:   LEO W NELSEN, Attorney for Defendant
SERVICE EMAIL:   lnelsen@nlpc-law.com


SERVICE PARTY:   ALAN LAYNE FARKAS, Attorney for Defendant
SERVICE EMAIL:   afarkas@salawus.com


SERVICE PARTY:   JAMES PATRICK SANDERS, Attorney for Defendant
SERVICE EMAIL:   jsanders@salawus.com


SERVICE PARTY:   MICHAEL REDA, Attorney for Defendant
SERVICE EMAIL:   mreda@heplerbroom.com


SERVICE PARTY:   STEPHEN MICHAEL STRUM, Attorney for Defendant
SERVICE EMAIL:   sstrum@spvg.com, sstrum@sandbergphoenix.com


SERVICE PARTY:   KEVIN M CARNIE, Attorney for Plaintiff
SERVICE EMAIL:   kcarnie@simonlawpc.com



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 | |
|---|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO 64108 | **FILED**<br>DEC 13 2016<br>JOAN M. GILMER<br>CIRCUIT CLERK, ST. LOUIS COUNTY |
| vs. | | |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Property Damage | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** MI HOLDINGS, INC.

R/A: CT CORPORATION SYSTEM  
120 SOUTH CENTRAL AVENUE  
CLAYTON, MO 63105

**Alias:**

*30 CTCOR*

*COURT SEAL OF*

       You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

       SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

*ST. LOUIS COUNTY*

<u>29-NOV-2016</u>  
Date

Further Information:  
JJ

_____  
Clerk

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☑ other  CT CORP.  **LCW – B. LOVE** _____ (address)

Served at _____

in **St. Louis County** (County/City of St. Louis), MO, on **DEC 07 2016** (date) at **9 A.M.** (time).

LEISINGER

_____  
Printed Name of Sheriff or Server

_____  
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____  
                Date

_____  
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**SHERIFF FEE PAID**



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC<br>Nature of Suit:<br>CC Property Damage | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |

**FILED**
DEC 13 2016
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY
(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  MALLINCKRODT, INC.

Alias:

R/A: CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

*30 CTCOR*

**COURT SEAL OF**

**ST. LOUIS COUNTY**

     You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
     **SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

<u>29-NOV-2016</u>
Date

Further Information:
JJ

_____ Clerk

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☑ other _____

Served at  CT CORP.  **LCW – B. LOVE**   DEC -5 2016 _____ (address).

in  St. Louis County  (County/City of St. Louis), MO, on  DEC 07 2016  (date) at  9 A.M.  (time).

*LEISINGER*

Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____
                    Date                         Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ (_____ miles @ $ _____ per mile) | |
| Total | $ _____ | |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-99) SM30 (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9255**    1    (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo





S13
12-29

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division: ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 | FILED DEC 13 2016 JOAN M. GILMER CIRCUIT CLERK, ST. LOUIS COUNTY |
| Plaintiff/Petitioner: MICHAEL DAILEY vs. | Plaintiff's/Petitioner's Attorney/Address DANIEL TIMOTHY DEFEO 1627 MAIN STREET SUITE 801 KANSAS CITY, MO 64108 | |
| Defendant/Respondent: BRIDGETON LANDFILL, LLC | Court Address: ST LOUIS COUNTY COURT BUILDING 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 | (Date File Stamp) |
| Nature of Suit: CC Property Damage | | |

## Summons in Civil Case

**The State of Missouri to: ROCK ROAD INDUSTRIES, INC.**
**Alias:**

**R/A: CT CORPORATION SYSTEM**
**120 SOUTH CENTRAL AVENUE**
**CLAYTON, MO 63105**

30 CTCOR

*COURT SEAL OF*

*ST. LOUIS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

**29-NOV-2016**
**Date**

Clerk

**Further Information:**
**JJ**

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

______ (name) ______ (title).

☑ other DEC - 5 2016

Served at CT CORP. LCW – B. LOVE (address)

in St. Louis County (County/City of St. Louis), MO, on DEC 07 2016 (date) at ______ (time).

LEISINGER

Printed Name of Sheriff or Server — Signature of Sheriff or Server

2016 DEC 5 AM 9:42

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on ______ (date).

*(Seal)*

My commission expires: ______ Date ______ Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ ( ___ miles @ $.___ per mile) |
| **Total** | **$** |

SHERIFF FEE PAID

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

ER 12-5

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>ELLEN LEVY SIWAK | **Case Number: 16SL-CC04240** |
| Plaintiff's/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>vs.   KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

**FILED**
DEC 13 2016
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## Summons in Civil Case

**The State of Missouri to:** ALLIED SERVICES, LLC

R/A: THE CORPORATION CO.
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

Alias:

*30 CTLOR*

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

*ST. LOUIS COUNTY*

<u>29-NOV-2016</u>
Date

Further Information:
JJ

_Joan M. Gilmer_ Clerk

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

DEC - 5 2016

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☑ other   **THE CORPORATION CO.   LCW — B. LOVE**   _____ (address).

Served at _____ **DEC 07 2016** (date) at **9 A.M.** (time).

in **St. Louis County** (County/City of St. Louis), MO, on

*LEISINGER*
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date

_____
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $   10.00 |
| Mileage | $_____ ( _____ miles @ $._____ per mile) |
| Total | $_____ |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.





51B
12-29

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number: 16SL-CC04240 |
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| vs. | |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

**FILED**
DEC 13 2016
JOAN M. GILMER
CIRCUIT CLERK ST LOUIS COUNTY

## Summons in Civil Case

The State of Missouri to:  BRIDGETON LANDFILL, LLC
Alias:

R/A: THE CORPORATION CO.
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

30 CTCOR

**COURT SEAL OF**

**ST. LOUIS COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>29-NOV-2016</u>
Date

Further Information:
JJ

_____ Clerk

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of _____.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
DEC - 9 2016

☑ other  **THE CORPORATION CO.  LCW – B. LOVE** _____ (address)
Served at
in **St. Louis County** (County/City of St. Louis), MO, on **DEC 0 7 2016** (date) at **9 A.M.** (time).

LEISINGER
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).

(Seal)

My commission expires: _____
Date          Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $    10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - St Louis County - November 29, 2016 - 11:22 AM

**IN THE TWENTY-FIRST JUDICIAL CIRCUIT
OF THE STATE OF MISSOURI
IN ST. LOUIS COUNTY**

**MICHAEL DAILEY
and ROBBIN DAILEY,**
     **Plaintiffs,**

**vs.**

**BRIDGETON LANDFILL, LLC,**
**Serve at:**
     The Corporation Company
     Resident Agent for Bridgeton Landfill, LLC
     120 South Central Avenue
     Clayton, MO 63105

**REPUBLIC SERVICES, INC.,**          **Cause No. 16SL-CC04240**
**Serve at:**
     CT Corporation Services
     Registered Agent for Republic Services, Inc.
     2390 E. Camelback Road
     Phoenix, AZ 85016

                                        **Division No.**

**ALLIED SERVICES, LLC,**
**Serve at:**                               **JURY TRIAL DEMANDED**
     The Corporation Company
     Resident Agent for Allied Services, LLC
     120 South Central Avenue
     Clayton, MO 63105

**ROCK ROAD INDUSTRIES, INC.,**
**Serve at:**
     C T Corporation System
     Resident Agent for Rock Road Industries, Inc.
     120 South Central Avenue
     Clayton, MO 63015

**MI HOLDINGS, INC.,**
**Serve at:**
     C T Corporation System
     Resident Agent for MI Holdings, Inc.
     120 South Central Avenue
     Clayton, MO 63105

Electronically Filed - St Louis County - November 29, 2016 - 11:22 AM

**MALLINCKRODT, INC.,**
**Serve at:**
> CT Corporation System
> Resident Agent for Mallinckrodt, Inc.
> 120 South Central Avenue
> Clayton, MO 63105

**COTTER CORPORATION,**
**Serve at:**
> The Corporation Company
> Resident Agent for Cotter Corporation
> 7700 E. Arapahoe Road, Suite 220
> Centennial, CO 80112

**COMMONWEALTH EDISON COMPANY,**
**Serve at:**
> Corporate Creations Network IN
> Resident Agent for Commonwealth Edison Company
> 350 S. Northwest Highway, Suite 300
> Park Ridge, IL 60068

**and**

**EXELON CORPORATION,**
**Serve at:**
> Corporate Creations Network IN
> Resident Agent for Exelon Corporation
> 350 S. Northwest Highway, Suite 300
> Park Ridge, IL 60068

> **Defendants.**

## NOTICE OF FILING FOR SERVICE FEES

COMES NOW Plaintiffs, Michael Dailey and Robbin Dailey, by and through their

counsel and submits the fee for service of $36 per Defendant ($180.00) for service by St. Louis

County Sheriff.

Dated:  November 29, 2016

Respectfully submitted,


*/s/ Daniel T. DeFeo*
Daniel T. DeFeo, MO # 35161
DeFeo & Kolker, LLC
1627 Main Street
Suite 801
Kansas City, Missouri 64108

Richard S. Lewis
Michaela Spero
Hausfeld LLP
1700 K Street, NW
Suite 650
Washington, DC 20006

Michael Stag
Smith Stag, LLC
One Canal Place
365 Canal St. #2850
New Orleans, LA 70130

Barry J. Cooper, Jr.
Cooper Law Firm, L.L.C.
508 St. Philip Street
New Orleans, LA 70116

Winston Calvert, MO #57421
W. Calvert, LLC
7700 Bonhomme Ave, Suite 350
St. Louis, MO 63105

Steven J Stolze (Mo. Bar No. 39795)
Holland Law
300 N Tucker, Suite 800
St Louis, MO 63102

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:    DANIEL TIMOTHY DEFEO, Attorney for Plaintiff
SERVICE EMAIL:    ddefeo@defeokolker.com

Electronically Filed - St Louis County - November 29, 2016 - 11:22 AM



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br> BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

*(vs.)* appears between Plaintiff and Defendant sections.

## Summons in Civil Case

**The State of Missouri to:  BRIDGETON LANDFILL, LLC**
Alias:

**R/A: THE CORPORATION CO.**
**120 SOUTH CENTRAL AVENUE**
**CLAYTON, MO  63105**

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>29-NOV-2016</u>
**Date**                                                                                          **Clerk**

**Further Information:**
**JJ**

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                              Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*            Subscribed and sworn to before me on _____ (date).

My commission expires: _____                    _____
                                          Date                                                      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $   10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9251**     1     (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

   **(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

   **(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

   **(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

   If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

   A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

   The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| vs. | |
| Defendant/Respondent:<br> BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | |
| | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:  ALLIED SERVICES, LLC**
             **Alias:**

R/A: THE CORPORATION CO.
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

*COURT SEAL OF*



*ST. LOUIS COUNTY*

        You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
        SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>29-NOV-2016</u>
**Date**                                       **Clerk**

**Further Information:**
**JJ**

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
      Printed Name of Sheriff or Server                Signature of Sheriff or Server

          **Must be sworn before a notary public if not served by an authorized officer:**

          Subscribed and sworn to before me on _____ (date).

*(Seal)*          My commission expires: _____
                              Date                             Notary Public

| | |
|---|---|
| **Sheriff's Fees, if applicable** | |
| Summons $_____ | |
| Non Est $_____ | |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge $___10.00___ | |
| Mileage $_____ (_____ miles @ $._____ per mile) | |
| Total $_____ | |

                      **SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

<u>Purpose of Notice</u>

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.  However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

<u>Your Rights and Obligations in Court Are Not Affected By This Notice</u>

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

<u>Alternative Dispute Resolution Procedures</u>

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) <u>Advisory Arbitration:</u>** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9252**     3     (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| **vs.** | |
| Defendant/Respondent:<br> BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | |
| | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| **The State of Missouri to:** ROCK ROAD INDUSTRIES, INC.<br>                                    **Alias:**<br>**R/A: CT CORPORATION SYSTEM**<br>**120 SOUTH CENTRAL AVENUE**<br>**CLAYTON, MO  63105** | |



*COURT SEAL OF*

*ST. LOUIS COUNTY*

           You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
           **SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

<u>29-NOV-2016</u>
**Date**                                                                          *Joan M. Gilmer*                    **Clerk**

**Further Information:**
**JJ**

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
          Printed Name of Sheriff or Server                                      Signature of Sheriff or Server

                    **Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*              Subscribed and sworn to before me on _____ (date).

                    My commission expires: _____                    _____
                                                            Date                                      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

## THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

(5) **Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9253**     3     (Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br> BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  MI HOLDINGS, INC.
                          Alias:

R/A: CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>29-NOV-2016</u>
Date

Further Information:
JJ

_____
Clerk

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.
I certify that I have served the above summons by:  (check one)
☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).
☐ other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server
Must be sworn before a notary public if not served by an authorized officer:

*(Seal)*          Subscribed and sworn to before me on _____ (date).

          My commission expires: _____          _____
                                                    Date                              Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $   10.00 | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| Total | $_____ | |

**SHERIFF FEE PAID**

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

## THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.   An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9254**    2    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9254**    3    (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| vs. | |
| Defendant/Respondent:<br> BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **MALLINCKRODT, INC.**

**Alias:**

R/A: CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

<u>29-NOV-2016</u>
**Date**

**Further Information:**
JJ

_____
**Clerk**

---

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

_____  Date

_____  Notary Public

---

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $    10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

**SHERIFF FEE
PAID**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

(5) **Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

OSCA (7-99) SM30  (SMCC) *For Court Use Only:* **Document ID# 16-SMCC-9255**     3     (Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

(vs. appears between Plaintiff and Defendant rows)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   REPUBLIC SERVICES, INC.
Alias:

**R/A: CT CORPORATION SVCS**
**2390 E. CAMELBACK ROAD**
**PHOENIX, AZ  85016**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
   **SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

18-NOV-2016
Date
Further Information:
SMB

_____ Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____   _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

**Directions to Clerk**

    Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

    A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

    Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

    Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

    Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

    The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

    Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.  These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only*: **Document ID# 16-SMOS-978**      3      **(16SL-CC04240)**                Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

(5) **Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

*vs.*

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   COTTER CORPORATION
                                        Alias:

R/A: CT CORPORATION CO.
7700 E. ARAPAHOE ROAD, STE 220
CENTENNIAL, CO 80112

*COURT SEAL OF*

*ST. LOUIS COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
   SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

18-NOV-2016
Date
Further Information:
SMB

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                          ☐ the judge of the court of which affiant is an officer.
                          ☐ authorized to administer oaths in the state in which the affiant served the above summons.
                             (use for out-of-state officer)
                          ☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $_____ per mile) |
| **Total** | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

### Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner's has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

### Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

OSCA (7-04) SM60 *For Court Use Only*: **Document ID# 16-SMOS-979**      3      (16SL-CC04240)      Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

(3) **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

(4) **Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

(5) **Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| **vs.** | |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   COMMONWEALTH EDISON COMPANY
**Alias:**
R/A: CORPORATE CREATIONS NET
350 S. NW HIGHWAY, STE. 300
PARK RIDGE, IL  60068



*COURT SEAL OF*

*ST. LOUIS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.**
**SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.**

18-NOV-2016
Date
Further Information:
SMB

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
   ☐ the judge of the court of which affiant is an officer.
   ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   ☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

**Directions to Clerk**

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54.  The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered.  The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service.  The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy.  The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy.  If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons.  This form is not for use in attachment actions.  (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit


**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**


## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.  These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1)  Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2)  Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

| Judge or Division:<br>ELLEN LEVY SIWAK | Case Number:  16SL-CC04240 |
|---|---|
| Plaintiff/Petitioner:<br>MICHAEL DAILEY | Plaintiff's/Petitioner's Attorney/Address:<br>DANIEL TIMOTHY DEFEO<br>1627 MAIN STREET<br>SUITE 801<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br>BRIDGETON LANDFILL, LLC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Property Damage | |

vs.

(Date File Stamp)

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   EXELON CORPORATION
Alias:
R/A: CORPORATE CREATIONS NET
350 S. NW  HIGHWAY, STE. 300
PARK RIDGE, IL  60068



*COURT SEAL OF*

*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739 or TTY at 314-615-4567, at least three business days in advance of the court proceeding.

18-NOV-2016
Date
Further Information:
SMB

_____
Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1.   I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.   My official title is _____ of _____ County, _____ (state).
3.   I have served the above summons by:  (check one)
☐  delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐  leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
☐  (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
☐  other (describe) _____.
Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).
_____        _____
Printed Name of Sheriff or Server                                     Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐  the clerk of the court of which affiant is an officer.
☐  the judge of the court of which affiant is an officer.
☐  authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐  authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____miles @ $_____ per mile) |
| **Total** | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

**Directions to Clerk**

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.  These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.  Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

   **(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

   **(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

   **(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

   If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

   A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 7900 Carondelet Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

   The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

**16SL-CC04240**

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

**IN THE TWENTY-FIRST JUDICIAL CIRCUIT
OF THE STATE OF MISSOURI
IN ST. LOUIS COUNTY**

**MICHAEL DAILEY**
**and ROBBIN DAILEY,**
      **Plaintiffs,**

**vs.**

**BRIDGETON LANDFILL, LLC,**
**Serve at:**
      The Corporation Company
      Resident Agent for Bridgeton Landfill, LLC
      120 South Central Avenue
      Clayton, MO 63105

**REPUBLIC SERVICES, INC.,**             **Cause No.**
**Serve at:**
      CT Corporation Services
      Registered Agent for Republic Services, Inc.
      2390 E. Camelback Road
      Phoenix, AZ 85016

                                          **Division No.**

**ALLIED SERVICES, LLC,**
**Serve at:**                              **JURY TRIAL DEMANDED**
      The Corporation Company
      Resident Agent for Allied Services, LLC
      120 South Central Avenue
      Clayton, MO 63105

**ROCK ROAD INDUSTRIES, INC.,**
**Serve at:**
      C T Corporation System
      Resident Agent for Rock Road Industries, Inc.
      120 South Central Avenue
      Clayton, MO 63015

**MI HOLDINGS, INC.,**
**Serve at:**
      C T Corporation System
      Resident Agent for MI Holdings, Inc.
      120 South Central Avenue
      Clayton, MO 63105

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

**MALLINCKRODT, INC.,**
**Serve at:**
> CT Corporation System
> Resident Agent for Mallinckrodt, Inc.
> 120 South Central Avenue
> Clayton, MO 63105

**COTTER CORPORATION,**
**Serve at:**
> The Corporation Company
> Resident Agent for Cotter Corporation
> 7700 E. Arapahoe Road, Suite 220
> Centennial, CO 80112

**COMMONWEALTH EDISON COMPANY,**
**Serve at:**
> Corporate Creations Network IN
> Resident Agent for Commonwealth Edison Company
> 350 S. Northwest Highway, Suite 300
> Park Ridge, IL 60068

**and**

**EXELON CORPORATION,**
**Serve at:**
> Corporate Creations Network IN
> Resident Agent for Exelon Corporation
> 350 S. Northwest Highway, Suite 300
> Park Ridge, IL 60068

> **Defendants.**

## PETITION

COME NOW Plaintiffs Michael Dailey Robbin Dailey, by and through their counsel, and

for their Petition and causes of action against Defendants Bridgeton Landfill, LLC, Republic

Services, Inc., Allied Services, L.L.C., Rock Road Industries, Inc., MI Holdings, Inc.,

2

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Mallinckrodt, Inc., Cotter Corporation, Commonwealth Edison Company, and Exelon Corporation, state and allege as follows:

1.　　Since World War II, big companies have made significant profits processing, handling, and storing radioactive materials in the St. Louis area.  This activity began six decades ago, when Mallinckrodt received in downtown St. Louis City special highly concentrated uranium with high levels of radium from Africa.  This special ore was extremely toxic—more so than the ores available from anywhere else in the world.  Despite the fact that these materials were some of the most harmful on Earth, Defendants moved them around St. Louis, treating the radioactive materials with less care than a reasonable person might give in moving common household garbage.  Vast amounts of radioactive wastes were moved from downtown St. Louis to the St. Louis Airport, then to Hazelwood.  The radioactive waste was finally dumped like trash into the West Lake Landfill—a Landfill that experts indicate is not even suitable for garbage.

2.　　Since then, that radioactive material, negligently dumped in an area surrounded by peaceful neighborhoods and playgrounds, has tormented the lives of everyday people—moms and dads who thought they were raising their kids in a clean home in a safe, quiet neighborhood; kids who want nothing more than to play in the backyard; and small business owners who had invested everything to build the American dream for their families.  These everyday St. Louisans now find their lives disrupted, their kids sick, their homes contaminated, their businesses upended, and their properties worthless.  They find their once-quaint neighborhoods filled with technicians testing and prodding their backyards and the dust of their vacuum cleaners to identify the quantity and the toxicity of the radioactive material Defendants have dumped into their lives.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

3.      Tests now confirm that the areas around the West Lake and Bridgeton Landfills (referred to herein as the "Landfill" which consists of several inactive landfills including West Lake and Bridgeton) are contaminated with the same radioactive materials that Defendants brought from Africa, profited from in contracting for the Manhattan Project, and then carelessly and recklessly dumped in a Landfill, and otherwise spilled into the neighborhoods in transit and temporary storage.  The off-site radioactive waste found today in the businesses and homes surrounding the Landfill has the fingerprint (or profile) of the highly toxic uranium ore from Africa processed in St. Louis and dumped into and around the Landfill.

4.      These radioactive wastes are known human carcinogens that can cause chronic damage to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system in addition to numerous cancers. Illnesses such as cancers or birth defects may take a number of years after exposure to the radioactive material to appear.

5.      Defendants have failed to take responsibility for their negligent behavior, failed to clean up the area, failed to move the residents and businesses out, and failed to make amends for the widespread damage they have caused.  Instead, Defendants have hidden behind misstatements and omissions, misleading the public about the widespread contamination Defendants have caused and minimizing the immense risks to public health and safety that resulted from Defendants' actions.

6.      It is time that Defendants finally be held accountable for their reckless and tortious conduct.  This particular lawsuit seeks to correct the harm Defendants inflicted on just a few of the victims.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

7.      Plaintiffs Michael Dailey and Robbin Dailey (hereinafter "Plaintiffs") own property in Bridgeton, Missouri that Defendants contaminated.  The Dailey Property, including the land and Plaintiffs' home (hereinafter "Dailey Home"), is contaminated with radioactive material from the Landfill.  The radioactive material consists of high levels of Uranium (U-238) decay products, including Thorium (Th-230), Lead (Pb-210), and Radon (Ra-226).  Dusts inside the Dailey Home were shown to contain radioactive Th-230 at levels at least two hundred times higher than Background levels, as depicted in the graphic immediately below.



8.      Plaintiffs Michael Dailey and Robbin Dailey have sustained significant damages as a result of Defendants' conduct.  Defendants should remediate the Dailey Home and

Electronically Filed - St. Louis County - November 15, 2016 - 03:04 PM

compensate Plaintiffs for their damages, and provide further relief as set forth below in this Petition.

## JURISDICTION, AUTHORITY, AND VENUE

9.      This court has jurisdiction and authority over the subject matter and the parties in this case pursuant to Mo. Rev. State. §§ 27.060 and 526.010.  Plaintiffs do not allege causes of actions arising under laws of the United States.

10.     Venue is proper in this court pursuant to Mo. Rev. Stat. §508.010.5., because Defendants' conduct giving rise to this action took place in St. Louis County.

## THE PLAINTIFFS

11.     Plaintiffs Michael Dailey and Robbin Dailey are Missouri citizens who own real property located at 3550 El Ferrol Court, Bridgeton, Missouri (the "Dailey Property").  Plaintiffs purchased the home in 1999.  The property is approximately 0.25 acres in St. Louis County adjacent to what is now the Landfill in Bridgeton, Missouri, more fully described as follows: Lot 18 in Subdivision Spanish Village Plat Two.

12.     As a result of Defendants' acts and omissions, Plaintiffs have sustained significant damages including damages to the Dailey Property and the loss of use and enjoyment of the property. Plaintiffs first learned that the Dailey Property was contaminated with radioactive material in 2016.

## THE DEFENDANTS

13.     In this Petition, the defendants in this lawsuit are categorized into two groups.

14.     The first group is the Landfill Defendants, which includes both owners and operators of the Landfill:

6

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

A. Landfill Owner Defendants

    i.  Bridgeton Landfill, LLC, which owns the Bridgeton and West Lake Landfills; and

    ii.  Rock Road Industries, Inc., which owned or owns the West Lake Landfill.

B. Landfill Operator Defendants

    i.  Republic Services, Inc., which owns, oversees, and directs the environmental decisions and conduct of Bridgeton Landfill, LLC, Allied Services, L.L.C., and Rock Road Industries, Inc., and operates the Bridgeton and West Lake Landfills; and

    ii.  Allied Services, L.L.C., which operates Bridgeton and West Lake Landfills.

15.    The second group is the Radioactive Waste Defendants, which includes waste generators and waste disposers:

A. Radioactive Waste Generator Defendants

    i.  M Holdings, Inc., which is one of two successors to Mallinckrodt;

    ii.  Mallinckrodt, Inc., which is the other successor to Mallinckrodt;

B. Radioactive Waste Disposer Defendants, which include haulers, storers, and disposers:

    i.  Cotter Corporation, which purchased the radioactive mill tailings waste residues from the Hazelwood Interim Storage Site and shipped those wastes to the West Lake Landfill for disposal as clean fill;

7

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

    ii.  Commonwealth Edison Company ("ComEd"), which was the parent

         company of Cotter which agreed to indemnify Cotter for liability; and

    iii.  Exelon Corporation, which is the parent company of ComEd.

### THE LANDFILL DEFENDANTS

16.    Since at least November 2010, the Landfill Defendants have owned and operated the Bridgeton and West Lake Landfills.

17.    Republic Services, Inc. ("Republic") is a Delaware corporation with its principal place of business in the State of Arizona that carries on continuous and systematic business activities within the State of Missouri.

    A.  Republic describes itself as "the second largest provider of services in the domestic non-hazardous solid waste industry, as measured by revenue as well as a Fortune 500 company, publicly traded on the New York Stock Exchange (NYSE; RSF)."[1]  Despite Republic's record of violations and the widespread injuries resulting from Republic's conduct, Republic promises the public that it lives by "high environmental and sustainability standards."[2]

    B.  Republic's presence in Missouri is immense, servicing more than 300 cities and towns throughout the state, including many in St. Louis County.[3]  Republic continuously and systematically avails itself of the protection of Missouri laws in

---

[1] https://www.republicservices.com/about-us
[2] http://www.republicservices.com/customer-support/facilities
[3] https://www.republicservices.com/locations/missouri

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.[4]

C.  This lawsuit arises out of damages that resulted from Republic's acts and omissions within the State of Missouri.  Since 2008, Republic and its subsidiaries have maintained daily operational and managerial control over the management and environmental decisions of the Bridgeton and West Lake Landfills, decisions which gave rise to the violations of law and damage to property alleged in this Petition.  Republic did so directly and through its subsidiaries Allied Services, LLC, Bridgeton Landfill LLC, and Rock Road Industries, Inc.

18.    Allied Services, LLC ("Allied"), a Delaware limited liability company with its principal place of business in the state of Arizona, is a wholly-owned subsidiary of Republic Services, Inc., that continuously and systematically conducts business in the State of Missouri under its own name and under the fictitious name "Republic Services of Bridgeton."

A.  Allied conducts daily operations of the Bridgeton Landfill and the West Lake Landfill.

B.  Allied regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.[5]

C.  This lawsuit arises out of damages that resulted from Allied's acts and omissions within the State of Missouri.  Since 2008, Allied has maintained daily operational and managerial control over the management and environmental decisions of the

---

[4] https://www.courts.mo.gov/casenet/cases/nameSearch.do
[5] https://www.courts.mo.gov/casenet/cases/nameSearch.do

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Bridgeton and West Lake Landfills, decisions which gave rise to the violations of

law and damage to property alleged in this Petition.

19.     Bridgeton Landfill, LLC formerly "Laidlaw Waste Systems" ("Landfill Owner"),

is a Missouri limited liability company with its principle place of business in the State of

Missouri.  It continuously and systematically conducts business activities in the State of

Missouri.

A.  Upon information and belief, Bridgeton Landfill, LLC owns the Bridgeton

Landfill and the West Lake Landfill.

B.  Bridgeton Landfill has continuously and systematically availed itself of the

protection of Missouri laws in St. Louis County courts, and regularly appears to

defend itself in lawsuits tried here.[6]

C.  This lawsuit arises out of damages that resulted from Bridgeton Landfill's acts

and omissions within the State of Missouri.  Specifically, since 2008, Bridgeton

Landfill has owned, operated and maintained daily operational and managerial

control over the management and environmental decisions of the Bridgeton

Landfill and the West Lake Landfill, which gave rise to the violations of law and

damage to property alleged in this Petition.

20.     Rock Road Industries, Inc. ("Rock Road") is a Missouri corporation with its

principal place of business in St. Louis, Missouri. Rock Road is a wholly-owned subsidiary of

---

[6] https://www.courts.mo.gov/casenet/cases/nameSearch.do

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Republic Services, Inc. that continuously and systematically conducts business in the State of Missouri.

      A.     This lawsuit arises out of damages that resulted from Rock Road Industries, Inc.'s acts and omissions within the State of Missouri.  Upon information and belief Rock Road Industries, Inc. owns the West Lake Landfill along with Bridgeton Landfill, LLC.  Rock Road Industries has maintained daily operational and managerial control over the management and environmental decisions of the West Lake Landfill, decisions which gave rise to the violations of law and damage to property alleged in this Petition.

### THE RADIOACTIVE WASTE DEFENDANTS

21.     The Radioactive Waste Defendants generated and improperly disposed of the radioactive waste throughout the St. Louis area.  They improperly disposed of a significant portion of that waste in the West Lake Landfill.

22.     The Radioactive Waste Generator Defendants are described below.

23.     This lawsuit involves several Mallinckrodt entities, some of which are now defunct and some of which still exist and are defendants herein.

      A. There are two Mallinckrodt Defendants, MI Holdings, Inc., and Mallinckrodt, Inc. Defendant Mallinckrodt, Inc., individually and as successor-in-interest to Mallinckrodt Missouri, is a Delaware corporation with its principal place of business in Mansfield, Massachusetts.  Upon information and belief, in 1986, Mallinckrodt Missouri was broken up and sold to MI Holdings, Inc. and Mallinckrodt, Inc.  Upon information and belief, Mallinckrodt Chemical Works is now known as or has been merged into MI Holdings and/or Mallinckrodt, Inc.

11

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Both Mallinckrodt Defendants carry on continuous and systematic business operations in the State of Missouri.  Both Mallinckrodt Defendants regularly and routinely avail themselves of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here. [7]

B.  This lawsuit arises out of damages that resulted from the Mallinckrodt Defendants' conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Mallinckrodt Defendants, which gave rise to the violations of law and damage to property alleged in the Petition.

24.    On information and belief, MI Holdings, Inc. and Mallinckrodt, Inc. are successors to the businesses formerly known as Mallinckrodt Missouri, Mallinckrodt Chemical Works, and Mallinckrodt Nuclear Corporation. Accordingly, both Mallinckrodt Defendants are sued individually and as successors to Mallinckrodt Missouri, Mallinckrodt Chemical Works, and Mallinckrodt Nuclear Corporation.

25.    This lawsuit arises out of damages that resulted from the Mallinckrodt Defendants' conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Mallinckrodt Defendants, which gave rise to the violations of law and damage to property alleged in the Petition.

---

[7] https://www.courts.mo.gov/casenet/cases/nameSearch.do

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

26.     Any reference in this Petition to Mallinckrodt Chemical Works, Mallinckrodt Missouri, or Mallinckrodt Nuclear Corporation should be treated as an allegation against both Mallinckrodt, Inc. and MI Holdings, Inc., unless specifically stated otherwise.

27.     Mallinckrodt Chemical Works and Mallinckrodt Nuclear Corporation will be referenced together as "Mallinckrodt" whereas the term "Mallinckrodt Defendants" refers to MI Holdings, Inc., and Mallinckrodt, Inc.

28.     The Radioactive Waste Disposer Defendants are described below.

There are four defendants that relate in some way to Cotter Corporation, the owner and disposer of the radioactive mill tailings residue wastes: Cotter Corporation ("Cotter"), Commonwealth Edison Company ("ComEd"), Cotter Corporation ("Cotter"), Exelon Corporation ("Exelon"), and Exelon Generation Company, LLC ("Exelon Generation")

29.      Cotter Corporation ("Cotter") is a Colorado corporation with its principal place of business in Englewood, Colorado, which operates as a subsidiary of General Atomics, Inc., a California corporation.   It was purchased by and became a wholly owned subsidiary of Commonwealth Edison in 1975.

A. Cotter continuously and systematically carries on business activities in the State of Missouri in its own name, through its parent companies ComEd and Exelon, as well as through its subsidiary General Atomics, Inc.

B. This lawsuit arises out of damages that resulted from the Cotter Defendants' conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Cotter Defendants, which gave rise to the violations of law and damage to property alleged in the Petition.

13

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

30.     Commonwealth Edison Company ("ComEd") is an Illinois corporation, whose former subsidiary corporation, Cotter, conducted business operations at the West Lake in Bridgeton, Missouri.  Upon the sale of Cotter, ComEd agreed to indemnify Cotter for certain liabilities associated with the West Lake Landfill.

    A.  ComEd continuously and systematically carries on business activities in the State of Missouri, both on its own and through its subsidiaries including Cotter and its parent company Exelon.  In addition, ComEd owned Cotter at times relevant to this Petition, and agreed to indemnify Cotter for liabilities associated with the West Lake Landfill.  ComEd regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.[8]

    B.  This lawsuit arises out of damages that resulted from the ComEd Defendants' conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the ComEd Defendants, which gave rise to the violations of law and damage to property alleged in the Petition.

31.     Exelon Corporation ("Exelon"), the parent company of ComEd, is a Pennsylvania corporation with its principal place of business in Chicago, Illinois.  Exelon, through its subsidiaries including Cotter and ComEd, conducted business at the West Lake Landfill in Bridgeton, Missouri.

---

[8] https://www.courts.mo.gov/casenet/cases/nameSearch.do

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

    A. Exelon is the parent company of ComEd and, through its subsidiaries including Cotter and ComEd, continuously and systematically carries out business activities in the State of Missouri.  Exelon regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.[9]

    B. This lawsuit arises out of damages that resulted from the Exelon Defendants' conduct including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Exelon Defendants, which gave rise to the violations of law and damage to property alleged in the Petition.

32.    Exelon Generation Company, LLC ("Exelon") is a Pennsylvania corporation with its principal place of business in Kennett Square, Pennsylvania.  Upon information and belief in connection with Exelon's corporate restructuring in 2001, the responsibility to indemnify Cotter, previously held by Exelon was transferred to Exelon Generation Company, LLC.

    A. Exelon Generation regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried here.

    B. This lawsuit arises out of damages that resulted from the conduct including acts and omissions of Exelon Generation and their subsidiaries, agents, and representatives within the State of Missouri, which gave rise to the violations of law and damage to property alleged in the Petition.

---

[9] https://www.courts.mo.gov/casenet/cases/nameSearch.do

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## FACTS

### Radioactive Wastes

33.     Ounce for ounce, radioactive isotopes (including Uranium-238, Thorium-230, and Radium-226) are considered among the most toxic materials known to man.

34.     The particular radioactive wastes generated in St. Louis and dumped in and around the Landfill come from some of the most toxic uranium ore known to man.  As reported in the scientific literature:

> The residue wastes disposed in the West Lake Landfill were mostly generated from ore of the Shinkolobwe mine in the Belgian Congo. Described as a "freak occurrence of nature" by a top official of the early U.S. nuclear weapons program, the Congo mine yielded the highest concentrations of uranium (30-70%) of any mine found in the world since that time.  By comparison the Congo ore contained as much as 7,000 times the concentration of uranium mined in the United States (~1%).  Between 1942 and 1958, the Mallinckrodt plant in St. Louis processed approximately 50,000 tons of uranium of which roughly 40 percent (20,000 tons) were from the Shinkolobwe mine [in Africa].[10]

35.     The scientific literature reports that these are the radioactive isotopes that have contaminated the Landfill, which borders the Plaintiffs' property.  The 2006 historical reference addressing the history of radioactive contamination of St. Louis from the Manhattan Project wastes states:  "According to the NRC, the following materials are present in the Landfill and present a radiological hazard to human health and the environment:  Radium-226; Uranium-238;

---

[10] Robert Alvarez, *The West Lake Landfill: A Radioactive Legacy of the Nuclear Arms Race* 8, Nov. 21, 2013 (footnotes and citations omitted) [hereinafter "Alvarez (2013)"]; *see also* Denise DeGarmo, *The Disposal of Radioactive Wastes in the Metropolitan St. Louis Area, The Environmental Health Legacy of the Mallinckrodt Chemical Works* 57, 62, 143 (Edwin Mellen Press 2006) (footnotes omitted) [hereinafter "DeGarmo (2006)"].

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Uranium-234; Thorium-230 and protactinium."[11]   The 2013 Report of Dr. Robert E. Criss, Department of Earth and Planetary Sciences, Washington University St. Louis, Missouri also stresses that the radioactive compounds at the West Lake Landfill are the most dangerous threats the contaminated Landfill poses:

> No available reports mention any accurate analysis of the chemical, physical or radiological character of the radioactive materials dumped at West Lake.  Note that neither barium nor sulfate are contaminants of concern, nor is the uranium concentration of the radwaste, alleged to be similar to that of low-grade uranium ore, of primary environmental importance.  Instead, the real concerns involve the concentrations of the short-lived, daughter radionuclides in the $^{238}$U, $^{235}$U and $^{232}$Th decay chains, particularly $^{230}$Th, $^{226}$Ra, $^{228}$Ra, $^{223}$Ra, $^{210}$Po, and three daughter radon isotopes, in the radwaste that was dumped.[12]

36.    Radiation is a type of energy transmitted over a distance. Some materials spontaneously emit radiation through a process known as radioactive decay.  As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials. For example Uranium-238 eventually decays into Thorium-230 which decays into Radium-226.

37.    Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes such as Uranium, have the ability to penetrate other material.  When radiation energy interacts with other material, it causes a process called

---

[11]  DeGarmo (2006) at 132.

[12]  Robert E. Criss, *Risk and Character of Radioactive Waste at the West Lake Landfill* 1, *Bridgeton, Missouri, Department of Earth and Planetary Sciences, Washington University, St. Louis, MO*, Mar. 14, 2013 (footnotes omitted) [hereinafter "Criss (2013)"].

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

ionization[13] which can damage chemical structures.  When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other harms.

38.    People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body.  Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin.  The material taken in will internally expose the organs and tissues for as long as it remains inside the body.

39.    One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low, the biological effects can still be gravely serious.  The second characteristic is that there are latent biological effects of radiation.

40.    The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries.  Somatic injuries are damages to the individual exposed.  This can be damages to the skin, reproductive system, blood forming

---

[13] Ionizing radiation is described as follows in the literature:  "Ionizing Radiation is a form of radiation that includes alpha particles, beta particles, gamma rays, x-rays, neutrons, high-speed electrons, high-speed protons, and other particles capable of producing ions.  Ionizing radiation has enough energy to cause changes in atoms through a process called ionization.  Ionization can affect the atoms in living things and depending on the dose and exposure, can pose a serious health risk to humans.  Ionizing radiation has sufficient energy to cause chemical changes in cells, causing damage to tissue and DNA in genes.  https://www.epa.gov/radiation/radiation-health-effects

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

system, digestive system, central nervous system, and immune system, as well as cancers. Illnesses such as cancers may take a number of years to appear.

41.     Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells.  As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase.  These genetic mutations can be passed down to a person's offspring even generations later.  These injuries include birth abnormalities and cancer.

42.     One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment.  As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material.  The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate.  For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

43.     Uranium-238 has a half-life of 4.5 billion years.  Thorium-230 has a half-life of 75,438 years.  Radium-226 has a half-life of 1,600 years.  Uranium-238 eventually decays to Thorium-230 which decays into Radium-226.  This means that as the Thorium decays, it increases the Radium-226 at the Landfill and in the surrounding environment.  Furthermore half of the hazardous, carcinogenic Radium-226 currently contaminating the West Lake Landfill will still remain as a grave problem even after 1,000 years from now if it is not physically removed. This is described in the scientific literature as follows:

Electronically Filed - St. Louis County - November 15, 2016 - 03:04 PM

Importantly, because the concentrations of short-lived radionuclides will progressively increase, the radioactivity at the site will likewise increase for the foreseeable future. For example, according to NRC, if the present day activity of $^{230}$Th is estimated to be 100 times that of $^{226}$Ra, then the alpha activity due to $^{226}$Ra decay will increase fivefold over present levels in 100 years, nine-fold in 200 years, and 35-fold in 1000 years.[14]

## Radioactive Waste in the St. Louis Area

44.     From 1942 to 1957, Mallinckrodt brought various forms of highly toxic Uranium compounds to downtown St. Louis City for processing.[15]

45.     At the time, Mallinckrodt was a private contractor to supply Uranium processing services to the government organizations involved in the Manhattan Project through contracts with the Manhattan Engineer District and the Atomic Energy Commission. The Manhattan Project was the U.S. research project designed to develop the first nuclear weapons.

46.     Mallinckrodt's downtown facility was known as the St. Louis Downtown Site (the "Downtown Site"). The Downtown Site is about 210 acres of land 300 feet west of the Mississippi River. It is located just north of the Lumiere Casino, the Four Seasons Hotel, the Edward Jones Dome, and the Arch. The Downtown Site was used to process Uranium. Milling is the first step in processing natural Uranium ore into fuel for nuclear reactors. Uranium mills use chemicals to extract Uranium and make "yellowcake"—a yellow powder that can be processed into nuclear fuel. During the extraction of yellowcake from the Uranium ore, Uranium mills generate a sandy process waste material known as "mill tailings." These "mill tailings"

---

[14] Criss (2013) at 2-3 (citations omitted).
[15] *See* n.10 (citing Alvarez (2013) and DeGarmo (2006)).

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

contain radioactive decay products such as Radium-226 and Thorium-230, as well as heavy metals.

47.    At the Downtown Site, Mallinckrodt manufactured yellow cake from pitchblende ore.  The pitchblende ore originated in the Shinkilovwe mine in the Democratic Republic of the Congo.  It is known in the industry as "Congo ore," "Belgian Congo ore," or "monazite" ore. The history of the Mallinckrodt radioactive material operation going back to 1942 is a history of reckless treatment of these radioactive materials and a failure to protect its workers and the community from radioactive hazards:

> Throughout the initial years of production, Mallinckrodt Chemical Works was considered a dirty operation because so few controls were in place to protect the workers.
> ****
> In March 1945, MCW [Mallinckrodt] realized that radiological hazards were not only affecting the workers, but had the potential of affecting populated areas around the downtown site.
> ****
> Increased processing demands also led to the release of hazardous waste into the atmosphere and waterways surrounding the downtown St. Louis plant.  Thousands of pounds of radioactive dust spewed from Mallinckrodt's smoke stacks each year while 3 million gallons of water a day of uranium laced waste were pumped into the Mississippi River.[16]

48.    In the late 1940s, the Manhattan Project acquired a 21.7-acre tract of land near Lambert airport to store the Uranium ore mill tailings wastes and scrap from the Uranium processing operations at the Downtown Site.   The storage site near the airport is now referred to as the St. Louis Airport Site or SLAPS ("SLAPS").

---

[16] DeGarmo (2006) at 70, 72, 73 (footnotes omitted).

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

49.     Mallinckrodt continued processing Uranium at the Downtown Site through 1957. The resulting radioactive mill tailings wastes accumulated at SLAPS. These mill tailings materials included pitchblende raffinate residues, Radium-bearing residues, Barium Sulfate cake, Colorado raffinate residues and were stored at SLAPS along with contaminated scrap.  Some of the mill tailings were stored in bulk on open ground in mill tailings piles.

50.     In 1957, "approximately sixty truckloads of contaminated scrap metal, several contaminated vehicles, in addition to miscellaneous radioactive wastes [including Uranium ore mill tailings] were buried on western portion of SLAPS adjacent to Coldwater Creek."[17]

51.     In the 1960's, leftover mill tailings (ore residues, and uranium, and radium-bearing process wastes) that had been stored at SLAPS were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site").  Mill tailings at the Latty Avenue Site included about 68 tons of Uranium, consisting of: 74,000 tons of Congo pitchblende raffinate containing about 13 tons of Uranium; 32,500 tons of Colorado raffinate containing roughly 48 tons of uranium; and 8,700 tons of leached Barium Sulfate containing about 7 tons of Uranium.[18]

52.     In the late 1960's, Cotter purchased Uranium mill tailings stored at both SLAPS and at the Latty Avenue Site including 8,700 tons of leached Barium Sulfate that was being stored at the Latty Avenue Site.

53.     In or about 1973, Cotter mixed the 8,700 tons of leached Barium Sulfate with about 38,000 tons of radioactively contaminated soil.  Upon information and belief, Cotter

---

[17] DeGarmo (2006) at 123 (footnotes omitted).
[18] *See* n.10 (citing Alvarez (2013) and DeGarmo (2006)).

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

described and marketed the mixture of radioactive waste and contaminated soil as suitable for "daily cover" for Landfill operations.  Daily cover is the layer of soil that is laid on top of the day's deposition of waste at an operational landfill.

54.    In 1973, Cotter dumped this radioactive waste [including Uranium ore mill tailings] and contaminated soil in the West Lake Landfill.

55.    The scientific literature summarizes this dumping as follows:

> In 1973, 8700 tons of radionuclide-bearing "leached barium sulfate" was allegedly dumped in an unlined Landfill in Bridgeton, MO that was not licensed to receive radwaste.  This report finds that 1) the chemical and physical character of the radioactive materials has not been adequately characterized, and barium sulfate is probably not a major constituent; 2) the alpha and beta emissions of this material will increase 10x to 100x over present levels, reaching maximum activity in about 9000 years; 3) the Landfill has no protective barriers and a proximal subsurface fire; 4) the site has several hydrologic and geologic risk factors that magnify its unsatisfactory location in a populated area; 5) nuclear material has been in contact with percolating waters and with a fluctuating water table; 6) groundwaters contaminated with radionuclides have migrated far from the original location of disposal; 7) background levels of radiation have been overstated, while other risks have been underestimated ….[19]

## The Landfill

56.    The West Lake Landfill is situated on about 200 acres at 13570 St. Charles Rock Road, in the City of Bridgeton.  The Missouri River lies about one and one-half miles to the north and west of the Landfill.  A shallow aquifer lies beneath the West Lake Landfill and surrounding neighborhoods.

---

[19] Criss (2013) at 1.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

57.     Originally used for agriculture, the land became a limestone quarrying and crushing operation in 1939.

58.     Beginning in the early 1950s, portions of the quarried areas and adjacent areas were used to dispose of municipal refuse, chemical wastes, industrial solid wastes, and construction/demolition debris.

59.     In 1969, Cotter purchased mill tailings material remaining at the Latty Ave storage site. In 1973 Cotter took 8,700 tons of that material, mixed it with approximately 38,000 tons of contaminated soil, and transported it to the West Lake Landfill for disposal.  Upon information and belief, Cotter described and/or marketed the mixture of radioactive waste and contaminated soil as suitable for "daily cover" for Landfill operations.

60.     The literature clearly documents that the Landfill was never an adequate storage or disposal site for this highly radioactive contaminated waste.  In a 2013 report entitled *The West Lake Landfill: A Radioactive Legacy of the Nuclear Arms Race*, researcher Robert Alvarez stated:

> The West Lake municipal Landfill in Bridgeton, Missouri is not your ordinary solid waste Landfill.  By virtue of the highly radiotoxic wastes dumped there, it is a *de facto* nuclear waste disposal site – a legacy of the U.S. nuclear weapons program. Created by illegal dumping in 1973, the waste residues originated from the Mallinckrodt Chemical Works in St. Louis which was involved in U.S. nuclear weapons program from the 1942 to late 1950s.[20]

---

[20] Robert Alvarez, *The West Lake Landfill: A Radioactive Legacy of the Nuclear Arms Race* 1, Nov. 21, 2013 (footnotes and citations omitted) [hereinafter ("Alvarez (2013)")].

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

The Landfill contained a greater amount of Thorium-230, a highly radioactive compound, than every nuclear weapons or disposal site in the U.S.

> Of significance is the fact that the largest estimated amount of thorium-230, a long-lived, highly radiotoxic element is present at West Lake – more than any other U.S. nuclear weapons storage or disposal site.  Soil concentrations of radium-226 and thorium-230 are substantially greater than uranium mill tailing waste.  The waste residues generated at the Mallinckrodt site were found to contain the largest concentration of thorium-230 from any single source in the United States and possibly the world.  Thorium-230 concentrations were found to be some 25,000 greater than its natural isotopic abundance.  With a half-life of 77,500 years, thorium-230 makes up more than 80% of the measured radioactivity in soil at West Lake above cleanup limits set by the Department of Energy (DOE).  Moreover, as the thorium-230 decays to radium-226, it will increase the radioactivity in the Landfill 10 to 100 times over a 9,100 year period.[21]

61.     Because the Landfill was never properly designed to hold such wastes, the surrounding communities are now contaminated.  As Kaltofen reports:

> The St. Louis, MO, region legacy sites hosted war-time uranium ore processing activities that provided material for Enrico Fermi's first nuclear pile, the Manhattan Project, and the Cold War.  Uranium ore processing wastes from the Mallinckrodt plant in St. Louis, were disposed of around Greater St. Louis, MO, and are being redistributed by surface waters and by winds.[22]

62.     The inadequacies of the Landfill itself are described in the scientific literature as follows:

> Although the West Lake Landfill contains significant amounts of long-lived radiotoxic wastes such as those contained in federally licensed commercial radioactive waste Landfills, it meets virtually

---

[21]  Alvarez (2013) at p. 1 (footnotes and citations omitted).
[22]  Kaltofen (2016) at p. 104.

25

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

none of legal requirements governing shallow radioactive waste disposal to prevent off-site migration.[23]

63.    The data collected around the Landfill, as inadequate as it is, documents radioactive contamination of soil, water, and air.

> Onsite 226Ra concentrations in soils as high as 21,000 pCi/g were measured, compared to estimated background levels of 2 pCi/g. Elevated radium contents above the EPA's MCL of 5 pCi/l are also widespread in both the alluvial and bedrock aquifer within about 1500 feet of Areas 1 and Area 2. Airborne surveys established that external radiation levels exceeding 100μR/hr, while distal samples were <10 μR/hr. Levels recorded one meter above Area 2 were as high as 3-4 mR/hr, or as much as 400x higher than background. NRC reports that the subsequent addition of soil cover and construction debris to Areas 1 and 2 diminished these levels several fold.[24]

64.    The Landfill stopped accepting waste on December 31, 2004 and is now used as a transfer station for municipal wastes.

65.    The Landfill waste mass encompasses approximately 52 acres with approximately 240 feet below the ground's surface and a total waste thickness of 320 feet.

---

[23] Kaltofen (2016) at 104.
[24] Criss (2013) at 2 (citations omitted)

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

### Radioactive Waste at the West Lake Landfill

66.     Defendants caused or contributed to improper generation, handling, storage, and disposal of an estimated 500,000 cubic yards of radioactive wastes in the West Lake Landfill. As a result, about 15 acres of the West Lake Landfill are filled with radioactive waste at depths up to 20 feet.

67.     Upon information and belief, Defendants who operated the West Lake Landfill used the radioactive waste mixed with radioactive soil prepared by Cotter as daily cover in its Landfill operations thereby spreading the waste throughout the Landfill.

68.     Defendants did not take necessary safety precautions when disposing of and handling the radioactive wastes and radioactive soil to prevent off-site contamination.

69.     The staff of the West Lake and Bridgeton Landfills were neither qualified, nor trained to handle or dispose of radioactive wastes in a safe manner.

70.     The West Lake Landfill was not intended, nor designed to contain radioactive wastes.   In reality, West Lake Landfill is a chaotic pile of debris covered by unmanaged "natural vegetation, surrounded by a fence with radioactive [warning] signs." Given the significant design and operational deficiencies, experts contend that the West Lake Landfill is even unsuitable for ordinary domestic waste.[25]

### The Fire

71.     The Landfill has experienced problems with subsurface fires throughout its operational history.   Despite having past experiences with subsurface fires, sufficient

---

[25] Criss (2013) at 4.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

precautionary measures were not implemented to prevent future fires or to protect the radiologically contaminated areas from being affected.

72.     Upon information and belief, Landfill Defendants discovered high temperatures in several monitoring wells.  Landfill Defendants finally reported to authorities that the Landfill was experiencing high temperatures on extraction wells evidencing a subsurface smoldering event.

73.     Since then, the smoldering has intensified into a spreading subsurface fire evidenced by surface soil settlement, increased odors, elevated hydrogen levels, and high temperatures. High temperatures and smoke caused by the fire could mobilize radionuclides into the air and ultimately into soil, surface water, ground water.

74.     If the subsurface fire reaches the radioactively impacted portions of the West Lake Landfill, the hot gases from the fire will likely cause fissures in the overburden material. These fissures may allow additional quantities of radioactive radon gas to escape the Landfill and become deposited as Lead-210 onto Plaintiffs' property as it decays.

75.     A subsurface fire in the radioactively contaminated areas would be expected to create increased pressure conditions within the Landfill and force out entrained radioactive gases, including radon which is extremely toxic to breathe.  A subsurface fire may be present in the radioactively contaminated areas for a long period of time before it is detected, because the only apparent means to detect a subsurface smoldering event after closure is through annual visual inspections.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

76.     Another effect of a subsurface fire or smoldering event would be increased leachate production which has been observed in the Bridgeton Landfill from condensation of large amounts of steam.

77.     The literature describes the risk of the West Lake underground fire as follows:

> An underground fire is currently ongoing in the municipal Landfill (OU-2) that is immediately south of Area 1 of OU-1.  Such fires can burn for years, creating high underground temperatures, and releasing carbon monoxide, dioxins, VOCs and other noxious chemicals, and particulates into air.  Numerous people who reside near the Landfill complained about odor and health problems at the January 17, 2013 public meeting in Bridgeton.  Risks for adjacent, radionuclide-bearing OU-1 include but are not restricted to the following 1) fire can spread from OU-2 into OU-1, particularly because demolition and construction Landfills are known to have much higher risk than municipal Landfills; 2: subterranean fires can result in Landfills collapse, landslides and slumping, endangering personnel and exposing dangerous materials to the surface; 3) Landfill fires have high explosion risk because of methane, gas cylinders, and drums; 4) high temperatures and smoke could mobilize radionuclides into surface water, ground water and air.[26]

78.     There are at least two human exposure risk pathways that would exist from a subsurface smoldering event or subsurface fire reaching the radioactive materials. The first is the risk of people being subjected to increased air exposures to contaminants such as breathing in Radon gas, Radon-226. As airborne concentrations of Radon gas increase, so would the risk to the neighboring population of breathing in Radon gas and developing injuries such as lung cancers.  Additionally, as Radon gas decays it will become deposited onto people's property and in their homes as radioactive Lead-210 which would subject people to increased risk of internal

---

[26] Criss (2013) at 4-5 (citations omitted).

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

exposure to radioactive materials.  The second pathway is increased leachate production that could further move contaminants and radioactive materials into the groundwater.

79.     Despite these risks, the Landfill Defendants have allowed the subsurface fire to spread uncontrolled.

80.     From the start of the subsurface smoldering event and throughout the subsequent fire, Plaintiffs have regularly encountered noxious, putrid, and offensive odors on their property coming from the Landfill, which diminishes quality of life and results in lost property value.

**The Spread of Defendants' Nuclear Waste to Off-Site Businesses and Homes**

81.     Defendants have violated standards for protection against radiation.  Defendants' negligent generation, handling, storage, and disposal of radioactive wastes and radioactive soil as daily cover caused dangerous contaminants to be deposited in several areas throughout the Landfill site and to be highly susceptible to off-site migration of radioactive materials including Radon gas, radioactive particles, and radioactively-contaminated groundwater.

82.     An example of water impacts of the Landfill will put this in perspective.  Every day, the Landfill generates about 150,000 gallons of contaminated hazardous liquid waste.  In a doomed attempt to capture that waste, the Landfill Defendants installed a leachate collection system.  But the leachate collection system itself was inadequate and has resulted in spills, releases, and leaks that have contributed to the groundwater and surface water contamination in the area.

83.     Radiological and organic contamination was also detected in trees adjacent to and off-site from the Landfill in the vicinity of the Dailey Property.  The presence of radioactive contamination in the trees resulted from the uptake of off-site contamination from the Landfill.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

84.    Recent studies of the Landfill area document radioactive Radon gas emissions from the Landfill are falling out and contaminating soil.  Kaltofen reported the following:

> Levels of $^{210}$Pb in key samples were well above background activies, and were significantly out of secular equilibrium with other members of the uranium decay chain.   This is strong evidence that the $^{210}$Pb originated by decay of short-lived, fugitive radon gas that escaped the Landfill.[27]

85.    In addition recent studies of surface water runoff from the Landfill, particularly after heavy rains, document radioactive contaminated surface water runoff to off-site properties.[28]

86.    Critical to the legacy of radioactive particles contaminating the homes and communities surrounding the Landfill is that:

a)    The radioactive contamination has gone *off-site*, and

b)    The off-site radioactive contamination has the *fingerprint* (or profile) of the highly toxic African Congo Uranium ore that was processed by Mallinckrodt for the Manhattan Project in St. Louis and dumped at SLAPS, Latty Avenue and in and around the Landfill.

The fact of off-site radioactive contamination is documented in the historical and scientific literature.

---

[27]  Kaltofen (2016) at 110.
[28]  EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

87.    The contamination of the St. Louis communities surrounding Landfill was not limited to emissions directly from West Lake, it also occurred as a result of decades of careless and reckless hauling and storage of the wastes.  As reported in the historical literature:

> Careless management, inadequate containment, and slipshod transportation practices characterize the nuclear legacy of St. Louis and the Metro-East.  Nuclear weapons production has resulted in the contamination of the banks of the Missouri and Mississippi Rivers.[29]

88.    A recent study of wastes that have come from the Landfill and migrated off-site to contaminate local businesses and homes stated the following:

> Analysis of 287 soil, sediment and house dust samples collected in a 200 $km^2$ zone in northern St. Louis County, Missouri, establish that off-site migration of radiological contaminants from Manhattan Project-era uranium processing wastes has occurred in this populated area.[30]

### Concealment of Facts Related to Risk

89.    Republic and other Defendants through their silence have reassured the public and Plaintiffs that the Landfill has not contaminated nearby properties.  In particular, Republic and its representatives have made misrepresentations that were meant to assure Plaintiffs that:

a)   Any suspicion of off-site contamination from the Landfill are merely rumors "being spread by alarmists."[31]

---

[29]  DeGarmo (2006) at 113.
[30]  Marco Kaltofen et al, Tracking legacy radionuclides in St. Louis, Missouri, via unsupported $^{210}$Pb at 104-111, *Journal of Environmental Radioactivity*, Vol. 153 (2016) [hereinafter "Kaltofen (2016)"].
[31]  Jacob Barker, Radium above federal guidelines in groundwater near West Lake at 2, *St. Louis Today*, Dec. 17, 2014.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

b)  Its activities "should reassure the community that they are safe from and not being exposed to any risk from groundwater beneath West Lake Landfill."[32]

c)  The Landfill's neighbors, including the Plaintiffs "can rest assured that they are safe."[33]

d)  The fire and Landfill are both at a "managed state."[34]

e)  The waste at the Landfill presents no danger to public health.[35]

**Defendants' Radioactive Particles Contaminated the Plaintiffs' Property**

90.    The Dailey Property is contaminated by radioactive material.

91.    Samples taken on and around the Dailey Property confirm a highly elevated presence of radioactive particles in the soil and dust.

92.    Dust samples from inside the Dailey Home contain decay products of radioactive isotopes U-238, including Th-230, Ra-226 and Pb-210, which match the Mallinckrodt waste fingerprint (the African Uranium ore profile) identified in Kaltofen (2016). These dusts show levels of radioactive Th-230 at least two hundred times above background.

93.    The Dailey Property neighbors the West Lake Landfill.  This proximity puts the Dailey Property in the direct path of radioactive air emissions, radioactive particles distributed by the wind blowing such contamination off the site in dirt and dust, Radon gas, and frequent offensive odors; all of which emanate from the West Lake Landfill.

---

[32]  *Id.*
[33]  Jacob Barker, Frustration with EPA handling of West Lake growing at 5, *St. Louis Today*, Jan. 3, 2015.
[34]  *Frustration with EPA handling of West Lake growing*, Jacob Barker, St. Louis Today, January 3, 2015 at p. 5.
[35]  *Id.*

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

94.    The Kaltofen (2016) published scientific paper identified "strong evidence of short lived fugitive radon gas that escaped from the landfill."[36]  These air emissions fall out to soil and dust as $^{210}$Pb, a highly radioactive isotope.

95.    It is also clear that radioactive material will be distributed from the Landfill "by surface water and winds."[37]  The surface water runoff threat is heightened during periods of high rainfall and flooding, and has been documented.[38]

96.    Frequent offensive odors from the Landfill are experienced by Plaintiffs.

97.    These various forms of radioactive contamination (soil, dust, and Radon gas) that have polluted the Dailey Property and continue to threaten to further pollute the Dailey Property match the Mallinckrodt waste fingerprint (or profile).

98.    This radioactive contamination on Plaintiffs' property migrated from the Landfill (and was spilled during transport to the Landfill).  The contamination was caused by the Defendants' improper generation, handling, storage, and disposal of radioactive materials.

99.    Radioactive contamination of the Dailey Property and frequent offensive odors renders the Dailey Property unfit for normal use and enjoyment, and diminishes its fair market value.

## COUNT I - TRESPASS

100.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

---

[36] Kaltofen (2016) at 111.
[37] Kaltofen (2016) at 104.
[38] EPA Finds Radiation in West Lake Landfill Runoff, *CBS St. Louis*, May 26, 2016, http://stlouis.cbslocal.com2016/05/26/epa-finds-radiation-inwestlake-landfill-runoff.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

101.    Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 9 above.

102.    Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

103.    Landfill Defendants store and/or transport radioactive materials and other toxic and hazardous wastes on their property.

104.    Radioactive Waste Generator Defendants generated massive quantities of extremely dangerous radioactive wastes and failed to ensure of its proper disposal.

105.    Radioactive Waste Disposer Defendants purchased massive quantities of highly toxic radioactive wastes and failed to properly dispose of these wastes.  The Radioactive Waste Disposer Defendants intentionally, maliciously, and wantonly disposed of radioactive wastes at a facility unfit to handle such wastes.

106.    Landfill Defendants have used these radioactive materials in a manner that is unreasonable, unlawful, malicious, and wanton, resulting in an invasion of Plaintiffs' property.

107.    Landfill Defendants have caused these radioactive materials to migrate from Defendants' property and contaminate Plaintiffs' property.

108.    Landfill Defendants willfully, wantonly, and maliciously caused the emission of Radon gas, and radioactive particles onto and around Plaintiffs' property through their Landfill operations.

109.    It was reasonably foreseeable that Defendants' actions would and will continue to contaminate Plaintiffs' property with radioactive particles and other hazardous wastes.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

110.    The migration of Radon gas and radioactive particles from Landfill Defendants' property onto Plaintiffs' property has resulted and continues to result in direct physical interference with Plaintiffs' property.  Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

111.    Plaintiffs did not give Defendants permission or consent to interfere with their property in this manner.  Through Defendants' actions and inactions, they are illegally and improperly using Plaintiffs' property to store radioactive wastes.

112.    The contamination of Plaintiffs' property with Radon gas and radioactive particles, and other hazardous wastes, has resulted in significant damage to the property.

113.    As a direct and proximate cause of this continuing and recurring physical interference, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

### COUNT II – PERMANENT NUISANCE

114.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

115.    Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 9 above.

116.    Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

117.    Defendants unreasonably and unlawfully stored and used radioactive materials at the Landfill, which adjoins Plaintiffs' property.

36

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

118.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

119.    The Landfill and the radioactive waste that the Landfill contains are a permanent construction that is necessarily injurious to Plaintiffs as installed.  It is not practical or possible to abate the presence of the Landfill or the radioactive waste stored there.

120.    Operating an unlicensed radioactive hazardous waste dump in a populated area is a nuisance *per se*.

121.    Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of Radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.  Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

122.    Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

123.    Landfill Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of noxious, offensive odors and various hazardous substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of the property.

124.    Landfill Defendants' continuous and unrelenting noxious odors invading Plaintiffs' property causes inconvenience to Plaintiffs and prevents them from using the property.

37

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

125.    As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered permanent injury, including decreased property value.

## COUNT III – TEMPORARY NUISANCE

126.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

127.    Plaintiffs Michael Dailey and Robbin Dailey own and control the Dailey Property located at 3550 El Ferrol Court, more particularly described in Paragraph 9 above.

128.    Landfill Defendants own and control property located at the Bridgeton and West Lake Landfills, which adjoins Plaintiffs' property.

129.    Defendants unreasonably and unlawfully store and use radioactive materials at the Landfill, which adjoins Plaintiffs' property.

130.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

131.    The Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of Radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their property.  Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

132.    Defendants' interference with Plaintiffs' use and enjoyment of the property is substantial.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

133.    Landfill Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of noxious, offensive odors and various hazardous substances into the surrounding air resulting in unreasonable interference with Plaintiffs' use and enjoyment of the property.

134.    Landfill Defendants' use of the Landfill causes frequent and unrelenting noxious odors to invade Plaintiffs' property and prevents Plaintiffs from using the property.

135.    As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT IV – NEGLIGENCE

136.    Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

137.    Radioactive isotopes (including Uranium-238, Radium-226, and Thorium-230) are known human carcinogens and are among the most toxic materials known to man.  When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years.  Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind.  Exposures to radioactive wastes should be as low as is reasonably achievable.

138.    Knowing of the grave dangers posed by their wastes and operations, the Radioactive Waste Defendants owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and disposal of the radioactive wastes generated and owned by defendants in order to prevent significant injury to property and persons.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

139.    The Radioactive Waste Generator and Disposer Defendants were negligent in failing to ensure that the mill tailings wastes were safely disposed of at an appropriate facility. These Defendants negligently disposed of these mill tailings at a landfill located in a residential area that was not capable of safely and properly disposing of radioactive materials. The Landfill was not properly licensed, nor configured, nor staffed to handle the disposal of radioactive wastes. Upon information and belief some of the Radioactive Waste Defendants negligently encouraged the Landfill operators to use the radioactive wastes which were mixed with contaminated soil as daily cover.

140.    As a direct and proximate result of the Radioactive Waste Generator and Disposer Defendants' failure to ensure that the mill tailings were properly disposed of at an appropriate facility, Plaintiffs have suffered and continue to suffer injury due to the radioactive contamination of their property, including diminished property value.

141.    The Landfill Defendants owed a duty to the Plaintiffs to operate the Landfill in a safe, legal, and reasonable manner so as not to contaminate and interfere with surrounding properties. The Landfill Defendants owed a duty not to accept radioactive wastes for which they were not licensed or qualified to handle. After accepting radioactive wastes, the Landfill defendants had a duty to safely handle, store and/or dispose of the radioactive wastes in order to prevent significant injury to property and persons.

142.    Landfill Defendants were negligent in the construction, design, operating and maintenance of the Landfill.

143.    The Landfill Defendants negligently accepted mill tailings when the Landfill was not designed, nor staffed to handle the disposal of radioactive wastes. The negligent design and

40

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

maintenance of the Landfill by Landfill Defendants failed to prevent the release of Radon gas and radioactive particles and hazardous and toxic wastes onto surrounding properties in excess of guidelines.

144.    Upon information and belief, Landfill Defendants' negligent training of personnel handling radioactive, toxic, and hazardous materials on site was a direct and proximate cause of damage to Plaintiff's property.

145.    Landfill Defendants' negligent use of radioactive wastes mixed with radioactive soil as daily cover spread contamination into a broader area and prevented Defendants and regulators from knowing the location of these dangerous wastes.   The negligent use of radioactive materials as daily cover in an unlined Landfill resulted in contamination of the groundwater underlying the Landfill and surrounding properties.

146.    Landfill Defendants were negligent in failing to prevent the subsurface fire. Defendants should have implemented adequate practices with respect to gas extraction to avoid subsurface fires after they initially dealt with problems with smoldering events and increased subsurface temperatures in the 1990's.   The subsurface fire along with the resulting noxious odors and increased risk of significant Radon gas emissions are a direct and proximate result of the Landfill Defendants' negligence in the operation of the Landfill.   Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

147.    Defendants' collective negligence throughout the history of the mishandling and improper dumping of radioactive wastes in the St. Louis area has resulted in repeated releases of Radon gas and radioactive particles and other hazardous materials as well as offensive odors onto Plaintiffs' property, in disregard of applicable regulations and property rights.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

148. Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors.  Defendant's negligence diminished Plaintiffs' property value.

149. The injuries sustained by Plaintiffs are of the kind that do not occur without negligence.

150. Plaintiffs' injuries were the result of wastes generated, disposed of, and controlled by Defendants.

151. Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

## COUNT V – NEGLIGENCE PER SE

152. Plaintiffs re-allege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

153. The Radioactive Waste Generator and Disposer Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, and the Missouri Hazardous Waste Management regulations, 10 C.S.R. 25-5.262, both of which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

154. Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation and Hazardous Waste Management were meant to protect.

155. The contamination of Plaintiffs' land is the kind of injury that the regulations for protection against ionizing radiation were designed to prevent.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

156.    The Radioactive Waste Generator and Disposer Defendants' violations of the regulations for Protection against Ionizing Radiation and Hazardous Waste Management were the proximate cause of Plaintiffs' injuries.

157.    The Landfill Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, Missouri Solid Waste Management Law and Regulations, 10 C.S.R. 80-2.020(1)(F), 80-3.010(3)(A)(2), 80-3.010(3)(B)(1), 80-3.010(8)(A), 80-3.010(9)(C)(2), 80-3.010(13)(C), 80-3.010(14)(C), 80-3.010(19)(A), 10 CSR 80-3.010(19)(C)(7); Mo. Rev. Stat. §§ 260.210.1(4), 260.380(1); Missouri Clean Water Act, Mo. Rev. State. § 644.051.1, and Missouri Air Conservation regulations, 10 C.S.R. 10-6.165, all of which require the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

158.    Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were intended to protect

159.    The contamination of Plaintiffs' land is the kind of injury that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, Missouri Hazardous Waste Management Law, and Missouri Air Conservation regulations were designed to prevent.

160.    The Landfill Defendants' violations of Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were the proximate cause of Plaintiffs' injuries.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

161.    Defendants' collective negligence throughout the history of the mishandling and improper dumping of radioactive wastes in the St. Louis area has resulted in repeated releases of Radon gas and radioactive particles and other hazardous materials as well as offensive odors onto Plaintiffs' property in violation of applicable regulations and disregard for property rights.

162.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances and noxious odors. Defendant's negligence diminished Plaintiffs' property value.

163.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

**COUNT VI - STRICT LIABILITY**

164.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

165.    Radioactive Waste Generator Defendants, Radioactive Waste Disposer Defendants, and Landfill Defendants engage in the abnormally dangerous activity of generating, handling, storing, and/or disposing of radioactive waste.

166.    By generating, handling, storing, and/or disposing of radioactive waste, Defendants have created and continue to create a high degree of risk of harm to Plaintiffs' property.

167.    Defendants have intentionally failed to eliminate the risk of harm caused by their generating, handling, storing, and/or disposing of radioactive waste.

168.    As a direct result of Defendants' abnormally dangerous activities, Plaintiffs' property was contaminated with radioactive materials and they suffered and continue to suffer

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

injury, including diminished property value.  Such contamination is incompatible with the normal use and enjoyment of the Dailey Property.

169.    Plaintiffs' injuries are of the kinds that result from the dangerous nature of generating, handling, storing, and/or disposing of radioactive waste.

170.    The injuries that Defendants' generating, handling, storing, and/or disposing of radioactive waste have caused Plaintiffs to suffer, drastically outweigh the value of the Landfill.

171.    Accordingly, Defendants are jointly and severally liable for any and all damages Plaintiffs have sustained as a result of their strict liability for generating, handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental or consequential damages.

## COUNT VII - MEDICAL MONITORING

172.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

173.    Defendants have tortiously contaminated the Dailey Home with radioactive cancer-causing materials such as Uranium and Thorium.  The levels of radioactive isotopes in the dust in the Dailey Home are many times greater than applicable safety guidelines for soil and dust.

174.    The Defendants' tortious acts threaten the safety and normal use and enjoyment of the Dailey Home.

175.    The radioactive contamination of the Home has caused a significant increased risk to Mr. and Mrs. Dailey, and therefore Plaintiffs are in need of a thorough scientific evaluation of the radioactive contaminant levels throughout the Dailey Home and the Dailey Property.

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

176.     The need for such an evaluation is a direct consequence of the Defendants'
tortious conduct, and does not arise from the innocent conduct of the homeowners.

177.     Therefore Plaintiffs seek injunctive and equitable relief to require the Defendants
to conduct the necessary scientific evaluation of the Dailey Home and Property, consistent with
contemporary scientific principles.  Plaintiffs seek injunctive and equitable relief to require the
Defendants to respond to the consequences of this tortious contamination by providing the
necessary medical monitoring in the form of environmental testing, clean-up, and medical tests
as indicated by the results of the scientific evaluation.

178.     Plaintiffs seek this injunctive and equitable relief either in the form of an
injunction requiring the Defendants to conduct the necessary monitoring themselves, or in the
form of a court-ordered and court-supervised fund (with a court-appointed trustee if the court
deems that appropriate) to provide for the necessary monitoring.

179.     Such injunctive and equitable relief will decrease the radioactive contamination
risks of the Dailey Home and the Dailey Property, decrease the interference with the use and
enjoyment of the Dailey Home, and further mitigate Plaintiffs' damages.

**WHEREFORE**, as to each Count, and all Counts, Plaintiffs Michael Dailey and Robbin
Dailey pray for judgment in favor of Plaintiffs and against Defendants Bridgeton Landfill, LLC,
Republic Services, Inc., Allied Services, L.L.C., Rock Road Industries, Inc., MI Holdings, Inc.,
Mallinckrodt, Inc., Cotter Corporation, Commonwealth Edison Company, and Exelon
Corporation, as well as awarding the following to Plaintiffs and against Defendants:

      a.   an award of actual, general, special, incidental, statutory, compensatory and
          consequential damages in an amount to be proven at trial, including compensatory

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

damages for the loss and use of enjoyment of Plaintiffs' property; annoyance and discomfort; damage to Plaintiffs' personal property; the diminution in the market value of Plaintiffs' property; as well as the costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation;

b.   an award of double damages for malicious trespass as provided for under Mo. Rev. Stat. § 537.330;

c.   an award of punitive and exemplary damages as fair and reasonable in an amount sufficient to punish Defendants and to deter similar conduct in the future;

d.   costs and attorney fees;

e.   interest on the above amounts as allowed by law;

f.   for appropriate injunctive and equitable relief, including medical monitoring; and

g.   for any further relief this Court deems just and proper.

Dated:  November 15, 2016

Respectfully submitted,

*/s/ Daniel T. DeFeo*
Daniel T. DeFeo (Mo. Bar No. 35161)
DeFeo & Kolker, LLC
1627 Main Street
Suite 801
Kansas City, Missouri 64108

Richard S. Lewis
Michaela Spero
Hausfeld LLP
1700 K Street, NW
Suite 650
Washington, DC 20006

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

Michael Stag
Smith Stag, LLC
One Canal Place
365 Canal St. #2850
New Orleans, LA 70130

Barry J. Cooper, Jr.
Cooper Law Firm, L.L.C.
508 St. Philip Street
New Orleans, LA 70116

Winston Calvert (Mo. Bar No. 57421)
W. Calvert, LLC
7700 Bonhomme Avenue, Suite 350
St. Louis, MO 63105

Steven J Stolze (Mo. Bar No. 39795)
Holland Law
300 N Tucker, Suite 800
St Louis, MO 63102

**16SL-CC04240**

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**

As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓   You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.
✓   Type or neatly print in black ink.
✓   Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:
      Corporation – Include the full name of the corporation.
      Government Agency – Use only the full name or standard abbreviations.
      Government Official – Identify the Agency and then the official, giving both title and name.
✓   NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey                                vs Bridgeton Landfill, LLC
                1st Plaintiff        1                              st Defendant

**Fill in the two-letter Case Type code from the back of this form here:** _TG_ (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?**    YES   (NO)
                                                                                            Circle one

**PARTIES**   (attach a separate sheet to include additional parties)

Party Type: _Plaintiff_                          *(i.e. Plaintiff, etc.)*

Last Name: _Dailey_                   First Name: _Michael_

Middle Name: _____        Address: _3550 El Ferrol Court_

City: _Bridgeton_                     State: _MO_               Zip: _63044_

DOB: _12/20/1952_                     SSN: _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_
                                                  *required*

Party Type: _Plaintiff_                          *(i.e. Plaintiff, Defendant, etc.)*

Last Name: _Dailey_                   First Name: _Robbin_

Middle Name: _____        Address: _3550 El Ferrol Court_

City: _Bridgeton_                     State: _MO_               Zip: _63044_

DOB: _10/30/1955_                     SSN: _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_
                                                  *required*

_Daniel T. DeFeo_                   _35161_        _DeFeo & Kolker, LLC_
Attorney of Record Filing Action    Bar #         Firm

_1627 Main Street, Suite 801; Kansas City, MO 64108_
Address/City/State/Zip Code

_(816) 581-4600_          _(816) 581-4646_              _ddefeo@defeokolker.com_
Phone Number      F       ax Number      E-mail            address

_Daniel T DeFeo_
Signature of Person Filing

CCCDT222 – JIS                                          Revised 08/12

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**
As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓ You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.
✓ Type or neatly print in black ink.
✓ Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:
  Corporation – Include the full name of the corporation.
  Government Agency – Use only the full name or standard abbreviations.
  Government Official – Identify the Agency and then the official, giving both title and name.
✓ NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey _____ vs Bridgeton Landfill, LLC _____
1st Plaintiff    1                    1st Defendant

**Fill in the two-letter Case Type code from the back of this form here:** TG _____ (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?** YES   NO
Circle one

**PARTIES** (attach a separate sheet to include additional parties)

Party Type: Defendant _____ (i.e. Plaintiff, etc.)

Last Name: Bridgeton Landfill, LLC _____ First Name: _____

Middle Name: _____ Address: 120 South Central Avenue _____

City: Clayton _____ State: MO _____ Zip: 63105 _____

DOB: _____ SSN: _____
                                **required**

Party Type: Defendant _____ (i.e. Plaintiff, Defendant, etc.)

Last Name: Republic Services, Inc. _____ First Name: _____

Middle Name: _____ Address: 2390 E. Camelback Road _____

City: Phoenix _____ State: AZ _____ Zip: 85016 _____

DOB: _____ SSN: _____
                                **required**

Daniel T. DeFeo _____ 35161 _____ DeFeo & Kolker, LLC _____
Attorney of Record Filing Action    Bar #         Firm

1627 Main Street, Suite 801; Kansas City, MO 64108 _____
Address/City/State/Zip Code

(816) 581-4600 _____ (816) 581-4646 _____ ddefeo@defeokolker.com _____
Phone Number      F    ax Number   E-mail           address

_Signature of Person Filing_

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**

As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓   You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.

✓   Type or neatly print in black ink.

✓   Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:

   Corporation – Include the full name of the corporation.

   Government Agency – Use only the full name or standard abbreviations.

   Government Official – Identify the Agency and then the official, giving both title and name.

✓   NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey _____ vs Bridgeton Landfill, LLC _____
    1st Plaintiff    1                    1st Defendant

**Fill in the two-letter Case Type code from the back of this form here:** TG    (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?**   YES  (NO)
                                                                                          Circle one

**PARTIES**   (attach a separate sheet to include additional parties)

Party Type: Defendant _____    *(i.e. Plaintiff, etc.)*

Last Name: Allied Services, LLC    First Name: _____

Middle Name: _____    Address: 120 South Central Avenue

City: Clayton    State: MO    Zip: 63105

DOB: _____    SSN: _____
                                    *required*

Party Type: Defendant _____    *(i.e. Plaintiff, Defendant, etc.)*

Last Name: Rock Road Industries, Inc.    First Name: _____

Middle Name: _____    Address: 120 South Central Avenue

City: Clayton    State: MO    Zip: 63105

DOB: _____    SSN: _____
                                    *required*

Daniel T. DeFeo _____    35161 _____    DeFeo & Kolker, LLC _____
Attorney of Record Filing Action    Bar #    Firm

1627 Main Street, Suite 801; Kansas City, MO 64108 _____
Address/City/State/Zip Code

(816) 581-4600 _____    (816) 581-4646 _____    ddefeo@defeokolker.com _____
Phone Number    F    ax Number    E-mail    address

*(signature)*
Signature of Person Filing

CCCDT222 – JIS                                                    Revised 08/12

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**
As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓ You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.
✓ Type or neatly print in black ink.
✓ Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:
    Corporation – Include the full name of the corporation.
    Government Agency – Use only the full name or standard abbreviations.
    Government Official – Identify the Agency and then the official, giving both title and name.
✓ NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey _____ vs Bridgeton Landfill, LLC _____
 1st Plaintiff          1st Defendant
**Fill in the two-letter Case Type code from the back of this form here:** TG (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?** YES (NO) Circle one

**PARTIES** (attach a separate sheet to include additional parties)

Party Type: Defendant _____ (i.e. Plaintiff, etc.)
Last Name: MI Holdings, Inc. _____ First Name: _____
Middle Name: _____ Address: 120 South Central Avenue
City: Clayton _____ State: MO _____ Zip: 63105
DOB: _____ SSN: _____
                                    *required*

Party Type: Defendant _____ (i.e. Plaintiff, Defendant, etc.)
Last Name: Mallinckrodt, Inc. _____ First Name: _____
Middle Name: _____ Address: 120 South Central Avenue
City: Clayton _____ State: MO _____ Zip: 63105
DOB: _____ SSN: _____
                                    *required*

Daniel T. DeFeo _____ 35161 _____ DeFeo & Kolker, LLC _____
Attorney of Record Filing Action   Bar #        Firm

1627 Main Street, Suite 801; Kansas City, MO 64108 _____
Address/City/State/Zip Code

(816) 581-4600 _____ (816) 581-4646 _____ ddefeo@defeokolker.com
Phone Number    F        ax Number    E-mail         address

Signature of Person Filing

CCCDT222 – JIS                                    Revised 08/12

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**

As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓ You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.
✓ Type or neatly print in black ink.
✓ Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:
  Corporation – Include the full name of the corporation.
  Government Agency – Use only the full name or standard abbreviations.
  Government Official – Identify the Agency and then the official, giving both title and name.
✓ NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey _____ vs Bridgeton Landfill, LLC _____
          1st Plaintiff       1                   1st Defendant

**Fill in the two-letter Case Type code from the back of this form here:**  TG  (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?**    YES   (NO)
                                                                          Circle one

**PARTIES**  (attach a separate sheet to include additional parties)

Party Type: Defendant _____  (i.e. Plaintiff, etc.)

Last Name: Cotter Corporation _____  First Name: _____

Middle Name: _____  Address:  7700 E. Arapahoe Road, Suite 220 _____

City: Centennial _____  State: CO _____  Zip: 80112 _____

DOB: _____  SSN: _____
                                         **required**

Party Type: Defendant _____  (i.e. Plaintiff, Defendant, etc.)

Last Name: Commonwealth Edison Company  First Name: _____

Middle Name: _____  Address:  350 S. Northwest Highway, Suite 300 ____

City: Park Ridge _____  State: IL _____  Zip: 60068 _____

DOB: _____  SSN: _____
                                         **required**

Daniel T. DeFeo _____  35161 ____  DeFeo & Kolker, LLC _____
Attorney of Record Filing Action     Bar #       Firm

1627 Main Street, Suite 801; Kansas City, MO 64108 _____
Address/City/State/Zip Code

(816) 581-4600 _____  (816) 581-4646 _____  ddefeo@defeokolker.com _____
Phone Number      F              ax Number   E-mail              address

_Daniel T DeFeo_
Signature of Person Filing

CCCDT222 – JIS                                             Revised 08/12

Electronically Filed - St Louis County - November 15, 2016 - 03:04 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI
## CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET

**INSTRUCTIONS FOR COMPLETING THE CIRCUIT CIVIL/ASSOCIATE CIVIL FILING INFORMATION SHEET:**

As part of our reporting requirements to the Missouri Supreme Court and the Office of the State Court Administrator, you are required to complete and submit this information sheet at the time you file your cause of action. Your cause of action will not be accepted and/or processed unless it is accompanied by this information sheet at the time of filing. The person, or attorney, filing the cause of action should the complete the form as follows:

✓ You must provide the following information below for the purpose of initiating case processing. SSN is **required** if the party is a person; exception can only be granted if the information is not reasonably available.
✓ Type or neatly print in black ink.
✓ Plaintiff(s)/Defendant(s): Enter the full names (last, first, middle initial) of plaintiff(s) and defendant(s). If the plaintiff or defendant is a:
   Corporation – Include the full name of the corporation.
   Government Agency – Use only the full name or standard abbreviations.
   Government Official – Identify the Agency and then the official, giving both title and name.
✓ NOTE: If there are multiple counts in the petition that are considered in two or more categories, it is the responsibility of the filing party to choose the one appropriate Case Type code. The assignment of the case is subject to review by the Presiding Judge. Based on that review, the case may be reassigned.

**CASE HEADING:** Michael Dailey _____ vs Bridgeton Landfill, LLC _____

1st Plaintiff   1   1st Defendant

**Fill in the two-letter Case Type code from the back of this form here:** TG (one code only).

**Does this case result from the alleged REFUSAL to take a Blood or Breathalyzer test?** YES (NO)

Circle one

**PARTIES** (attach a separate sheet to include additional parties)

Party Type: Defendant _____ (i.e. Plaintiff, etc.)

Last Name: Exelon Corporation _____ First Name: _____

Middle Name: _____ Address: 350 S. Northwest Highway, Suite 300 _____

City: Park Ridge _____ State: IL _____ Zip: 60068 _____

DOB: _____ SSN: _____

*required*

Party Type: _____ (i.e. Plaintiff, Defendant, etc.)

Last Name: _____ First Name: _____

Middle Name: _____ Address: _____

City: _____ State: _____ Zip: _____

DOB: _____ SSN: _____

*required*

Daniel T. DeFeo _____ 35161 _____ DeFeo & Kolker, LLC _____
Attorney of Record Filing Action   Bar #   Firm

1627 Main Street, Suite 801; Kansas City, MO 64108 _____
Address/City/State/Zip Code

(816) 581-4600 _____ (816) 581-4646 _____ ddefeo@defeokolker.com _____
Phone Number   Fax Number   E-mail
F   ax Number   E-mail   address

Signature of Person Filing

Revised 08/12