**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL DAILEY and ROBBIN DAILEY, | |
| Plaintiffs, | |
| v. | No. 4:22-cv-00116-CDP |
| BRIDGETON LANDFILL, LLC, ROCK ROAD INDUSTRIES, INC., REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, and COTTER CORPORATION (N.S.L.), | |
| Defendants. | |

**DEFENDANT COTTER CORPORATION (N.S.L.)'S**
**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
Jennifer Steeve, #308082CA
Nacenté Seabury, #67248MO
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
jsteeve@rshc-law.com
nseabury@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT**
**COTTER CORPORATION (N.S.L.)**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 6

II.     LEGAL STANDARD ......................................................................................... 7

III.    ARGUMENT ...................................................................................................... 8

    A.      The Price-Anderson Act Creates Broad Original Jurisdiction. ............................... 8

    B.      Plaintiffs Assert Public Liability Under the Price-Anderson Act. ......................... 9

    C.      Cotter's Removal Is Procedurally Proper. ............................................................. 10

        1.      The Rule of Unanimity Does Not Apply. .................................................. 10

        2.      Removal Was Timely and Proper. ............................................................. 12

    D.      Plaintiffs' Claims Arise Out of or Result from "Source Material." ...................... 15

        1.      Plaintiffs' Own Complaint Alleges That Their Claims Arise Out of or Result from "Source Material." ................................................................. 15

        2.      The Eighth Circuit Held These Allegations Broadly Arise Out of or Result from "Source Material." ................................................................. 16

        3.      Expert Testimony Confirms These Allegations Arise Out of or Result from "Source Material." ............................................................................. 17

        4.      Cotter's Testimony Concerns *Licensable* Source Material. ..................... 18

    E.      Applying the Price-Anderson Act Here Does Not Violate Due Process. .............. 19

    F.      Applying the Price-Anderson Act Here Does Not Lead to Absurd Results. ........ 20

IV.     CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banks et al. v. Cotter Corp. et al.*,
   No. 4:20-cv-01227-JAR ..................................................................................12, 13, 14

*Bell v. Hershey Co.*,
   557 F.3d 953 (8th Cir. 2009) ..................................................................................7

*Beneficial Nat'l Bank v. Anderson*,
   539 U.S. 1 (2003) ..................................................................................8

*Breuer v. Jim's Concrete of Brevard, Inc.*,
   538 U.S. 691 (2003)..................................................................................7

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ..................................................................................15

*Butler et al. v. Mallinckrodt LLC et al.*,
   No. 4:18-cv-01701-AGF ..................................................................................14

*Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004) ..................................................................................11

*Casey v. F.D.I.C.*,
   583 F.3d 586 (8th Cir. 2009) ..................................................................................10, 11

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987)..................................................................................6

*In re Cotter (N.S.L.)*,
   22 F.4th 788 (8th Cir. 2022) .................................................................... *passim*

*Craft v. Philip Morris Companies, Inc.*,
   2006 WL 744415 (E.D. Mo. March 17, 2006) ..................................................................................13

*Creasy v. Coleman Furniture Corp.*,
   763 F.2d 656 (4th Cir. 1985) ..................................................................................11

*Cutrone v. Mortg. Elec. Regis. Sys., Inc.*,
   749 F.3d 137 (2d Cir. 2014)..................................................................................14

*Dahl v. R.J. Reynolds Tobacco Co.*,
   478 F.3d 965 (8th Cir. 2007) ..................................................................................12, 13

*Dailey v. Bridgeton Landfill, LLC*,
   299 F. Supp. 3d 1090 (E.D. Mo. 2017)...................................................................5

*Dailey v. Bridgeton Landfill, LLC*,
   No. 4:17 CV 24 CDP, 2020 WL 1332093 (E.D. Mo. Mar. 23, 2020)..............................14, 18

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014)......................................................................................7

*Davis v. Time Ins. Co.*,
   698 F. Supp. 1317 (S.D. Miss. 1988)....................................................................8

*Doe v. Am. Red Cross*,
   14 F.3d 196 (3d Cir. 1993)..........................................................................12, 13

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
   438 U.S. 59 (1978)..................................................................................8, 20

*Durham v. Lockheed Martin Corp.*,
   445 F.3d 1247 (9th Cir. 2006) ........................................................................11

*El Paso Nat. Gas Co. v. Neztsosie*,
   526 U.S. 473 (1999)....................................................................................8

*Erhart v. Bayer, Corp.*,
   No. 4:17-CV-1996-SNLJ, 2017 WL 4280635 (E.D. Mo. Sept. 27, 2017) ..............................13

*Fritsch v. Swift Trans. Co. of Ariz., LLC*,
   899 F.3d 785 (9th Cir. 2018) .........................................................................13

*Gibson v. Clean Harbors Env't Servs.*,
   840 F.3d 515 (8th Cir. 2016) .........................................................................14

*Green v. R.J. Reynolds Tobacco Co.*,
   274 F.3d 263 (5th Cir. 2001) .....................................................................12, 13

*Halbrook v. Mallinckrodt, LLC*,
   888 F.3d 971 (8th Cir. 2018) ......................................................................6, 9, 10

*In re Hanford Nuclear Reservation Litig.*,
   534 F.3d 986 (9th Cir. 2007) ..........................................................................9

*Humphries v. Elliott Co.*,
   760 F.3d 414 (5th Cir. 2014) .........................................................................11

*Kitchin et al. Bridgeton Landfill, LLC*,
   No. 4:18-cv-00672-CDP ................................................................................14

*Mazzocchio et al. v. Cotter Corp. et al.*,
    No. 4:22-cv-00292-MTS .................................................................................14

*McClurg v. MI Holdings, Inc.*,
    933 F. Supp. 2d 1179 (E.D. Mo. 2013)............................................................5

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
    163 F.3d 449 (7th Cir. 1998) ...........................................................................6

*Nasuti v. Scannell*,
    906 F.2d 802 (1st Cir. 1990) ..........................................................................13

*Osborn v. Haley*,
    549 U.S. 225 (2007).........................................................................................13

*Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*,
    40 F. Supp. 3d 437 (E.D. Pa. 2014) .................................................................9

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
    461 U.S. 190 (1983)...........................................................................................8

*Pettitt v. Boeing Co.*,
    606 F.3d 340 (7th Cir. 2010) .........................................................................11

*Pirozzi v. Massage Envy Franchising, LLC*,
    938 F.3d 981 (8th Cir. 2019) .........................................................................14

*Pudlowski v. The St. Louis Rams, LLC*,
    829 F.3d 963 (8th Cir. 2016) ...........................................................................7

*R & B Appliance Parts, Inc. v. Amana Co., L.P.*,
    258 F.3d 783 (8th Cir. 2001) ...........................................................................9

*Sullivan v. Am. Airlines, Inc.*,
    424 F.3d 267 (2d Cir. 2005)...........................................................................16

*In re TMI Litig. Cases Consol. II*,
    940 F.2d 832 (3d Cir. 1991).................................................................8, 9, 18

*Van Bebber v. Dignity Health*,
    No. 1:19-CV-00264-DAD-EPG, 2019 WL 4127204 (E.D. Cal. Aug. 30, 2019)....................14

**Statutes**

28 U.S.C. § 1441 ..............................................................................................7

28 U.S.C. § 1441(a) ....................................................................................6, 11

28 U.S.C. § 1446(b) .............................................................................11, 12, 14

28 U.S.C. § 1446(b)(2)(A) ........................................................................................11

28 U.S.C. § 1446(b)(3) .......................................................................................12, 13,

42 U.S.C. § 2012(i) ...................................................................................................9

42 U.S.C. § 2014(hh) .............................................................................6, 9, 10, 17

42 U.S.C. § 2014(q) ........................................................................6, 9, 10, 17, 20

42 U.S.C. § 2014(w) ..............................................................................6, 9, 10, 17

42 U.S.C. § 2092 .................................................................................................18, 19

42 U.S.C. § 2210 ...........................................................................6, 9, 10, 11, 20

42 U.S.C. § 2210(n)(2) .....................................................................................11, 20

Pub. L. No. 112–63, 125 Stat. 758 ..................................................................11

**Other Authorities**

10 C.F.R. § 2.200 .........................................................................................................20

10 C.F.R. § 20.106 .......................................................................................................20

10 C.F.R. § 20.301 .......................................................................................................20

10 C.F.R. § 40.4 ....................................................................................................15, 19

10 C.F.R. § 40.13(a) ..............................................................................................18, 19

Wright & Miller, 14C Fed. Prac. & Proc. § 3730 (4th ed.) ...........................11

Fed. R. Civ. P. 30(b)(6) .............................................................................................19

S. Rep. 85-296 (1957), 1957 U.S.C.C.A.N. 1803 ..................................................20

## I.      INTRODUCTION

Plaintiffs' motion for remand should be denied because this Court has broad "arising under" federal jurisdiction over this action under the Price-Anderson Act ("PAA"), 42 U.S.C. §§ 2210, *et seq.*  The PAA deems any lawsuit "arising out of or resulting from a nuclear incident"—broadly defined as "any occurrence" causing bodily injury or property damage "arising out of or resulting from the radioactive . . . or other hazardous properties of source, special nuclear, or byproduct material"—to be an action "arising under" federal law.  42 U.S.C. §§ 2014(w), (q), (hh).  Plaintiffs' claims admittedly arise out of and result from Manhattan Project radioactive source material that Cotter last possessed at Latty Avenue.  Thus, this Court has original jurisdiction over this action.

Indeed, the Eighth Circuit has held twice in related litigation that the PAA provides federal question jurisdiction over the claims against Cotter.  *In re Cotter (N.S.L.)*, 22 F.4th 788, 793 (8th Cir. 2022); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 (8th Cir. 2018).  As correctly interpreted by this Court, the Eighth Circuit "held that the particular facts upon which these Westlake Landfill radioactive-contamination cases are based fall with the PAA's definition of a 'nuclear incident' and thus are actionable under the PAA."  Order for Status Report at 2, ECF No. 29 (quoting *In re Cotter*, 22 F.4th 788).  This Court therefore "has no discretion to remand" this case.  *In re Cotter*, 22 F.4th at 796.

Despite controlling Eighth Circuit precedent, Plaintiffs dispute this Court's jurisdiction.  None of Plaintiffs' arguments has merit.  *First*, the rule of unanimity does not apply here because removal is based on the PAA's special removal statute, 42 U.S.C. § 2210, not solely the general removal statute, 28 U.S.C. § 1441(a).  *Second*, removal is timely because Cotter was a party to *In re Cotter* and timely asserted the same basis for removal here as in *In re Cotter*.  *Third*, the Eighth Circuit, this Court, the Nuclear Regulatory Commission, the Atomic Energy Commission,

Plaintiffs' own complaint and cited material, and Cotter's notice of removal and expert evidence all show that source material is at issue.  *Fourth*, Plaintiffs' "due process" claim rests on a flawed premise rejected by the Supreme Court and Eighth Circuit.  *Fifth*, application of the PAA here does not lead to absurd results.  *Finally*, judicial estoppel has no place here because Cotter has not advanced an inconsistent position.  Plaintiffs' motion therefore should be denied.

## II.    LEGAL STANDARD

When a plaintiff challenges federal jurisdiction, the defendant bears the initial burden to prove the facts giving rise to jurisdiction by a preponderance of the evidence.  *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009).  The defendant "is not required to submit evidence establishing federal-court jurisdiction with its notice of removal."  *Pudlowski v. The St. Louis Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014)).  Rather, the notice "'need include only a plausible allegation' that the jurisdictional requirements are met."  *Id.* (quoting *Dart*, 574 U.S. at 88).  If jurisdiction is challenged, the defendant may then submit evidence to support its allegations.  *Id.*  Once the defendant satisfies its initial burden, the burden shifts to the plaintiff to disprove the facts giving rise to jurisdiction, and the plaintiff's burden of proof is "to a legal certainty."  *Id.*

Plaintiffs incorrectly assert that "[a]ll doubts must be resolved against federal jurisdiction."  Pls.' Mem. 4.  The Supreme Court has rejected any continuing "federal policy of construing removal jurisdiction narrowly."  *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697–98 (2003).  Since the removal statute's amendment in 1948, "there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception."  *Id.* at 697–98.  Where "[n]othing on the face" of the statute "looks like an express prohibition of removal," a court may not impose its own jurisdictional requirement.  *Id.* (interpreting 28 U.S.C. § 1441, which permits removal only

"[e]xcept as otherwise expressly provided by Act of Congress").  Here, the PAA expressly authorizes removal, without exception, and *In re Cotter* makes clear that the PAA "applies broadly" and "broaden[s] federal jurisdiction."  22 F.4th at 795.

## III.   ARGUMENT

### A.   The Price-Anderson Act Creates Broad Original Jurisdiction.

The PAA creates broad federal jurisdiction on purpose.  The PAA is part of a comprehensive federal regime that preempts the states from regulating the health and safety aspects of radiation.  *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 205, 208, 212 (1983).  That regime of "pervasive federal regulation" occupies "the entire field of nuclear safety concerns."  *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 856–60 (3d Cir. 1991).

The PAA's "unusual pre-emption provision . . . not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).  In fact, the Supreme Court has held the "pre-emptive force . . . is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim."  *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 484 n.6 (1999).

Congress passed the PAA originally to "encourage[] the private sector to become involved in the development of atomic energy for peaceful purposes under a program of federal regulation and licensing" under the "strict supervision" of the Atomic Energy Commission ("AEC"), now the Nuclear Regulatory Commission ("NRC").  *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 63 (1978).  But participants in the private industry, facing liability concerns upon an accidental release, feared being "forced to withdraw from the field if their liability were not limited by appropriate legislation."  *Id.* at 64.  Congress responded by

8

enacting the PAA with the dual purpose to "'protect[] the public and . . . encourag[e] the development of the atomic energy industry.'"  *Id.* (quoting 42 U.S.C. § 2012(i)).

In 1988, Congress amended the PAA again to create an exclusive federal cause of action for any "public liability action" arising from any "nuclear incident"—thus significantly extending the reach of preemptive federal jurisdiction.  42 U.S.C. § 2014(hh), § 2210(n)(2); *see Neztsosie*, 526 U.S. at 477.  Specifically, Congress broadly defined "nuclear incident" as:

> any occurrence, including an extraordinary nuclear occurrence, within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or for loss of use of property, arising out of or resulting from the radioactive . . . properties of source, special nuclear, or byproduct material.

42 U.S.C. § 2014(q).  In turn, the PAA defines a "public action" as "any suit asserting any public liability," 42 U.S.C. § 2014(hh), and "[p]ublic liability" as "any legal liability arising out of or resulting from a nuclear incident."  42 U.S.C. § 2014(w).

The PAA thus "applies broadly to any event causing bodily or property damage from nuclear material."  *In re Cotter*, 22 F.4th at 795.  The PAA also ensures "that all claims resulting from a given nuclear incident would be governed by the same law, [and] provide[s] for the coordination of all phases of litigation and the orderly distribution of funds"—in federal court.  *In re TMI*, 940 F.2d at 856–57; *Halbrook*, 888 F.3d at 977 n.3 (incorporating *In re TMI*'s "comprehensive" analysis).  For example, the PAA sets the federal dose limits as the standard of care for defendants.  *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1003 (9th Cir. 2007) ("Every federal circuit that has considered the appropriate standard of care under the PAA has concluded that [defendants] are not liable unless they breach federally-imposed dose limits").

### B.    Plaintiffs Assert Public Liability Under the Price-Anderson Act.

Plaintiffs' lawsuit—arising out of or resulting from "radiological contaminants from Manhattan Project-era uranium processing wastes" and "source material"—unquestionably

alleges public liability under the PAA and is subject to this Court's original jurisdiction.  Pls.'
Second Am. Compl. ¶¶ 1–7, 39, 86, ECF No. 7; *id.* at n.15 (citing Robert Alvarez, *The West
Lake Landfill* at 10 (Nov. 21, 2013), attached as Ex. A).

Plaintiffs specifically allege these radioactive materials were "generated in the processing
of Uranium ores in the St. Louis area" during and after World War II "in association with the
Manhattan Project."  *Id.* ¶¶ 1, 3, 39.  Plaintiffs also allege these "radioactive materials consist of
high levels of Uranium (U-238) decay products, including Thorium (Th-230), Lead (Pb-210),
and Radon (Ra-226)."  *Id.*  Plaintiffs further assert that dust samples from their property "contain
decay products of radioactive isotopes U-238, including Th-230, Ra-226 and Pb-210, which
match . . . the hazardous, toxic, carcinogenic radioactive wastes generated from the processing of
uranium ore in downtown St. Louis which was subsequently stored at SLAPS and Latty Avenue
before being disposed of in the Landfill."  *Id.* ¶ 91.  Plaintiffs assert "damages to their property
and the loss of use and enjoyment thereof" as a result these "hazardous, toxic, carcinogenic,
radioactive" materials from uranium "ores processed in St. Louis."  *Id.* ¶¶ 3, 23.

There can be no question that Plaintiffs' allegations constitute a public liability action
under the PAA.  42 U.S.C. §§ 2014(w), (q), (hh).  As the Supreme Court and Eighth Circuit have
held repeatedly, the PAA thus "transforms into a federal action" the suit and confers both
original and removal jurisdiction on this Court.  *Neztsosie*, 526 U.S. at 485; *In re Cotter*, 22 F.4th
at 796; *Halbrook*, 888 F.3d at 977.  That should be the beginning and end of the analysis.

### C. Cotter's Removal Is Procedurally Proper.

### 1. The Rule of Unanimity Does Not Apply.

Contrary to Plaintiffs' arguments, consent of all defendants is not required here because
removal is based on the PAA's special removal statute, 42 U.S.C. § 2210, and therefore the
general rule of unanimity does not apply.  *See Casey v. F.D.I.C.*, 583 F.3d 586, 591 (8th Cir.

10

2009) (rule of unanimity does not apply to special removal statutes); *Pettitt v. Boeing Co.*, 606 F.3d 340, 343 (7th Cir. 2010) (same); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (same); *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) (same); *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 103 (2d Cir. 2004); *Creasy v. Coleman Furniture Corp.*, 763 F.2d 656, 660 (4th Cir. 1985); *see* Wright & Miller, 14C Fed. Prac. & Proc. § 3730 (4th ed.) ("special removal statutes . . . do not require all defendants to join").  Plaintiffs' cited cases are irrelevant because each applies the general removal statute, not a special removal statute.

The general rule of unanimity is codified at 28 U.S.C. § 1446(b).  *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758.  The rule states: "When a civil action is removed *solely under section 1441(a)*, all defendants who have been properly joined and served must join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A) (emphasis added).  Therefore, unless a special removal statute applies, "[t]he rule of unanimity ordinarily requires that a case be remanded to the state court from which it was removed unless all defendants join in the motion for removal."  *Casey*, 583 F.3d at 591.

Unanimity, however, does not apply to a special removal statute that provides a party the right to remove.  *Pettitt*, 606 F.3d at 343 (unanimity does not apply to special removal statute that "a defendant . . . may remove"); *Cal. Pub.*, 368 F.3d at 103 (unanimity does not apply to special removal statute that "*a party* . . . may remove").  Cotter removed this action based on the PAA's special removal statute, 42 U.S.C. § 2210—not "solely under section 1441(a)"—which states that "**[u]pon motion of the defendant** . . ., any such action pending in any State court . . . **shall be removed** or transferred to the United States district court having venue under this subsection."  42 U.S.C. § 2210(n)(2) (emphasis added).

Therefore, the general rule of unanimity does not apply, and the consent of all defendants

11

to the removal is not required.

### 2.     Removal Was Timely and Proper.

Plaintiffs also mistakenly argue that removal was improper and untimely under 28 U.S.C.

§ 1446(b).  Pls.' Mem. 5.  Cotter properly removed this action on January 28, 2022, within 30

days after its receipt on January 7, 2022, of *In re Cotter*, which is an "order or other paper from

which it may first be ascertained that the case is one which is or *has become removable*."  28

U.S.C. § 1446(b)(3) (emphasis added); *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968

(8th Cir. 2007) (citing *Green v. R.J. Reynolds Tobacco Co.*, 274 F.3d 263, 265 (5th Cir. 2001);

*Doe v. Am. Red Cross*, 14 F.3d 196, 198 (3d Cir. 1993)).

As this Court correctly recognized, *In re Cotter* "held that the particular facts upon which

these Westlake Landfill radioactive-contamination cases are based fall with the PAA's definition

of a 'nuclear incident' and thus are actionable under the PAA."  Order for Status Report at 2,

ECF No. 29 (quoting *In re Cotter*, 22 F.4th 788).  The Court also recognized the underlying

*Banks* litigation as "a separate but related cause of action."  *Id.*  Indeed, Plaintiffs cite and

incorporate *Banks* into their complaint.  Pls.' Second Am. Compl. ¶17, n.3, ECF No. 7.

Under these unique circumstances, removal is proper.  In *Dahl*, cited by Plaintiffs, the

Eighth Circuit specifically explained that removal is permitted when, as here, (1) "the defendant

seeking to remove was also a party in the separate case which generated the decision creating a

basis for federal jurisdiction," and (2) "the defendant also had timely asserted the same basis for

removal on which it later ultimately succeeded."  478 F.3d at 969 (citing *Green*, 274 F.3d at 265;

*Doe*, 14 F.3d at 198).  Because Cotter was a party in the separate case of *In re Cotter*—which

generated the decision creating a basis for jurisdiction here—and Cotter had timely asserted the

same basis here—on which it later succeeded in *In re Cotter*—removal is allowed.  *Id.*  For this

reason, Bridgeton Landfill's filing today misses the point.  It impermissibly narrows *Dahl* and

relies on caselaw superseded by *Dahl*, 478 F.3d at 969.  *See Craft v. Philip Morris Companies, Inc.*, No. 4:05CV01531, 2006 WL 744415, at *7–8 (E.D. Mo. March 17, 2006).  (Moreover, at bottom, Bridgeton's filing acts as a partial joinder to Plaintiffs' motion for remand and is thus untimely under the clear edict of 28 U.S.C. § 1447(c) to file within 30 days of removal.)

Plaintiffs' and Bridgeton's cited cases simply apply one part of *Dahl* and distinguish *Doe* and *Green*.  *See Erhart v. Bayer, Corp.*, No. 4:17-CV-1996-SNLJ, 2017 WL 4280635, at *3 (E.D. Mo. Sept. 27, 2017) ("Defendants in this case were not parties to the *Bristol–Myers* case. Thus, *Bristol–Myers* is not an 'order' that triggered a new removal period"); *Craft*, 2006 WL 744415, at *6–8.  But here, the fact pattern of *Doe* and *Green*, as interpreted by *Dahl*, is directly on point: *In re Cotter's* holding reached beyond the facts of *Banks* alone; it explicitly rejected the reasoning of the district courts in *all* the related cases bringing claims against Cotter for injuries arising from the same Manhattan Project nuclear material.  22 F.4th 788, 796, 796 n.2.  That sweeping holding clearly encompasses the facts of this case—especially since Plaintiffs' complaint (¶ 17 n.3) invoked and applied the now-rejected district court decision in *Banks*.

Like the controlling authority of the Eighth Circuit (and the cited Fifth and Third Circuits), other courts hold under these unique circumstances that "[a] defendant can file a successive removal notice within 30 days after a change in law that revealed the facts necessary for federal court jurisdiction."  *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785, 789 (9th Cir. 2018) (reversing remand order); *see also Nasuti v. Scannell*, 906 F.2d 802, 808 (1st Cir. 1990) (reversing remand order where second notice was based on the changed Westfall Act), *limited on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007).

And even if *In re Cotter*—by Plaintiffs' and Bridgeton's theory—were not an "order or other paper" that authorized removal under this clear authority and § 1446(b)(3), removal would still be timely.  Section 1446(b)(3) "imposes a time limit *only* in cases in which the plaintiff's

13

initial pleading or subsequent document has explicitly demonstrated removability.  Defendants

are permitted to remove outside of these periods when the time limits of 28 U.S.C. § 1446(b) are

not triggered."  *Cutrone v. Mortg. Elec. Regis. Sys., Inc.*, 749 F.3d 137, 147 (2d Cir. 2014); *see

also Gibson v. Clean Harbors Env't Servs.*, 840 F.3d 515, 520 (8th Cir. 2016) (applying *Cutrone*

and finding removal timely based on party's investigation outside of the case); *Pirozzi v.

Massage Envy Franchising, LLC*, 938 F.3d 981, 985 (8th Cir. 2019) (same).

This Court previously held, based on Plaintiffs' allegations, that because the alleged

unlawful conduct did not arise from either NRC-licensed activities or a DOE contract with

indemnification, there were no jurisdictional facts giving rise to a PAA claim.  *Dailey v.

Bridgeton Landfill, LLC*, No. 4:17 CV 24 CDP, 2020 WL 1332093, at *4 (E.D. Mo. Mar. 23,

2020).  Per that order, the facts establishing PAA jurisdiction had "never existed" (*id.*), and thus

no apparent removability triggered § 1446(b).  *Id.*  Of course, Cotter disagreed at the time, and

ultimately *In re Cotter* rejected Plaintiffs' allegations and made removal apparent.  Thus,

Cotter's receipt of *In re Cotter*, even if a paper outside of this case, would still make this removal

timely.  *Van Bebber v. Dignity Health*, No. 1:19-CV-00264-DAD-EPG, 2019 WL 4127204, at

*7 (E.D. Cal. Aug. 30, 2019) ("[T]he holding in [another] case revealed for the first time that this

action was removable on the basis of federal question jurisdiction.").

Cotter's removal also fulfills clear federal policy: the PAA ensures that every claim is

"considered with other similar claims . . . [and] serves to reduce uncertainty, expenditure of

resources in dealing with duplicative issues, and the possibility of inconsistent outcomes."  *In re

TMI*, 940 F.2d at 861.  Within that context, this Court has exercised jurisdiction over other PAA

cases related to this incident.  *E.g.*, *Kitchin et al. Bridgeton Landfill, LLC*, No. 4:18-cv-00672-

CDP; *Butler et al. v. Mallinckrodt LLC et al.*, No. 4:18-cv-01701-AGF; *Banks et al. v. Cotter

Corp. et al.*, No. 4:20-cv-01227-JAR; *Mazzocchio et al. v. Cotter Corp. et al.*, No. 4:22-cv-

00292-MTS.  And remand would only violate this established policy, especially since Plaintiffs "can sue under the PAA or not at all," *Dailey v. Bridgeton Landfill, LLC*, 299 F. Supp. 3d 1090, 1098 n.3 (E.D. Mo. 2017) (quoting *McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1186 (E.D. Mo. 2013)), and any paper filed in state court that tries to advance a PAA claim would cause yet another removal and even more delay.  Removal is thus timely and ensures efficiency.

### D.    Plaintiffs' Claims Arise Out of or Result from "Source Material."

Plaintiffs' argument that their claims do not arise out of or result from source material is simply mistaken.  Pls.' Mem. 7–13.  As the Eighth Circuit, this Court, the NRC, the AEC, Plaintiffs' complaint and cited material, and Cotter's notice of removal and evidence all confirm, source material is at issue here.  The record thus more than satisfies Cotter's burden.  And contrary to Plaintiffs' heated rhetoric, Cotter has consistently taken this position.  Cotter Mem. 11–14, ECF No. 180, No. 4:17-cv-00024-CDP ("the material … was source material").  (For this reason alone, the Court should reject Plaintiffs' footnoted argument that judicial estoppel applies here.  Pls.' Mem. 15 n.65.)

### 1.    Plaintiffs Own Complaint Alleges That Their Claims Arise Out of or Result from "Source Material."

As Plaintiffs agree, source material is defined as "(1) "*uranium or thorium, or any combination thereof, in any physical or chemical form or* (2) ores which contain by weight one-twentieth of one percent (0.05%) or more of (i) uranium, (ii) thorium or (iii) any combination thereof."  Pls.' Mem. 7 (citing 10 C.F.R. § 40.4 (emphasis added)).  And as Plaintiffs' complaint and cited material admit, source material is at issue:

- "The wastes dumped into the West Lake Landfill . . . were subject to federal licensing and nuclear safety regulation as *'source materials'* under the Atomic Energy Act";
- "the AEC and then NRC . . . regulated the *'source materials'* dumped there [in the West Lake Landfill]."

15

Pls.' Second Am. Compl. ¶ 39 n.15 (citing Alvarez, *The West Lake Landfill* at 10).  Thus, Plaintiffs' own pleading concedes that source material is at issue.  *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) (documents "incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes'"); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (when incorporated documents "contradict the allegations of the complaint, the document controls").

The well-pleaded complaint rule, advanced by Plaintiffs, does not apply here.  *See* Pls.' Mem. 11 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 397 (1987)).  Here, the artful pleading doctrine applies instead because the PAA has "such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims." *Neztsosie*, 526 U.S. at 484 n.6.  That is, a plaintiff "may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law."  *Sullivan v. Am. Airlines, Inc*., 424 F.3d 267, 271–72 (2d Cir. 2005).

Construing Plaintiffs' allegations under the artful pleading doctrine, there is no question that they arise out of or result from source material.  Plaintiffs' own authority, as noted above, states the material is "source material," and Plaintiffs' complaint is filled with references to "uranium" or "thorium."  Pls.' Second Am. Compl. ¶¶ 1, 3, 23, 39, 91.  And while Plaintiffs now argue otherwise, their allegations against Cotter are not limited to West Lake Landfill and arise out of and result from source material originating from Latty Avenue.  *Id.* ¶¶ 40, 41, 44, 91.

### 2.     The Eighth Circuit Held These Allegations Broadly Arise Out of or Result from "Source Material."

Plaintiffs also incorrectly tell this Court that "the Eighth Circuit did not consider the relevant portion of the definition of nuclear incident which requires that a nuclear incident arise

from 'source, special nuclear, or byproduct material.'"  Pls.' Mem. 2.  In fact, the Eighth Circuit

considered and rejected these same arguments raised by the same counsel.  Appellees' Br. 12,

50–51, Case No. 21-1165, 2021 WL 2311850, at *12, 50–51 (8th Cir. filed May 28, 2021)

(arguing "mill tailings" and "the Uranium Mill Tailings Radiation Control Act").[1]

     The Eighth Circuit reviewed the record and definition of "source, special nuclear, or

byproduct material" in § 2014(q) and unequivocally held that "the PAA provides federal

question jurisdiction over the claims against Cotter and a 'district court has no discretion to

remand a claim that states a federal question.'"  *In re Cotter*, 22 F.4th at 796.  The Eighth

Circuit's binding decision alone precludes remand.

### 3.    Expert Testimony Confirms These Allegations Arise Out of or Result from "Source Material."

     To the extent Plaintiffs raise a factual challenge to the Court's jurisdiction, and the Court

ignores Plaintiffs' own pleading that source material is at issue, even then the uncontroverted

evidence supports jurisdiction under the PAA.  With this opposition, Cotter includes a fulsome

declaration by John D. Kinneman, a Certified Health Physicist and former Radiation Specialist

of 38 years who retired as the Director of the Division of Fuel Facility Safety and Safeguards in

the NRC's Headquarters Office.  *See* Kinneman Dec. ¶¶ 4–5.  Among his many qualifications,

*id.* ¶¶ 4–11, Mr. Kinneman worked for the NRC at the Three Mile Island (TMI) accident, which

prompted the pivotal 1988 amendments to the PAA that expanded federal jurisdiction.  *Id.* ¶ 7.

     According to Mr. Kinneman—whose declaration and averments are unrebutted—the

materials were "continuously identified as 'source material'" by the AEC (now the NRC).  *Id.*

---

[1] Even if the material were "mill tailings," it would still be considered "byproduct" material by the time of Plaintiffs' alleged injury and thus give rise to PAA jurisdiction.  42 U.S.C. §§ 2014(w), (q), (hh).  Plaintiffs concede "mill tailings" were "byproduct" material by 1978, Pls.' Mem. 7, well before they bought their home in 1999.  Pls.' Second Amend. Compl. ¶ 22

¶ 3.  Mr. Kinneman personally reviewed the "the voluminous record" associated with Cotter's possession of the materials at Latty Avenue, and the eventual disposal of those materials by others into the West Lake Landfill, and concluded that none of the materials at issue were ever identified as "mill tailings."  *Id.*; *see also id.* ¶¶ 17–43.  Mr. Kinneman chronicles the relevant materials, noting at each juncture their consistent characterization as source material.  *Id.*

Mr. Kinneman also explains how the material disposed at West Lake Landfill was "still source material, but was below a licensable concentration."  Kinneman Dec. ¶ 28.  In other words, even the "unimportant," "non-licensable," or "exempt" quantities of source material were still source material.  *Id.*; *see also* 42 U.S.C. § 2092 (recognizing "quantities of source material which, in the opinion of the Commission, are unimportant"); 10 C.F.R. § 40.13(a) ("Unimportant quantities of source material").[2]  Mr. Kinneman even cites the NRC's memorandum that "nothing … expressly prohibits dilution of *source material* in a mixture to below .05 weight percent in order for it to be exempted from the regulations."  Kinneman Dec. ¶ 40.  Together with Plaintiffs' admissions and Cotter's notice, Mr. Kinneman's declaration and exhibits more than satisfy Cotter's burden that Plaintiffs' claims arise out of or result from source material.

### 4.   Cotter's Testimony Concerns *Licensable* Source Material.

Plaintiffs finally attempt to confuse the Court by citing deposition testimony of Cotter's corporate representative, John Hamrick, that concerns Cotter's source material *license* and the *licensable* quantities of source material.  Pls.' Mem. 11–13.  Each of Plaintiffs' snippets concerns whether the concentrations of source material were "licensed."  Pls.' Mem. 11–12 & Exs. 1-4

---

[2] This Court has acknowledged the distinction between "licensable" and "non-licensable" or "unimportant" concentrations of source material.  *Dailey*, 2020 WL 1332093, at \*4.  The Court assumed the material "was indeed exempt from federal licensing requirements," but concluded that "the lack of a license removes the alleged conduct from PAA."  *Id.*  As this Court has now acknowledged, *In re Cotter* rejected that reasoning.  Order for Status Report at 2, ECF No. 29.

(material was "no longer *licensed* materials, fell out of *licensing*," "was not *licensed* material," was "not *licensed*," "was no longer subject to the *source material license*," and "subject to the *license?* … no longer met the definition of source material and was no longer *licensable*").

But the distinction between "licensed" and "non-licensable" source material is immaterial here.  The PAA requires only that source material be at issue, regardless of whether a license applies to the material.  *In re Cotter*, 22 F.4th at 796.  And source material—whether in "unimportant," "non-licensable," "exempt," or "licensed" quantities—is, of course, still source material.  Kinneman Dec. ¶¶ 27–52; 42 U.S.C. § 2092; 10 C.F.R. § 40.13(a); *see also* 10 C.F.R. § 40.4 ("Source Material means: (1) Uranium or thorium, or any combination thereof, in any physical or chemical form").

In any event, even if Plaintiffs' out-of-context excerpts from Mr. Hamrick's deposition testimony supported their position, "'the testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.'"  *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 451 (E.D. Pa. 2014) (citations omitted); *accord R & B Appliance Parts, Inc. v. Amana Co., L.P.*, 258 F.3d 783, 786–87 (8th Cir. 2001).

### E.    Applying the Price-Anderson Act Here Does Not Violate Due Process.

Plaintiffs' "due process" argument rests on the same flawed premise as above.  Pls.' Mem. 14–15.  Cotter has a right to remove Plaintiffs' claims because they arise from source material.  Full stop.  Plaintiffs try to construct a false dichotomy: either the material was licensed and regulated and therefore gives rise to federal jurisdiction, or it was not licensed or regulated and therefore there is no federal jurisdiction.  But Plaintiffs' dichotomy dissolves in light of the Eighth Circuit's clear rejection of that same argument Plaintiffs' counsel made in *In re Cotter*— they incorrectly argued that "the PAA provides jurisdiction for suits arising from a nuclear

incident only when the defendant has an 'applicable license or indemnity agreement.'" 22 F.4th at 795–96; *see also Duke Power Co.*, 438 U.S. at 87–88 (rejecting due process challenge to the PAA because it provides a "reasonably just substitute" for state tort remedies).

Nor does applying the PAA to unlicensed source material sanction "rogue" or "evil" behavior. Pls.' Mem. 14. The Eighth Circuit rejected Plaintiffs' counsel's similar arguments. *In re Cotter*, 22 F.4th at 793; 42 U.S.C. §§ 2210(n)(2), 2014(q). Had Cotter acted in a "rogue" or "evil" way, there is no question that the AEC could have stopped Cotter's operations and imposed financial penalties. *See* 10 C.F.R. §§ 2.200, 20.301, 20.106; S. Rep. 85-296 (1957), 1957 U.S.C.C.A.N. 1803, 1819. But the AEC never did so. Kinneman Decl. ¶¶ 36–44.

Again, the Eighth Circuit's decision in *In re Cotter* alone precludes remand.

### F.    Applying the Price-Anderson Act Here Does Not Lead to Absurd Results.

Plaintiffs and Cotter can agree on at least one final thing: "The PAA does not apply to every case involving radioactive material or radiation." Pls.' Mem. 13. True. The PAA only creates federal jurisdiction for claims by persons damaged by "source, special nuclear, or byproduct material," and not everyday sources of radiation. 42 U.S.C. § 2014(q). As explained above, the material at issue here is source material, not everyday sources of radiation, like the sun, medical imaging, air travel, cigarettes, and many others, and thus falls within the PAA.

## IV.    CONCLUSION

For these reasons, Cotter requests that this Court deny Plaintiffs' motion for remand and affirm its original jurisdiction under the Price-Anderson Act, 42 U.S.C. § 2210, *et seq.*, as expressly intended by Congress and affirmed by the Eighth Circuit in *In re Cotter*.

Dated: April 4, 2022            Respectfully submitted,

*/s/ Brian O. Watson*
RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
Jennifer Steeve, #308082CA
Nacenté Seabury, #67248MO
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
jsteeve@rshc-law.com
nseabury@rshc-law.com
docketdept@rshc-law.com

SWANSON, MARTIN & BELL, LLP
Marcie J. Vantine, #56860MO
mvantine@smbtrials.com
One Bank of America Plaza
800 Market Street, Suite 2100
St. Louis, MO 63101
314.242.0903 (telephone)
314.242.0990 (facsimile)

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 4, 2022, these papers were served upon all counsel of record via the

Court's electronic filing system.

Respectfully submitted,

*/s/ Brian O. Watson*
RILEY SAFER HOLMES & CANCILA LLP
Brian O. Watson, #68678MO
Lauren E. Jaffe, #6316795IL
Jennifer Steeve, #308082CA
Nacenté Seabury, #67248MO
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
bwatson@rshc-law.com
ljaffe@rshc-law.com
jsteeve@rshc-law.com
nseabury@rshc-law.com
docketdept@rshc-law.com

**ATTORNEYS FOR DEFENDANT**
**COTTER CORPORATION (N.S.L.)**